## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

ABDOULAYE DJIBRIL DIALLO,

                Petitioner,

v.

KRISTI NOEM, in her Official Capacity, Secretary of the U.S. Department of Homeland Security;

PAMELA BONDI, in her Official Capacity, Attorney General of the United States

CAMMILLA WAMSLEY, in her Official Capacity as Philadelphia Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement.

CRAIG A. LOWE, is named in his official capacity as the Warden Pike County Correctional Facility,

Respondents.

Case No.         (To be Assigned)

Judge: Hon. _____
Magistrate Judge: _____

No request for jury trial

**EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1

## INTRODUCTION

This is a case involving an individual unlawfully detained by ICE. While we articulate our requested relief more fully below, we would like to note that should the Court grant this Petition, we request that the Court's Order include IMMEDIATE release of the Petitioner. We are aware that a number of Immigrations Judges, when ordered by a Federal Judge to have a bond hearing, are effectively evading the mandate by (1) determining that everyone is a flight risk, and/or (2) setting exorbitant bonds of up to $30,000, tens of thousands of dollars in excess of the customary amount and unreachable to nearly all Petitioners. This can only be read as an attempt to circumvent an Order by a Federal Judge. As such, should the Court grant this Petition, only an Order for IMMEDIATE release can ensure Petitioner's rights and protect against IJ's finding new ways to evade Federal Court Orders.

## BACKGROUND

Petitioner, ABDOULAYE DJIBRIL DIALLO, brings this Verified EMERGENCY Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief pursuant to 28 U.S.C. § 2241; the All Writs Act, 28 U.S.C. § 1651; the Immigration and Nationality Act ("INA") and regulations thereunder; the Administrative Procedure Act; and the Suspension Clause of the Constitution, U.S. Const. Art. I § 9, cl. 2. The efforts to remove Petitioner constitute a "severe restraint" on his individual liberty such that Petitioner is "in custody" of the Respondents in violation of the . . . laws of the United States. *Hensley v. Municipal Court,* 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241, including the Immigration Nationality Act, 8 U.S.C. § 1101 et seq.; the Administrative Procedure Act, 5 U.S.C. § 701 et seq.; and the Due Process Clause of the Fifth Amendment of the United States Constitution.

2

Petitioner was randomly detained by ICE earlier this year and currently resides at PIKE COUNTY CORRECTIONAL FACILITY at 175 Pike County Blvd, Lords Valley, PA 18428. *See Exhibit A.* In *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals held that Immigration Judges lack jurisdiction to redetermine custody for noncitizens charged as removable under section 236(a)(1) of the Immigration and Nationality Act. Immigration Judges are uniformly defying the self-executing restoration of bond eligibility for individuals such as Petitioner mandated by the Final Summary Judgment in *Maldonado Bautista v. Santacruz*, No. 25-cv-1873, ECF No. 94 (C.D. Cal. Dec. 18, 2025). The only appropriate remedy is for this Court to grant Petitioner's habeas Complaint and order his IMMEDIATE release.

Pursuant to this Court's inherent powers in habeas corpus proceedings, Petitioner respectfully requests that this Court enjoin Respondents from effectuating his removal from the United States and order his IMMEDIATE release from custody, or in the alternative, or enjoin Respondents from continuing to detain him without an opportunity for bond redetermination.

Petitioner has been and/or will be subjected to prolonged "mandatory" detention that far exceeds the brief period constitutionally permitted to facilitate removal. See *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *Demore v. Kim*, 538 U.S. 510, 530 (2003). His continued detention does not serve any legitimate governmental purpose and has become arbitrary and punitive, in violation of the Due Process Clause of the Fifth Amendment.

The Immigration Court and the Board of Immigration Appeals have expressly disclaimed jurisdiction to review or redetermine custody in light of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which held that Immigration Judges lack authority to conduct bond hearings for individuals charged removable under certain provisions of the Immigration and

Nationality Act. Even after *Bautista*, Immigration Judges are adhering to internal DHS guidance that conflicts with the U.S. Federal District Judge in that case. *See Exhibit B*. As a result, Petitioner is left without an adequate or available administrative remedy, and only this Honorable Court possesses jurisdiction under 28 U.S.C. § 2241 to review the legality of his continued detention and to grant appropriate relief. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 314, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001) (recognizing federal habeas jurisdiction where no other judicial forum is available to test the legality of executive detention).

**PARTIES**

Petitioner is currently detained at PIKE COUNTY CORRECTIONAL FACILITY at 175 Pike County Blvd, Lords Valley, PA 18428. He has been in the United States since December 15, 2023.

Respondent, KRISTI NOEM, is the Secretary of the U.S. Department of Homeland Security ("DHS"), the federal agency responsible for enforcing Petitioner's arrest, detention and removal.  Respondent Noem's address is 2707 Martin Luther King Jr. Ave, SE Washington, DC 20528-0485.

Respondent PAMELA BONDI is named in her official capacity as the Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review, pursuant to section 103(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1103(g). She routinely transacts business in the District of New Jersey, is legally responsible for administering Petitioner's removal proceedings and the standards used in those proceedings, and as such, is the legal custodian of Petitioner. Respondent Bondi's address is U.S. Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, District of Columbia 20530.

Respondent, CAMMILLA WAMSELY, is the Philadelphia Field Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement. She is the local ICE official who has immediate authority over the Petitioner. Respondent Wamsley's office address is 114 North 8th Street, Philadelphia, PA 19107.

Respondent CRAIG A. LOWE, is named in its official capacity as the Warden of PIKE COUNTY CORRECTIONAL FACILITY at 175 Pike County Blvd, Lords Valley, PA 18428.

## JURISDICTION & VENUE

The Court has jurisdiction under the Suspension Clause. The Suspension Clause provides, "The privilege of the Writ of Habeas Corpus shall not be suspended, unless in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I § 9, cl. 2. This Court has habeas corpus jurisdiction pursuant to 28 U.S.C. §§ 2241 *et seq.*, as protected under Art. I § 9, cl. 2 of the United States Constitution (Suspension Clause), and federal question jurisdiction under 28 U.S.C. § 1331. This case arises under the United States Constitution; the INA, 8 U.S.C. §§ 1101 *et seq.*; the APA, 5 U.S.C §§ 701 *et seq.*; the Due Process Clause of the Fifth Amendment and the Fourth Amendment. Petitioner's current detention as enforced by Respondents constitutes a "severe restraint[] on [Petitioner's] individual liberty," such that Petitioner is "in custody in violation of the . . . laws . . . of the United States." *See Hensley,* 411 U.S. at 351 (1973); 28 U.S.C. § 2241(c)(3). The petitioner is also subject to prolonged physical detention.

While the courts of appeals have jurisdiction to review removal orders directly through petitions for review, *see* 8 U.S.C. § 1252, federal district courts have jurisdiction under 28 U.S.C. § 2241(d) to hear habeas claims by noncitizens challenging the lawfulness or constitutionality of Respondents' conduct. *See Demore v. Kim*, 538 U.S. 510, 516–517 (2003); *Zadvydas v. Davis,*

533 U.S. 678, 687 (2001). No Supreme Court or Third Circuit precedent applicable to

immigration detainees, nor the habeas statute, indicate that venue is not proper in the District

Court of New Jersey.  *See* 28 U.S.C. § 2241. Venue is proper in the United States District Court

for the District of New Jersey because a substantial part of the events and omissions giving rise

to this action occurred in the District. 28 U.S.C. § 1391(b)(2). Namely, Petitioner is currently

being held at the PIKE COUNTY CORRECTIONAL FACILITY at 175 Pike County Blvd,

Lords Valley, PA 18428.

### FACTS GIVING RISE TO THE HABEAS PETITION

Petitioner is currently in removal proceedings before Elizabeth Immigration Court. *See*

*Exhibit C*. He timely filed a Form I-589 asylum application for relief. *See Exhibit D*. Petitioner is

charged under INA § 212(a)(6)(A)(i) as an alien present in the United States without being

admitted or paroled, or who arrived at a time or place other than as designated by the Attorney

General. *See Exhibit E*.

The inadmissibility charge reflects DHS's determination that Petitioner entered without

inspection and is subject to removal proceedings under INA § 240. DHS does not classify him as

an "arriving alien," and instead identifies him as an individual present in the United States

without lawful admission, thereby placing him within the jurisdiction of the Immigration Court

for full removal proceedings.

Petitioner remains in ICE custody despite substantial equities that warrant release. He has

no criminal history, has complied with all legal obligations, has consistently demonstrated good

moral character, and was detained arbitrarily by ICE, likely as a result of racial profiling.

## REQUIREMENTS OF 28 U.S.C. § 2243

The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*. In this instance, where the facts and case law are clear, and where the consequences of delay could be removal from the United States, Respondents should not be granted additional time.

Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." Fay v. Noia, 372 U.S. 391, 400, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963), overruled by Wainwright v. Sykes, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), and abrogated by Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## APPLICABLE LAW

**A. The Government Is Detaining Petitioner Under the Wrong Statutory Provision and Lacks Authority to Hold Him Under 8 U.S.C. § 1225(b)(2)(A).**

1.      The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings. First, 8 U.S.C. § 1226 governs the arrest and detention of individuals placed in ordinary removal proceedings before an IJ pursuant to 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are subject to discretionary civil detention and are generally entitled to a bond hearing, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have

been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, provided they cannot show an exception. *See* 8 U.S.C. § 1226(c).

2.    Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2). Third, 8 U.S.C. § 1231(a)-(b) governs detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)-(b).

3.    This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

4.    The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. § 1226(a) was most recently amended in 2025 by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

5.    Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 FR 10312, 10323, 62 FR 10312-01, 10323.

6.    Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible pursuant to 8 U.S.C. § 1226(c). That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a)

(1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

7.    On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

8.    The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

9.    On September 5, 2025, the BIA adopted this same position in a published decision, *Matter of Yajure Hurtado*. There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings. However, *Matter of Yajure Hurtado* does not hold that Immigration Judges lack bond jurisdiction under § 236(a)(1) as a general matter; rather, it reclassifies all individuals who entered without inspection as "applicants for admission" and places them within § 235(b)(2)'s mandatory detention scheme, which contains no bond authority. Because the Board treats such individuals as falling under § 235(b)(2), it concludes they cannot seek bond, since the section itself provides no mechanism for bond hearings.

10.    Since Respondents adopted their new policies, dozens of federal courts, including nearly all of the federal courts in Pennsylvania and the Third Circuit more broadly, have rejected their new interpretation of the INA's detention authorities. Dozens, if not hundreds, of Judges

nationwide have likewise declined to follow *Matter of Yajure Hurtado*, which mirrors ICE's restrictive interpretation of the statute.

11.    Even before ICE or the BIA introduced these nationwide policies, IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here. There, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

12.    Subsequently, court after court has adopted the same reading of the INA's detention authorities and rejected ICE and EOIR's new interpretation. *See, e.g.*, *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025

WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F.

Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No.

2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v.*

*Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza*

*Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8,

2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9,

2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025);

*see also, e.g.*, *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3,

2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes

detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3 (D. Neb.

Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at

*2 (D. Neb. Aug. 14, 2025) (same).

13.     In addition to the many courts nationwide that have rejected DHS's and EOIR's

new theory of retroactively treating long-term residents as "arriving aliens," courts within the

Third Circuit, including the District of New Jersey, have reached the same conclusion. The Third

Circuit has repeatedly held that noncitizens who have been physically present in the United

States for years and are apprehended in the interior are detained, if at all, under 8 U.S.C. §

1226(a), and are entitled to an individualized bond hearing. *See Guerrero-Sanchez v. Warden*

*York Cnty. Prison*, 905 F.3d 208, 216–19 (3d Cir. 2018) (confirming that § 1226 governs

detention of individuals in standard removal proceedings and requiring bond hearings with the

government bearing the burden of proof); *Leslie v. Att'y Gen. of U.S.*, 678 F.3d 265, 269–72 (3d

Cir. 2012) (holding that detention of a long-term resident under § 1226(a) requires due process

protections including an individualized custody determination); *Diop v. ICE/Homeland Sec.*, 656

F.3d 221, 230–35 (3d Cir. 2011) (rejecting the government's position that detention could be mandatory or indefinite, and holding that § 1226(a) detainees must receive a meaningful bond hearing). District courts in the Third Circuit similarly hold that DHS cannot retroactively classify long-present, interior-arrested individuals as "arriving aliens" to trigger § 1225(b)(2)(A) mandatory detention. See, e.g., *Vasquez v. Lowe, 2019 WL 1922325, at 4–6 (M.D. Pa. Apr. 30, 2019)* (rejecting DHS's § 1225(b) theory and finding that a noncitizen with years of residence who was arrested in the interior is detained under § 1226(a)); *Hernandez v. Lowe*, 2019 WL 1545182 (M.D. Pa. Apr. 9, 2019) (same).

14.     The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). The Third Circuit has repeatedly recognized that § 1226(a) is the *default* detention authority for noncitizens in removal proceedings, absent narrow exceptions expressly created by Congress. *See Leslie v. Att'y Gen.*, 678 F.3d 265, 269–72 (3d Cir. 2012) (explaining that § 1226(a) governs detention of individuals in ordinary removal proceedings and entitles them to a bond hearing); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 230–35 (3d Cir. 2011) (same). As the Supreme Court has noted, when Congress identifies specific statutory exceptions, "the enumeration of specific exceptions … strengthens the implication that courts are to read no others." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010). The structure of § 1226 accordingly confirms that, unless a person fits into a specifically enumerated exception, detention occurs under § 1226(a) with the attendant procedural protections..

15.     Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

16.     By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. §1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

17.     Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

18.     Alarmingly and most significantly, Immigration Judges are uniformly defying the self-executing restoration of bond eligibility for individuals such as Petitioner mandated by the Final Summary Judgment in *Maldonado Bautista v. Santacruz*, No. 25-cv-1873, ECF No. 94 (C.D. Cal. Dec. 18, 2025). Even when ordered by a Federal Judge to grant a bond hearing, if the detainee is successful, Immigration Judges are regularly imposing unattainable bonds of up to $30,000, tens of thousands of dollars in excess of the customary amount. This can only be read as an attempt to circumvent an Order by a Federal Judge.

**B. Petitioner's Continued Detention Violates the Fifth Amendment's Due Process Clause**

13

19.     The Due Process Clause applies to all persons in the United States, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. at 693; *see also Yick Wo v. Hopkins*, 118 U.S. 356 (1886). The Supreme Court declared "that the Due Process Clause protects individuals against two types of government action" giving rise to distinct claims of substantive and procedural due process violations. *United States v. Salerno,* 481 U.S. 739, 746 (1987). Thus, "the touchstone of due process is protection of the individual against arbitrary action of government … whether the fault lies in the denial of fundamental due process fairness [procedural due process] … or in the exercise of power without any reasonable justification in the service of a legitimate government objective [substantive due process]…" *City of Sacramento v. Lewis*, 523 U.S. 833 (1998) (citations and internal quotations omitted).

20.     Procedural due process constrains governmental decisions that deprive individuals of property or liberty interests within the meaning of the Due Process Clause of the Fifth Amendment.  *See Matthews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on informal policies and practices may establish a legitimate claim of entitlement to a constitutionally-protected interest). Infringing upon a protected interest triggers a right to a hearing before that right is deprived, and a right to meaningful process afforded at a meaningful time. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972). "'Substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,'… or interferes with rights 'implicit in the concept of ordered liberty.'" *Salerno*, 481 U.S. at 746. (internal citations omitted).

21.     Respondents' power to detain and deport someone is not limitless, nor is it shielded from judicial review. *See Calderon v. Sessions,* 330 F. Supp. 3d 944, 950 (S.D.N.Y. 2018) *appeal withdrawn sub nom. Villavicencio Calderon v. Sessions*, No. 18-2926, 2018 WL

6920377 (2d Cir. Oct. 5, 2018) (ordering a stay of removal and release from detention to permit the Petitioner to continue with the provisional waiver process afforded by the government); *You Xiu Qing v. Nielsen*, 321 F.Supp.3d 451 (S.D.N.Y. 2018) (ordering a stay of removal and release from detention to permit the Petitioner to continue with the provisional waiver process and a motion to reopen); *S.N.C. v. Sessions,* No. 18 2018 WL 6175902, (S.D.N.Y. Nov. 26, 2018); *Compere v. Nielsen*, 2019 WL 332193, at *9 (D.N.H. Jan. 24, 2019) (granting a stay of removal for petitioner because deportation to Haiti would vitiate his ability to pursue an appeal to the BIA of the IJ's denial for a motion to reopen); *Lin v. Nielsen*, 2019 WL 1958569 at *15 (D. Md. May 2, 2019) (court found that a preliminary injunction was "in the public interest, as it requires DHS to comport with its own rules and regulations, and bars arbitrary and capricious action towards vulnerable undocumented immigrants."); *see also Martinez v. Neilsen*, 341 F.Supp.3d 400 (D.N.J. Sept. 14, 2018); *Fatty v. Nielsen*, 2018 WL 3491278 at *2 (W.D. Wash. Jul. 20, 2018); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 933-35 (W.D. Tex. 2018); *Jimenez v. Nielsen*, No. CV 18-10225-MLW, 2018 WL 4539687 (D. Mass. Sept. 21, 2018); *Sied v. Nielsen*, 2018 WL 1142202 (N.D. Cal. Mar. 2, 2018); *Ragbir v. Sessions*, 2018 WL 623557 (S.D.N.Y. Jan. 29, 2018); *Ibrahim v. Acosta*, No. 17-CV-24574, 2018 WL 582520 (S.D. Fla. Jan. 26, 2018); *Chhoeun v. Marin*, 306 F. Supp. 3d 1147 (C.D. Cal. 2018); *Rombot v. Souza*, 296 F. Supp. 3d 383 (D. Mass. 2017).

22.     "Habeas corpus is at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995).  Judges have "broad discretion" to fashion an appropriate remedy. It may extend beyond simply ordering the release of a petitioner, *Carafas v. La Vallee*, 391 U.S. 234 (1968), and is to "be administered with the initiative and flexibility essential to ensure that miscarriages of justices within its reach are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 291

(1969). Habeas corpus "never has been a static, narrow, formalistic remedy; its scope has been to achieve its grand purpose - the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). At its historical core, habeas corpus "has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474 (2004) (citations omitted). These protections extend fully to noncitizens subject to an order of removal. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001); *see also Martinez v. McAleenan*, 385 F.Supp.3d 349, 355 ("Due to its talismanic significance in protecting individual liberty from unlawful detention, habeas corpus is fundamentally governed by equity. The Supreme Court has granted the writ when justice has so required.") (citing *Munaf v. Grren*, 128 S.Ct. 2207 (2008) and *Carafas v. LaVallee*, 392 U.S. 234 (1968)). The Supreme Court has noted the writ's "scope and flexibility--its capacity to reach all manner of illegal detention--its ability to cut through barriers of form and procedural mazes." *Harris*, 394 U.S. at 291.

23.    Furthermore, in *Demore,* the Supreme Court held that mandatory detention under § 1226(c) was not unconstitutional on its face, but limited its holding to a brief period of detention, stating "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for *the brief period* necessary for their removal proceedings." 538 U.S. at 513 (emphasis added). The Court described the "brief period" that it held valid: "in the majority of cases," detention pursuant to § 1226(c) in 2003 "lasts for less than ... 90 days." *Id.* at 529.

24.    Even if the government were correct in placing Petitioner under § 1225(b), *Demore* expressly applies only to § 1226(c) detainees and is limited to brief, finite detention; it

does not authorize indefinite, pre-hearing detention of long-term residents arrested years or decades after entry.

25.     In the present case, there is no indication that Petitioner's detention is temporary or limited to a brief period necessary to effectuate removal. To the contrary, Petitioner has been subjected to prolonged detention that may continue for an indefinite period, potentially extending for years.  In addition, it demonstrates the significant hardship that his removal would impose on his U.S. citizen family member, who rely on his presence and support.

C.  **Respondents' Conduct Violates the Administrative Procedure Act (5 U.S.C. §§ 701–706).**

26.     Respondents' actions further violate the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, because the decision to detain Petitioner under 8 U.S.C. § 1225(b)(2)(A)—despite his undisputed status as a long-term interior resident placed in removal proceedings under § 240—constitutes final agency action that is arbitrary, capricious, an abuse of discretion, and contrary to law. See 5 U.S.C. § 706(2)(A), (C). DHS's retroactive reclassification of Petitioner as an "arriving alien" for the sole purpose of placing him in mandatory detention represents a fundamental departure from decades of consistent agency practice and violates the statutory framework Congress enacted. Such reclassification is not the product of reasoned decision-making, is unsupported by the INA's text, structure, or purpose, and reflects an unexplained and irrational policy shift lacking any contemporaneous justification.

27.     The APA forbids agencies from acting in a manner that is "arbitrary, capricious, [or] an abuse of discretion," especially where— as here—an agency's deviation from settled practice imposes severe restraints on liberty. DHS's application of § 1225(b)(2)(A) to Petitioner is arbitrary and contrary to law because that provision governs recent entrants applying for

admission at or near the border, not individuals like Petitioner and are charged with inadmissibility under § 212(a)(6)(A)(i) in full § 240 proceedings. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (explaining § 1225(b) applies at ports of entry). Respondents' reclassification policy also constitutes final agency action reviewable under the APA because it determines Petitioner's custodial status, imposes mandatory detention with no administrative process for review, and marks the consummation of the agency's decision-making process as applied to him.

28.     Accordingly, Respondents' detention of Petitioner under § 1225(b)(2)(A) must be set aside under 5 U.S.C. § 706(2) as unlawful agency action taken "in excess of statutory jurisdiction" and "without observance of procedure required by law," and this Court should order his IMMEDIATE release.

## CLAIMS FOR RELIEF

### Count I

### Habeas Corpus Under 28 U.S.C. § 2241 (Unlawful Executive Detention)

29.     Petitioner is being unlawfully detained in violation of 28 U.S.C. § 2241 because DHS has placed him under 8 U.S.C. § 1225(b)(2)(A), a statutory provision that does not authorize his detention after being placed in full removal proceedings under 8 U.S.C. § 1229a. His continued detention is unauthorized, exceeds the scope of statutory jurisdiction, and is not reasonably related to any legitimate removal purpose, rendering it unconstitutional and unlawful.

### Count II

### Violation of the Fifth Amendment (Substantive and Procedural Due Process)

30.     Respondents' detention of Petitioner violates the Fifth Amendment by subjecting him to prolonged, mandatory, and unreviewable incarceration without an individualized custody

determination. The absence of any opportunity to be heard, the government's refusal to consider

less restrictive alternatives, and the arbitrary reclassification of Petitioner as subject to §

1225(b)(2)(A) constitute both procedural and substantive due process violations.

## Count III

### Violation of the INA and Administrative Procedure Act (5 U.S.C. §§ 701–706)

31.    Respondents' application of § 1225(b)(2)(A) to Petitioner constitutes final agency

action that is arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of 5

U.S.C. § 706(2)(A), (C). DHS's unexplained and retroactive reinterpretation of the detention

statutes, reclassifying long-term interior residents as "arriving aliens," is inconsistent with

decades of agency practice, unsupported by statutory text, and results in unlawful mandatory

detention. This action exceeds statutory authority and must be set aside under the APA.

## Count IV

### Violation of the Suspension Clause (U.S. Const. Art. I § 9, cl. 2)

32.    By eliminating any administrative review of custody and foreclosing access to an

Immigration Judge, Respondents have suspended the privilege of the writ of habeas corpus as

applied to Petitioner. The government's reinterpretation of § 1225(b)(2)(A) prevents Petitioner

from obtaining judicial review of the legality of his detention anywhere except this Court. The

Suspension Clause prohibits such restrictions on habeas jurisdiction.

## REQUEST FOR RELIEF

33.    Pending the adjudication of this Petition, Petitioner respectfully requests that the

Court use its authority under 28 U.S.C. §2243 to order the Respondents to file a return within

three days.  *See* 28 U.S.C. §2243.  (Order to show cause why a petition for a writ of habeas

corpus should not be granted should be "returned within three days unless for good cause additional time, not exceeding twenty days, is allowed").

34.    Petitioner respectfully requests that Respondents be restrained from removing him from the United States pending adjudication of his removal proceedings. Premature removal would preclude him from pursuing the forms of relief for which he is eligible and would undermine his ability to seek protection under applicable immigration laws.

35.    Without this Court's intervention, the Respondents will seek to remove Petitioner in violation of law and inflict further cruel and unnecessary harm on Petitioner.  Petitioner requests that this Court issue an order that Respondents must notify the Court and Petitioner's counsel five days prior to any removal of Petitioner.

36.    Furthermore, Petitioner respectfully requests to be released from detention pending resolution of his immigration proceedings. Continued detention imposes significant hardship and interferes with his ability to meaningfully prepare and present his claims for relief.

37.    Without this Court's intervention, the Respondents will seek to remove Petitioner in violation of law and inflict further cruel and unnecessary harm. Petitioner respectfully requests that this Court issue an order requiring Respondents to notify the Court and Petitioner's counsel at least five days prior to any attempt to remove him from the United States.

## **EXHAUSTION OF REMEDIES**

38.    Petitioner's claims regarding the constitutionally inadequate process and unlawful deprivation of liberty are not subject to any statutory requirement of administrative exhaustion. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). To the extent that prudential concerns might lead the Court to consider exhaustion as a discretionary matter, Petitioner has taken all reasonable steps available to him within the administrative framework.

39.     Petitioner is currently in removal proceedings before the Immigration Court and is represented by counsel. This remedy remains pending or forthcoming, and no final order of removal has been issued.

40.     Moreover, neither the Immigration Judge nor the Board of Immigration Appeals has jurisdiction to adjudicate the constitutional claims raised in this habeas petition. These claims fall squarely within the purview of this Court.

41.     Finally, Petitioner faces irreparable harm in the form of continued detention, psychological trauma, and the risk of premature removal before he can pursue the legal remedies available to him. Respondents have the authority to parole Petitioner under 8 C.F.R. §§ 235.3(b)(2)(iii), 1235.3(b)(2)(iii), yet have declined to do so despite his eligibility and humanitarian circumstances. Further, because the administrative process offers no meaningful opportunity for relief due to the recent holding of the Board of Immigration Appeals in *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025), exhaustion of remedies is not required. See *McCarthy v. Madigan*, 503 U.S. 140, 146–49 (1992) (exhaustion excused where administrative remedies are inadequate or futile); *INS v. St. Cyr*, 533 U.S. 289, 314 (2001).

## <u>REQUEST FOR ORAL ARGUMENT</u>

42.     Should the Court not grant Petitioner's request for IMMEDIATE release, Petitioner respectfully requests oral argument on this Petition.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1.  Assume jurisdiction over this matter;

2.  Issue a Writ of Habeas Corpus on the ground that Petitioner's continued detention violates the Due Process Clause and order Petitioner's IMMEDIATE release;

3.  In the alternative, issue injunctive relief ordering Respondents to IMMEDIATELY release Petitioner on the ground that his continued detention violates the Due Process Clause;

4.  Enjoin Respondents from removing Petitioner from the United States;

5.  Order Respondents file a return within three days pursuant to 28 U.S.C. § 2243.

6.  Declare that the process as applied to Petitioner by Respondents violates the Suspension Clause, the Due Process Clause of the Fifth Amendment, the Fourth Amendment, the INA, the APA, and federal regulations;

7.  Issue a writ of habeas corpus directing Respondents to pursue a constitutionally adequate process to justify adverse immigration actions against Petitioner;

8.  Order Respondents to provide five days of notice to the Court and Petitioner of his imminent removal;

9.  Order Respondents to comply with all applicable rules, regulations, laws, and constitutional protections in relation to pending removal proceedings;

10. Award Petitioner his costs and reasonable attorney's fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. §2412, or other statutes;

11. Grant such further relief as the Court deems just and proper.


Dated: February 9, 2026                           Respectfully Submitted,

                                                  /s/ Eric Rosenfeld
                                                  R&G Legal Solutions
                                                  3662 N 21st Street
                                                  Philadelphia, PA 19140
                                                  215.779.6443
                                                  eric@rglegalsolutions.com