## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RELIGIOUS RIGHTS FOUNDATION OF PA, a Pennsylvania non-profit corporation; M.T. and G.T., individually and as the parents and natural guardians of A.T., a minor, | : : : : : : | Case No. |
| | : | **COMPLAINT** |
| Plaintiffs, | : : : | Filed on Behalf of: Plaintiffs |
| v. | : : | Counsel of Record for Plaintiffs |
| PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC., | : : : | Thomas E. Breth PA ID # 66350 |
| Defendant. | : : : : | tbreth@dmkcg.com |
| | : : : | Thomas W. King, III PA ID # 21580 |
| | : : | tking@dmkcg.com |
| | : : : : : : : : : | **Dillon McCandless King Coulter & Graham LLP** 128 W. Cunningham Street Butler, PA 16001 Telephone: 724-283-2200 Facsimile: 724-283-2298 |
| | : : : | *Special Counsel for the Thomas More Society* |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RELIGIOUS RIGHTS FOUNDATION OF PA, a Pennsylvania non-profit corporation; M.T. and G.T., individually and as the parents and natural guardians of A.T., a minor, | : : : : : : : : : : : : : : : : | No.: |
| Plaintiffs, | | |
| v. | | |
| PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, Inc., | | |
| Defendant. | | |

## COMPLAINT

Plaintiffs, Religious Rights Foundation of PA, a Pennsylvania non-profit corporation; and M.T. and G.T., individually and as parents and natural guardians of A.T., a minor, file the within Complaint averring in support thereof as follows:

## PARTIES

1.   Plaintiff, Religious Rights Foundation of PA, is a Pennsylvania non-profit corporation, organized and existing in accordance with the laws of the Commonwealth of Pennsylvania, with a mailing address of 3091 Enterprise Drive, Suite 200, State College, Centre County, Commonwealth of Pennsylvania (hereinafter referred to as "Religious Rights Foundation").

2.   The mission of the Religious Rights Foundation and its members is to protect, defend, and promote the religious rights, beliefs, opportunities, and tenants

1

of faith of its members, their families, and the greater faith community within the Commonwealth of Pennsylvania.

3.   The Religious Rights Foundation is acting to protect, defend and promote the religious rights of the students who are eligible to attend public school districts within the Commonwealth of Pennsylvania and to participate in the extracurricular and co-curricular activities of the public-school districts, include athletic activities governed by the Pennsylvania Interscholastic Athletic Association, but are denied generally available benefit due to their enrollment in parochial schools or other faith-based educational institution.

4.   Plaintiffs, M.T. and G.T., individually and as parents and natural guardians of A.T., a minor, are individuals residing in York County, Commonwealth of Pennsylvania (hereinafter referred to respectively as "Parent Plaintiffs" and "Student A.T." and collectively as "Plaintiffs").

5.   Plaintiffs reside within the York Suburban Area School District (hereinafter referred to as "YSSD"). Parent Plaintiffs are taxpayers in the YSSD and Commonwealth of Pennsylvania.

6.   Plaintiffs are members of the Religious Rights Foundation.

7.   The YSSD is one of many member school districts within the Pennsylvania Interscholastic Athletic Association.

8.   As a PIAA member district, the students enrolled in the YSSD are eligible to participate in a variety of interscholastic athletic activities governed by the Pennsylvania Interscholastic Athletic Association's Constitution and Bylaws (hereinafter referred to as "PIAA governed interscholastic athletic sports programs").

9.   Student A.T. is eligible in all material respects to attend the YSSD and to participate in the extracurricular and co-curricular activities generally available to the students enrolled in the YSSD, including, but not limited to, PIAA governed interscholastic athletic sports programs.

10. Student A.T. attends York Catholic High School, which is a parochial school located within York County, Commonwealth of Pennsylvania.

11. Parent Plaintiffs made the decision to have Student A.T. attend a parochial school to further their family's religious beliefs, including the religious beliefs of Student A.T.

12. As members of the Religious Rights Foundation, Parent Plaintiffs represent the interests of their minor child, along with the interests of other parents and minor children who are members of the Religious Rights Foundation and who are eligible in all material respects to attend their respective public-school districts of residence and to participate in the PIAA governed interscholastic athletic sports programs generally available to students enrolled in public school districts.

13. In accordance with its mission, the Religious Right Foundation is acting to protect and defend its members' Free Exercise rights as guaranteed by the First Amendment to the Constitution of the United States of America.

14. Defendant, Pennsylvania Interscholastic Athletic Association, Inc. (hereinafter referred to as the "PIAA" or "Defendant PIAA"), is a domestic non-profit corporation organized and existing in accordance with the laws of the Commonwealth of Pennsylvania with its corporate offices located at 550 Gettysburg Road, Mechanicsburg, Cumberland County, Commonwealth of Pennsylvania.

15. Defendant PIAA is a "state actor" within the Commonwealth of Pennsylvania. See, *Campbell v. Pa. Interscholastic Ath. Ass'n (Office of Open Records),* 268 A.3d 502, (2021 Pa. Cmmw.), citing, *School Dist. v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 309 A 2d. 353 (Pa. 1973); also see, *Commonwealth by Packel v. Pennsylvania Interscholastic Athletic Association*, 334 A.2d 839 (Pa. Cmmw. 1975).

16. Defendant PIAA is governed by and operates in accordance with the provisions of its Constitution and Bylaws. A true and correct copy of Defendant PIAA's 2025-2026 Constitution and Bylaws is attached hereto as Exhibit A and incorporated by reference and made a part hereof as if fully set forth herein.

17. In addition to its Constitution and Bylaws, Defendant PIAA is governed by and operates in accordance with the provisions of its Policies and Procedures. A

true and correct copy of Defendant PIAA's 2025-2026 Policies and Procedures is attached hereto as Exhibit B and incorporated by reference and made a part hereof as if fully set forth herein.

18. Defendant PIAA's Constitution, Bylaws, Policies, and Procedures are applicable to its member schools which are required to comply with the same.

19. Defendant PIAA is governed by its Board of Directors (hereinafter referred to as "PIAA Board").

20. As the governing body, the PIAA Board has various powers and authority, including, but not limited to, the power and authority to have general control over all interscholastic athletic relations and contests in which PIAA member schools participate; to elect its own officers who shall be the officers of PIAA; to establish its own rules, policies, and procedures; to interpret the provisions of its Constitution, By-laws, policies, procedures, rules and regulations; to adopt and revise its By-laws, policies, procedures, rules and regulation; and to exercise such other powers as are in keeping with the growth and needs of PIAA consistent with the provisions of the Constitution, By-laws, policies, procedures, rules and regulations of PIAA. *PIAA. Constitution at 4.*

## JURISDICTION AND VENUE

21. This Court has original jurisdiction pursuant to 28 U.S.C.A. §1331 and 28 U.S.C.A. §1343.

22. Defendant PIAA's corporate offices are located within the jurisdiction of the United States District Court for the Middle District of Pennsylvania.

23. This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. §1343(a)(3)(4).

24. Venue is proper in the Middle District pursuant to 28 U.S.C.A. §§1390(a), 1391(b)(2), as Defendant's conduct as set forth herein occurred within the Middle District of Pennsylvania.

## MATERIAL FACTS

25. The preceding paragraphs are incorporated herein by reference and made a part hereof as if fully set forth herein.

26. As a "state actor" in the Commonwealth of Pennsylvania, Defendant PIAA is prohibited from discriminating against Plaintiffs in violation of their rights under the Free Exercise Clause of the First Amendment of the United States Constitution. See, *Campbell v. Pa. Interscholastic Ath. Ass'n (Office of Open Records),* 268 A.3d 502, (2021 Pa. Cmmw.), citing, *School Dist. v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 309 A 2d. 353 (Pa. 1973); also see, *Commonwealth by Packel v. Pennsylvania Interscholastic Athletic Association*, 334 A.2d 839 (Pa. Cmmw. 1975).

27. The Free Exercise Clause of the First Amendment states in relevant part as follows:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . .

*Amend. 1, U.S. Constitution.*

28. As a state actor, Defendant PIAA cannot enact, adopt, or implement provisions within its Constitution, By-laws, policies, or procedures that violate Plaintiffs' First Amendment rights just as Pennsylvania's General Assembly and United States Congress cannot enact statutes that violate Plaintiffs' First Amendment rights. *Cantwell v. Conn., 310 U.S. 296, 60 S. Ct. 900, 84 L.Ed. 1213 (1940).*

29. Defendant PIAA has an Equal Opportunity Statement within its Constitution stating that it "believes that all boys and girls should have equal opportunity to participate in all levels of interscholastic athletics regardless of race, color, sex, creed, religion or ethnic background." *PIAA Const., Exhibit A, p. 1.*

30. Under its Constitution and Bylaws, Defendant PIAA provides students who are enrolled in Defendant PIAA member schools with generally available benefit of participation in PIAA governed interscholastic athletic sports programs.

31. If the students are enrolled in Defendant PIAA member schools, and meet the eligibility criteria established by Defendant PIAA, Defendant PIAA deems them to be eligible to participate in the PIAA governed interscholastic athletic sports programs.

32. Section 1 – <u>Where Enrolled for Attendance</u> of Article III - <u>Attendance</u> of Defendant PIAA's Bylaws states as follows:

> "To be eligible to participate in an Inter-School Practice, Scrimmage, or Contest, a student must be regularly enrolled in a secondary school and in full-time attendance or be home-schooled.
>
> Except as otherwise provided in this ARTICLE, a student is eligible only at the school at which the student is enrolled."

*PIAA Bylaws, Exhibit A, p. 13.*

33. Section 2 – <u>Number of Days of Enrollment Necessary to Count as a Semester</u> of Article III of Defendant PIAA's Bylaws states as follows:

> "Fifteen days or more of enrollment in a semester in any secondary school counts as one semester of attendance. . . ."[1]

*PIAA Bylaws, Exhibit A, p. 13.*

35. In addition to its Bylaws, Defendant PIAA has approved and implemented various Policies and Procedures.

36. Defendant PIAA's Policy regarding postseason participation of students who attend schools that do not sponsor a team during the regular season (hereinafter referred to as "PIAA Policy") states in relevant part as follows:

**QUALIFICATION FOR POSTSEASON PARTICIPATION:
POLICY CONCERNING QUALIFICATION FOR POSTSEASON
COMPETITION OF INDIVIDUAL STUDENTS FROM SCHOOLS**

---

[1]Interpretation Section 2. October 25, 1952, as amended May 25, 2000. Enrollment at any school, accredited or not, counts as enrollment.

## THAT DO NOT SPONSOR A TEAM DURING THE REGULAR SEASON

A student attending a member school *that does not sponsor a Team* which participates in at least 50% of the maximum permitted number of Regular Season Contests in a particular sport, may qualify for the first round of Postseason competition (District or Region meet or Tournament, as applicable) in that sport during a Regular Season Contest being conducted by another member school, in either of the following ways:

1.  Where qualification is or may be based on achieving a particular performance level, by achieving that level.

2.  Where qualification is based on placing in the competition, by so placing.

With the exception of invitational meets or Tournaments and conference or league championship meets or Tournaments, placement and Team points shall be awarded to the other member schools *as if the student from the non-sponsoring member school had not participated in that Contest*.

A PIAA Contest official registered in the sport must certify to the contestant's performance, in writing, to the District or Region meet or Tournament director. It is the responsibility of the student's school Principal or Athletic Director to make the necessary arrangements with the host member schools a minimum of two (2) weeks prior to the meet or Tournament.

All students who are attempting to qualify to the District or Region meet or Tournament under the procedures described above must meet all PIAA eligibility rules and requirements and *must be accompanied and supervised by a Coach from the member school that the student is representing, or by a full-time professional employee of the school or school district in lieu of a Coach.* The Coach or full-time professional employee must be a properly designated representative of the school for the student, and that Coach or full-time professional employee must be fully responsible for supervision of the student.

*Exhibit B, p. 87. [emphasis added.]* (Students required to participate under this PIAA Policy are herein after referred to as "*Independent Student Athletes*")

34. Pursuant to the PIAA Policy, students who attend a member school that does not sponsor a Team may individually attempt to qualify as Independent Student Athletes for PIAA governed district, regional, and state championships.

35.   At events where Independent Student Athletes are attempting to qualify, "placement and Team points shall be awarded to the other member schools *as if the student from the non-sponsoring member school had not participated in that Contest*." *Exhibit B, p. 87. [emphasis added.]*

36. Although, Independent Student Athletes are permitted to individually participate, because the PIAA member school that they attend does not sponsor the PIAA governed program, the Independent Student Athletes are denied the generally available benefits offered by the PIAA to students who enroll in member schools that offer the PIAA governed program.

37. Defendant PIAA's Bylaws contains many exceptions to Defendant PIAA's general rule that students are "eligible only at the school at which the student is enrolled" as set forth in Section 1 of Article III of Defendant PIAA's Bylaws. *PIAA Bylaws, Exhibit A, p. 13.*

38. Defendant PIAA does not require many of the students covered by these exceptions to participate in PIAA governed interscholastic athletic sports programs as Independent Student Athletes.

39. By way of example, Section 6 <u>Charter School and Cyber Charter School Students</u> of Article III of Defendant PIAA's Bylaws states in relevant part as follows:

> "Students enrolled in a Charter School or Cyber Charter School are eligible only at said school in those interscholastic sports sponsored by that school. Students enrolled in a Charter School or Cyber Charter School ***that does not offer a particular interscholastic sport are eligible to participate in that sport at the school which they would otherwise attend, in the public school district of their residences***, provided that the students meet all other eligibility requirements, including, but not limited to, school verified evidence of full-time attendance."[2][3]

*PIAA Bylaws, Exhibit A, p. 14. [emphasis added.]*

40. Section 6 of Article III of Defendant PIAA's Bylaws establishes an exception to Defendant PIAA's general rule that students are "eligible only at the school at which the student is enrolled" as set forth in Section 1 of Article III of Defendant PIAA's Bylaws.

---

[2] Interpretation Section 6. March 23, 2007. Where a student is enrolled at a Charter School, and where the public school district in which the student resides has no senior high school, the school at which the student is in full time attendance shall be considered the public school district of residence of the student.

[3] Interpretation Section 6 & 7. October 28, 2020. Where a student enrolls in a private cyber school, it is viewed as being done under a home school education program since private cyber schools are not registered or recognized by the Pennsylvania Department of Education, and the student's eligibility must be determined under Section 7.

41. This Section 6 exception is available to students enrolled in Charter Schools, Cyber Charter Schools, and Private Cyber Schools.

42. These Charter School, Cyber Charter School, and Private Charter School students are eligible to participate in PIAA governed interscholastic athletic sports programs at the students' home school districts and Defendant PIAA does not require these students to participate as Independent Student Athletes under Defendant's PIAA policy.

43. By way of further example, Section 7 – Privately-Tutored and/or Home-Schooled Students of Article III of Defendant PIAA's Bylaws states in relevant part as follows:

> "Students instructed by a properly qualified private tutor under Section 1327 of the Public School Code of 1949 and/or students participating in a home education program under Section 1327.1 of the Public School Code of 1949 **_are eligible only at the public schools that the students would otherwise attend by virtue of their residences_** and, for purposes of Cooperative Sponsorship of a Sport agreements, are deemed to be enrolled at the public schools that the students would have otherwise attend by virtue of their residences."

*PIAA Bylaws, Exhibit A, p. 14. [Emphasis added.]*

44. Section 7 of Article III of Defendant PIAA's Bylaws establishes an exception to Defendant PIAA's general rule that students are "eligible only at the school at which the student is enrolled" as set forth in Section 1 of Article III of Defendant PIAA's Bylaws.

45. The Section 7 exception is available to students instructed by a properly qualified private tutor under Section 13-1327 of the Pennsylvania Public School Code of 1949 (hereinafter referred to as "School Code"), *24 P.S. § 13-1327*, or students participating in a home education program under Section 13-1327.1 of the School Code, *24 P.S. § 13-1327.1*.

46. Defendant PIAA deems privately tutored students, under Section 13-1327 of the School Code, to be eligible to participate in PIAA governed interscholastic athletic sports programs at the students' home school districts and Defendant PIAA does not require these students to participate as Independent Student Athletes under Defendant's PIAA policy.

47. Defendant PIAA deems students who receive home education programs (hereinafter referred to as "homeschooled students") under Section 13-1327 of the School Code to be eligible at the students' home school districts.

48. These homeschooled students are eligible to participate in PIAA governed interscholastic athletic sports programs at the students' home school district and Defendant PIAA does not require these students to participate as Independent Student Athletes under Defendant's PIAA policy.

49. By way of further example, paragraph A of Section 8 Multi-Public School District Academic Arrangements of Article III of Defendant PIAA's Bylaws states in relevant part as follows:

13

Where students are enrolled in a public school in the public school district of their residence but, pursuant to an agreement between public school districts, attend all of their classes on a full-time basis at a public school in another public school district, the student may be declare eligible for such sport(s) at either (1) a school in the public school district in which the school the student attends is geographically located or (2) at a school in the student's home public school district. …

*PIAA Bylaws, Exhibit A, p. 14.*

50. Paragraph A of Section 8 of Article III of Defendant PIAA's Bylaws establishes an exception to Defendant PIAA's general rule that students are "eligible only at the school at which the student is enrolled" as set forth in Section 1 of Article III of Defendant PIAA's Bylaws.

51. This exception is available to students who are enrolled in a public school district but attend a different public school district based upon an agreement between the two public school districts.

52. Pursuant to Defendant PIAA's Bylaws, Defendant PIAA provides these students with the option to "be declare eligible by the District Committee for such sport(s) at either (1) a school in the public school district in which the school the student attends is geographically located or (2) at a school in the student's home public school district." *PIAA Bylaws, Exhibit A, p. 14.*

53. Under this exception, Defendant PIAA has granted itself the authority to declare students' eligible to participate in PIAA governed interscholastic athletic sports programs at public school districts in which the students are not enrolled.

14

54. Under this exception, Defendant PIAA permits students to participate in PIAA governed interscholastic athletic sports programs against public school districts in which the students are enrolled, and Defendant PIAA does not require these students to participate as Independent Student Athletes under Defendant's PIAA policy.

55. By way of further example, paragraph B of Section 8 – Students Placed by Court Order or as a Result of Disability of Article III of Defendant PIAA's Bylaws states in relevant part as follows:

> "A student who has been placed in a school either by court order or because the student is a Student With A Disability whose Individual Education Plan has concluded that the student's educational needs could not be accommodated in the public declared eligible by the District Committee for such sport(s) at (1) the school the student is attending; (2) a public school in the public school district in which the school the student attends is geographically located; or (3) at the public school the student would otherwise have attended in the student's home public school district. . . ."

*PIAA Bylaws, Exhibit A, p. 14.*

56. Paragraph B of Section 8 of Article III of Defendant PIAA's Bylaws establishes an exception to Defendant PIAA's general rule that students are "eligible only at the school at which the student is enrolled" as set forth in Section 1 of Article III of Defendant PIAA's Bylaws.

57. This exception is available to students who are placed in schools pursuant to orders of court and disabled students who are placed in schools pursuant to individual educational plans ("IEP") because of educational needs.

58. Pursuant to Defendant PIAA's Bylaws, Defendant PIAA provides these students with the option to "be declare eligible by the District Committee for such sport(s) at (1) the school the student is attending; (2) a public school in the public school district in which the school the student attends is geographically located; or (3) at the public school the student would otherwise have attended in the student's home public school district.

59. Under this exception, Defendant PIAA has granted itself the authority to declare students eligible to participate in PIAA governed interscholastic athletic sports programs at the school the students are attending; or at a different school within the geographic boundaries of the public school district in which the school is located; or at the students' home school districts.

60. Under this exception, Defendant PIAA permits students to participate in PIAA governed interscholastic athletic sports programs at two different schools other than the school district in which these students are enrolled, and Defendant PIAA does not require these students to participate as Independent Student Athletes under Defendant's PIAA policy.

61. Defendant PIAA's member school districts are located throughout the Commonwealth of Pennsylvania, including, member school districts located within the United States District Court for the Middle District of Pennsylvania.

62. The above referenced Defendant PIAA exceptions are applicable to students residing throughout the Commonwealth of Pennsylvania.

63. In a related case filed against the State College Area School District ("SCASD") alleging violations of the Free Exercise clause of the First Amendment and the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, Plaintiff Religious Right Foundation of PA obtained an Consent Order affirming parochial school students' constitutionally protected right to participate in extracurricular and cocurricular activities, including PIAA governed interscholastic athletic activities offered at their respective home school districts. *Religious Rights Foundation, et al. v State College Area School District, et al., Middle District of PA, 4:23-cv-01144-MWB.* A true and correct copy of the Consent Order is incorporated by reference as Exhibit C as if fully set forth herein.

64. In an additional related case filed against Defendant PIAA alleging violations of the Free Exercise clause of the First Amendment and the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, Plaintiff Religious Right Foundation of PA obtained a Consent Order confirming that parochial school students' have a constitutionally protected right to participate

in PIAA governed interscholastic athletic activities offered at their respective home

school districts. *Religious Rights Foundation, et al. v PIAA, Middle District of PA,*

*4:25-cv-01406-MWB.* A true and correct copy of the Consent Order is incorporated

by reference as Exhibit D as if fully set forth herein (hereinafter referred to as "PIAA

Consent Order").

65. The above referenced Consent Order states in relevant part as follows:

Student Plaintiffs, along with any unnamed student members of the Religious
Rights Foundation and any other student athletes who are enrolled in
Pennsylvania faith-based schools, are hereby declared eligible under the
United States Constitution and the PIAA Bylaws to participate in the PIAA
governed interscholastic athletic activities sponsored by their respective home
school districts, if the PIAA interscholastic athletic activity is not sponsored
by their respective Pennsylvania faith-based school. . . .

*Exhibit D, ¶1.*

63. Student A.T. attends York Catholic High School, which is a parochial

school located within York County, Commonwealth of Pennsylvania.

64. York Catholic High School (hereinafter referred to as "York Catholic") is

a PIAA member school that sponsors various PIAA interscholastic athletic sports

programs.

65. According to Defendant PIAA's website, York Catholic sponsors the

PIAA interscholastic athletic sports programs listed below:

| Boys | Class | Girls | Class |
|---|---|---|---|
| Baseball | AA | Basketball | AA |
| Basketball | AA | Competitive Spirit | AA |
| Cross Country | A | Cross Country | A |

| | | | |
|---|---|---|---|
| Football | A | Golf | AA |
| Golf | AA | Lacrosse | AA |
| Lacrosse | AA | Soccer | A |
| Soccer | A | Softball | A |
| Tennis | AA | Tennis | AA |
| Volleyball | AA | Volleyball | A |

http://www.piaa.org/schools/directory/details.aspx?ID=12276

66. As a PIAA member school, York Catholic does not sponsor a boys or girls PIAA interscholastic swimming program.

67. Plaintiff Parents and Student A.T. reside within the geographic boundaries of the YSSD.

68. Student A.T. is eligible in all material respects to attend the YSSD and to participate in the extracurricular and co-curricular activities generally available to the students enrolled in the YSSD, including, but not limited to, the YSSD sponsored PIAA girls swimming programs.

69. As a PIAA member school, the YSSD sponsors a PIAA girls swimming program.

70. Prior to the PIAA Consent Order, Student A.T. was required to participate as an Independent Student Athlete at PIAA member schools' swimming meets pursuant to Defendant PIAA Policy. *Exhibit B, p. 87.*

71. As a result of Defendant's PIAA Policy, Plaintiff Parents were required to pay three hundred dollars ($300.00) per month to enable Student A.T. to participate as an Independent Student Athlete.

72. While participating at these swimming meets, Student A.T. was unable to participate in many of the PIAA governed swimming activities, including all team relay events.

73. Further, Student A.T. could only individually qualify for PIAA governed district, regional, and state championships.

66. If Student A.T. came in first place in a swimming event, the placement and team points were awarded to the other member schools as if Student A.T. had not participated. *Exhibit B, p. 87.*

74. As an Independent Student Athletic, Student A.T. did not have a traditional swimming coach that was responsible for the girls swimming program. York Catholic's Assistant Athletic Director and a parent volunteer served as the "coach" because the PIAA Policy requires someone to be designated as the coach.

75. After the PIAA Consent Order was entered by the Court, Plaintiffs via their undersigned legal counsel contacted legal counsel for Defendant PIAA, Attorney Dana Chilson, to confirm whether Student A.T. would be eligible to participate on her YSSD's PIAA sponsored swimming team during the 2026-2027 school year, since York Catholic does not sponsor a PIAA interscholastic athletic swimming program.

76. Defendant PIAA informed Plaintiffs that despite the PIAA Consent Order, Defendant PIAA would not permit Student A.T. to participate as a member of the YSSD's PIAA sponsored swimming program.

77. Via a letter from Defendant PIAA's legal counsel, Defendant PIAA denied Student A.T.'s request to participate in the YSSD PIAA sponsored girls swimming program indicated in relevant part as follows:

> . . . the school at which [Student A.T.] is enrolled, York Catholic, already sponsors the interscholastic athletic activity for which [Student A.T.] wishes to participate at York Suburban.

> The PIAA Bylaws define "Team" in the Glossary, a definition which is not altered in any way by the Consent Order. A Team is defined as: "A school-sponsored organization which consists *of one or more students,* and which represents that school *in any form of interscholastic athletic competition*, including Inter-School Practices, Scrimmages, and/or Contests." (emphasis added).

> York Catholic currently sponsors a three-person Team for swimming events . . .

78. Defendant PIAA has notified YSSD that it is Defendant PIAA's position that Student A.T. is not eligible to participate as a member of the YSSD's PIAA sponsored swimming team.

79. Prior to filing the within Complaint, Plaintiffs made a good faith effort to resolve this issue with Defendant PIAA.

80. Plaintiff Religious Rights Foundation joins this Complaint to protect, defend, and promote the religious rights, beliefs, and opportunities of not only the

Plaintiff Parents and Student A.T., but also, the religious rights, beliefs, and opportunities of similarly situated students who attend faith-based schools.

81. Plaintiff Parents, Student A.T. and other similarly situated students have suffered, and continue to suffer, an injury in fact, as a direct result of Defendant PIAA's discriminatory conduct as set forth herein.

<strong>COUNT I<br>PLAINTIFFS v. DEFENDANT<br>VIOLATION OF THE FIRST AMENDMENT<br>FREE EXERCISE CLAUSE - 42 U.S.C. §1983</strong>

78. The preceding paragraphs are incorporated herein by reference and made a part hereof as if fully set forth herein.

79. Parent Plaintiffs and Student A.T. reside within the YSSD which is a PIAA member school district.

80. Student A.T. is eligible in all material ways to attend the YSSD and to participate in the PIAA governed interscholastic athletic sports programs generally available to the student enrolled in the YSSD.

81. If Student A.T. were enrolled in the YSSD, Defendant PIAA would consider her eligible to participate in the PIAA governed interscholastic athletic sports programs, including participation on the YSSD sponsored PIAA swimming team.

82. Parent Plaintiffs have enrolled Student A.T. in a parochial school, York Catholic, to further both Parent Plaintiffs' and Student A.T.'s religious beliefs.

83. Student A.T. regularly participates in religious instruction and activities at York Catholic.

84. As a student at York Catholic, Student A.T. participates in the sacraments of the Catholic faith via York Catholic.

85. The religious instruction and activities offered at York Catholic are an integral part of the educational programs provided to Student A.T.

86. In the furtherance of their religious beliefs, Parent Plaintiffs participate in various religious activities with Student A.T.

87. By attending York Catholic, Student A.T. does not have the opportunity to participate in the various PIAA governed interscholastic athletic sports programs that are generally available to students who are enrolled in the YSSD.

88. Defendant PIAA is a "state actor" within the Commonwealth of Pennsylvania. See, *Campbell v. Pa. Interscholastic Ath. Ass'n (Office of Open Records),* 268 A.3d 502, (2021 Pa. Cmmw.), citing, *School Dist. v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 309 A 2d. 353 (Pa. 1973); also see, *Commonwealth by Packel v. Pennsylvania Interscholastic Athletic Association*, 334 A.2d 839 (Pa. Cmmw. 1975).

89. As a "state actor" in the Commonwealth of Pennsylvania, Defendant PIAA are prohibited from discriminating against Plaintiffs in violation of their rights under the Free Exercise Clause of the First Amendment of the United States

Constitution. See, *Campbell v. Pa. Interscholastic Ath. Ass'n (Office of Open Records),* 268 A.3d 502, (2021 Pa. Cmmw.), citing, *School Dist. v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 309 A 2d. 353 (Pa. 1973); also see, *Commonwealth by Packel v. Pennsylvania Interscholastic Athletic Association*, 334 A.2d 839 (Pa. Cmmw. 1975).

90. Defendant PIAA grants a variety of students the right to participate in their respective home school districts' PIAA governed interscholastic athletic sports programs without enrolling in their respective home school districts as forth above.

91. Further, as set forth above, Defendant PIAA does not require these students to participate in other school districts' sports activities as Independent Student Athletes under Defendant's PIAA policy.

92. As one example, Defendant PIAA permits Homeschooled students the right to participate in their respective home school districts' PIAA governed interscholastic athletic sports programs.

93. These Homeschooled Students are not required to participate as Independent Student Athletes.

94. Parent Plaintiffs have requested that Defendant PIAA permit Student A.T. to participate in the YSSD's PIAA sponsored swimming program because Student A.T.'s parochial school, York Catholic, does not sponsor a PIAA swimming program.

95. Defendant PIAA has failed and refused to grant Parent Plaintiffs' requests for Student A.T. to participate in the YSSD PIAA swimming program.

96. Plaintiff Religious Rights Foundation exists to help protect, defend, and promote the religious rights, beliefs, opportunities, and tenants of faith of its members, their families, and the greater faith community within the Commonwealth of Pennsylvania.

97. Defendant PIAA's discriminatory conduct towards Student A.T. is exactly the type of discriminatory conduct that the Religious Right Foundation was formed to fight against.

98. Chief Justice Roberts of the Supreme Court of the United States recently opined, "This Court has repeatedly confirmed that denying a generally available benefit solely on account of religious identify imposed a penalty on the free exercise of religious."  *See Trinity Lutheran Church of Columbia, Inc. v. Comer, 582 U.S. 449, 451, 137 S.Ct. 2012, 2016, 198 L.Ed.2d 551, 553 (2017).*

99. Defendant PIAA is forcing Parent Plaintiffs and Student A.T. to choose between their religious beliefs and the generally available benefit of participation in PIAA governed interscholastic athletic sports programs that are not offered at their respective parochial schools.

100.   Chief Justice Roberts further opined, "It has remained a fundamental principal of this Court's free exercise jurisprudence that laws imposing 'special

disabilities on the basis of … religious status' triggers the strictest scrutiny." *Id.* at 552-452, *citing*, *Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533, 113 S.Ct. 2217, 2019-2021, 124 L.Ed.2d 472 (1993).*

101.  The provisions of Defendant PIAA's Constitution, Bylaws, Policies, and Procedures are not neutral or are not generally applicable and as such, Defendant PIAA's Constitution, Bylaws, Policies, and Procedures are subject to strict scrutiny.

102.  Defendant PIAA's Bylaws and Policies provide numerous mechanisms for individualized exemptions or exceptions as set forth above.

103.  Defendant PIAA's Bylaws and Policies provide numerous mechanisms for secular conduct while at the same time, denying similar exceptions for religious conduct such as enrollment within a parochial school.

104.  Defendant PIAA does not have a legitimate interest or basis justifying its disparate treatment of parochial school students.

105.  Defendant PIAA's custom, practice, and policy of excluding parochial school students from participation in PIAA governed interscholastic athletic sports programs at the students' home school districts and forcing these parochial school students to participate in other school districts' PIAA activities is subject to the highest standard of review and cannot survive strict scrutiny.

106.  As Chief Justice Roberts has opined, "The Free Exercise Clause 'protect[s] religious observers against unequal treatment' and subjects to the strictest

scrutiny laws that target the religious for 'special disabilities' based on their 'religious status." *Id. at 458-459, citing, Church of Lukumi Barbalu Aye, supra.*

107.   The Unites States Supreme Court has made it clear that "… denying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion that can be justified only by a state interest 'of the highest order." *Id., citing, McDaniel v. Paty*, 435 U.S. 618, 628, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978) (plurality opinion) (quoting Wisconsin v. Yoder; 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d. 15 (1972)).

108.   Plaintiffs have suffered harm as a direct result of Defendant's discriminatory conduct towards them and similarly situated students.

## COUNT II
## PLAINTIFFS v. DEFENDANT
## VIOLATION OF THE FOURTEENTH AMENDMENT
## EQUAL PROTECTION CLAUSE - 42 U.S.C. §1983

109.   The preceding paragraphs are incorporated herein by reference and made a part hereof as if fully set forth herein.

110.   As a "state actor" in the Commonwealth of Pennsylvania, Defendant PIAA are prohibited from discriminating against Plaintiffs in violation of their rights under the Equal Protection clause of the Fourteenth Amendment of the United States Constitution.

111.   Under the Equal Protection clause, Section I of the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the

equal protection of the laws." U.S.C.A. Const. Amend. XIV, § I; *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432 (1985).

112.   The purpose of the Equal Protection Clause of the Fourteenth Amendment is to secure that every person within a state's jurisdiction is protected against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S. Ct. 1073 (2000).

113.   "The Equal Protection Clause 'announces a fundamental principle: the State must govern impartially,' and 'directs that all persons similarly circumstanced shall be treated alike.' Therefore, '[g]eneral rules that apply evenhandedly to all persons within the jurisdiction unquestionably comply' with the Equal Protection Clause. Only when a state 'adopts a rule that has a special impact on less than all persons subject to its jurisdiction' does a question arise as to whether the equal protection clause is violated." *See Alexander v. Whitman,* 114 F.3d 1392, 1403, (3d Cir.1997), quoting, *New York City Transit Authority v. Beazer,* 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979); quoting, *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982), quoting, *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561-62, 64 L.Ed. 989 (1920).

114.   The Free Exercise Clause of the First Amendment, which has been applied to the States through the Fourteenth Amendment provides that "Congress

shall make no law respecting an establishment of religion or *prohibiting the free exercise thereof..." See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993), *citing*, *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

115.   "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *See Lukumi, supra* at 532, citing, *Braunfeld v. Brown,* 366 U.S. 599, 607, 81 S.Ct. 1144, 1148, 6 L.Ed.2d 563 (1961); and *Fowler v. Rhode Island,* 345 U.S. 67, 69-70, 73 S.Ct. 526, 527, 97 L.Ed. 828 (1953).

116.   "Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. The Free Exercise Clause protects against governmental hostility, which is masked, as well as overt. 'The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders.'" *See Lukumi, supra* at 534, *quoting*, *Walz v. Tax Comm'n of New York City,* 397 U.S. 664, 696, 90 S.Ct. 1409, 1425, 25 L.Ed.2d 697 (1970).

117.   "Nor does it make a difference that faith-based bigotry did not motivate the orders. The constitutional benchmark is 'government *neutrality,'* not 'governmental avoidance of bigotry.'" *See Roberts v. Neace,* 958 F.3d 409, 415

(2020), citing, *Colo. Christian Univ. v. Weaver,* 534 F.3d 1245, 1260 (10th Cir. 2008).

118.  "A law is not neutral and generally applicable unless there is 'neutrality between religion and non-religion.' *Id.*, citing, *Hartmann v. Stone,* 68 F.3d 973, 978 (6th Cir, 1995).

119.  "And a law can reveal a lack of neutrality by protecting secular activities more than comparable religious ones." *Id.*, citing, *Hartmann* at 979; *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1233-35, 1234 n.16 (11th Cir. 2004); *see also Shrum v. City of Coweta,* 449 F.3d 1132, 1145 (10th Cir. 2006) ("[T]he Free Exercise Clause is not confined to actions based on animus.").

120.  Defendant PIAA provides a variety of students with the benefit of participation in PIAA governed interscholastic athletic sports programs at their respective home school districts without requiring these students to participate as Independent Student Athletes.

121.  Defendant PIAA has failed and refused to treat Student A.T. and other parochial school students in the same manner as students who are not enrolled in their home school districts.

122.  Defendant PIAA treats Student A.T. and other parochial school students in a disparate and discriminatory manner which is based solely upon their enrollment in parochial schools.

123.    Defendant PIAA has a custom, practice, and policy of denying a generally available benefit to Plaintiffs solely on account of Plaintiffs' religious identity.

124.    Parent Plaintiffs and Student A.T. have suffered harm as a direct result of Defendant's discriminatory conduct towards them.

125.    Injunctive relief is necessary to prevent continued irreparable harm to Plaintiffs that cannot be adequately compensated by damages.

126.    The violation of a constitutional right is per se irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *See Roman Catholic Diocese of Brooklyn v. Cuomo, __ U.S. __, 141 S.Ct. 63, 67-68, 208 L.Ed.2d 206, (2020), quoting, Elrod v. Burns, 427, U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).*

127.    Defendant PIAA will not be harmed if injunctive relief is granted to Plaintiffs.

128.    Injunctive relief would restore the "status quo" under which Plaintiffs fully enjoyed the Free Exercise Rights protected by the First Amendment.

129.    Injunctive relief would restore the "status quo" under which Plaintiffs fully enjoyed equal protection under the Fourteenth Amendment.

130.    Plaintiffs' prayer for relief is clear, and Plaintiffs are likely to prevail on the merits of their claims.

131.   "It has remained a fundamental principal of this Court's free exercise jurisprudence that laws imposing 'special disabilities on the basis of … religious status' triggers the strictest scrutiny." *Id., citing*, *Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 533, 113 S.Ct. 2217, 2019-2021, 124 L.Ed.2d 472 (1993).*

132.   Plaintiffs' prayer for relief is narrowly tailored to abate the improper conduct of Defendant PIAA and injunctive relief will not adversely impact the public interest.

133.   Plaintiffs have satisfied each of the elements necessary for injunctive relief and injunctive relief is appropriate in this matter to prevent further violations of Plaintiffs' Constitutional rights.

## COUNT III
## PLAINTIFFS v. DEFENDANT
## VIOLATION OF CONSENT ORDER - 42 U.S.C. §1983

134.   The preceding paragraphs are incorporated herein by reference and made a part hereof as if fully set forth herein.

135.   Defendant PIAA entered a Consent Order which was entered as an Order of this Honorable Court. *Exhibit D*.

136.   The above referenced Consent Order states in relevant part as follows:

Student Plaintiffs, along with any unnamed student members of the Religious Rights Foundation and any other student athletes who are enrolled in Pennsylvania faith-based schools, are hereby declared eligible under the United States Constitution and the PIAA Bylaws to participate in the PIAA governed interscholastic athletic activities sponsored by their respective home

school districts, if the PIAA interscholastic athletic activity is not sponsored by their respective Pennsylvania faith-based school. . . .

*Exhibit D, ¶1.*

137.   Student A.T. attends York Catholic High School (hereinafter referred to as "York Catholic") which is a parochial school located within York County, Commonwealth of Pennsylvania.

138.   York Catholic is a PIAA member school that sponsors various PIAA interscholastic athletic sports programs.

139.   According to Defendant PIAA's website, York Catholic sponsors the PIAA interscholastic athletic sports programs listed below:

| Boys | Class | Girls | Class |
|------|-------|-------|-------|
| Baseball | AA | Basketball | AA |
| Basketball | AA | Competitive Spirit | AA |
| Cross Country | A | Cross Country | A |
| Football | A | Golf | AA |
| Golf | AA | Lacrosse | AA |
| Lacrosse | AA | Soccer | A |
| Soccer | A | Softball | A |
| Tennis | AA | Tennis | AA |
| Volleyball | AA | Volleyball | A |

http://www.piaa.org/schools/directory/details.aspx?ID=12276

140.   As a PIAA member school, York Catholic does not sponsor boys or girls PIAA interscholastic swimming programs.

141.   Plaintiff Parents and Student A.T. reside with the YSSD and Student A.T. is eligible in all material respects to attend the YSSD and to participate in the

extracurricular and co-curricular activities generally available to the students enrolled in the YSSD, including, but not limited to, the YSSD sponsored PIAA girls swimming program.

142.  As a PIAA member school, the YSSD sponsors both PIAA boys and girls swimming programs.

143.  In violation of this Court's Consent Order, Defendant PIAA has failed and refused to permit Student A.T. to participate in the YSSD sponsored PIAA girls swimming program.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Honorable Court grant Plaintiffs relief as follows:

1. An Order finding Defendant PIAA's conduct to be in violation of Plaintiffs' rights as guaranteed by the Free Exercise Clause of the First Amendment to the United States Constitution.

2. An Order finding Defendant PIAA's conduct in violation of Plaintiffs' rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

3. An Order finding Defendant PIAA's conduct to be in violation of this Court's Consent Order.

4. An Order enjoining Defendant PIAA's discriminatory conduct.

5. An Order requiring Defendant PIAA to grant Student A.T. the right to participate in the YSSD's PIAA swimming program and any other YSSD sponsored PIAA athletic programs that are not sponsored by the York Catholic school.

6. An Order requiring Defendant PIAA to grant other similarly situated students the right to participate in PIAA governed interscholastic athletic sports programs at their respective home school districts if the same PIAA governed interscholastic athletic sports programs are not sponsored at the students' respective parochial schools.

7. An Order awarding counsel fees and costs to Plaintiffs and requiring Defendant PIAA to reimburse the same.

8. An Order granting any other relief deemed appropriate by the Court.

Respectfully submitted,

**DILLON McCANDLESS KING COULTER & GRAHAM LLP**

By: */s/ Thomas E. Breth*
    Thomas E. Breth, Esquire
    PA I.D. No. 66350
    tbreth@dmkcg.com
    Thomas W. King, III, Esquire
    PA I.D. No. 21580
    tking@dmkcg.com

    *Counsel for Plaintiffs*

    *Special Counsel to the Thomas More Society*