**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KIARA MOORE<br>1033 Bitternut Road<br>Columbia, SC 29209 | : <br> : <br> : <br> : | CIVIL ACTION <br><br> CASE NO.: |
| Plaintiff, | : <br> : | |
| v. | : <br> : | **JURY TRIAL DEMANDED** |
| AFFORDABLE HOUSING ADVOCATES<br>3 Rathton Road<br>York, PA 17403 | : <br> : <br> : <br> : | |
| Defendant. | : <br> : | |

**CIVIL ACTION COMPLAINT**

Plaintiff, Kiara Moore ("Plaintiff"), hereby complains as follows against Affordable Housing Advocates ("Defendant") and avers as follows:

**INTRODUCTION**

1.      Plaintiff initiates the instant action to redress violations by Defendant of Title VII of the Civil Rights Act of 1964, ("Title VII" – 42 U.S.C. §§ 2000d *et. seq.*) /the Pregnancy Discrimination Act ("PDA"), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq.*), the Pregnant Workers Fairness Act ("PWFA" – Pub. L. No. 117-328, 136 Stat. 4459 (2022)), and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims, because this civil action arises under a law of the United States.

---

[1] Plaintiff will move to amend her instant lawsuit to include mirroring claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny. This Court has supplemental jurisdiction over Plaintiff's future state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a citizen of the Middle District of Pennsylvania.

5. Plaintiff is proceeding herein under the Title VII/PDA and the ADA and has properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## **PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant is a nonprofit housing developer located at the above-captioned address.

9.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff was hired by Defendant on or about May 5, 2025 as a Community Manager.

12.     In this role, she was directly supervised by Chief Operating Officer, Richard Miller ("Miller"), and indirectly supervised by Chief Executive Officer, Joyce Santiago ("Santiago").

13.     At all times during her employment with Defendant, Plaintiff performed her job well, was not subjected to any corrective action, and was a dedicated employee.

14.     In or about June 2025, Plaintiff notified Miller and Santiago that she was pregnant with an expected due date in or about September 2025.

15.     Plaintiff also advised Miller that she intended to take maternity leave upon the birth of her child but that her leave would only be a few weeks if she was permitted to work remotely while recovering.

16.     Upon learning of Plaintiff's pregnancy, Miller immediately became concerned with the news and expressed reservation with her ability to remain employed with Defendant if she needed to take an extended leave of absence due to her pregnancy or birth of her child.

17.     In or about early-July 2025, Plaintiff was diagnosed with preeclampsia and pregnancy-based high blood pressure.

18. Following this news, on or about July 3, 2025, Plaintiff advised and provided medical documentation to Defendant's management of her disabilities with preeclampsia and high blood pressure and requested the ability to work remotely from home (a reasonable accommodation).

19. Initially, Miller approved Plaintiff's reasonable accommodation request, as she worked from home remotely from on or about July 3, 2025 through July 14, 2025, but on July 15, 2025, Santiago communicated to Plaintiff that she was not approved to continue working from home.

20. That same day, Santiago requested that Plaintiff complete a reasonable accommodation form and have her doctors provide additional documentation regarding her need to work from home.

21. The following day, on or about July 16, 2025, Plaintiff provided Defendant's management with her completed reasonable accommodation form.

22. On or about July 24, 2025, Plaintiff's doctors faxed additional medical documents to Defendant which Plaintiff confirmed on or about July 25, 2025.

23. Upon receipt of Plaintiff's additional medical documents, Santiago informed Plaintiff that it planned to terminate her employment because it was "not equipped for remote employment."

24. In response, Plaintiff met with Santiago, who again expressed concerns with Plaintiff's need for accommodations during her pregnancy and maternity leave after her pregnancy and told Plaintiff that she planned to discuss the "issue" with other members of Defendant's Human Resources ("HR") department.

4

25.	In actuality, Plaintiff learned that Defendant did not have any other members in the HR department and that Santiago herself was acting as the lone member of HR.

26.	Three days later, on or about July 28, 2025, and without properly engaging in the interactive process as mandated by the ADA, Santiago informed Plaintiff she was terminated because it could not accommodate her need to "remote work."

27.	Plaintiff questioned Santiago why Defendant could not accommodate her considering she previously worked remotely with the approval of Miller, to which Santiago said, "None of that matters, I'm the CEO, I make the decisions, and I am proceeding with termination."

28.	Defendant's reason for termination is completely pretextual as: (1) Plaintiff had previously worked remotely for over a week and half without issue after Miller approved it; (2) Defendant terminated Plaintiff only three days after providing additional medical documentation regarding her pregnancy, disabilities, and need for accommodations (including the ability to work remotely); and (3) Plaintiff had only requested to take a few weeks of maternity leave upon the birth of her child.

29.	Based on the foregoing, Plaintiff believes and therefore avers that she was terminated from her employment with Defendant in violation of Title VII/PDA and the ADA.

**COUNT I**
**Violations of Title VII/PDA**
**([1] Pregnancy Discrimination and [2] Retaliation)**

30.	The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31.	Plaintiff is qualified under the Title VII/PDA for protection because she was pregnant during her employment with and at the time of her termination from Defendant.

32.     Plaintiff was subjected to hostility because of her pregnancy through disparate treatment and Defendant's refusal to accommodate her need to work remotely to take a medical leave of absence.

33.     Plaintiff believes and avers that her pregnancy was a motivating or determinative factor in Defendant's decision to terminate her employment.

34.     Defendant's actions of subjecting Plaintiff to a discriminatory hostile work environment and terminating her constitute violations of Title VII/PDA.

## COUNT II
## Violations of the ADA
### ([1] Actual/Perceived/Record Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate)

35.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36.     Plaintiff had disabilities as defined by the ADA with pre-eclampsia and hypertension due to her pregnancy and her pregnancy being considered high-risk.

37.     Plaintiff was subjected to hostility because by Defendant because of her pregnancy-related disabilities and need for reasonable accommodations, including the need to work remotely and/or her need for a brief leave of absence due to the birth of her child.

38.     Defendant failed to accommodate Plaintiff's reasonable accommodation requests and terminated Plaintiff for requesting and/or utilizing her accommodation requests.

39.     Plaintiff believes and avers that her disabilities and/or requests for accommodations were a motivating or determinative factor in Defendant's decision to terminate her employment.

40.     These actions as aforesaid constitute unlawful discrimination and retaliation under the ADA.

6

**COUNT III**
**Violations of the PWFA**
**([Interference]; [2] Discrimination; [3] Retaliation)**

41. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42. Plaintiff is qualified under the PWFA for protection because she was pregnant during her employment with Defendant and had requested the reasonable accommodation of working remotely during her pregnancy and a brief medical leave of absence following the birth of her child (to recover from the same).

43. Plaintiff was subjected to retaliatory and harassing treatment after inquiring about her need for pregnancy-related accommodations.

44. Plaintiff was ultimately denied the ability to work remotely and terminated before she could utilize the aforesaid pregnancy-related accommodations.

45. Plaintiff believes and therefore avers that her rights under the PWFA were interfered with and she was retaliated against for requesting reasonable pregnancy-related accommodations.

46. These actions as aforesaid constitute unlawful violations of the PWFA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay

increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C.      Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:      _____
Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P) / 215-639-4970 (F)
akarpf@karpf-law.com

Dated: March 27, 2026

8