### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

GARY CHISHOLM
38 N 20th Street
Harrisburg, PA 17103    :  Civil Action No.: _____

           :

     Plaintiff,   :

           :

   v.      :  **JURY TRIAL DEMANDED**

           :

MONRO, INC.
3320 Walnut Street
Harrisburg, PA 17109    :

           :

     Defendant.  :

---

### COMPLAINT – CIVIL ACTION

Plaintiff, Gary Chisholm ("Plaintiff"), by and through his undersigned attorney, for his Complaint against Defendant, Monro, Inc. ("Defendant"), alleges as follows:

### INTRODUCTION

1. Plaintiff initiates this action contending that Defendant has violated Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.,* and Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981. Specifically, Plaintiff contends that Defendant discriminated against him because of his race (African-American) and/or Color (Black) and terminated his employment because of his race and/or color, and in

retaliation for his good-faith report(s) of race discrimination in connection thereto, in violation of Title VII and Section 1981, as applicable.

2.      Plaintiff further initiates this action contending that Defendant has violated Plaintiff's rights protected by Title VII.  Specifically, Plaintiff contends that Defendant discriminated against him because of his sex, subjected him to a hostile work environment because of his sex, and ultimately terminated his employment because of his sex and/or gender, and in retaliation for his good-faith report(s) of discrimination in connection thereto, in violation of Title VII.

3.      Additionally, Plaintiff initiates this action contending Defendant violated the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, by terminating Plaintiff because of his actual and/or perceived disabilities, because Defendant regarded him as being disabled, for his past record of impairment, and in retaliation for his request(s) to be reasonably accommodated in connection thereto, in violation of the ADA. [1]

4.      Plaintiff initiates this action contending Defendant violated Title VII by terminating Plaintiff from employment in retaliation for filing a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

---

[1] Plaintiff intends to amend his Complaint to include a count under the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. C.S.A. § 951, et seq., once his claims have been administratively exhausted with the Pennsylvania Human Relations Commission, which will occur in June 2026. Plaintiff's claims under the PHRA would mirror Plaintiff's Title VII and ADA claims.

5.     Finally, Plaintiff contends violations by Defendant of Pennsylvania public policy for asserting his rights under the Pennsylvania Workers' Compensation Act.

## PARTIES

6.     Plaintiff, Gary Chisholm, is a citizen of the United States and the Commonwealth of Pennsylvania, currently residing at 38 N 20th Street, Harrisburg, PA 17103.

7.     Defendant, Monro, Inc., is a for-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address and principal place of business located at 3320 Walnut Street, Harrisburg, PA 17109.

8.     At all times relevant hereto, Defendant acted or failed to act through its agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

9.     On or about January 6, 2025, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e). Plaintiff's EEOC charge was docketed as EEOC Charge No. 530-2025-02881.

Plaintiff's EEOC charge was filed within one-hundred and eighty (180) days of the unlawful employment practice.

10.     On or about June 16, 2025, Plaintiff filed an Amended Charge of Discrimination with the EEOC, which was dual-filed with the PHRC.

11.     By correspondence dated February 18, 2026, Plaintiff received a Notice of Rights to Sue from the EEOC regarding his Charge, advising him that he had ninety (90) days to file suit against Defendant.

12.     Plaintiff filed the instant action within the statutory time frame applicable to his claims.

13.     Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintaining this action.

14.     This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.,* Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

15.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

16.     The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as Defendant does business in this judicial district, and the unlawful practices of which Plaintiff is complaining were committed in this judicial district.

## FACTUAL BACKGROUND

17. Paragraphs 1 through 16 are hereby incorporated by reference as though the same were fully set forth at length herein.

18. Plaintiff began his employment with Defendant in or around April 2024, in the position of Mechanic.

19. At all times material hereto, Plaintiff performed his job well, received occasional praise, and no justifiable discipline.

20. During the course of his employment with Defendant, Plaintiff was routinely subjected to a discriminatory and hostile work environment on the basis of his race (African-American) and/or color (Black) by his Supervisor and/or Defendant's Acting Manager, Brandon Kreeger ("Mr. Kreeger"), a white man.

21. By way of example, from the start of Plaintiff's employment, Mr. Kreeger would refer to Plaintiff and other African-American and/or Black individuals, including customers, as "N----r."

22. Mr. Kreeger would refer to individuals of Mexican and Arab descent by slurs related to their ethnicity as well.

23. As early as Augst 9, 2024, Plaintiff reported Mr. Kreeger's use of the N-word to one of Defendant's managers, Ryan Eckenberger ("Mr. Eckenberger").

24. On or about August 20, 2024, while Plaintiff was working on a car, Mr. Kreeger told Plaintiff that he would need to "N----r - rig it."

25. Thereafter, Mr. Kreeger's casual use of racial slurs increased in frequency, to the point where Plaintiff was subjected to listening to Mr. Kreeger's use of racial slurs, including the N-word, on a daily basis.

26. Because Mr. Kreeger was Plaintiff's Supervisor and/or Acting Manager, Plaintiff was forced to endure Mr. Kreeger's racially motivated and discriminatory remarks as a condition of his employment with Defendant.

27. Moreover, Plaintiff was also subjected to a hostile work environment by Mr. Kreeger on the basis of his sex and/or gender in the form of sexual harassment.

28. For example, Mr. Kreeger would routinely subject Plaintiff to comments about Mr. Kreeger's genitalia and would then discuss other people's genitals.

29. Again, because Mr. Kreeger was Plaintiff's Supervisor and/or Acting Manager, Plaintiff was forced to endure these comments as a condition of his employment with Defendant.

30. For example, on or about September 20, 2024, when Plaintiff arrived to work early, at approximately 7:45 AM, Mr. Kreeger was outside by his car.

31. However, when Mr. Kreeger saw Plaintiff, Mr. Kreeger ran into the store.

32.    Upon entering the store, Plaintiff noticed the bathroom door next to Mr. Kreeger's desk was closed.

33.    Plaintiff continued walking through the store, back towards the employee breakroom, which is where the employees change into their work uniforms.

34.    When Plaintiff got there, Plaintiff immediately noticed the breakroom door was open and the door to the bathroom the employees use had been propped open.

35.    Plaintiff then saw Mr. Kreeger, who was naked from the waist down, just sitting there, as if he had been waiting for Plaintiff.

36.    Mr. Kreeger had seen Plaintiff just minutes before and yet had propped open the bathroom door in the employee breakroom bathroom so that Plaintiff would find him naked.

37.    Immediately thereafter, Plaintiff reported Mr. Kreeger to Defendant's Human Resources Department on or about September 20, 2024, for both the ongoing sexual harassment and the persistent racial harassment.

38.    Prior thereto, Plaintiff reported Mr. Kreeger's sexually harassing and racially motivated behavior to his Supervisor and/or Defendant's District Manager, Brad Buckman ("Mr. Buckman"), who told Plaintiff to contact Defendant's Human Resources.

39. Despite this, on or about September 27, 2024, Mr. Buckman promoted Mr. Kreeger to Manager.

40. Then, on or about October 10, 2024, Mr. Kreeger was terminated from employment with Defendant, only citing the usage of a racial slur on one occasion.

41. At all times material hereto, Defendant was sufficiently placed on notice of multiple instances of Mr. Kreeger engaging in racially-motivated and sexually harassing behavior throughout Plaintiff's employment.

42. Prior to September 20, 2024, Plaintiff would text message Mr. Buckman to make complaints about Mr. Kreeger, only to be ignored.

43. Upon information and belief, Mr. Buckman was disciplined due to Plaintiff's complaints regarding Mr. Kreeger, and for failing to take any remedial and/or corrective action in response thereto.

44. Subsequent to Mr. Kreeger's termination, Mr. Buckman began retaliating against Plaintiff for his good-faith reports of being subjected to incessant racial discrimination and sexually harassing conduct.

45. By way of example, Mr. Buckman told Defendant's new Manager, Angel Vaughn ("Mr. Vaughn"), that work should not be given to Plaintiff because Plaintiff "is the problem."

46.   Furthermore, Plaintiff was informed by Mr. Vaughn that Mr. Buckman told Mr. Vaughn to report that Plaintiff was completing tasks incorrectly, in order for Plaintiff to receive discipline.

47.   Moreover, Mr. Buckman changed Plaintiff's flex schedule to an inflexible schedule, which caused Plaintiff to miss time with his son.

48.   Notably, prior to Plaintiff's complaints of Mr. Kreeger, Mr. Buckman was aware of Plaintiff's need for a flex schedule in order for Plaintiff to be able to see his son.

49.   On or around January 6, 2025, Plaintiff filed a Charge of Discrimination with the EEOC, in which he averred that Defendant subjected him to differential treatment on the basis of his race and/or color, and that Defendant retaliated against him for his good-faith reports of discrimination in connection thereto, in violation of Title VII.

50.   Plaintiff's Charge of Discrimination also averred that Defendant subjected Plaintiff to differential treatment on the basis of his sex and/or gender, and that Defendant retaliated against him for his good-faith complaints of unlawful, ongoing, severe and/or pervasive sexual harassment he experienced while working for Defendant, in violation of Title VII.

51.     On or about January 18, 2025, when Plaintiff arrived to work, Plaintiff noticed trash on the floor in the back of Defendant's shop area where an overhead light did not work.

52.     Upon picking up the trash, Plaintiff slipped on spilled gear oil that had been left on the shop floor, injuring his back and neck, and the back of his head.

53.     Furthermore, Plaintiff's injuries quickly began to worsen, including but not limited to, double vision, dizziness, head and neck pain, and difficulty moving.

54.     As a result, Plaintiff filed an incident report with Defendant to report his work-related injury and request the opening of a workers' compensation claim, and required the reasonable accommodation of medical leave in order to seek treatment under workers' compensation.

55.     Plaintiff initially returned back to work on or about January 27, 2025, in a limited capacity before Plaintiff was again taken out of work by his workers' compensation doctor, due to an exacerbation to his injuries.

56.     Plaintiff was first given a return-to-work date of May 12, 2025, and informed Defendant of same.

57.     However, when Plaintiff reported to his shift, Plaintiff's new manager, Alan Thomas ("Mr. Thomas"), refused to let Plaintiff work, claiming Plaintiff was not on the schedule.

58.    Mr. Buckman called Plaintiff that same day and asked where he was and Plaintiff explained to Mr. Buckman that Mr. Thomas did not let him return to work.

59.    Mr. Buckman said he did not care and that Plaintiff needed to report anyway, despite Mr. Thomas refusing to let Plaintiff work.

60.    Plaintiff then spoke with Defendant's Workers' Compensation Analyst - Risk & Safety Management, Sean Gorman ("Mr. Gorman"), who wanted to know why Plaintiff had not returned to work.

61.    Plaintiff explained everything that had happened to him with Mr. Thomas and Mr. Gorman authorized Plaintiff to return to work on May 30, 2025.

62.    On or about May 29, 2025, the day prior to Plaintif's return back to work, Plaintiff was contacted by Mr. Buckman and advised that Plaintiff's position was being eliminated and that Plaintiff was "laid-off," due to Defendant's corporate closing some of its locations.

63.    Notably, a few days prior to this call, Plaintiff received a letter from Defendant regarding his medical leave that stated Plaintiff was a valued and needed employee.

64.    Plaintiff believes, and therefore avers, that Defendant discriminated and/or retaliated against him for his injuries and need for a reasonable

accommodation in connection thereto, and for the fact he opened a workers' compensation claim.

65.    In addition to the aforementioned, the close temporal proximity between Plaintiff filing of a Charge of Discrimination with the EEOC and his termination from employment, is unusually suggestive.

66.    As such, it is clear that Mr. Buckman, and Defendant by Proxy, was using Plaintiff's filing of a Charge of Discrimination as a negative contributing factor for continued employment with Defendant.

67.    In light of the foregoing, it is believed, and therefore averred, that Plaintiff was subjected to differential treatment and a hostile work environment and unlawfully terminated from employment on the basis of his race and/or color, and in retaliation for my good-faith reports of race discrimination in connection thereto, in violation of Title VII and Section 1981, as applicable.

68.    Additionally, it is further believed, and therefore averred, that Plaintiff was subjected to differential treatment and a hostile work environment, and unlawfully terminated on the basis of his sex and/or gender, and in retaliation for his good-faith reports of unlawful, ongoing, severe, and/or pervasive sexual harassment to which he was subjected to by Defendant in connection thereto, in violation of Title VII.

69.    It is believed, and therefore averred, that Plaintiff was subjected to differential treatment and unlawfully terminated from employment on the basis of his disabilities, those which Defendant regarded him as having, for his past record of impairment, and in retaliation for his request(s) to be reasonably accommodated in connection thereto, in violation of the ADA.

70.    Moreover, it is believed, and therefore averred, that Defendant's decision to terminate Plaintiff's employment was unlawfully motived by Plaintiff's filing of a Charge of Discrimination with the EEOC, in violation of Title VII.

71.    As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings, earnings potential, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

## COUNT I
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C § 2000e, *et seq.*
### DISCRIMINATION, RETALIATION, AND HOSTILE WORK ENVIRONMENT
### -RACE AND/OR COLOR-

72.    Paragraphs 1 through 71 are hereby incorporated by reference as though the same were fully set forth at length herein.

73.    Defendant employed at least fifteen (15) employees at its various locations at all times relevant hereto.

74. Plaintiff is African American and as such is a member of a class protected under Title VII from unlawful discrimination or harassment because of race and/or color.

75. Defendant subjected Plaintiff to or otherwise permitted the existence of a hostile work environment because of his race and/or color, in violation of Title VII.

76. Plaintiff made good-faith complaints of discrimination on the basis of race and/or color.

77. Plaintiff engaged in protected activity under Title VII by submitting internal complaints of race and/or color discrimination.

78. Defendant failed to take appropriate remedial action to address Plaintiff's complaints.

79. Plaintiff engaged in protected activity under Title VII by filing a Charge of Discrimination with the EEOC on the basis of race and/or color.

80. Defendant retaliated against Plaintiff for engaging in said protected activity and ultimately terminated his employment because of the same, in violation of Title VII.

81. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, and earnings

potential, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.    Back wages and front pay, in an amount to be determined at trial;

B.    Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, negligent, wanton, and/or malicious conduct;

C.    Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

D.    Pre-judgment interest in an appropriate amount; and

E.    Such other and further relief as is just and equitable under the circumstances.

F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT II
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII")
## 42 U.S.C. §2000e, *et seq*.
## DISCRIMINATION, SEXUAL HARASSMENT, HOSTILE WORK ENVIRONMENT, RETALIATION
## -SEX AND/OR GENDER-

82.     Paragraphs 1 through 81 are hereby incorporated by reference as though the same were fully set forth at length herein.

83.     At all times relevant hereto, Plaintiff was an employee of Defendant.

84.     At all times relevant hereto, Defendant employed at least fifteen (15) employees at its various locations.

85.     Plaintiff is a man and as such is a member of a class protected under Title VII from unlawful discrimination because of sex.

86.     Defendant knew or should have known of the harassment Plaintiff experienced because Plaintiff reported it on multiple occasions, but failed to act to prevent and/or remedy the harassment in a timely fashion.

87.     The aforementioned sexual harassment has adversely affected Plaintiff's psychological wellbeing and unreasonably interfered with Plaintiff's work performance.

88.     Defendant subjected Plaintiff to a hostile work environment because of sex in violation of Title VII.

89.     Plaintiff engaged in protected activity under Title VII by making good-faith complaints of discrimination on the basis of sex and made good-faith

complaints on the hostile work environment he was experiencing at the hands of Mr. Kreeger.

90.    Defendant retaliated against Plaintiff for engaging in protected activity by implicitly sanctioning the inappropriate behavior done to Plaintiff, with complete disregard for Plaintiff's well-being.

91.    Plaintiff engaged in protected activity under Title VII by filing a Charge of Discrimination with the EEOC on the basis of gender discrimination and harassment.

92.    Defendant retaliated against Plaintiff for engaging in said protected activity when it ultimately terminated his employment because of same, in violation of Title VII.

93.    As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, and earnings potential, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.      Back wages and front pay, in an amount to be determined at trial;

B.      Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, negligent, wanton, and/or malicious conduct;

C.      Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

D.      Pre-judgment interest in an appropriate amount; and

E.      Such other and further relief as is just and equitable under the circumstances.

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## COUNT III
## 42 U.S.C. § 1981
## DISCRIMINATION, RETALIATION, AND HOSTILE WORK ENVIRONMENT

94.     Paragraphs 1 through 93 are hereby incorporated by reference as though the same were fully set forth at length herein.

95.     Plaintiff avers that Defendant discriminated against him with respect to the terms and conditions of his employment on account of his race and/or color,

subjected Plaintiff to a hostile work environment because of his race and/or color, and retaliated against Plaintiff for his good-faith complaints of race and/or color discrimination. Plaintiff has suffered damages and seeks relief for these willful adverse actions.

96.    These actions as aforesaid constitute violations of 42 U.S.C. § 1981.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.    Back wages and front pay, in an amount to be determined at trial;

B.    Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, negligent, wanton, and/or malicious conduct;

C.    Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

D.    Pre-judgment interest in an appropriate amount; and

E.    Such other and further relief as is just and equitable under the circumstances.

F.     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

**COUNT IV**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101, *et seq*.**
**<u>DISCRIMINATION, RETALIATION, AND FAILURE TO</u>**
**<u>ACCOMMODATE</u>**

97.    Paragraphs 1 through 96 are hereby incorporated by reference as though the same were fully set forth at length herein.

98.    At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.

99.    At all times relevant hereto, Defendant employed at least fifteen (15) employees.

100.   Plaintiff is a qualified individual with one or more disabilities within the meaning of the ADA.

101.   Defendant was aware of Plaintiff's disabilities, record of impairment, and/or regarded Plaintiff as being disabled within the meaning of the ADA.

102.   Plaintiff engaged in protected activity by requesting a reasonable accommodation in connection with his disabilities.

103.   Defendant retaliated against Plaintiff for engaging in said protected activity and ultimately terminated his employment because of the same, in violation of the ADA.

104.   By reasons of the foregoing, Defendant, through its agents, officers, servants, and/or employees, has violated the ADA by failing to engage in the interactive process to determine and consider reasonable accommodations for Plaintiff, by failing to provide reasonable accommodations to Plaintiff, and by terminating Plaintiff's employment because of his actual and/or perceived disabilities, because Defendant regarded him as being disabled, for his past record of impairment, and/or in retaliation for his request(s) for reasonable accommodations in connection to his disabilities.

105.   As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of employment, earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress, damage to reputation, and humiliation.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.    Back wages, front pay, and bonuses in an amount to be determined at trial;

B.    Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

C.    Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

D.    Pre-judgment interest in an appropriate amount;

E.    Such other and further relief as is just and equitable under the circumstances; and

F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

**COUNT V**
**PENNSYLVANIA PUBLIC POLICY**
**PENNSYLVANIA WORKERS' COMPENSATION ACT**
**DISCRIMINATION AND RETALIATION**

106.    Paragraphs 1 through 105 are hereby incorporated by reference as though the same were fully set forth at length herein.

107. On or about  January 18, 2025, during the course and scope of his employment, Plaintiff suffered a work-related injury.

108. Plaintiff's work-related injury caused Plaintiff to require medical care and treatment.

109. Plaintiff made a request to Defendant to open a workers' compensation claim for his work-related injury.

110. Defendant unlawfully violated the public policy exception to Pennsylvania's common law tradition of at-will employment by unlawfully terminating Plaintiff's employment in retaliation for Plaintiff's decision to avail himself of the benefits of the Pennsylvania Workers' Compensation Act.

111. Plaintiff's termination was in violation of public policy pursuant to Pennsylvania common law.

112. As a result of Defendant's deliberate, unlawful, wanton, and malicious actions as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings, and earnings potential.

**WHEREFORE,** as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A.    Back wages, front pay, and bonuses in an amount to be determined at trial;

B.    Compensatory damages and lost benefits;

C.    Punitive damages for Defendant's unlawful practices which were committed with malicious and reckless indifference to Plaintiff's rights;

D.    Pre-judgment interest in an appropriate amount; and

E.    Such other and further relief as is just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issue so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By:    */s/ Mary Kramer.*
         Mary Kramer, Esq.
         Eight Penn Center, Suite 2000
         1628 John F. Kennedy Blvd.
         Philadelphia, PA 19103
         TEL: 267-273-1054
         FAX: 215-525-0210
         mkramer@phillyemploymentlawyer.com
         *Attorneys for Plaintiff*

Date: April 8, 2026

## <u>DEMAND TO PRESERVE EVIDENCE</u>

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to his potential claims and his claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.