**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION**

| | |
|---|---|
| DERYA ZANGANA, *individually and on behalf of all others similarly situated,* | **Case No.** |
| *Plaintiff,* | |
| vs. | **CLASS ACTION** |
| THE BEEF JERKY OUTLET FRANCHISE, INC. d/b/a BEEF JERKY EXPERIENCE, | **Jury Trial Demanded** |
| *Defendant.* | |

_____

**CLASS ACTION COMPLAINT**

1.      Plaintiff, Derya Zangana ("Plaintiff"), brings this action against Defendant, The Beef Jerky Outlet Franchise, Inc. d/b/a Beef Jerky Experience ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

**NATURE OF THE ACTION**

2.      This is a class action under the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 *et seq*.,

3.      Defendant is a retail food chain company that provides beef jerky and snack products to consumers, across the United States.

4.      To promote its goods and services, Defendant engages in aggressive SMS marketing to consumers with little or no regard for consumers' rights under the TCPA- even after customers opt out from Defendant's telephonic marketing.

5.      Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of numerous individuals.  Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6.      Subject matter jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, establishing a federal question.

7.      Subject matter jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff seeks to certify classes, which will include at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, the elements for diversity jurisdiction under CAFA are present.

8.     Defendant maintains places of business within the Commonwealth of Pennsylvania and within this District, including in Hershey, Pennsylvania.

9.     Plaintiff received most or all of the text messages at issue in this Complaint while present in Pennsylvania. Further, after Plaintiff instructed Defendant to stop its telemarketing text messages, on multiple occasions, yet she continued to receive irritating and unwanted text messages while present in Pennsylvania, and specifically within this District.

10.     Those unwanted text messages from Defendant specifically encouraged Plaintiff to purchase beef jerky from Defendant's Hershey location, reflecting purposeful availment to Pennsylvania, and to this District.

11.     Accordingly, personal jurisdiction exists and venue is proper, pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

12.     Plaintiff is a natural person who, at all times relevant to this action, was a resident of Dauphin County, Pennsylvania.

13.     Plaintiff is, and at all times relevant hereto was, the sole user of the cell phone number ending in 7907 (the "7907 Number") that received Defendant's marketing messages.

3

14. Defendant is a Tennessee corporation whose principal place of business is at 2009 Breakers Point, Knoxville, Tennessee 37922, and which operates a store in Hershey, Pennsylvania.

15. Defendant directs, markets, and provides its business activities throughout United States and within the Commonwealth of Pennsylvania.

16. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

17. Plaintiff is the sole user of the 7907 Number.

18. Plaintiff's 7907 Number is her residential number which she uses primarily for personal and residential purposes.

19. Plaintiff registered her 7907 with the national do-not-call registry on January 30, 2021, and has been registered at all times relevant to this action.

20. Beginning at least on November 23, 2023 (as shown below), Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff's 7907 Number, from Defendant's 73317 number.

21. Each text message was sent to encourage the sale of Defendant's beef jerky snacks and therefore, were telephone solicitations.

22.    A true and correct image of Defendant's initial marketing messages is copied below:



23.    On or about December 15, 2023, Plaintiff clearly and unequivocally instructed Defendant to "stop" texting her and opted out of any marketing messages

in the manner Defendant prescribed to to opt-out of any further text message communications with Defendant, as shown below:



24.    Accordingly, to the extent Defendant ever had Plaintiff's consent to send marketing messages, that sent was revoked on December 15, 2023.

25.    Despite Plaintiff's clear written request, Defendant continued to bombard Plaintiff with more unwanted telemarketing text messages. Approximately one month later, on January 17, 2024, Defendant resumed sending text messages to Plaintiff. Defendant sent additional messages on February 4, 2024, March 15, 2024, and March 25, 2024, (as shown above).

26.    On or about April 27, 2024, Plaintiff again reiterated that she revoked any consent it once had to send her marketing messages and sent a second opt-out request in an attempt to opt-out of any further text message communications with Defendant, as shown below:



27. Defendant acknowledged the cease-and-desist instruction and Defendant sent an automated confirmation message stating: "You have successfully been unsubscribed. You will not receive any more messages from this number." Despite this automated promise to cease all communications, Defendant willfully disregarded both Plaintiff's opt-out request and its own confirmation, sending additional text messages to Plaintiff on March 14, 2025, March 19, 2025, and May 2, 2025, (as shown above).

28. Defendant has the capability of immediately complying with Plaintiff's opt-out requests.

29. As demonstrated by the above screenshots, Defendant does not honor reasonable consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's telephone solicitations by telling Defendant not to contact her anymore, but Defendant continued to text message Plaintiff intentionally disregarding Plaintiff's instructions in order to solicit the sale of its services to Plaintiff.

30. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant.

31.     Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list. In fact, Plaintiff, through counsel, made a request to Defendant's counsel for a copy of Defendant's do-not-call list policy, but received no response from Defendant.

32.     Defendant failed to place Plaintiff on an internal do-not-call list after Plaintiff's opt-out revocation.

33.     Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list.

34.     Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant has not implemented internal do-not-call policies.

35.     Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made an opt-out request and that request was never processed; it was ignored by Defendant and its employees and Defendant continued to send text messages for over three months.

36.     These facts strongly suggest that Defendant fails to ensure that requests by Plaintiff and the Class members to opt-out of future communications are honored within a reasonable time.

37. Indeed Plaintiff's and the class members' opt-out requests were not honored within a reasonable time from when the opt-out request was made.

38. Defendant's text messages were transmitted to Plaintiff's residential cellular telephone, and within the time frame relevant to this action.

39. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., promoting Defendant's jerky sales.

40. The information contained in the text message advertises Defendant's various discounts and promotions, which Defendant sends to promote its business.

41. Upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list pursuant to 47 C.F.R. § 64.1200(d)(1).

42. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarketing in the existence and the use of any internal do not call list pursuant to 47 C.F.R. § 64.1200(d)(2).

43. Defendant sent the subject texts within this judicial district and, therefore, Defendant's violations of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

44. Upon information and belief, Plaintiff never provided Defendant with her prior express written consent to be contacted for telemarketing purposes.

10

45.    However, to the extent that Defendant ever had any consent to contact Plaintiff for marketing purposes that consent was expressly revoked on or around December 15, 2023, when Plaintiff first revoked any possible consent which could have existed.

46.    Moreover, to the extent any established business relationship existed, that relationship was also terminated on or about December 15, 2023.

47.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

48.    The text messages originated from at least telephone number 73317, a number which upon information and belief is owned and operated by Defendant or on behalf of Defendant.

49.    Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendant also has access to text message logs showing Plaintiff's and the Class members' inbound opt-out requests.

50.     Defendant's unwanted telemarketing text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life.

51.     Defendant's unwanted telemarketing text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that she has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages. Each time, Plaintiff had to stop what she was doing to either retrieve her phone and/or look down at the phone to review the message.

## CLASS ALLEGATIONS

### PROPOSED CLASS

52.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

53.     Plaintiff brings this case on behalf of the following "Classes" defined as follows:

> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of promoting Defendant's products and services; and (5) for**

12

**whom Defendant (a) lacks any alleged express written consent and/or (b) Defendant's records reflect the person instructed Defendant to stop sending text messages.**

**National Internal Do Not Call Class: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf, to said person's telephone number *after* making a request to Defendant to not receive future text messages.**

54.    Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in each Class, but believes the Class members number in the several thousands, if not more.

55.    Also excluded from the Class are persons who, after making a request to Defendant to not receive future text messages, subsequently affirmatively opted-in to receive text messages from Defendant.

### NUMEROSITY

56.    Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to thousands of consumers listed throughout the United States without their prior express written consent and/or after they had requested to opt-out. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

13

57.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

## COMMON QUESTIONS OF LAW AND FACT

58.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

[1] Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;

[2] Whether Defendant violated 47 C.F.R. § 64.1200(c)

[3] Whether Defendant violated 47 C.F.R. § 64.1200(d);

[4] Whether Defendant adhered to requests by class members to stop sending text messages to their telephone numbers;

[5] Whether Defendant keeps records of text recipients who revoked consent to receive texts;

[6] Whether Defendant has any written policies for maintaining an internal do not call list

[7] Whether Defendant's conduct was knowing and willful; and

14

[8] Whether Defendant is liable for damages, and the amount of such damages.

59.    The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits telephonic sales calls to consumers after they had requested to be opted out and at times prohibited by law, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

60.    Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

61.    Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

62.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars,

15

the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

63.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. 64.1200(c)
### (On Behalf of Plaintiff and the Do Not Call Registry Class)

64.    Plaintiff repeats and realleges the paragraphs 1 through 59 of this Complaint and incorporates them by reference herein.

65.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on

the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

66. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[1]

67. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

68. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

69. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

70.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to    recover their actual damages or statutory damages of up to $500 for each such violation, whichever is greater, and up to $1,500 for each such violation if proven to be knowing or willful, pursuant to 47 U.S.C. § 227(c) and for such violations of 47 C.F.R. § 64.1200.

71.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**COUNT II**
**VIOLATION OF 47 U.S.C. § 227(c)(2) and 47 C.F.R. § 64.1200(d)**
**(Individually and on behalf of the National Internal Do Not Call Class)**

72.    Plaintiff re-alleges and incorporates paragraphs 1 through 59 as if fully set forth herein.

73.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

74.     Under 47 C.F.R. § 64.1200(d), "n    o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(3), (6).

19

75. Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

47 C.F.R. § 64.1200(e).

76. Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive calls from Defendant.

77. Defendant failed to honor Plaintiff and the Internal Do Not Call Class members' requests.

78. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

79. Because Plaintiff and the Internal Do Not Call Class members received more than one text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

80.    As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

81.    As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

82.    Plaintiff and the Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

83.    Plaintiff and the National Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

21

b) An award of statutory damages for Plaintiff and each member of the Classes;

c) An order declaring that Defendant's actions, set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Classes;

e) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

Dated: April 7, 2026

Respectfully Submitted,

**KIMMEL & SILVERMAN, P.C.**

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq. (PA 311908)
30 East Butler Avenue

22

23

Ambler, PA 19002
Telephone: (267) 468-5374
Fax: (877) 788-2864
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
*Counsel for Plaintiff and the Classes.*