**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**
**WILLIAMSBURG DIVISION**

| | |
|---|---|
| Girishwar Srinivasan, | Case No.: |
| *Plaintiff,* | |
| *vs.* | |
| United States Department Of Homeland Security, | **COMPLAINT** |
| *Defendant.* | |

## INTRODUCTION

The *Accardi* doctrine teaches a simple rule: the government is required to follow its own rules. Here, the Department of Homeland Security ("DHS") has failed to apply this legal requirement. Compliance with the agency's own rules is not discretionary.

Plaintiff filed his I-485, Application to Register Permanent Residence or Adjust Status, on October 31, 2024. At the time of filing DHS had implemented and was complying with its policy articulated in *Age Calculation under Child Status Protection Act* (February 14, 2023). Applying this policy, Plaintiff was under the age of 21 at the time of filing for the purposes of the CSPA.

DHS retroactively changed its policy and applied a new, more restrictive policy, to already filed applications. Thus, DHS refused to apply the law in effect

1

at the time of filing when denied the I-485 on the sole grounds that Plaintiff had aged out. In so doing, DHS violated the *Accardi* doctrine.

## **PARTIES**

1.  Plaintiff Girishwar Srinivasan is an Indian national whose father came to the U.S. on a nonimmigrant H-1B visa. He is currently in the U.S. on an F-1 student visa and resides in State College, Pennsylvania.

2.  Defendant United States Department of Homeland Security ("DHS") is a federal agency whose headquarters are at St. Elizabeths West Campus, Washington, D.C. DHS is responsible for adjudicating adjustment of status applications.

## **JURISDICTION**

3.  This Court also has jurisdiction over this action as a federal question under 28 U.S.C. § 1331.

4.  This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq.

5.  Venue is proper under 28 U.S.C. § 1391(e).

6.  Although 8 U.S.C. § 1252(a)(2)(B)(ii) strips jurisdiction over the agency's factual determinations in discretionary decisions, courts still retain jurisdiction to decide matters of law. *See Patel v. Garland*, 596 U.S. 328, 142 S. Ct. 1614, 212 L. Ed. 2d 685 (2022).

7.    When interpreting similar jurisdiction-stripping provisions of the immigration statutory scheme, the Supreme Court has long distinguished between the "direct review of individual denials" of applications and "general collateral challenges to [unlawful] practices and policies." *Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1002 (9th Cir. 2024) quoting *McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 492, 111 S. Ct. 888, 112 L. Ed. 2d 1005 (1991); *see also Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 56, 113 S. Ct. 2485, 125 L. Ed. 2d 38 (1993).

## LAW

### A. The Immigration and Nationality Act

8.    The Immigration and Nationality Act creates two classes of visas: temporary nonimmigrant and permanent immigrant.

9.    Persons on a nonimmigrant visa may adjust status to an immigrant visa.

10.    Immigrant visa issuance is a two-step process. First, one must be the beneficiary of a visa petition approved by DHS. Second, the Department of State awards a visa if it is immediately available according to the final action date chart in its visa bulletin.

11.    The date the petition is filed establishes the beneficiary's place in line ("priority date") for a visa.

12.     Dependent children, of immigrant visa beneficiaries who are under the age of twenty-one (21) are eligible to adjust status.

13.     Due to visa backlogs for Indian Nationals the time between an approved immigrant visa petition and when the visa is immediately available can be longer than a decade.

14.     If a dependent child turns 21 during this time the Child Status Protection Act ("CSPA") creates their age for the purposes of filing a Form I-485, Application to Register Permanent Residence or Adjust Status.

15.     Each month DOS publishes its Visa Bulletin ("VB") which list all immigrant visa categories and their availability based on priority dates.

16.     The VB is separated into two charts: Final Action Date ("FAD") and Date for Filing ("DFF").

17.     The DFF notifies beneficiaries when they may assemble and submit required documents to United States Citizenship and Immigration Services ("USCIS") a department of DHS.

18.     The FAD chart informs when a visa is authorized for issuance.

19.     The dates for the DFF are typically earlier than the FAD dates.

20.     Under previous CSPA guidance, published in May 2018, USCIS only considered a visa available for CSPA age calculation based on the Final Action Dates chart.

21.    After the publication of the May 2018 guidance, the same applicant for adjustment of status could have a visa "immediately available" for purposes of filing the application but not have a visa "become available" for purposes of CSPA calculation. Applicants who filed based on the Dates for Filing chart would have to pay the fee and file the application for adjustment of status without knowing whether the CSPA would benefit them.

22.    To address this issue, USCIS updated its policies in 2023, to consider a visa available to calculate CSPA age at the same time USCIS considers a visa immediately available for accepting and processing the adjustment of status application. This resolved apparent contradiction between different dates in the visa bulletin and the statutory text regarding when a visa is "available."

23.    In its February 14, 2023, Policy Alert, DHS changed its policy from the May 2018 guidance to allow I-485 filing using the DFF. In that policy alert it explained individuals who had aged out previously using the FAD would be eligible to adjust status under the new policy.

24.    The policy alert clarified that the one-year period during which a noncitizen must seek to acquire lawful permanent residence for CSPA starts when a visa becomes available for accepting and processing a potential adjustment of status application. Failures to file attributed to the prior policy would be considered extraordinary circumstances that would allow filing under the new rules.

25.    The agency reiterated this policy in August 2023, stating that they "may excuse an applicant's failure to meet the sought to acquire requirement if they did not apply to adjust their status because they could not calculate their CSPA age under the prior policy or their CSPA age would have been calculated as over 21, but they are now eligible for CSPA age-out protection under the new policy" and again in September 2024.

26.    In August 2025, after Plaintiff filed his I-485, the agency reverted back to its March 2018 policy.

27.    The agency's regulation at 8 C.F.R. § 103.2(b)(1) explains that an applicant must be eligible for a "requested benefit at the time of filing."

28.    Pursuant to 8 C.F.R. § 103.5(a)(1)(i):

> Any motion to reopen a proceeding before the Service filed by an applicant or petitioner, must be filed *within 30 days of the decision that the motion seeks to reopen*, except that failure to file before this period expires, may be excused in the discretion of the Service where it is demonstrated that the delay was reasonable and was beyond the control of the applicant or petitioner.

> Emphasis added.

**B. The Administrative Procedure Act and Declaratory Judgment Act**

29.    Federal agencies are required to follow their published rules. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 262 (1954).

30.     Agencies "cannot change a well-established course of action without supplying notice of and a reasoned explanation for its policy departure." *Logic Tech. Dev. LLC v. United States FDA*, 84 F.4th 537, 565 (3rd Cir 2023).

31.     Failure to acknowledge a change in policy is sufficient to vacate an agency's action. *Id.* at 561.

32.     Agencies must also take into account reliance interests created by adherence to a prior policy. *Id.* at 549, *citing Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 221, 136 S. Ct. 2117, 195 L. Ed. 2d 382 (2016)*

33.     The Declaratory Judgment Act allows courts to evaluate legal disputes and enter decisions explaining what the parties' rights and responsibilities are. 28 U.S.C. 2201.

34.     The Administrative Procedure Act allows courts to vacate agency actions that are not in accordance with law. 5 U.S.C. § 706(2).

## FACTS

35.     Plaintiff Girishwar was born on January 18, 2000.

36.     Plaintiff was first issued an H-4 dependent visa on December 31, 2007. He entered the U.S. with his parents shortly after.

37.     From the time of his first admission, he has continually resided in the U.S., attended elementary, secondary, and college in the U.S.

38.    Plaintiff has been raised in the U.S., and this is the only country he currently knows and identifies with. He is culturally, socially, and mentally American, with little cognizance of Indian culture, languages, or society.

39.    On December 11, 2012, a labor certification application was filed with the Department of Labor to begin his father's employment based third preference visa petition process. This established the priority date.

40.    An immigrant visa petition, supported by the labor certification, was filed for a third preference EB3 visa on July 3, 2013.

41.    This petition was approved on July 10, 2013.

42.    In the October 2020 visa bulletin, the dates for filing chart showed Indian EB3 visas with priority dates on or before January 1, 2015, were current. This was the first time the dates for filing chart showed Plaintiff's visa was current. At this time, he was under 21 years of age.

43.    This allowed Plaintiff's parents to file their Forms I-485.

44.    When applying the February 2023 policy retroactively, the Plaintiff would have been a child (under 21 years of age) at the time of his parents' filing and this "Child Status" would have been protected for the duration of the adjustment process under CSPA.

45.    When applying the May 2018 policy, which was in effect at the time, even though Plaintiff's was a child (under 21 years of age) at the time of his parents'

filing and but this "Child Status" was NOT protected under CSPA since the FAD chart was not current.

46.    Had the February 2023 policy been in effect at the time in October 2020, the Plaintiff's "Child Status" would have been protected, and he would have filed his Form I-485 along with his parents.

47.    In the July 2021 visa bulletin, the FAD showed EB3 petitions with a priority date earlier than January 1, 2013, were current and visas were immediately available.

48.    At the time the July 2021 visa bulletin was published, Plaintiff was over 21 years and 164 days old. After deducting the 7 days the EB3 petition was pending, Plaintiff's CSPA age under the March 2018 policy would have been 21 years and 157 days.

49.    One hundred and twenty-three days (123) and four visa bulletins later the charts retrogressed and the FAD for EB3 visas moved backwards to January 15, 2012.

50.    On February 14, 2023, the agency changed its policy and stated the date for filing chart controlled for CSPA filings.  This policy was made retroactive with provisions for late filings of I-485s when the applicant had already aged out of eligibility under the 2018 policy but would have been eligible using the terms of the new rule.

51.     Upon learning of the policy change Plaintiff consulted counsel about filing his I-485. His counsel explained that even though the dates had once been current, they had retrogressed, and Plaintiff should wait until they are once more current. Counsel reasoned that the application would be rejected by USCIS because the dates were not current.

52.     In the October 2024 visa bulletin, the dates for filing chart showed Indian EB3 visas with priority dates on or before June 8, 2013. This was the first time since the February 14, 2023, policy change that the date for filing was current for Plaintiff's visa.

53.     Plaintiff filed his Form I-485 on October 31, 2024, in the first month the dates for filing chart showed his visa was current.

54.     The agency denied the application on April 14, 2025.

55.     In denying the application the agency used the July 2021 visa bulletin's FAD chart to calculate his CSPA age, applying the more restrictive but outdated May 2018 policy.

56.     The agency decision allowed 30 days for Plaintiff to file a motion to reopen.

57.     On May 12, 2025, Plaintiff filed the first of three motions to reconsider.

58.     The agency's June 10, 2025 decision on a motion to reopen ("MTR") makes the legally nonsensical determination that Plaintiff should have sought to acquire permanent residency within a year of October 2020, when the DFF chart showed

his visa was current, even though the policy in effect at the time did not protect his "Child Status" and would have guaranteed the denial of this application.

59.     The June 2025 decision constituted a new, and previously undisclosed basis for the agency's denial of the I-485.

60.     The agency received Plaintiff's second MTR on July 9, 2025. That MTR sought to open the most recent rationale for the denial articulated in the June 10, 2025, decision.

61.     Despite the fact that the second MTR was received within 30 days of the first MTR's decision, the agency denied it as untimely. The agency erroneously construed its regulations to require any MTR to be filed within 30 days of the original decision.

62.     A third MTR was also denied as untimely.

**<u>STATEMENT OF CLAIMS</u>**

**COUNT I**
**Violation of the Administrative Procedure Act**

63.     The APA at 5 U.S.C. § 706(2) grants courts authority to set aside agency actions that are not in accordance with law or made without observance of procedure required by law.

64.     The agency's factual determinations in a I-485 adjudication are discretionary and thus unreviewable under 8 U.S.C. § 1252(a)(2)(B)(ii). However, courts still

11

retain jurisdiction to decide if the agency's adjudication complied with the law. *See Patel v. Garland*, 596 U.S. 328, 142 S. Ct. 1614, 212 L. Ed. 2d 685 (2022).

65.     The law and policy in effect at the time Plaintiff's Form I-485 was filed used the dates for filing chart to calculate the CSPA age. It also allowed for individuals like plaintiff to file applications even if they had aged out under the prior policy.

66.     The denial changed policy without explanation or warning in violation of the rule articulated in *Logic Tech*, 84 F.4th at 565. The decision denying the application did not acknowledge the policy in effect at the time of filing. Nor did the decision acknowledge that its policy had changed after filing.

67.     Nor did the agency's decision discuss Plaintiff's reliance interest. *See Encino Motorcars, LLC v. Navarro,* 579 U.S. at 221.

68.     The agency's rationale in its denial of the first MTR does not comply with the law at the time of filing. There the agency required Plaintiff to comply with a policy that had not been released at the theoretical time of filing. However, the agency's own regulations at 8 C.F.R. § 103.2(b)(1) require proof of eligibility at the time Plaintiff requested the benefit, and not prior.

69.     Consequently, the agency's denial was not in accordance with law and failed to comply with procedural requirements.

## <u>PRAYER FOR RELIEF</u>

12

WHEREFORE, the Plaintiff requests that this Court:

A. Takes jurisdiction over this matter;

B. Declares that the agency's failure to comply with its law and policy at the time of filing was unlawful;

C. Vacate the agency's denial, and remand the matter to the agency with an order to adjudicate in accordance with law;

D. Award the Plaintiff's attorneys' fees and costs; and

E. Grant such other relief as the Court may deem just and proper.


Dated: April 14, 2026

Respectfully submitted,

*/s/ Matthew T. Galati*
Matthew T. Galati, Esq.
PA Bar No. 312013
The Galati Law Firm, LLC
8080 Old York Road
Suite 204
Elkins Park, PA 19027
(215) 309-1728
matt@galati.law

*/s/ Jonathan D. Wasden*
Jonathan D. Wasden, Esq.*
MSB No. 100563
Wasden Law
2593 W Torana Drive
Meridian, ID 83646
(843) 872-4978
jon@wasden.law

13

*\* Motion for Pro Hac Vice Forthcoming*

*Attorneys for Plaintiffs*