**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EMILY FARREN,** | : | |
| | : | **No.** |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION – LAW** |
| **v.** | : | |
| | : | |
| **CITY OF HARRISBURG AND** | : | **ELECTRONICALLY FILED** |
| **NEIL GROVER, individually** | : | |
| **and in his official capacity** | : | |
| | : | |
| **Defendants** | : | |

**<u>COMPLAINT</u>**

**AND NOW** comes Emily Farren, Plaintiff, by and through her attorney, who respectfully submits this complaint against Defendants City of Harrisburg and Neil Grover, individually and in his official capacity as City of Harrisburg Solicitor.  In support thereof, Ms. Farren avers:

**INTRODUCTION**

1.     This case arises from Defendants' unlawful retaliation and discrimination against one of their own attorneys for her refusal to ignore misconduct, minimize sexual harassment, or participate in unlawful employment practices.

2.     Plaintiff, as a Deputy City Solicitor, was responsible for, among other job duties, investigating workplace misconduct, including allegations of sexual harassment and workplace harassment within various bureaus of the City.

3.     When Plaintiff conducted investigations in good faith, recommended discipline, and reported concerns about systemic failures to senior leadership, including the Mayor, the Business Administrator, the Director of the Bureau of Human Resources, and the Special Assistant to the Mayor, she was terminated within days.

1

4.      Defendants now attempt to justify Plaintiff's termination through shifting and pretextual explanations that are contradicted by their own conduct and admissions.

5.      The timing, circumstances, and Defendants' actions demonstrate that Plaintiff was terminated for engaging in protected activity and opposing unlawful discrimination.

6.      Defendants' actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1983, the Pennsylvania Human Relations Act, and the Pennsylvania Whistleblower Law.

## PARTIES

7.      Plaintiff Emily Farren is an adult individual residing at 1756 Fairbank Lane, Mechanicsburg, PA 17055.

8.      Defendant City of Harrisburg is a municipality organized and existing under the laws of the Commonwealth of Pennsylvania, with a registered address located at 10 N. 2nd Street, Harrisburg, PA 17101.

9.      Defendant Neil Grover is an adult individual and an employee of Defendant City of Harrisburg, with a business address of 10 N. 2nd Street, Harrisburg, PA 17101.

## JURISDICTION

10.     On or about September 9, 2024, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e 5(b) and (c), and 43 P.S. § 959(a).

11.     Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2024-09176.

12.     Plaintiff's EEOC Charge was dual filed within one hundred and eighty (180) days of the unlawful employment practice.

13.     By correspondence dated January 21, 2026, Plaintiff received a Notice of Right to Sue from the EEOC regarding her Charge, advising Plaintiff that she had ninety (90) days to file suit against Defendants.

14.     Plaintiff filed the instant action within the statutory time frame applicable to her federal and state claims.

15.     Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintain this action.

16.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

17.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as her federal claims.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in Dauphin County, Pennsylvania, and the property that is the subject of this action is situated in this District.

**FACTS**

**<u>Employment and Role</u>**

19.     On or about July 7, 2020, Ms. Farren began employment with Respondent as an Assistant City Solicitor for Collections and continued in this role until November 2021. Along with her job responsibilities pertaining to debt collection, Ms. Farren's job responsibilities also included Human Resource ("HR") matters, i.e. representing City management in disciplinary proceedings for AFSCME bargaining unit employees and the hiring process of the Affirmative Action Officer during this time.

20.     Her supervisor was Defendant Neil Grover, the city solicitor.

21.     Plaintiff left the position when the mayor at that time, who had lost the primary, exited the office.

22.     On or about February 27, 2023, she was rehired by Defendant Grover to work for Defendant City of Harrisburg, as an Assistant City Solicitor.

23.     On or about May 15, 2023, Defendant Grover promoted Ms. Farren to Deputy City Solicitor.

24.     In her role as Deputy City Solicitor, Ms. Farren received positive performance feedback, accompanied by a pay raise, and was entrusted with complex investigations.

25.     Plaintiff's responsibilities included investigating employee misconduct, including complaints of harassment and discrimination.

26.     Given the expanded responsibilities related to HR, Plaintiff specifically requested Defendant Grover approve her request for SHRM training and certification.

27.     Defendant Grover explicitly denied Plaintiff's SHRM training request, stating, "as an attorney, one should never show or admit you don't know how to do something."

28.     Ms. Farren made reasonable attempts to learn about HR matters and employment discrimination laws via self-guided legal research and continuing legal education courses.

29.     Defendant Grover mocked Plaintiff's attempts to expand her knowledge regarding HR matters and employment discrimination laws.

**CSA Investigation and Misconduct**

30.     In or around February and March 2023, Plaintiff investigated a complaint of sexual harassment involving a Community Service Aide ("CSA").

31.     Following a thorough investigation, Plaintiff substantiated misconduct, recommended termination of the CSA and drafted a termination letter for appropriate city management signature in or about April 2023.

32.     Defendant Grover failed to act consistent with Plaintiff's findings.

33.     Although the City ultimately determined that termination was warranted, Defendant Grover failed to implement that decision in a timely manner. Instead, the CSA remained on paid administrative leave for approximately ten (10) months, from April 2023 until in or about February 2024, during which time he continued to receive compensation and benefits at taxpayer expense.

34.     The Defendants' failure to act on substantiated findings of misconduct, while continuing to pay the employee, reflected a pattern of mismanagement, disregard for anti-discrimination enforcement, and waste of public resources.

**Additional Investigations**

35.     In or around November 2023, Plaintiff investigated a complaint of harassment among male police officers. Although Defendant Grover had reviewed the allegations, he minimized the misconduct, stating, "there is no rule against being an asshole," and took the position that no discipline was warranted.

36.     Plaintiff disagreed and exercised her professional judgment, including conducting a thorough investigation and review of Defendant City of Harrisburg's anti-harassment policy, and recommended discipline.

37.     In January 2024, Plaintiff investigated a complaint by a female police officer who reported that a male officer had physically assaulted her. The accused officer characterized the incident as "horseplay," while the complainant described it as sexual harassment. The conduct

included unwanted physical contact and an attempted embrace in a parking lot, from which the complainant attempted to escape.

38.     During the investigation, Plaintiff sought guidance from Defendant Grover.  Rather than provide direction, Defendant made dismissive and gender-based comments, including suggesting that the complainant "was probably sleeping with" the accused.  This comment reflected Defendant's bias against the complainant and hostility toward enforcing anti-discrimination policies.

39.     Plaintiff nevertheless recommended discipline.

**Pregnancy-Related Discrimination**

40.     On or about January 25, 2024, Plaintiff became aware that a female employee had been terminated for sick leave abuse while pregnant.

41.     Plaintiff raised concerns regarding the legality of that termination to Defendant Solicitor.

42.     Defendant Grover instructed Plaintiff not to disclose the pregnancy-related termination to the union and further warned Plaintiff that he would not seek reinstatement or otherwise remedy the termination on behalf of the pregnant employee.

43.     Defendant Grover's actions and omissions demonstrated awareness and tacit approval of potential legal violations.

**Additional Sex Discrimination Investigation and Gender-Based Conduct**

44.     In or about January 2024, Plaintiff was assigned to investigate a sex discrimination complaint brought by a retired female police officer.

45. During the initial meeting regarding the complaint, attended by Plaintiff, Defendant Grover, the Chief of Police, and the Deputy Chief, the Chief stated, in substance, "no offense, Miss, but women are emotional."

46. Days later, while Plaintiff was discussing the investigation with Defendant Grover in the presence of the Deputy Chief, Defendant Grover raised his voice at Plaintiff and admonished her in a manner that was demeaning and inconsistent with his treatment of other attorneys.

**Disparate Treatment Related to Childcare Responsibilities**

47. Defendant Grover required Plaintiff to attend and represent the City at evening meetings on a regular basis, up to three times per week.

48. The other attorneys in the Law Bureau, including the attorney holding the position of Senior Deputy City Solicitor, were not required to attend evening meetings to the same extent.

49. Plaintiff raised concerns regarding childcare responsibilities for her minor child with Defendant Grover.

50. In response, Defendant Grover threatened Plaintiff with termination if she did not comply with his expectations.

51. Defendant Grover's conduct reflected differential treatment based on gender and gender-based expectations regarding caregiving responsibilities.

**Reports to Leadership**

52. On or about February 5, 2024, Plaintiff met with senior City leadership, including the Human Resources Director, Business Administrator, and Special Assistant to the Mayor. During the February 5 meeting, Ms. Farren raised concerns about Defendant Grover's handling of discrimination and harassment complaints, including Grover's failure to terminate an employee that the City of Harrisburg determined should be terminated.

53.    Plaintiff specifically reported that Defendant Grover was undermining investigations, discouraging enforcement of anti-discrimination policies, and creating an environment in which complaints were not taken seriously.

54.    Plaintiff specifically reported that Defendant Grover failed to act on the resolution of complaints in a timely manner.

55.    City leadership expressed their own concerns regarding: Defendant Grover's inability to retain Law Bureau staff; Defendant Grover's inability to promptly complete assignments of import to Defendant City of Harrisburg; Defendant Grover's failure to terminate the CSA; and the Plaintiff's welfare under Defendant Grover's supervision.

56.    City leadership assured Ms. Farren of a quick resolution and asked Plaintiff if she would be more comfortable working remotely or assigned to another bureau until a resolution could be reached.

57.    On March 5, 2024, Plaintiff met directly with the Mayor, and Ms. Farren again reported systemic concerns about Defendant City Solicitor's conduct, including his mishandling of harassment investigations, his treatment of Law Bureau employees, and the unequal job responsibilities assigned to Ms. Farren, i.e. expectation of attending and representing Defendant City of Harrisburg at evening meetings.

58.    Plaintiff specifically told the Mayor that she would willingly continue to be supervised by Defendant Grover if Defendant Grover treated Plaintiff similarly to other Law Bureau attorneys.

59.    Plaintiff specifically told the Mayor Plaintiff requested training and Defendant Grover denied the request.

60.    Plaintiff specifically expressed her childcare concerns.

61. The Mayor thanked Plaintiff for her candor regarding the inner workings of the Law Bureau.

62. The Mayor expressed her own concerns regarding Defendant Grover's failure to retain Law Bureau staff; his misplaced reliance on the Senior Deputy City Solicitor, a full-time remote employee who could not attend the various evening meetings or hearings; and Defendant Grover's inability to timely address concerns the Mayor raised with him.

63. The Mayor acknowledged Plaintiff's strong performance since Plaintiff's return to City employment.

64. The Mayor reassured Plaintiff that her concerns would be addressed.

**Termination**

65. Just three days later, on March 8, 2024, Plaintiff was terminated by Defendant Grover with the approval of senior City leadership, including the Mayor.

66. The stated reason for Plaintiff's termination, her alleged "recent behavior," was vague, unsupported, and pretextual.

67. At the time of her termination, Plaintiff had received positive performance feedback, no discipline, and had been recently promoted.

**Pretext and Causation**

68. Defendants' stated reasons for termination are false and pretextual.

69. The temporal proximity between March 5 and March 8 is unusually suggestive of retaliation, and combined with Defendants' shifting explanations for termination, demonstrate that Defendants terminated Plaintiff in retaliation for her opposition to unlawful discrimination, her findings and recommendations in investigations of harassment and reporting misconduct.

70. Plaintiff had positive evaluations, undermining performance claims.

71.     Defendants routinely relied on Plaintiff to represent Defendant City of Harrisburg at evening meetings through her termination, including the evening meeting held on Wednesday, March 6, 2024, further undermining performance claims.

72.     Any alleged deficiencies were not previously disciplined, and the HR Director confirmed to Plaintiff that she was not being terminated due to poor work performance.

73.     Defendants tolerated misconduct of the CSA, a male police officer accused of sexual harassment and senior leadership who terminated a pregnant employee, only to terminate Plaintiff.

74.     Defendants' treatment of Plaintiff, including requiring her to attend evening meetings not required of other attorneys and threatening termination when she raised childcare concerns, reflected differential treatment based on gender and gender-based expectations regarding caregiving responsibilities.

**Protected Activity**

75.     Plaintiff engaged in protected activity by opposing discrimination, investigating harassment and reporting misconduct.

76.     Plaintiff had a reasonable belief conduct was unlawful.

77.     Defendants retaliated against Plaintiff for her good faith participation in investigations into sexual harassment and/or because she opposed conduct made unlawful by Title VI and the PHRA by terminating her employment, in violation of Title VII and the PHRA.

78.     Plaintiff's supervisor engaged in conduct demonstrating hostility toward enforcement of anti-discrimination policies.

79.     Plaintiff's termination was in retaliation for her protected activity and opposition to unlawful discriminatory conduct.

80.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer significant economic and non-economic damages.

81.    Plaintiff lost wages, salary, benefits, and other compensation from the date of her termination through the present and will continue to suffer such losses in the future.

**Damages**

82.    Plaintiff's termination adversely affected her earning capacity, career trajectory, and professional reputation.

83.    As an attorney employed in public service, Plaintiff's abrupt termination under false and pretextual circumstances caused reputational harm that extends beyond immediate wage loss and impacts future employment opportunities.

84.    Plaintiff suffered emotional distress, humiliation, embarrassment, anxiety, and loss of enjoyment of life as a result of Defendants' actions, including being terminated shortly after raising concerns about unlawful conduct and being escorted from her workplace under stigmatizing circumstances.

85.    Plaintiff also incurred additional economic losses, including lost retirement contributions, benefits, and other employment-related compensation.

86.    Defendants' conduct was intentional, willful, and carried out with reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive damages to the extent permitted by law.

87.    The circumstances of Plaintiff's termination, including the timing and stated reasons, have created a false and stigmatizing impression affecting her professional standing.

88.    Defendants' actions further warrant equitable relief, including reinstatement or, in the alternative, front pay, as well as injunctive relief to prevent future violations.

**COUNT I**
**TITLE VII RETALIATION**
**PLAINTIFF v. DEFENDANT CITY OF HARRISBURG**

89.     Paragraphs 1-88 are incorporated by reference as if stated fully herein.

90.     Plaintiff engaged in protected activity by investigating complaints of sexual harassment within the City's police department; recommending discipline for conduct she reasonably believed violated anti-discrimination laws; opposing the mishandling of harassment investigations; raising concerns regarding the termination of a pregnant employee; and reporting systemic failures, including the continued payment of an employee for approximately ten months after a determination that termination was warranted.

91.     Plaintiff had a reasonable, good faith belief that the conduct she opposed violated federal and state anti-discrimination laws.

92.     Defendants were aware of Plaintiff's protected activity, including her direct reports to senior City leadership and the Mayor directly.

93.     Defendants subjected Plaintiff to a materially adverse employment action by terminating her employment.

94.     The temporal proximity between Plaintiff's protected activity, particularly her March 5, 2024 report to the Mayor, and her termination on March 8, 2024 is unusually suggestive of retaliatory motive.

95.     Additional evidence of causation includes Grover's hostility toward Plaintiff's enforcement of anti-discrimination policies; Grover's repeated dismissal of harassment complaints; Plaintiff's recent promotion and positive performance evaluations; the absence of any prior discipline.

12

96.    Defendants' asserted reasons for Plaintiff's termination, including alleged insubordination and performance deficiencies, are false, inconsistent, and pretextual.

97.    Defendants' tolerance of substantiated misconduct, including permitting a City employee to remain on paid leave for approximately ten months after a determination that termination was warranted, contrasts sharply with their decision to terminate Plaintiff shortly after she reported such conduct.

98.    Defendants' actions would dissuade a reasonable employee from engaging in protected activity.

99.    As a direct and proximate result, Plaintiff suffered damages including lost wages, front pay, back pay, compensatory damages including emotional distress, reputational harm, punitive damages and attorneys' fees and costs.

100.    Defendant City of Harrisburg acted intentionally, willfully, and with reckless indifference to Plaintiff's protected rights.

**COUNT II**
**TITLE VII SEX DISCRIMINATION/HOSTILE WORK ENVIRONMENT**
**PLAINTIFF v. DEFENDANT CITY OF HARRISBURG**

101.    Paragraphs 1-100 are incorporated by reference as if stated fully herein.

102.    Plaintiff is a member of a protected class based on her sex.

103.    Plaintiff was qualified for her position and performed her duties satisfactorily.

104.    Defendants subjected Plaintiff to an adverse employment action, including termination.

105.    Defendants' conduct gives rise to an inference of unlawful sex discrimination, including minimizing and dismissing complaints of sexual harassment; making gender-based and biased remarks regarding female complainants; undermining Plaintiff's recommendations in

13

cases involving male employees accused of misconduct; and approving or condoning the termination of a pregnant employee.

106.    Defendant Grover's comment that a female complainant "was probably sleeping with" the accused officer reflects gender-based animus and bias in the handling of sexual harassment complaints.

107.    Defendants treated Plaintiff less favorably than similarly situated male employees, including by subjecting her to heightened scrutiny and terminating her under circumstances where male employees were not.

108.    Defendants' conduct also reflected unlawful gender stereotyping, including expectations that Plaintiff, as a woman and mother of a minor child, prioritize work obligations without regard to childcare responsibilities, while similarly situated male attorneys or female attorneys without young minor children were not subjected to the same expectations or threats of termination.

109.    The hostile work environment included gender-based stereotyping, differential treatment related to Plaintiff's role as a caregiver, and demeaning conduct in front of colleagues, including being admonished by Defendant Grover in the presence of law enforcement leadership.

110.    Plaintiff's sex was a motivating and/or determinative factor in Defendants' decision to terminate her employment.

111.    As a direct and proximate result, Plaintiff suffered damages including lost wages, front pay, back pay, compensatory damages including emotional distress, reputational harm, punitive damages and attorneys' fees and costs.

112.    Defendant City of Harrisburg acted with malice or reckless indifference to Plaintiff's federally protected rights.

## COUNT III
## § 1983 FIRST AMENDMENT
## PLAINTIFF v. DEFENDANT GROVER

113.   Paragraphs 1-69 are incorporated by reference as if set forth fully herein.

114.   At all relevant times, Defendant acted under color of state law.

115.   Plaintiff engaged in protected speech under the First Amendment.

116.   Plaintiff's speech addressed matters of public concern, including sexual harassment within a municipal police department; misconduct by public officials; the mishandling of discrimination investigations; and the misuse of public funds, including paying an employee for approximately ten months after a termination determination.

117.   Plaintiff's reports to the Mayor and senior leadership were not limited to routine job duties but addressed systemic misconduct and therefore constituted citizen speech.

118.   Defendant terminated Plaintiff in retaliation for her protected speech.

119.   Plaintiff's speech was a substantial and motivating factor in Defendant's decision.

120.   Defendant's actions were sufficient to deter a reasonable person from engaging in protected speech.

121.   Defendant Grover acted intentionally and with reckless disregard of Plaintiff's constitutional rights.

122.   As a direct and proximate result, Plaintiff suffered damages including lost wages, back pay, front pay, compensatory damages including emotional distress, reputational harm, punitive damages and attorneys' fees and costs.

## COUNT IV
## § 1983 EQUAL PROTECTION
## PLAINTIFF v. DEFENDANT GROVER

123.   Paragraphs 1-79 are incorporated by reference as if set forth fully herein.

124.   Plaintiff is a member of a protected class based on her sex.

125.   Defendant intentionally treated Plaintiff differently from similarly situated male employees.

126.   Defendant's discriminatory conduct included tolerating misconduct by male employees; discrediting female complainants; undermining Plaintiff's authority as a female attorney; and terminating Plaintiff under circumstances suggesting discriminatory motive.

127.   Defendant Grover acted intentionally and with reckless disregard of Plaintiff's constitutional rights.

128.   As a direct and proximate result, Plaintiff suffered damages including lost wages, back pay, front pay, compensatory damages including emotional distress, reputational harm, punitive damages and attorneys' fees and costs.

**COUNT V**
**MONELL LIABILITY**
**PLAINTIFF v. DEFENDANT CITY OF HARRISBURG**

129.   Paragraphs 1-58 are incorporated by reference as if set forth fully herein.

130.   Defendant City maintained policies, customs, and practices that caused the violation of Plaintiff's constitutional rights.

131.   These included a custom of minimizing or failing to address sexual harassment complaints; a practice of discouraging enforcement of anti-discrimination policies; tolerance of misconduct by employees; and retaliation against employees who reported wrongdoing.

132.   The City's handling of the CSA investigation, including paying the employee for ten months after determining termination was warranted, demonstrates a pattern of failing to enforce policies and mismanaging public resources.

133. The City failed to adequately train and supervise employees regarding harassment investigations, anti-discrimination laws, and retaliation prevention.

134. Plaintiff specifically requested training, which was denied.

135. The need for training for all City employees was obvious, and the failure reflects deliberate indifference.

136. Policymakers, including the Mayor, ratified Plaintiff's termination.

137. These policies, customs, and failures were the moving force behind Plaintiff's injuries. *See Monell v. Department of Social Services*.

138. As a direct and proximate result, Plaintiff suffered damages including lost wages, back pay, front pay, compensatory damages including emotional distress, reputational harm and attorneys' fees and costs.

## COUNT VI
## PENNSYLVANIA WHISTLEBLOWER LAW

139. Paragraphs 1-65 are incorporated by reference as if stated fully herein.

140. Defendant City is a public body.

141. Plaintiff reported wrongdoing, including mishandling harassment investigations, improper employment practices, and misuse of public funds.

142. Defendants terminated Plaintiff in retaliation.

143. As a direct and proximate result, Plaintiff suffered damages including lost wages, back pay, front pay, actual damages (emotional distress, economic loss, and reputational harm) and attorneys' fees and costs.

## COUNT VII
## PHRA/HOSTILE WORK ENVIRONMENT VIOLATIONS

144.    Paragraphs 1-110 are incorporated by reference as if stated fully herein.

145.    Defendants violated the PHRA through discrimination and retaliation.

146.    Individual Defendant Grover aided and abetted unlawful conduct in violation of 43 P.S. § 955(e).

147.    The hostile work environment included gender-based stereotyping, differential treatment related to Plaintiff's role as a caregiver, and demeaning conduct in front of colleagues, including being admonished by Defendant Grover in the presence of law enforcement leadership.

148.    As a direct and proximate result, Plaintiff suffered damages including lost wages, back pay, front pay, compensatory damages including emotional distress, reputational harm and attorneys' fees and costs.


## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and grant the following relief:

A. Declare that Defendants' conduct violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1983, the Pennsylvania Human Relations Act, and the Pennsylvania Whistleblower Law;

B. Award Plaintiff back pay, including all lost wages, salary, bonuses, benefits, and other compensation, together with prejudgment interest;

C. Award front pay in lieu of reinstatement;

18

D. Award compensatory damages for emotional distress, humiliation, embarrassment, inconvenience, loss of enjoyment of life, and reputational harm;

E. Award punitive damages against the individual Defendant to the extent permitted by law;

F. Award all statutory damages available under applicable law;

G. Award reasonable attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988, and applicable state law;

H. Award equitable and injunctive relief, including but not limited to orders requiring Defendants to:

- Cease and desist from unlawful employment practices;
- Implement lawful anti-discrimination and anti-retaliation policies;
- Provide training to supervisory and managerial employees; and
- Take corrective action to remedy past unlawful practices;

I. Award prejudgment and post-judgment interest as permitted by law;

J. Grant such other and further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

**YERGER LAW**

By: /s/ Sarah C. Yerger
        Sarah C. Yerger
        Attorney I.D. No. 70357
        PO Box 94
        Camp Hill, PA 17001
        (717) 919-5486
        Email: sarah@yergerlaw.net

Date: April 20, 2026                *Counsel for Emily Farren*

19