**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LATEISHA JORDAN,** | : | |
| | : | |
| *Plaintiff,* | : | **Case No.:** |
| | : | |
| **v.** | : | |
| | : | |
| **PERSONAL CARE REGISTERED** | : | **JURY TRIAL DEMANDED** |
| **PROFESSIONAL NURSING P.C. d/b/a** | : | |
| **PRIMECARE MEDICAL, INC.,** | : | |
| **NIAGARA COUNTY; JOSHUA** | : | |
| **GARCIA; and STEPHEN VIK,** | : | |
| *jointly and severally,* | : | |
| | : | |
| *Defendants.* | : | |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes Plaintiff, Lateisha Jordan, by and through the undersigned counsel,

J.P. Ward & Associates, LLC, and, specifically, Justin M. Bahorich, Esquire, who files the within

Complaint against Defendants, Personal Care Registered Professional Nursing, P.C. d/b/a

PrimeCare Medical, Inc.; Niagara County; Joshua Garcia; and Steven Vik, jointly and severally,

of which the following is a statement:

**PARTIES**

1.    Plaintiff, Lateisha Jordan ("Plaintiff" or "Ms. Jordan"), is an adult individual who

currently resides at 1 Packard Court, Apt. 1C, Niagara Falls, NY 14301.

2.    Defendant, Personal Care Registered Professional Nursing P.C. ("Personal Care"

or jointly "Defendants") is a medical corporation with a principal place of business located at 3940

Locust Lane, Harrisburg, PA 17109.  At all times relevant, Personal Care Registered Professional

Nursing P.C. operates under the branding and management of PrimeCare Medical, Inc.

1

3.      Defendant, Niagara County ("Niagara County" or jointly "Defendants"), is a government entity with a principal address of 175 Hawley Street, Lockport, NY 14095. At all times relevant, the County operated the Niagara County Correctional Facility at 5526 Niagara Street Ext, Lockport, NY, 14095, and employed and jointly supervised its staff including Plaintiff.

4.      Defendant, Joshua Garcia ("Mr. Garcia"), is an adult individual who, upon information and belief, resides at 225 Tremont Street, N Tonawanda, NY 14120.

5.      Defendant, Stephen Vik ("Mr. Vik"), is an adult individual who, upon information and belief, resides at 887 Upper Mountain Road, Lewiston, NY 14092.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper as Ms. Jordan brings this Complaint under Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. §§ 2000e *et. seq.* and the Civil Rights Act of 1866 ("Section 1981") 42 U.S.C. § 1981.

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Ms. Jordan asserts claims under 42 U.S.C. § 1981.

8.      Venue is proper in this Court because Defendant Personal Care maintains its principal place of business in Harrisburg, Dauphin County, PA, within the Middle District of Pennsylvania.

9.      On June 23, 2025, Ms. Jordan timely dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").

10.     On January 23, 2025, the EEOC issued Notices of Right to Sue in connection with Ms. Jordan's Charge of Discrimination against Personal Care (Charge No. 533-2025-02508), and Niagara County (Charge No. 533-2025-02519).

11. Accordingly, Ms. Jordan has exhausted all her administrative remedies under Title VII.

12. Ms. Jordan intends to amend her Complaint once her claims under the PHRA are administratively discharged on or around June 23, 2026.

### FACTUAL ALLEGATIONS

13. On or around November 11, 2024, Ms. Jordan commenced her employment with Defendants as a Medical Assistant assigned to work at the Niagara County Correctional Facility in Lockport, New York (the "Facility").

14. Ms. Jordan is an African American woman, and thus a member of multiple protected classes.

15. Ms. Jordan was one of the few African American employees employed at the Facility, and upon information and belief, the only Black woman who worked on her same shift.

16. Ms. Jordan was fully qualified for her position and consistently performed her job duties satisfactorily.

   a. **Defendants Jointly Controlled the Terms, Conditions, and Continuation of Ms. Jordan's Employment at the Facility.**

17. Defendants jointly controlled material aspects of Ms. Jordan's work at the Facility. Ms. Jordan performed her duties inside the Niagara County Correctional Facility, a secure correctional institution owned and operated by Niagara County, and her work was necessarily subject to County-imposed security procedures, institutional restrictions, worksite rules, and access requirements.

18. Upon information and belief, Niagara County exercised substantial control over whether and under what conditions Personal Care personnel, including Ms. Jordan, could work inside the Facility, including by controlling physical access to the worksite, issuing and

deactivating identification badges, and retaining contractual authority to require the removal of assigned medical staff from the Facility.

19.     Because Ms. Jordan's job duties could only be performed inside the Facility, Niagara County's control over access, credentialing, and continued assignment materially affected her ability to perform her job and remain employed in that assignment.

20.     Upon information and belief, the relationship between PrimeCare and Niagara County was not incidental or arms-length, but instead reflected an integrated correctional-healthcare arrangement under which Niagara County, through its Sheriff's Office, contracted with Personal Care-affiliated entities, including PrimeCare, for the provision of medical care at the Facility, while Personal Care's New York operations handled the managerial and administrative aspects of the contract and served as the liaison with the correctional facility.

21.     Accordingly, at all times relevant, Defendants acted jointly and/or in concert with respect to the supervision, control, access, and conditions of Ms. Jordan's work.

b. **Defendants Tolerated an Objectively Hostile, Offensive, and Discriminatory Workplace Environment Perpetrated by Supervisory Personnel.**

22.     Throughout her employment, Defendants permitted white supervisors and white coworkers to engage in discriminatory, offensive, and harassing conduct toward African American employees, including Ms. Jordan, while failing to take prompt or effective remedial action.

23.     Defendant Garcia, Director of Nursing during the events described herein, and Mr. Vik, served as Ms. Jordan's supervisors, exercising authority and control over the material terms of her employment.

24.     During Ms. Jordan's first week of employment, Mr. Garcia began making sexually explicit and graphic remarks in the workplace, including vulgar comments about masturbation.

4

25. Ms. Jordan reasonably found Mr. Garcia's remarks to be inappropriate, offensive, and unprofessional. She told Mr. Garcia directly that his comments were unwelcome and requested that he stop.

26. Mr. Garcia disregarded Ms. Jordan's objections and continued making inappropriate sexual remarks, directly contributing to a hostile work environment.

27. Around that same time, in or around late 2024, Mr. Garcia made additional offensive remarks reflecting racial and sex-based animus.

28. On one occasion, Mr. Garcia remarked that another African American female employee, Desire Fitzgerald ("Ms. Fitzgerald"), was "using her pregnancy as an excuse," assumedly referring to Ms. Fitzgerald's maternity leave.

29. Ms. Jordan again objected to Mr. Garcia's remarks and made clear that his conduct was inappropriate and unprofessional.

c. **Ms. Jordan Engaged in Protected Activity and Defendants Responded with Targeted and Unwarranted Discipline.**

30. Rather than correct his behavior, Mr. Garcia began targeting Ms. Jordan after she objected to his sexual comments and workplace misconduct.

31. Shortly after Ms. Jordan complained about Mr. Garcia's lewd comments, he reported her for an alleged dress-code violation based on her wearing a zip-up jacket.

32. Upon information and belief, similarly situated white employees wore jackets or similar outer layers and were not subject to discipline as Ms. Jordan was.

33. On or around November 20, 2024, Ms. Jordan escalated her concerns to Mr. Vik, and reported Mr. Garcia's sexually inappropriate comments and related misconduct.

34. In response, Mr. Vik assured Ms. Jordan that he intended to address Mr. Garcia's misconduct.

35.    Upon information and belief, Mr. Vik wholly failed to address Mr. Garcia's misconduct.

36.    Mr. Garcia's inappropriate and unprofessional conduct persisted while Defendants failed to stop, investigate, or remedy the harassment Ms. Jordan had reported.

**d.  A White Coworker's Physical Aggression Was Excused While Ms. Jordan Was Immediately Disciplined, Despite Being the Victim of the Aggression.**

37.    On or around November 28, 2024, Mr. Garcia publicly confronted Ms. Jordan in a hostile and accusatory manner regarding her arrival time, implying that she was late for her shift without justification.

38.    Ms. Jordan explained that her schedule and arrival time for that day had previously been approved by Mr. Vik.

39.    To deescalate the situation, Ms. Jordan attempted to walk away.

40.    At that point, a similarly situated white coworker, Barbara "Barb" LNU, physically grabbed Ms. Jordan in an aggressive manner. Ms. Jordan immediately told Barbara to let go and asked her to stop touching her.

41.    Rather than address Barbara's physical assault, Mr. Garcia turned to Ms. Jordan, demanded to know what her "problem" was, treated her as though she were the aggressor, and ordered her to clock out and leave the premises immediately.

**e.  Defendants Failed to Conduct a Good-Faith Investigation and Instead Escalated Retaliation Against Ms. Jordan.**

42.    Following the November 28, 2024, incident, Mr. Garcia informed Ms. Jordan that he would investigate the matter.

43. However, the next day, on or around November 29, 2024, Defendants suspended Ms. Jordan, pretextually accusing her of tardiness and blamed her for allegedly instigating the physical altercation with Barbara.

44. Defendants did not afford Ms. Jordan a meaningful opportunity to provide a statement, explain what happened, or defend herself before imposing discipline.

45. Ms. Jordan later texted Mr. Garcia, seeking clarification and an update concerning the incident. Mr. Garcia failed to respond to her message.

46. On or around December 2, 2024, Alyssa Hengst ("Ms. Hengst"), Human Resources Representative, contacted Ms. Jordan and expressed agreement with Ms. Jordan in that Mr. Garcia should not have sent her home.

47. During this conversation, Ms. Jordan engaged in protected activity by reporting Mr. Garcia's ongoing sexual harassment, inappropriate conduct, and discriminatory treatment.

48. In response, Ms. Hengst assured Ms. Jordan Human Resources would investigate.

49. Despite this assurance, Ms. Hengst never followed up with Ms. Jordan thereafter, and upon information and belief, no investigation was ever initiated or conducted.

50. When Ms. Jordan returned to work after her suspension, Mr. Garcia's discriminatory and retaliatory treatment of her only escalated.

### f. **Human Resources Failed to Intervene as Racial Harassment and Retaliatory Hostility Intensified.**

51. After Ms. Jordan returned to work, Anita Garcia ("Ms. Garcia"), Mr. Garcia's sister, began engaging in petty, targeted, and antagonistic conduct toward Ms. Jordan, including policing where she was allowed to sit and singling her out for trivial matters without legitimate justification.

7

52.    Meanwhile, Mr. Garcia continued to make racially and sexually inappropriate remarks in the workplace without facing any consequences.

53.    In or around mid-December 2024, Ms. Jordan witnessed Mr. Garcia, along with a group of unidentified white coworkers, mock an African American inmate by referring to him as a "monkey" and making vulgar jokes about the inmate having a sexually transmitted disease.

54.    Both Ms. Jordan and her colleague, Ms. Fitzgerald, were disturbed by the incident and promptly reported it to PrimeCare's corporate Human Resources department.

55.    Human Resources failed to take any meaningful corrective action in response to the reported use of racial slurs and discriminatory remarks.

56.    Consistent with Defendants' broader pattern of inaction, they failed to conduct a proper investigation into the incident and failed to take adequate steps to protect Ms. Jordan and other employees and inmates from ongoing discrimination and retaliation.

> ### g.    Defendants Escalated Ongoing Retaliation Against Ms. Jordan To a Pretextual Termination.

57.    In or around late December 2024, Ms. Jordan learned that Mr. Vik had been overheard at the nurses' station stating that he was "trying to find a way" to terminate both Ms. Jordan and Ms. Fitzgerald, each of whom had engaged in repeated protected activity by reporting Mr. Garcia's misconduct.

58.    Around the same time, Rachel LNU ("Ms. Rachel"), a manager, issued Ms. Jordan additional unwarranted reprimands, including a false accusation that she was searching for other employment during work hours.

59.    On or around December 24, 2024, while on a scheduled break and outside the Facility, Ms. Jordan attempted to submit a complaint to Human Resources from her personal phone.

60. When Ms. Jordan attempted to re-enter the building, she discovered that her access credentials had been revoked, and she was locked out.

61. Later that same day, Ms. Hengst contacted Ms. Jordan and informed her that she was being terminated for allegedly taking too long on her break.

62. Ms. Jordan was subsequently escorted from the premises.

63. While similarly situated white employees who engaged in harassing behavior were not disciplined, Ms. Jordan was disproportionately punished for minor or fabricated infractions.

64. The temporal proximity between Ms. Jordan's protected activity and adverse employment actions develops a strong inference that Respondent's decision to terminate her employment was pretextual.

## COUNT I
### DISCRIMINATION ON THE BASIS OF RACE
### IN VIOLATION OF TITLE VII
### *(Plaintiff v. Defendant Corporations)*

65. Ms. Jordan incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

66. Under Title VII, it is illegal for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. §2000e-2(a)(1).

67. When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) she is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck*

9

*& Co.*, 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Makky v. Chertoff*, 542 F.3d 205, 214 (3d Cir. 2008)).

68.    Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004)).

69.    Under Title VII, for other employees to be considered "similarly situated," they must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Morales v. PNC Bank, N.A.*, 2012 U.S. Dist. LEXIS 143605 *23 (E.D. Pa. 2012).

70.    Pennsylvania courts have held that comparison factors for "similarly situated employees" have included "dealing with the same supervisor, having been subject to the same standards, and engaging in the same conduct without differentiating and mitigating circumstances." *Id.*

71.    Ms. Jordan is an African American woman, and thus a member of a protected class.

72.    Ms. Jordan was one of the few African American employees employed at the Facility, and upon information and belief, the only Black woman on her shift.

73.    Ms. Jordan was fully qualified for her position and consistently performed her job duties satisfactorily.

74.    Defendants subjected Ms. Jordan to adverse employment actions, including selective discipline, suspension, heightened scrutiny, revocation of her access credentials, and termination.

10

75.     Similarly situated white employees were treated more favorably, including white employees who were not disciplined for comparable dress-code issues and white employees who engaged in harassing, aggressive, or otherwise inappropriate conduct without comparable punishment.

76.     These actions occurred under circumstances giving rise to an inference of race discrimination, including Defendants' tolerance of overtly racist conduct in the workplace, their failure to take meaningful corrective action after Ms. Jordan reported racially offensive conduct, and their escalating discipline of Ms. Jordan thereafter.

77.     As set forth hereinabove, Defendants' actions were knowing, willful, intentional, and done with reckless indifference to the rights of Ms. Jordan.

78.     As a direct and proximate result of the aforementioned conduct, Ms. Jordan suffered actual damages, including but not limited to, lost wages, emotional distress, anxiety, humiliation, and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Lateisha Jordan, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant Corporations, including, back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

### COUNT II
### RETALIATION
### IN VIOLATION OF TITLE VII
### *(Plaintiff v. Defendant Corporations)*

79.     Ms. Jordan incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

80.     Title VII makes it unlawful for an employer to retaliate against an employee because she has opposed any practice made unlawful by Title VII or because she has made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e–3(a).

81.     To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *Moore v. City of Philadelphia*, 461 F.3d 331, 341–42 (3d Cir. 2006). If the employer offers a legitimate, non-retaliatory reason, the plaintiff must show that retaliation was the "but-for" cause of the adverse action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

82.     Ms. Jordan engaged in protected activity under Title VII by repeatedly opposing and reporting race-based discrimination and racially offensive conduct in the workplace, including reporting Mr. Garcia's discriminatory remarks and conduct to Mr. Vik and Human Resources, and later reporting the incident in which an African American inmate was mocked as a "monkey" to corporate Human Resources.

83.     Following these protected activities, Defendants subjected Ms. Jordan to materially adverse employment actions, including unwarranted disciplinary write-ups, heightened scrutiny, hostile treatment, false accusations, suspension, revocation of her access credentials, lockout from the Facility, and ultimately termination.

84.     The close temporal proximity between Ms. Jordan's protected complaints and the adverse actions taken against her, together with Defendants' failure to take corrective action and the allegation that Mr. Vik was "trying to find a way" to terminate Ms. Jordan and Ms. Fitzgerald after their complaints, gives rise to a strong causal inference that Defendants retaliated against Ms. Jordan for opposing race-based discrimination.

12

85. As set forth hereinabove, Defendants' actions were knowing, willful, intentional, and done with reckless indifference to the rights of Ms. Jordan.

86. As a direct and proximate result of the aforementioned conduct, Ms. Jordan suffered actual damages, including but not limited to, lost wages, emotional distress, anxiety, humiliation, and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Lateisha Jordan, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant Corporations, including, back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

<u>**COUNT III**</u>
**DISCRIMINATION ON THE BASIS OF SEX**
**IN VIOLATION OF TITLE VII**
*(Plaintiff v. Defendant Corporations)*

87. Ms. Jordan incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

88. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's... sex." 42 U.S.C. § 2000e–2(a)(1). Title VII therefore prohibits adverse treatment of an employee based on gender or sex-based stereotypes in the workplace.

89. To make a showing of a *prima facie* case of sex discrimination under Title VII, a plaintiff must show that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) members of the opposite sex were treated more favorably. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d at 267 (3d Cir. 2005) (citing *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817). A plaintiff may also meet the

last element by showing that the adverse employment action "occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

90.     Ms. Jordan was subjected to discriminatory treatment on the basis of her sex, including repeated sexually inappropriate and offensive comments by Mr. Garcia, a hostile and demeaning work environment, selective discipline, and Defendants' failure to take prompt or effective remedial action after she complained.

91.     Defendants' discriminatory treatment culminated in unwarranted discipline, suspension, heightened scrutiny, and ultimately Ms. Jordan's termination, while similarly situated employees outside her protected class were not treated as harshly under comparable circumstances.

92.     The foregoing conduct occurred under circumstances giving rise to an inference of intentional sex discrimination.

93.     As set forth hereinabove, Defendants' actions were knowing, willful, intentional, and done with reckless indifference to the rights of Ms. Jordan.

94.     As a direct and proximate result of the aforementioned conduct, Ms. Jordan suffered actual damages, including but not limited to, lost wages, emotional distress, anxiety, humiliation, and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Lateisha Jordan, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant Corporations, including, back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

14

## COUNT IV
## HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEX
## IN VIOLATION OF TITLE VII
### *(Plaintiff v. Defendant Corporations)*

95.     Ms. Jordan incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

96.     Title VII prohibits an employer from creating or permitting a workplace that is hostile or abusive toward an employee because of her sex. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23 (1993).

97.     To state a claim for hostile work environment under Title VII, a plaintiff must show that: (1) she suffered intentional discrimination because of sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would detrimentally affect a reasonable person in the same position; and (5) the employer is vicariously liable for the conduct. *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017); *Senador v. Zober Indus., Inc.*, No. 07-4144, 2009 WL 1152168, at *9 (E.D. Pa. Apr. 28, 2009).

98.     Throughout her employment, Ms. Jordan was subjected to unwelcome sexually explicit, graphic, and offensive comments by Mr. Garcia, including vulgar remarks about masturbation and other sexually inappropriate workplace commentary.

99.     Ms. Jordan told Mr. Garcia that his comments were inappropriate, unwelcome, and unprofessional, and asked him to stop, but Mr. Garcia disregarded her objections and continued the conduct.

100.    Mr. Garcia's repeated sexually inappropriate remarks, together with Defendants' failure to take prompt or effective remedial action after Ms. Jordan reported the conduct to Mr. Vik and Human Resources, created a hostile and abusive work environment that detrimentally affected Ms. Jordan and interfered with the terms and conditions of her employment.

15

101.   The harassment was sufficiently severe or pervasive that a reasonable woman in Ms. Jordan's position would have found the work environment hostile, offensive, and intolerable.

102.   Mr. Garcia and Mr. Vik were supervisory employees acting as agents of Defendants and exercising authority over the terms and conditions of Ms. Jordan's employment; Defendants are therefore liable for the hostile work environment they created and permitted to continue.

103.   As set forth hereinabove, Defendants' actions were knowing, willful, intentional, and done with reckless indifference to the rights of Ms. Jordan.

104.   As a direct and proximate result of the aforementioned conduct, Ms. Jordan suffered actual damages, including but not limited to, lost wages, emotional distress, anxiety, humiliation, and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Lateisha Jordan, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant Corporations, including, back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

### COUNT V
### RETALIATION ON THE BASIS OF SEX
### IN VIOLATION OF TITLE VII
### *(Plaintiff v. Defendant Corporations)*

105.   Ms. Jordan incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

106.   Title VII makes it unlawful for an employer to retaliate against an employee because she has opposed any practice made unlawful by Title VII, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statute. 42 U.S.C. § 2000e–3(a).

107. To establish a *prima facie* case of retaliation under Title VII, a plaintiff must provide evidence that: (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Moore v. City of Philadelphia,* 461 F.3d 331, 341-42 (3d Cir. 2006); *see also*, *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995).

108. Ms. Jordan engaged in protected activity under Title VII by repeatedly opposing and reporting sex-based discrimination, sexual harassment, and sexually inappropriate conduct in the workplace, including reporting Mr. Garcia's sexually explicit comments and related misconduct to Mr. Vik and Human Resources.

109. Following these protected activities, Defendants retaliated against Ms. Jordan by subjecting her to heightened scrutiny, unwarranted discipline, suspension, continued hostile treatment, revocation of her access credentials, lockout from the Facility, and ultimately termination.

110. The timing and progression of these adverse actions, closely following Ms. Jordan's protected complaints, establish a strong causal connection between her opposition to sex-based discrimination and sexual harassment and Defendants' retaliatory conduct.

111. As set forth hereinabove, Defendants' actions were knowing, willful, intentional, and done with reckless indifference to the rights of Ms. Jordan.

112. As a direct and proximate result of the aforementioned conduct, Ms. Jordan suffered actual damages, including but not limited to, lost wages, emotional distress, anxiety, humiliation, and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Lateisha Jordan, hereby requests this Honorable Court consider the above and grant relief in her favor, and against Defendant Corporations, including, back pay,

17

front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

**COUNT VI**
**DISCRIMINATION ON THE BASIS OF RACE**
**IN VIOLATION OF 42 U.S.C. § 1981**
*(Plaintiff v. All Defendants, jointly and severally)*

113.    Ms. Jordan incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

114.    42 U.S.C. § 1981(a) provides that:

> "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws …as is enjoyed by white citizens."

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (holding that Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."); *see also*, *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 140 S. Ct. 1009, 1010 (2020). Thus, Section 1981 prohibits employers from engaging in intentional racial discrimination.

115.    Ms. Jordan is an African American woman and thus a member of a protected class within the meaning of Section 1981.

116.    Ms. Jordan was qualified for her position and performed her job duties in a competent and satisfactory manner.

117.    Defendants treated Ms. Jordan less favorably than similarly situated white employees with respect to the terms and conditions of her employment, including by subjecting her to selective discipline, heightened scrutiny, disparate enforcement of workplace rules, and materially less favorable treatment after workplace incidents and complaints.

18

118.    Defendants further tolerated and failed to remedy racially offensive and discriminatory conduct in the workplace, including anti-Black remarks and conduct, while disregarding or minimizing Ms. Jordan's complaints and concerns as a Black employee.

119.    Defendants ultimately suspended and terminated Ms. Jordan under false, selective, and pretextual reasons, while white employees who engaged in comparable or more serious misconduct were not treated as harshly.

120.    Defendants' actions were willful, intentional, and undertaken with reckless indifference to Ms. Jordan's federally protected right to make and enforce contracts irrespective of her race.

121.    As a direct and proximate result of the aforementioned conduct, Ms. Jordan suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience all in the past present and future.

122.    As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, willful and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Lateisha Jordan, hereby requests this Honorable Court consider the above and grant relief in her favor and against all Defendants, jointly and severally, including an award of back pay, front pay, compensatory and punitive damages, costs and reasonable attorney's fees, and any other relief this Court deems just and proper.

**COUNT VII**
**RETALIATION**
**IN VIOLATION OF 42 U.S.C. § 1981**
*(Plaintiff v. All Defendants, jointly and severally)*

123.    Ms. Jordan incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

19

124.   The Third Circuit has held that retaliation claims under § 1981 are controlled by the three-step burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Canada v. Samuel Grossi & Sons*, 49 F.4th 340 (3rd Cir. 2022) (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) (holding that § 1981 "encompasses claims of retaliation")).

125.   Under the first step of that framework, a plaintiff "must establish a prima facie case by showing '(1) [that he engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (alteration in original) (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

126.   Upon making these showings, the employer then, under step two, has the burden of producing evidence that "present[s] a legitimate, non-retaliatory reason for having taken the adverse action." *Daniels*, 776 F.3d at 193.  If the employer meets this burden, the burden then shifts "back to the plaintiff to demonstrate that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Id*. (quoting *Moore v. Cty. of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006)).

127.   Ms. Jordan engaged in protected activity when she complained to supervisors and Human Resources about race-based discrimination, racially offensive conduct, and disparate treatment in the workplace, including reporting Mr. Garcia's discriminatory conduct to Mr. Vik and later reporting the incident in which an African American inmate was referred to as a "monkey" to corporate Human Resources.

20

128. Shortly after engaging in this protected activity, Defendants subjected Ms. Jordan to heightened scrutiny, selective enforcement of workplace rules, unwarranted discipline, suspension, continued hostile treatment, and ultimately termination under purportedly false and pretextual circumstances.

129. Upon information and belief, Defendants treated similarly situated white employees more favorably by refraining from imposing comparable discipline, scrutiny, suspension, or termination for similar or more serious conduct.

130. Defendants ultimately terminated Ms. Jordan's employment on pretextual grounds, including by locking her out of the Facility and then informing her she was terminated for allegedly taking too long on her break, in retaliation for her protected complaints of race discrimination and racially hostile treatment.

131. Defendants' retaliatory actions were intentional and undertaken with reckless indifference to Ms. Jordan's federally protected rights.

132. As a direct and proximate cause of the aforementioned conduct, Ms. Jordan suffered actual damages, including but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience, all in the past, present and future.

133. As set forth hereinabove, Defendants' actions were intentional, knowing, wanton, reckless and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Lateisha Jordan, hereby requests this Honorable Court consider the above and grant relief in her favor and against all Defendants, jointly and severally, including an award of back pay, front pay, compensatory and punitive damages, costs and reasonable attorney's fees, and any other relief this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to the Seventh Amendment to the United States Constitution and Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Lateisha Jordan hereby demands a trial by jury on all issues of fact and claims for legal relief so triable as of right. Plaintiff acknowledges that certain issues, including equitable remedies such as back pay, front pay, and injunctive relief, may be determined by the Court consistent with *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311 (3d Cir. 2006) and applicable law. Plaintiff respectfully requests that a jury be empaneled to determine all factual and legal issues properly within its province, including liability, compensatory damages, and punitive damages, and that the Court determines equitable relief as appropriate.

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: April 23, 2026

By: _____
Justin M. Bahorich, Esquire
Pa. ID No. 329207
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206
jbahorich@jpward.com

*Counsel for Plaintiff*

22