**IN THE UNITED STATES DISTRCT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Sanjaykumar S. Patel** | |
| *Plaintiff,* | |
| v. | |
| **U.S. Citizenship and Immigration Services**, | Civil Action No.: |
| U.S. Citizenship & Immigration Services 5900 Capital Gateway Dr. Camp Springs, MD 20588 | |
| **Joseph B. Edlow**, Director, U.S. Citizenship and Immigration Services U.S. Citizenship & Immigration Services 5900 Capital Gateway Dr. Camp Springs, MD 20588 | |
| **Marco Rubio**, Secretary of State U.S. Department of State 600 18th St NW, Ste 5.600 Washington, DC 20006-5526 | |
| *Defendants.* | |

**COMPLAINT**

To the Honorable Judge of Said Court:

**INTRODUCTION:**

This action is brought by Plaintiff to compel the United States Citizenship and Immigration Services ("USCIS") and other Defendants to make a U-visa Waitlist Determination on his pending U-Nonimmigrant Visa application. Further, Plaintiff seeks to compel USCIS and other Defendants to grant parole to Plaintiff, who is currently abroad, pursuant to 8 C.F.R. § 214.14(d)(2), should an affirmative waitlist determination be made.

Plaintiff, Sanjaykumar S. Patel, filed an I-918, Petition for U-Nonimmigrant Status ("I-918 petition" or "U-visa application") on April 7, 2025.

1

To date, Defendants have not considered Plaintiff's I-918 petition for the U-visa waitlist.

**PARTIES**:

1. Plaintiff Sanjaykumar S. Patel, whose permanent residence is in India, is the beneficiary and principal applicant of an I-918 Petition for U-Nonimmigrant Status.

2. Defendant U.S. Citizenship and Immigration Services is a component of the U.S. Department of Homeland Security (DHS), 6 U.S.C. § 271, and an agency within the meaning of the Administrative Procedure Act (APA), 5 U.S.C. § 551(1). USCIS is responsible for adjudicating all applications and petitions for immigration benefits, including Form I-918 petitions, and the underlying waitlist determinations.

3. Defendant Joseph B. Edlow is the Acting Director of U.S. Citizenship and Immigration Services, and this action is brought against Defendant Edlow in his official capacity. Defendant Edlow is generally charged with administration of services under the Immigration and Nationality Act and is further authorized to delegate such powers and authority to subordinate employees of the Bureau of U.S. Citizenship and Immigration Services. *See* 8 U.S.C. Sect. 1103(a)(4).

4. Defendant Marco Rubio is the Secretary of State, and thus, the head of the U.S. Department of State.  This action is being brought against Defendant Rubio in his official capacity. Defendant Rubio is generally charged with administration of services performed by the Department of State, including its embassies and consulates abroad.

**JURISDICITION:**

5. This is a civil action brought pursuant to 28 U.S.C. § 1331 to redress the deprivation of rights, privileges, and immunities secured by Plaintiffs, by which jurisdiction is conferred to compel the Defendants and those working under them to perform the duties they owe to Plaintiffs.  The federal courts' subject-matter jurisdiction in Administrative Procedure Act cases is bestowed by 28 U.S.C. § 1331, the federal-question jurisdiction statute. *Califano v. Sanders*, 430 U.S. 99, 106 (1977)

6. Jurisdiction is also conferred by 5 U.S.C. § 704 because Plaintiffs are aggrieved by adverse executive agency action, as the Administrative Procedure Act requires in order to confer jurisdiction on the District Courts.  *See* 5 U.S.C. §§ 702, *et seq.* 5 U.S.C. § 706(1), provides that the federal courts "shall ... compel agency action unlawfully withheld or unreasonably delayed."

**VENUE:**

7. Venue is proper in the United States District Court for the Middle District of Pennsylvania, in that the I-918, Supplement B, which is a required and central

2

component of I-918 Applications – including the U-Visa Waitlist Determination or a Bona Fide Determination – was signed and certified by an investigative agency in the Middle District of Pennsylvania.  *See* 28 U.S.C. 1391(e)(1).

8. The importance of these events, which occurred within the Middle District of Pennsylvania is evident by virtue of the fact that a U-Visa Petition cannot be filed, and certainly cannot be granted a favorable U-Visa Waitlist Determination or a Bona Fide Determination, without the applicant (1) being a victim of a crime and (2) providing a certified I-918 Supplement B.

9. Further, even if other substantial events or omissions have occurred outside the being District of Pennsylvania, this venue would remain proper. Under 28 U.S.C. 1391(b)(2), Plaintiff is not limited to the district where the most substantial events or omissions giving rise to the action occurred. *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir.1998) ("The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in district A, too. Indeed, district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial."); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2nd Cir.1992) (the statute does not require the district court to determine the best venue); *see also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2nd Cir.2005) ("language contemplates that venue can be appropriate in more than one district"); *Dist. No. 1, Pac. Coast Dist., M.E.B.A. v. Alaska*, 682 F.2d 797, 799 (9th Cir.1982); *Radical Prod., Inc. v. Sundays Distributing*, 821 F.Supp. 648 (W.D.Wash.1992) (holding that substantial part of events in trademark infringement case occurred in district where confusion would occur, even though product was not sold there). Section 1391(b)(2) therefore provides a proper basis for venue in this district, even if substantial events or omissions took place in other districts.

**REMEDY SOUGHT:**

10. Plaintiff seeks to have the Court compel the Defendants and their subordinates to make a U-visa Waitlist determination on his pending I-918 petition.

11. Further, if Plaintiff is placed on the U-visa Waitlist, then Plaintiff seeks to have the Court compel the Defendants and their subordinates to grant parole to him, pursuant to 8 C.F.R. § 214.14(d)(2).

**EXHAUSTION OF ADMINISTRATIVE REMEDIES:**

12. There is no administrative remedy prescribed for the Defendants' neglect of their duties toward Plaintiff.

**FACTUAL, STATUTORY, AND REGULATORY BACKGROUND**:

13. That Plaintiff re-alleges and incorporates by reference paragraphs one through 12, above.

14. That Plaintiff was the victim of a qualifying crime or qualifying criminal activity pursuant to 8 C.F.R. 214.14(a)(9). Plaintiff thereafter reported the crime and cooperated in the investigation of the crime.

15. As a result of being the victim of this crime, Plaintiff suffered from significant mental trauma/abuse.

16. On April 7, 2025, Plaintiff filed a Form I-918, Petition for U Nonimmigrant Status, together with a signed certification from the relevant investigative authority, which certified that Plaintiff was victim of certain qualifying criminal activity and was, is, or is likely to be helpful in the investigation or prosecution of that activity (I-918, Supplement B). *See* Exhibit C.

17. Plaintiff's I-918 petition remains pending.

18. The Plaintiff is suffering financial and emotional hardships due to USCIS's unreasonable delay in making a waitlist determination for the I-918 Petition. The Department of Homeland Security detained Plaintiff on November 4, 2025, and subsequently removed him from the United States. Because no waitlist determination had yet been made on his I-918 Petition, Plaintiff had no protection from removal. Prior to a waitlist determination, Plaintiff remain in India, apart from the life he created while living in the United States for nearly a decade, including loss of financial and employment opportunity. Further, Plaintiff is unable to carry out the stated purpose of the U-visa program while abroad – namely assisting law enforcement and obtaining care for substantial injury. Under USCIS's current *de facto* policy – which is in clear contradiction of the governing regulations – Plaintiff will not be permitted to enter the United States until there is a final U-visa approval/until a U-visa is available to him, which could be many years – even decades – based on the current U-Visa backlog.

### The U-visa Program & the "Waitlist"

19. Congress authorized the U-visa program in 2000 as part of a broad effort to extend the protection of the law to noncitizens who were victimized by crimes committed after their arrival in the United States. See Pub. L. No. 106-386, § 1513(a)(2)(B), 114 Stat. 1464 (codified at 8 U.S.C. § 1101(a)(15)(U)).

20. The purpose of the U-visa provisions is to "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens, and other crimes ..., while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States." Pub. L. 106-386 at § 1513(a)(2)(A). A person admitted to the program receives a lawful non-immigrant status for four years. The program includes work authorization and the ability to apply for permanent residency after three years of continuous presence in the United States.

4

21. The U-visa legislation limits the maximum number of persons accepted to 10,000 per year. 8 U.S.C. § 11084(p)(2). In years since 2010, applications have greatly exceeded this cap and a backlog of thousands of applications has developed. USCIS maintains statistics concerning wait times and posts these on its website. USCIS published processing times for I-918 petitions is currently 19 months; however, this is for a *bona fide* determination, not a waitlist determination.

22. Neither Congress nor USCIS has been blind to the potential consequences of the long wait for U-visa status. In passing the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. 109-162, 119 Stat. 2960 (2006), Congress directed the Secretary of Homeland Security to promulgate regulations to implement the statutory U-visa provisions.

23. The regulation relevant to the application of the U-visa process appears at 8 C.F.R. § 214.14(d). It provides:

    Waiting list. *All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement.* Priority on the waiting list will be determined by the date the petition was filed with the oldest petitions receiving the highest priority… USCIS **will** grant deferred action or **parole** to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list… (emphasis added).

24. USCIS's placement of petitioners and qualifying family members who are eligible for U-visas on the waitlist is mandatory per DHS regulations. Further, USCIS's grant of parole to petitioner and qualifying family members who are abroad is mandatory per DHS regulations.

25. If the petitioner and or the petitioner's qualifying family members are in the United States when they are placed on the waitlist, they are granted deferred action, and with USCIS's discretion, granted employment authorization pursuant to deferred action.

26. Under USCIS's current *de facto* policy, if the petitioner and or the petitioner's qualifying family members are outside the United States when they are placed on the waitlist, no further action is taken on their case until the final U-visa approval at which time they can enter the United States through applying for a U-nonimmigrant visa at a U.S. Consulate or Embassy abroad.

27. This policy of not taking any action towards those abroad is *de facto*, because regulations actually require USCIS to grant parole to those family members abroad. 8 C.F.R. § 214.14(d) ["USCIS **will** grant deferred action or **parole** to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list…"] (emphasis added).

5

*Parole for Wait-listed U-visa Petitioners*

28. USCIS is aware (and has been aware) of the regulatory requirement to grant U-visa petitioners and qualifying family members parole, however, it has failed to act on this requirement.

29. On June 16, 2016, the then Citizenship and Immigration Services Ombudsman[1], Maria Odom, reported to USCIS, that:

> "Due to the lack of a uniform U visa parole policy, eligible victims subject to the U visa cap often remain abroad, **despite clear Congressional intent they be afforded entry and an express regulatory obligation to be paroled into the United States while awaiting an available visa.** U petitioners granted deferred action suffer because their family members residing abroad are subject to lengthy waits to reunite in the United States." *See* Exhibit A, containing See June 16, 2016, Odom Ombudsman Recommendations "Parole for Eligible U Visa Principal and Derivative Petitioners Residing Abroad" (emphasis added).

30. The report continues:

> "The regulatory language is clear in that the agency intended there be no distinction between those eligible petitioners present in the United States and those outside the United States, specifically stating that 'USCIS *will grant deferred action or parole* to U-1 petitioners *and* qualifying family members while the U-1 petitioners are on the waiting list.'" (emphasis in original).

31. The report in fact states, "Tellingly, the plain language of the regulation indicates parole is not discretionary; parole 'will,' rather than 'may,' be granted when needed to enter the United States until a visa is available."

32. On August 18, 2016, in response to the Ombudsman's report and recommendations, USCIS affirmatively agreed with the Ombudsman and stated its intent to implement a policy consistent with the regulations. *See* Exhibit B, containing August 18, 2016, Rodriguez Memo, "Response to Recommendations on Parole for Eligible U Visa Principal and Derivative Petitioners Residing Abroad." Nonetheless, USCIS/Defendants never implemented this policy.

33. Persons may be paroled into U.S. for "urgent humanitarian reasons" or "significant public benefit." INA §212(d)(5)(A). This form of parole is also pursuant to INA §212(d)(5) and 8 CFR §212.5 and typically arises when someone is in another country and needs to enter U.S. for a medical reason, some other emergency, is a

---

[1] The Office of the Citizenship and Immigration Services Ombudsman (CIS Ombudsman) serves as a liaison between the public and USCIS. The Ombudsman's office is an independent office within DHS and are not part of USCIS.

child under 16 in need of family reunification, has a physical or mental disability, or is accessing civil judicial proceedings.

34. The INA explicitly recognizes the authority of DHS to parole into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission." When USCIS promulgated the U-visa regulations, it relied on this discretionary authority under the statute to allow for obligatory consideration of parole for principals and qualifying family members. In doing so, it recognized the significant public benefit of stabilizing victims and improving their participation in the judicial process, as well as the importance of supporting family reunification and alleviating the suffering of the crime victim.

35. Rather than complying with the regulatory directive to parole U-visa petitioners placed on the waiting list, USCIS currently advises eligible petitioners residing abroad to seek humanitarian parole to enter the United States while awaiting availability of a U-visa. Such parole is provided at the discretion of USCIS on a case-by-case basis, allowing those who would otherwise be inadmissible to enter the United States either for "urgent humanitarian reasons" or "significant public benefit." Individuals seeking parole must file Form I-131, Application for Travel Document, with a fee of $575.00 and requires the submission of evidence of financial support in the United States, which is specifically excluded for U-visa applicants in other contexts because victims often do not have financial security as a result of their victimization.

### *The Bona Fide Determination Process*

36. Recently USCIS adopted a more streamlined alternative to the waitlist for U-visa applicants. On June 14, 2021, USCIS updated its Policy Manual, to implement a new "Bona Fide Determination Process" ("BFD process"). The BFD process is now found in Volume 3, Part C, Chapter 5 of the Policy Manual. *See* USCIS, POLICY MANUAL, Vol. 3, Part C, Ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited April 24, 2023). USCIS immediately implemented the BFD process, which applies to all I-918 petitions and derivative petitions that are pending or filed on or after June 14, 2021. *Id.*

37. The BFD process outlines the following procedure. When USCIS receives an I-918 form, USCIS "first determines whether [the] pending petition is bona fide." *Id*. The manual defines "bona fide" as "made in good faith; without fraud or deceit" and explains what a bona fide determination entails. *Id.*

38. USCIS determines whether a principal petition is bona fide if it finds that:

- The principal petitioner properly filed Form I-918;
- The principal petitioner included a properly completed law enforcement certification (Form I-918B U Nonimmigrant Status Certification);

- The principal petitioner included a personal statement describing the facts of the victimization; and
- USCIS has received the results of the principal petitioner's background and security checks based on biometrics. *Id.*

39. USCIS determines a qualifying family member's petition is bona fide when:

- The principal petitioner receives a bona fide determination EAD;
- The petitioner has properly filed a complete Petition for Qualifying Family Member of U-1 Recipient (Form I-918, Supplement A);
- The petition includes credible evidence of the qualifying family relationship; and
- USCIS has received the results of the qualifying family member's background and security checks based upon biometrics. *Id.*

40. Applicants who fail to meet bona fide determination criteria are placed in line for the waitlist adjudication. *Id.*

41. Like the U-visa waitlist, USCIS's determination of whether or not an application is bona fide is mandatory per DHS regulations, not pursuant to a statute.

42. Unlike the U-visa waitlist, however, there is no regulatory requirement that parole be granted to family members outside the United States. Further, nothing in the bona fide determination process alleviates USCIS's duty to make a waitlist determination; DHS's waitlist regulations coexist with the BFD process.

## CAUSE OF ACTION

### COUNT I
### APA – Unreasonable Delay in Making a Waitlist Determination

43. That Plaintiff re-alleges and incorporates by reference the above paragraphs.

44. Federal courts "shall ... compel agency action unlawfully withheld or unreasonably delayed." § 706(1); *see also* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.").

45. Defendants have a non-discretionary duty to make a waitlist determination on Plaintiff's pending I-918 petition. USCIS is required to give notice of an approval or denial for all properly filed benefits requests. *See* 8 C.F.R. § 103.2(b)(19) (defining procedures for notification of approvals); 8 C.F.R. § 103.3 (defining notification procedures for denials). "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (emphasis added). "[B]y using the term 'shall' in requiring that the courts compel action unlawfully withheld or unreasonably delayed, Congress imposed a mandatory duty in that

8

regard." *Saini v. U.S. Citizenship & Immigr. Servs.*, 553 F. Supp. 2d 1170, 1176 (E.D. Cal. 2008).

46. DHS regulations make clear that the waitlist determination is non-discretionary. *See* 8 CFR § 214.14(d)(2) ("All eligible petitioners who, due solely to the cap, are not granted U–1 nonimmigrant status **must** be placed on a waiting list ...." (emphasis added)); *see also Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 443 (6th Cir. 2022). DHS's waitlist regulations coexist with the BFD process**.** Per DHS's regulations, principal petitioners who would be eligible for U-visas but for the 10,000-person cap must still be placed on the waitlist, notwithstanding the existence of the BFD process. In short, waitlist adjudications are nondiscretionary per DHS regulations.

47. Defendants may allege that the agency adjudicates U-visas first in, first out, but such assertions should not be taken at face value. USCIS has no consistent processing rule. That based on information and belief, while USCIS may purport to have a first-in, first-out processing of U-visas, including in making a waitlist determination, undersigned counsel's office has experienced – as have other immigration law practitioners – that the filing date of a U-visa is not determinative of when the application may be adjudicated at any adjudication stage and the actual processing times of U-visa applications - in practice - varies widely and without reason.

48. However the agency decides these matters, it is not an adjudicatory rule that can be considered reasonable given the dramatic recent increase in processing times.

49. Defendants and the Department of Homeland Security have acknowledged the unreasonable delay in adjudicating U-visas, and the mismanaged processing of same. For Example, in a January 6, 2022, the Office of the Inspector General issued a report on Defendants' management of the U-visa program, and found:

> "USCIS did not establish quantifiable and measurable performance goals to ensure the U visa program achieves its intended purpose. Additionally, USCIS did not ensure its data systems accurately captured the number of U visas granted. Without better tracking and accurate data, USCIS cannot properly monitor the program. Finally, USCIS did not effectively manage the growing backlog of petitions." *See,* Office of Inspector General, "USCIS' U Visa Program Is Not Managed Effectively and Is Susceptible to Fraud", 2022, OIG-22-10.

50. The report notes, "[t]he issues identified occurred because USCIS has not taken steps to address and implement recommendations from previous internal and external U visa program reviews." *Id.*

51. Congress has expressed its expectation that USCIS adjudicate I-918/I-918A Petitions within 180 days. "It is the sense of Congress that the processing of an immigration

9

benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b).

52. Plaintiff's I-918 petition has been pending since April 7, 2025.

53. To date, since the I-918 petition has been filed, Plaintiff has not received a waitlist determination for it. Pursuant to USCIS Policy, "[p]rincipal petitioners placed on the waiting list are eligible for employment authorization and receive a grant of deferred action ... Additionally, USCIS grants these same benefits to the qualifying family members of principal petitioners placed on the waiting list." *See* USCIS Policy Manual, Volume 3, Part C, Chapter 6 (https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-6).

54. Plaintiff's health and welfare have been impacted, and Plaintiff has been harmed as indicated *supra*, by Defendants' unreasonable delay in the waitlist process as it relates to his pending petition.

55. The protection of victims of violent and serious crimes who have the bravery to come forward without lawful status in the interest of peace and justice, which Defendants recognize as a priority, is a compelling reason for requiring USCIS to process I-918 petitions within the 180-day benchmark that Congress identified. Defendants' failure to adjudicate the I-918 Petition within 180 days after filing constitutes an unreasonable delay.

56. That Defendants have no legal basis for failing make a waitlist determination in Plaintiff's matter, and Plaintiff is harmed and aggrieved by Defendants' undue delay.

57. That Plaintiff has pleaded herein sufficient facts to show that his interests are weighty, implicate health and welfare, and that he is harmed by the extended wait for even being considered for the waitlist.

58. That Plaintiff has not sought administrative remedies in this matter, as there are no administrative remedies provided for Defendants' neglect of their duties towards him.

**PRAYER:**

WHEREFORE, Plaintiff requests that this Court grant the following relief:

59. Take jurisdiction over this matter;

60. Declare that the Defendants have violated the Administrative Procedure Act by unreasonably delaying the adjudication of Plaintiff's I-918 petition;

61. Compel the Defendants to perform their respective duties to make a waitlist determination in regard to his pending I-918 petition within 30 days;

10

62. If Plaintiff is placed on the U-visa waitlist, compel the Defendants to grant parole to Plaintiff, as required by 8 C.F.R. § 214.14(d);

63. Grant such other relief as may be proper under the circumstances, and grant attorneys' fees and costs of court pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2141(d), *et seq.*

64. The Plaintiff further prays that if the Defendants' decision is adverse to him, that the decision include justification and explanation for the action to preclude the sense of retaliation for having brought this lawsuit or for having exposed the Defendants' inefficiency to the senior officers of the District, regional, and central offices of USCIS and other interested parties within the Executive Branch.

Respectfully Submitted,

Date:   04/24/2026

*s/Christopher M. Casazza*
Christopher M. Casazza,
Bar No.: PA 309567
Palladino, Isbell & Casazza, LLC
1528 Walnut St., Suite 1701
Philadelphia, PA 19102
(215) 576-9000
Chris@piclaw.com

Attorney for Plaintiffs

11

**IN THE UNITED STATES DISTRCT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| Sanjaykumar S. Patel<br><br>v.<br><br>U.S. Citizenship and Immigration Services,<br>et al. | Case No.: |

**EXHIBIT LIST**

| **Exhibit** | | **Page** |
|---|---|---|
| **A.** | June 16, 2016, Odom Ombudsman Recommendations "Parole for Eligible U Visa Principal and Derivative Petitioners Residing Abroad" | 1-11 |
| **B.** | August 18, 2016, Rodriguez Memo, "Response to Recommendations on Parole for Eligible U Visa Principal and Derivative Petitioners Residing Abroad." | 12-14 |
| **C.** | Sanjaykumar S. Patel's I-918 Receipt Notice | 15-16 |

11



# Citizenship and Immigration Services Ombudsman

## Parole for Eligible U Visa Principal and Derivative Petitioners Residing Abroad

June 16, 2016

Due to the lack of a uniform U visa parole policy, eligible victims subject to the U visa cap often remain abroad, despite clear Congressional intent they be afforded entry and an express regulatory obligation to be paroled into the United States while awaiting an available visa. U petitioners granted deferred action suffer because their family members residing abroad are subject to lengthy waits to reunite in the United States.

Regrettably, this vulnerable group of petitioners and their qualifying family members have not received the full protection of the law. U visas – available to individuals who have suffered substantial physical or mental abuse as a result of a qualifying crime and who meet certain other criteria – are capped at 10,000 per fiscal year. Because that cap has been reached each year since 2009, eligible U petitioners are placed on a waiting list. The disparity between those living in the United States and those residing abroad is stark – while on the waiting list, U petitioners and derivative family members in the United States systematically receive deferred action and employment authorization. However, those in the same situation who reside abroad must proactively apply for parole through USCIS' Humanitarian Affairs Branch. Although some victims are able to obtain humanitarian parole and safely travel to the United States, USCIS has yet to put in place a streamlined and efficient parole process – clearly provided for under governing law.

The Ombudsman's Office outlined what a parole policy for U visa recipients on the waiting list might look like in the 2015 Annual Report to Congress. After receiving a draft of this Recommendation in March 2016, USCIS announced it is planning to implement a parole policy for this vulnerable population. I am happy to have anticipated that decision and encourage the agency to act without delay. I hope this Recommendation – the result of numerous conversations with stakeholders and USCIS officials and an in-depth analysis of the law and operational realities – provides a helpful framework as the agency plans to fulfill the promise of protection underlying the U visa program.

Sincerely,

Maria Odom
Citizenship and Immigration Services Ombudsman

### RECOMMENDATIONS

The Ombudsman recommends that:

1. Consistent with its regulations, USCIS should afford parole to eligible U petitioners and family members on the waiting list who reside abroad by creating a policy to facilitate entry into the United States while waiting for a visa to become available.
2. The parole policy created by USCIS should allow for concurrent filings of the U visa petitions and requests for parole.
3. Cases should be adjudicated at the Vermont Service Center, where U petitions currently are processed, to ensure consistent and effective adjudication, and where Congress expressly authorized the placement of the adjudication of vulnerable populations.

### REASONS FOR THE RECOMMENDATIONS

❖ The regulations clearly permit, even contemplate, the implementation of a broad parole policy for those placed on the waiting list.

❖ Providing a parole policy for this population eliminates the current disparity between those eligible petitioners residing outside the country and those within, who under the regulations may obtain parole to leave and re-enter the United States.

❖ The ability to enter on parole will reunite families and enable crime victims to participate in the investigation and prosecution of the criminal activities for which they are found eligible for U status.

# Citizenship and Immigration Services Ombudsman

## Parole for Eligible U Visa Principal and Derivative Petitioners Residing Abroad

### June 16, 2016

*The Citizenship and Immigration Services Ombudsman, established by the Homeland Security Act of 2002, provides independent analysis of problems encountered by individuals and employers interacting with U.S. Citizenship and Immigration Services, and proposes changes to mitigate those problems.*

## Parole for Eligible U Visa Principal and Derivative Petitioners Residing Abroad

### *Executive Summary*

The U nonimmigrant status (U visa) program was created by Congress as a tool to support law enforcement investigations and prosecutions while providing immigration protection for victims of serious crimes committed in the United States.[1]  U visas are available to certain victims[2] of a qualifying criminal activity who have suffered substantial physical or mental harm, and who have been helpful, are being helpful, or are likely to be helpful in the investigation or prosecution of that criminal activity.[3]  Each year since 2009, U.S. Citizenship and Immigration Services (USCIS) has approved the statutorily authorized 10,000 enforcement-certified U visa principal petitions.  USCIS also places on a waiting list thousands of victims and qualifying family members who have been deemed eligible but for whom visa numbers are not yet available.  As a result, some qualifying individuals are left waiting years for their turn to receive one of the limited visas available each fiscal year.[4]

When the statutory cap for U visas has been reached, USCIS grants deferred action to U petitioners living in the United States placed on the waiting list.  Petitioners on the waiting list who do not live in the United States may only apply for parole through USCIS if they wish to enter the United States while awaiting the availability of a U visa.  Stakeholders have brought to the attention of DHS, USCIS, and the Office of the Citizenship and Immigration Services Ombudsman (Ombudsman) the impact this has on individuals residing outside the United States who are in vulnerable situations while awaiting visa availability.

The Ombudsman recommends that USCIS develop a parole policy, similar to other parole policies

---

[1] The criminal activity must have occurred in the United States (including Indian country and US military installations), or US territories or possessions, or violated a U.S. Federal law that provides for extraterritorial jurisdiction to prosecute the offense in a U.S. Federal court. Immigration and Nationality Act § 101(a)(15)(U); 8 CFR 214.14(b).

[2] An "indirect victim" may also be eligible to petition for a U visa. Indirect victims include family members where the direct victim is deceased due to murder or manslaughter or is incompetent or incapacitated. Family members must independently meet the remaining eligibility requirements for a U visa to receive an approval.  8 CFR 214.14(a)(14).

[3] 8 U.S.C. § 1101(a)(15)(U)(i).

[4] In contrast to other capped nonimmigrant categories such as H-1B and H-2B, the significance of the U visa eligibility is underscored by the waiting list.

*www.dhs.gov/cisombudsman*

# Citizenship and Immigration Services Ombudsman

developed by the agency, designed to benefit U principal and derivative petitioners on the U visa waiting list who reside outside the United States. The Immigration and Nationality Act (INA) specifically authorizes the Secretary of Homeland Security to parole into the United States certain individuals for urgent humanitarian reasons or significant public benefit.[5] This parole authority is reflected in the regulatory scheme for eligible U petitioners placed on the waiting list.[6]

A parole policy that explicitly requires consideration of parole for eligible principal U petitioners on the waiting list would more accurately adhere to current regulations and allow those individuals the opportunity to meet their continuing obligation to cooperate with law enforcement in the United States. In addition, allowing derivative family members of waitlisted U principal petitioners to be part of this policy would serve the important family reunification and victim-centric goals of the U visa statutory scheme. By establishing a parole policy for certain eligible individuals, USCIS would reserve scarce resources currently devoted to other parole cases, facilitate cooperation from victims, and improve criminal investigations and prosecutions through increased participation by victims.

### Methodology

In conducting this review, the Ombudsman met with stakeholders nationwide to discuss the need for policies and procedures relating to the potential impact of a parole policy for eligible U petitioners. The Ombudsman also met with officials in USCIS Service Center Operations, including the Vermont Service Center (VSC), regarding operational concerns. In addition, the Ombudsman participated in meetings on this subject with USCIS' Refugee, Asylum, and International Operations Directorate, Office of Policy and Strategy, and Office of Chief Counsel, and engaged in discussions with the Bureau of Consular Affairs at the U.S. Department of State (DOS). Furthermore, the Ombudsman reviewed stakeholder requests for case assistance submitted to our office to study the potential impact of a parole policy for U petitioners placed on the waiting list who reside outside the United States.

### Background

The U visa was created by Congress through provisions of the Battered Immigrant Women Protection Act in the Victims of Trafficking and Violence Protection Act of 2000.[7] The reauthorizing legislation specifically provided protective status to encourage victims of criminal activity not only to report such activity, but to participate in the investigation and prosecution of the perpetrators of crimes against them.[8] Congress signaled its intent to afford humanitarian protection to certain foreign national victims by creating the U nonimmigrant classification and allocating

---

[5] INA § 212(d)(5)(A).

[6] 8 CFR 214.14(d)(2).

[7] Victims of Trafficking and Violence Protection Act of 2000 (VTVPA), Pub. L. No. 106-386, Title V, § 1513(b), 114 Stat. 1464, 1534 (2000).

[8] VTVPA, Title V, § 1513, 114 Stat. 1464, 1533 ("The purpose of this section is to create a new nonimmigrant visa classification that will strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens, and other crimes described in section 101(a)(15)(u)(iii) of the Immigration and Nationality Act committed against aliens, while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States.")

# Citizenship and Immigration Services Ombudsman

10,000 visas annually to this category. The originating legislation has been amended several times since 2000, but the U visa classification and the initial stated aims have remained essentially the same since inception.

The U visa may be sought by victims of certain specified crimes or similar criminal activities[9] who are assisting, have assisted, or who are likely to be helpful to law enforcement in the detection, investigation, prosecution, conviction or sentencing of criminal activity.[10] An individual may apply for a U visa by filing a Form I-918, *Petition for U Nonimmigrant Status,* with USCIS (currently the filed at the VSC), together with a Form I-918, Supplement B*, U Nonimmigrant Status Certification*. An individual seeking a U visa must file the petition with USCIS regardless of whether he or she resides in the United States or abroad.[11] After a thorough eligibility review and background check screening, USCIS grants an eligible foreign national U nonimmigrant status if there is a visa number available. If no visa number is available, the eligible petitioner is placed on a waiting list; under the applicable regulation, USCIS "*will grant deferred action or parole*" to those on the waiting list.[12]

If they are in the United States, USCIS grants principal petitioners and their qualifying derivative family members deferred action and employment authorization.[13] However, petitioners and qualifying derivative family members on the waiting list who reside abroad must wait until a visa is available to consular process with DOS and enter the United States.[14] USCIS does not automatically consider parole eligibility for U petitioners similar to the way the agency systematically considers deferred action. Stakeholders decry the impact this disparity has on vulnerable U petitioners and qualifying derivative family members.[15]

> ➤ *Regulatory Framework Explicitly Recognizes Parole Eligibility*

Since first promulgated in 2007, USCIS regulations have explicitly provided that individuals residing outside of the United States should be granted parole to enter the country while they wait for U visa availability.[16] The regulatory language is clear in that the agency intended there be no distinction between those eligible petitioners present in the United States and those outside the United States, specifically stating that "USCIS *will grant deferred action or parole* to U-1 petitioners *and* qualifying family members while the U-1 petitioners are on the waiting list."[17]

---

[9] Similar activities refers to criminal offenses in which the nature and elements of the offense is substantially similar to the statutorily enumerated list of crimes. 8 CFR 214.14(a)(9).

[10] 8 CFR 214.14(b)(3); 8 CFR 214.14(a)(5).

[11] The criminal activity must be a violation of US law or have occurred within the United States or its territories or possessions. 8 C.F.R. § 214.14(c)(1).

[12] 8 CFR 214.14(d)(2)(emphasis added).

[13] 8 CFR § 214.14(d)(2).

[14] Id.

[15] *See* Letter from ASISTA Immigration Assistance to Director Rodríguez (Oct. 23, 2014); http://www.asistahelp.org/documents/news/Parole_Policy_Letter_10_58C53CA4523D9.pdf (accessed Jan. 25, 2016).

[16] "New Classification for Victims of Criminal Activity; Eligibility for 'U' Nonimmigrant Status," 72 Fed. Reg. 53014 (Sep. 17, 2007)(codified at 8 CFR 214.14(d)(2)). The 2007 Interim Final Rule has not been replaced with a Final Rule, leaving it as the sole regulatory source for U petition adjudication.

[17] *Id.* (emphasis added). Tellingly, the plain language of the regulation indicates parole is not discretionary; parole "will," rather than "may," be granted in when needed to enter the United States until a visa is available.

# Citizenship and Immigration Services Ombudsman

Even prior to the issuance of regulations, parole was available to qualifying family members upon request.[18]

The supplementary information to the interim final rule emphasized USCIS' commitment to providing parole to eligible U petitioners placed on the waiting list:  "If a [U visa] number is not available, USCIS will notify the petitioner that, in accordance with new 8 CFR 214.14(d)(2), he or she has been placed on the waiting list, *given deferred action or parole,* and may request employment authorization.  USCIS also will grant deferred action or parole to derivative family members with an opportunity to request employment authorization."[19]  The regulation also recognized that parole could be revoked if the petitioner was no longer qualified to remain on the U waiting list as a result of fraud or misrepresentation.[20]

The INA explicitly recognizes the authority of DHS to parole into the United States "on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission."[21]  When USCIS promulgated the U visa regulations, it relied on this discretionary authority under the statute to allow for obligatory consideration of parole for principals and qualifying family members.  In doing so, it recognized the significant public benefit of stabilizing victims and improving their participation in the judicial process, as well as the importance of supporting family reunification and alleviating the suffering of the crime victim.  The regulatory language recognizes the significant humanitarian and significant public benefits of establishing a parole policy for U petitioners who have been placed on the waiting list.  More than that, the regulation specifically directs USCIS to grant parole to these petitioners, stating that the agency "will" grant deferred action or parole to petitioners on the waiting list and their qualifying family members.[22]  This language strongly supports the development of a streamlined parole policy for those who have established eligibility for U nonimmigrant status, and were placed on the U visa waiting list, either as a principal or a qualifying family member.  It mandates obligatory consideration of those on the waiting list, including derivative family members.  While mandating consideration, the language also strongly supports a grant of parole, absent negative discretionary or inadmissibility factors that should result in a denial.

---

[18] 72 Fed. Reg. at 53015.  In referring to the rights eligible U petitioners and their qualifying family members:  "Alien victims who may be eligible for U nonimmigrant status were given the opportunity to ask USCIS for interim relief pending the promulgation of implementing regulations. Family members seeking to derive immigration benefits from such aliens were accorded the same treatment. Interim relief provides alien victims with parole, stays of removal, or assessed deferred action, as well as an opportunity to apply for employment authorization."

[19] 72 Fed. Reg. at 53028 (emphasis added).

[20] "However, at its discretion, USCIS may remove a petitioner from the waiting list and terminate deferred action or parole.... For example, USCIS may terminate deferred action or parole if the petitioner is convicted of a crime that renders him or her removable. USCIS also may terminate deferred action or parole if it becomes aware that a petitioner has failed to disclose a criminal conviction or misrepresented a material fact in his or her petition." 72 Fed. Reg. at 15027.

[21] INA § 212(d)(5)(A).

[22] 8 CFR 214.14(d)(2).

# Citizenship and Immigration Services Ombudsman

> ➢ *The Current Processing of Parole Applications for U Petitioners Placed on the Waiting List Is Inadequate and Runs Contrary to the Statute and Regulations*

Rather than complying with the regulatory directive to parole U petitioners placed on the waiting list, USCIS currently advises eligible petitioners residing abroad to seek humanitarian parole to enter the United States while awaiting availability of a U visa.[23]  Such parole is provided at the discretion of USCIS on a case-by-case basis, allowing those who would otherwise be inadmissible to enter the United States either for "urgent humanitarian reasons" or "significant public benefit."[24]  As described in more detail in the Ombudsman's 2015 Annual Report, individuals seeking parole must file Form I-131, *Application for Travel Document,* with a fee of $360.[25]

Of the 1,837 humanitarian parole requests received in FY 2015, USCIS adjudicated 1,444.  Of those completed, USCIS approved 44.6 percent.[26]  At the same time, the application process is labor intensive, requiring the submission of evidence of financial support in the United States, which is specifically excluded for U, T, and VAWA applicants in other contexts because victims often do not have financial security as a result of their victimization.[27]  Collection of biometrics (fingerprints) of parolees age 14 and older through U.S. consulates abroad would still be necessary for this process, but multiple trips to the consulate for visa interviews and issuance would likely be avoided.

> ➢ *Efficacy of a Parole Policy for Both Principals and Derivative Beneficiaries*

1. **Furthering the Policy Goals of the Statutory Classification**

In creating the U visa, Congress recognized the importance of providing immigration protection to foreign nationals who have been victims of qualifying criminal activity.  In order to effectively protect the public, law enforcement officials must be aware of criminal activity. The U visa encourages members of immigrant communities to report criminal activity by providing them with immigration protection. Thus, U visas remain a powerful tool to enable victims to access and aid law enforcement.

*A Parole Policy is Justified by Significant Public Benefit*. Allowing eligible crime victims to be paroled in or remain in the United States aids investigators and prosecutors, as victims have an

---

[23] Information provided by USCIS (Mar. 6, 2015).

[24] INA § 212(d)(5)(A), 8 CFR 212.5(b).

[25] Ombudsman's Annual Report 2015, p. 65; USCIS Webpage, "Humanitarian Parole" (Aug. 17, 2015); http://www.uscis.gov/humanitarian/humanitarian-parole (accessed Jan. 26, 2016).

[26] Information provided by USCIS (November 5, 2015). *See also* USCIS "Humanitarian Parole Program" (Feb. 2011); http://www.uscis.gov/sites/default/files/USCIS/Resources/Resources for Congress/Humanitarian Parole Program.pdf (accessed Jan. 25, 2016).  USCIS does not publish statistics or provide further breakdowns regarding humanitarian parole so it is not possible to determine how many of these were for U visa-eligible individuals.

[27] Although parole authority is shared by USCIS, U.S. Immigration and Custom Enforcement (ICE) and U.S. Customs and Border Protection (CBP), USCIS generally adjudicates parole requests for individuals outside the United States, including those for U petitioners on the waiting list.  See Memorandum of Agreement Between USCIS, ICE, and CBP Coordinating the Concurrent Exercise of the Secretary's Parole Authority" (Sep. 29, 2008); https://www.ice.gov/doclib/foia/reports/parole-authority-moa-9-08.pdf (accessed May 27, 2016).

opportunity to fulfill their continuing responsibility to cooperate with law enforcement. Allowing the eligible victim to be where the crime took place or where it is being prosecuted permits in-person interviewing and examination of evidence, in court testimony, identification of defendants, and confrontation of witnesses.

In addition, providing a mechanism for U petitioners on the waiting list to be reunified with their immediate family members in the United States serves a "significant public benefit."[28] Family reunification allows the victim to focus attention on the prosecution and on rebuilding his or her life in the wake of the criminal activity. Given the substantial wait times for U visas, timely reunification for many U petitioners on the waiting list only can occur through parole. Furthermore, a parole policy designated for petitioners on the waiting list likely will encourage participation by victims who qualify for U visas but would not otherwise step forward because they are abroad.

*A Parole Policy is Justified by its Humanitarian Benefits.* The reunification of U petitioners on the waiting list with their immediate family members in the United States also addresses urgent humanitarian concerns.[29] As discussed in our 2015 Annual Report, U petitioners on the waiting list who are abroad may be subject to violence and harm in the country in which they reside. According to stakeholders, derivative grantees on the waiting list who seek parole for humanitarian reasons are often minor children of the principal petitioner on the waiting list who may be at high risk of becoming victims as well. Family reunification has been recognized by USCIS as a cornerstone of parole.[30]

## 2. Operational Benefits of a Parole Policy for U Petitioners

Under the current structure, limited agency resources are allocated to the adjudication of individual requests for parole. Through that process, the agency evaluates eligibility by considering evidence and applying a set of discretionary criteria. Congress and agency regulations have already authorized the consideration of parole for U petitioners on the waiting list as a significant public benefit and for humanitarian reasons without such labor intensive adjudication. A parole policy mandating consideration across the class of those eligible petitioners on the waiting list would help the agency process requests from these crime victims and their documentation in a more streamlined fashion.

By considering parole requests concurrently, USCIS touches the factual issues only once, rather than two times, months or years apart. Parole should be considered in light of the request for status, and not separate from the substantive eligibility determination. Requiring U petitioners on the waiting list to proactively request parole independently from the underlying U visa adjudication requires DOS to coordinate aspects of the parole and visa process through U.S. consulates abroad, such as collecting biometrics of applicants at U.S. consulates, and collecting information and answering questions from the applicant abroad. A streamlined parole policy would ease

---

[28] INA 212(d)(5)(A).
[29] INA § 212(d)(5)(A).
[30] USCIS Press Release, "DHS to Implement Haitian Family Reunification Parole Program," October 17, 2014, https://www.uscis.gov/news/dhs-implement-haitian-family-reunification-parole-program (accessed February 17, 2016).

operational burdens on both USCIS and DOS.

## *Options for a U Visa Parole Policy*

USCIS has expressed interest in implementing a parole policy for petitioners on the waiting list.[31] Concerns expressed by the agency included operational costs, particularly given the significant workload already carried to serve vulnerable populations, and ensuring the identity/eligibility of those seeking parole, as well as working into any presumptive program a higher level of integrity for a "benefit" that confers no actual status on the recipient beyond temporary entry to the United States pending availability of the U visa. After the Ombudsman submitted a draft of this Recommendation to USCIS, the agency reiterated its commitment to a parole policy with stakeholders.[32]

USCIS may look to recently implemented parole for answers to some of these concerns, including the Haitian Family Reunification Parole Program, Cuban Family Reunification Parole Program, and Central American Minors (CAM) Refugee/Parole Program, which require biometrics collection for identity verification and enhanced background checks to ensure program integrity without overly burdening applicants.[33]

While it may appear the creation of a U parole policy will require USCIS to increase its workload with respect to U petitions, it is already performing this work through both the VSC and the Humanitarian Affairs Branch (HAB). By streamlining the process, only one USCIS adjudicator has to expend resources reviewing a complete package that includes both the petition and the parole request. USCIS already allows concurrent filings of certain humanitarian benefit requests, such as with Forms I-918 and I-765 and Forms I-821D and I-765.[34] Similarly, the Form I-131 (with its concomitant fee) can be submitted simultaneously with the U visa petition. If a Service Center then controls adjudication of the parole as it does the petitions, this provides the HAB with the ability to focus its resources on other applications that require more labor-intensive review.

Stakeholders have also reported concerns about the requirement of affidavits of support in a parole requests for U petitioners on the waiting list. The current parole application requires the affidavit of support to ensure the parolee has adequate means to survive in the United States. However, the INA at section 212(a)(4)(E)(iii) establishes that U visa applicants are not subject to a public charge ground of inadmissibility. A parole policy for this population should not hold applicants to a

---

[31] Meeting between USCIS and stakeholders with the Ombudsman, September 29, 2015.

[32] Advanced Issues on T & U Visas and the Violence Against Women Act (VAWA) Webinar hosted by USCIS, May 18, 2016.

[33] *See, e.g.*, USCIS Press Release, "DHS To Implement Haitian Family Reunification Parole Program," October 17, 2014, https://www.uscis.gov/news/dhs-implement-haitian-family-reunification-parole-program (accessed February 17, 2016); USCIS Web page, "The Cuban Family Reunification Parole Program," https://www.uscis.gov/humanitarian/humanitarian-parole/cuban-family-reunification-parole-cfrp-program (accessed February 17, 2016); USCIS Web page, "In-Country Refugee/Parole Processing for Minors in Honduras, El Salvador and Guatemala (Central American Minors‑CAM)," https://www.uscis.gov/CAM (accessed March 17, 2016).

[34] Form I-918, Petition for U Nonimmigrant Status; Form I-821D, Consideration of Deferred Action for Childhood Arrivals; Form I-765, Application for Employment Authorization.

higher standard than the U visa eligibility criteria; therefore, a parole process that does not include an affidavit of support requirement would better align with the spirit of the law.

## *Recommendation*

**The Ombudsman recommends that:**

1. **Consistent with its regulations, USCIS afford parole to eligible U nonimmigrant petitioners on the waiting list by creating a policy for petitioners residing abroad to enter the United States while waiting for a visa to become available.** USCIS regulations allow U petitioners placed on the waiting list be paroled into the United States.[35] USCIS does parole some U petitioners on the waiting list in accordance with the regulations, albeit in an inefficient, inconsistent way, and under stricter requirements. A U visa parole policy would ensure timely family reunification, provide a more transparent and efficient process for the public, and ultimately further both the regulatory and statutory goals under the TVPA and subsequent reauthorizations to support law enforcement investigations and prosecutions.

   A parole policy would address the current inconsistent treatment of U petitioners on the waiting list based on their physical location at the time they are placed on the waiting list. The purpose and goals behind the U visa itself demonstrate that this population is especially vulnerable and deserving of special protection.[36] Without the implementation of a U-specific parole policy, U petitioners on the waiting list will continue to be exposed to potential harm while they wait, sometimes for years, for a visa to become available.

2. **The parole policy created by USCIS must allow for concurrent filings of the U visa petition and request for parole.** Consistent with its regulations, USCIS should allow U visa petitioners on the waiting list to request parole concurrently with their Form I-918 filing. Concurrent filings are permitted in other programs, which improves efficiency by allowing the USCIS adjudicator to evaluate the facts and eligibility criteria of the U petition only once. Likewise, petitioners who have already been placed on the U waiting list should be permitted to subsequently file parole applications. The need for parole for family reunification will exist as long as a backlog for the limited number of visas exists.

---

[35] 8 CFR 214.14(d)(2): "USCIS will grant deferred action or parole to U-1 petitioners and qualifying family members while the U-1 petitioners are on the waiting list."

[36] VTVPA, Pub. L. No. 106-386, Title V, §1101. *See also* "New Classification for Victims of Criminal Activity; Eligibility for 'U' Nonimmigrant Status," 72 Fed. Reg. 53014 (Sept. 17, 2007).

# Citizenship and Immigration Services Ombudsman

3. **The Ombudsman further recommends that these cases be adjudicated at the VSC, where U nonimmigrant status adjudications currently are processed, to ensure consistent and effective adjudication, and where Congress expressly authorized the placement of the adjudication of relief for vulnerable populations.** Congress has asserted that VSC's VAWA Unit should continue its work with vulnerable populations.[37] A parole policy is an extension of that activity. Continuity would ensure that U petitioners on the waiting list and the nongovernmental organizations that service this vulnerable population have a single point of contact. It would also enhance the process for those filing as part of a U based parole policy.

---

[37] The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), Pub. L. 110-457, 122 Stat. 5084, § 238.

B

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director*
Washington, DC  20529



U.S. Citizenship
and Immigration
Services

August 18, 2016

TO:           Maria Odom
              Citizenship and Immigration Services Ombudsman

FROM:         León Rodríguez
              Director

SUBJECT:      **Response to Recommendations on Parole for Eligible U Visa
              Principal and Derivative Petitioners Residing Abroad**

I would like to thank you for your recommendations to U.S. Citizenship and Immigration
Services (USCIS) regarding parole for principal U nonimmigrant status (U visa) petitioners on
the waiting list who reside abroad and any qualifying derivative family members who reside
abroad.  USCIS welcomes the opportunity to respond to the three recommendations.

## Recommendations

You recommend that:

1. USCIS should afford parole to eligible U visa petitioners on the waiting list and
   qualifying derivative family members who reside abroad by creating a policy to facilitate
   entry into the United States while waiting for a visa to become available;
2. The parole policy should allow for concurrent filings of the U visa petitions and requests
   for parole; and
3. Cases should be adjudicated at the Vermont Service Center, where U visa petitions are
   currently processed, to ensure consistent and effective adjudication, and where Congress
   expressly authorized the placement of the adjudication of vulnerable populations.

## USCIS' Response to the Your Recommendations

1. Afford parole to eligible U visa petitioners on the waiting list and qualifying derivative
   family members who reside abroad.

   USCIS Response:  USCIS agrees.

As acknowledged in your recommendation, USCIS plans to implement a policy for principal
U visa petitioners on the waiting list who reside abroad and any qualifying derivative family
members who reside abroad to request parole to enter the United States while the principal

Response to Recommendations on Parole for U Visa Principal and Derivative Petitioners
Page 2

U visa petitioner is on the waiting list.  USCIS recognizes that the U visa provides lawful immigration status to a vulnerable population, and USCIS believes that this population will be better served through an established and streamlined process to request parole.

USCIS is creating a stand-alone application form that this victim population will be able to use to request parole.  USCIS' policy regarding parole for the victim population will also include safe address protections.  USCIS expects the new form and policy guidance to be completed in Fiscal Year 2017.

2.  Allow for concurrent filings of the U visa and the request for parole.

USCIS Response:  USCIS is considering this recommendation.

USCIS is currently evaluating various options regarding the parole application process.  USCIS will consider the suggestion to allow parole applications to be filed both with the U visa petition and after the petitioner has been placed on the waiting list.

3.  Parole requests should be adjudicated at the Vermont Service Center.

USCIS Response:  USCIS is considering this recommendation.

USCIS is currently assessing the operational impact of the parole policy and the anticipated resources that this policy will require.  As previously noted, USCIS is working to develop and implement safe address protections as part of the parole application process for the victim population.  While USCIS cannot, at this time, specify which service center will adjudicate the parole requests, USCIS acknowledges the importance of consistent and effective adjudication of these requests.

C

**Department of Homeland Security**
U.S. Citizenship and Immigration Services



Form I-797C, Notice of Action

| THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT. |
|---|

| Receipt Number<br>LIN2529750984 | | Case Type<br>I918 - PETITION FOR U NONIMMIGRANT STATUS |
|---|---|---|
| Received Date<br>04/07/2025 | Priority Date | Applicant A213 083 873<br>PATEL , SANJAYKUMAR SOMABHAI |
| Notice Date<br>08/20/2025 | Page<br>1 of 2 | Beneficiary A213 083 873<br>PATEL , SANJAYKUMAR SOMABHAI |

| | |
|---|---|
| PALLADINO ISBELL AND CASAZZA LLC<br>c/o CHRISTOPHER MICHAEL CASAZZA<br>1528 WALNUT STREET STE 1701<br>PHILADELPHIA PA 19102 | **Notice Type:** Receipt Notice<br>Fee Waived |

We have received the application or petition ("your case") listed above. This notice only shows that your case was filed on the "Received Date" listed above. It does NOT grant you any immigration status or immigration benefit, and it is not evidence that your case is still pending. We will notify you in writing when we make a decision on your case or if we need additional information.

Please save this and any other notices about your case for your records. You should also keep copies of anything you send us, as well as proof of delivery. Have these records available when you contact us about your case.

<u>Contacting the Agency</u>

If your safe mailing address changes and you do not have an attorney of record or representative on your case you must submit your address change in writing, with your signature, to the center with jurisdiction over your filing. Otherwise, you might not receive notice of your action on this case. If any other changes need to be made you also must contact the center with jurisdiction over your filing in writing. Please include what changes need to be made and your signature.

If any of the information in your notice is incorrect or you have questions about your case, you can reach USCIS at www.uscis.gov/contact, utilizing the available case inquiry options for "Inquiries for VAWA, T, and U Filings."

SCOPS TEXAS FACILITY
U.S. Citizenship & Immigration Services
6046 N BELT LINE RD.
IRVING, TX 75038-0001

Processing time - Processing times vary by case type. Go to www.uscis.gov to see the current processing times listed by case type and office.

- View your case status on our website's Case Status Online page.
- You can also sign up to receive free email updates as we process your case.
- During most of the time while your case is pending, the processing status will not change. This is because we are working on cases that were filed before your case.
- When we make a decision on your case or if we need something from you, we will notify you by mail and update our systems.
- If you do not receive an initial decision or update from us within our current processing time, visit our website at www.uscis.gov for options for submitting an inquiry.

Biometrics - We require biometrics (fingerprints, a photo, and a signature) for some types of cases. If we need biometrics from you, we will send you a SEPARATE appointment notice with a specific date, time and place for you to go to a USCIS Application Support Center (ASC) for biometrics processing. You must wait for that separate appointment notice and take it (NOT this receipt notice) to your ASC appointment along with your photo identification. Acceptable kinds of photo identification are:

- A passport or national photo ID issued by your country,
- A driver's license,
- A military photo ID, or
- A state-issued photo ID card.

If you receive more than one ASC appointment notice (even for different cases), take them both to the first appointment date.

Return of Original Documents - Use Form G-884, Request for the Return of Original Documents, to request the return of original documents submitted to establish eligibility for an immigration or citizenship benefit. You only need to submit one Form G-884 if you are requesting multiple documents contained in a single USCIS file. However, if the requested documentation is in more than one USCIS file, you must submit a separate request for each file. (For

Please see the additional information on the back. You will be notified separately about any other cases you filed.

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

SCOPS TEXAS FACILITY
U.S. CITIZENSHIP & IMMIGRATION SVC
6046 N BELT LINE RD.
IRVING TX 75038-0001

USCIS Contact Center: www.uscis.gov/contactcenter



If this is an interview or biometrics appointment notice, please see the back of this notice for important information.      Form I-797C   10/13/21



**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

| THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT. |
| --- |

| Receipt Number<br>LIN2529750984 | | Case Type<br>I918 - PETITION FOR U NONIMMIGRANT STATUS |
| --- | --- | --- |
| Received Date<br>04/07/2025 | Priority Date | Applicant  A213 083 873<br>PATEL , SANJAYKUMAR SOMABHAI |
| Notice Date<br>08/20/2025 | Page<br>2 of 2 | Beneficiary A213 083 873<br>PATEL , SANJAYKUMAR SOMABHAI |

example: If you wish to obtain your mother's birth certificate and your mother's/father's marriage certificate, both of which are in the USCIS file that pertains to her, submit one Form G-884 with your mother's information.)

NOTICE: The information you provide on and in support of applications and petitions is submitted under the penalty of perjury. USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules, regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will follow the law in determining whether to provide you (and the legal representative listed on your Form G-28, if you submitted one) an opportunity to address that information before we make a formal decision on your case or start proceedings.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

SCOPS TEXAS FACILITY
U.S. CITIZENSHIP & IMMIGRATION SVC
6046 N BELT LINE RD.
IRVING TX 75038-0001

USCIS Contact Center: www.uscis.gov/contactcenter



If this is an interview or biometrics appointment notice, please see the back of this notice for important information.          Form I-797C   10/13/21

JS 44   (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Sanjaykumar S. Patel

**DEFENDANTS**

U.S. Citizenship and Immigration Services, Joseph B. Edlow, Marco Rubio

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Christopher M. Casazza, Palladino, Isbell & Casazza, 1528 Walnut St, Ste 1701, Philadelphia PA 19102 215-990-7741

Attorneys *(If Known)*

US Attorney's Office

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☒ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine / ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 550 Civil Rights | ☒ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
5 U.S.C. § 702

Brief description of cause:
Plaintiff's U-Visa petition has been pending an unreasonable amount of time without a waitlist determination

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
04/24/2026

SIGNATURE OF ATTORNEY OF RECORD
s/ Christopher M. Casazza

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)   Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)   County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)   Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.   Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.   Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.   Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.   Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.   Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.   Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.   Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.