**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEPHANIE SILVIS**, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>**WEST SHORE HOME, LLC,**<br><br>      Defendant. | No.<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

1. Stephanie Silvis ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant West Shore Home ("Defendant").

2. This class action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

4. Now, Plaintiff brings this class action on behalf of herself, and all others harassed by Defendant and its unlawful telemarketing tactics.

## PARTIES

5. Plaintiff, Stephanie Silvis, is a natural person and a citizen of Washington. She is domiciled in Washington (where she intends to remain).

6.    Defendant, West Shore Home, is a LLC incorporated in Pennsylvania and with its principal place of business at 3 Crossgate Drive, Mechanicsburg, PA 17050.

## JURISDICTION AND VENUE

7.    This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

8.    This Court has personal jurisdiction over Defendant because it is headquartered in Pennsylvania, regularly conducts business in Pennsylvania, and has sufficient minimum contacts in Pennsylvania.

9.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND

*The Telephone Consumer Protection Act*

10.    Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

11.    As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

12.    The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(c)(5).

13.    For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(b)(3), (c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id.*

14.    Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

15.    The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

16.    The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id*.

17.    For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

*Plaintiff Stephanie Silvis*

18.    Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

19.    Plaintiff's residential telephone number is 724-840-XXXX (the "telephone number").

20.    Plaintiff's telephone number, 724-840-XXXX, has been on the National Do Not Call Registry since April 2005.

21.    Plaintiff used her telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments) at all relevant times.

22.     Plaintiff has never received reimbursement from any business for her telephone number.

23.     Plaintiff is not a current or former customer of Defendant.

24.     Plaintiff has never had a business relationship with Defendant.

25.     Plaintiff never provided her telephone number to Defendant.

26.     Plaintiff has never consented to receive the alleged telephone solicitations from Defendant.

### *Defendant Engages in Telemarketing*

27.     Defendant is a home remodeling and home improvement company. Defendant represents that it offers services including bathroom remodeling, window and door replacement, and flooring installation to residential customers nationwide.[1]

28.     Simply put, Defendant sells home remodeling services.

29.     A screenshot Defendant's website is provided below.[2]



---

[1] *West Shore Home,* https://westshorehome.com/about-us/e (last visited May 2, 2026).
[2] *Id.*

30.     Notably, in Defendant's industry, telemarketing is a widespread and standard practice.[3] Indeed, the Bureau of Labor Statistics has reported that the "Residential Building Construction" industry has one of the highest levels of telemarketing.[4]

31.     To sell its home remodeling services, Defendant (or its third-party agents) engages in telemarketing campaigns.

32.     Defendant has already received numerous complaints about its unlawful telemarketing practices.

33.     Screenshots of consumer complaints on Google are provided below.[5]



---

[3] *Occupational Employment and Wage Statistics: Telemarketers*, U.S. CENSUS BUREAU (May 2023) https://www.bls.gov/oes/2023/may/oes419041.htm.

[4] *Id.*

[5] *West Shore Home,* GOOGLE MAPS, https://www.google.com/maps/place/West+Shore+Home/@40.2003319,-81.8451739,7z/data=!4m12!1m2!2m1!1sWest+Shore+Home!3m8!1s0x89c8e829c5ebfe53:0xbeec503548e16f2f!8m2!3d40.2003319!4d-76.9672442!9m1!1b1!15sCg9XZXN0IFNob3JlIEhvbWUiA4gBAVoRIg93ZXN0IHNob3JlIGhvbWWSARJiYXRocm9vbV9yZW1vZGVsZXKqAVwKDS9nLzExdmJ6eTVyemsQASoTIg93ZXN0IHNob3JlIGhvbWUoADIfEAEiG6XpNIYP9kIXwHQt1-57o7nJyZvAtWi8HIHccDITEAIiD3dlc3Qgc2hvcmUgaG9tZeABAA!16s%2Fg%2F124sqsv4x?entry=ttu&g_ep=EgoyMDI1MDkxNS4wIKXMDSoASAFQAw%3D%3D   (last visited May 2, 2026).

---



L T 1983 (LT1983)
Local Guide · 26 reviews · 1 photo

★☆☆☆☆  6 years ago

They keep **call**ing .  If you are a previous coustomer they will **call** almost every day.   Even if you say not to **call** again They will keep **call**ing.   Since they are desperate for new jobs they will keep harassing. Marking the **call**s as ... More

👍 4        ⟨ Share

Response from the owner  6 years ago
Hello, Lauren. It looks like we only called you twice in the past few months. I understand that you were frustrated with the calls. However, is it really worth a one star review after we provided you an excellent product and installation?



kismet pa
59 reviews

★☆☆☆☆  10 years ago

Had I known that they were relentless sales people first and foremost I would have never contacted them. I asked them from the beginning to not **call** me, to please contact me via email.  They immediately started **call**ing 2-4 times a day...during my work hours when I'm not available to take the **call**.  All of the other contractors I contacted did exactly what I asked of them and I decided to go with the services of another company, not West Shore b/c they've never once emailed me.  At one point, after about 26 phone **call**s I told West Shore this and asked them to stop **call**ing. THEY STILL **CALL** DAILY.  They just want to "check in and see if I have any other window or door needs." Hate to break it to you, but by **call**ing people dozens of times a week you're NOT going to get their business.

👍 8        ⟨ Share

*Defendant violated the TCPA*

34.    As explained below, Defendant violated the TCPA numerous times.

35.    Beginning on September 15, 2025, Defendant used the telephone number (412) 790-6132 and called Plaintiff's telephone number.

36. In other words, Defendant called Plaintiff's telephone number and attempted to solicit Plaintiff to purchase home remodeling services.

37. Defendant placed numerous telephonic solicitations to Plaintiff's telephone number—including, on information and belief, the following:

a. September 15, 2025, at 8:43 a.m. PST from (412) 790-6132

b. September 16, 2025, at 8:12 a.m. PST from (412) 790-6132

38. The aforementioned telephone solicitations to Plaintiff were unwanted, nonconsensual encounters, as Plaintiff never provided her consent or requested the calls.

39. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed.

40. On information and belief, Defendant will continue to place numerous telephonic solicitations to Plaintiff and Class Members.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

> **National Do-Not-Call Registry Class**: All persons in the United States (1) whose telephone numbers were on the National Do-Not-Call Registry for at least 31 days (2) but then received two or more telephone calls from, or on behalf of, Defendant (3) during a 12-month period and (4) within four years prior to the commencement of this litigation and up until the date of trial.

42. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

43.     Plaintiff reserves the right to amend the class definition.

44.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

45.     **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

46.     **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

47.     **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarking practices.

48.     **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

49.     **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

    a.     whether Defendant violated the TCPA;

    b.     whether Defendant violated the TCPA willfully and knowingly;

c.     whether Plaintiff is/are entitled to statutory damages;

d.     whether Plaintiff is/are entitled to treble damages;

e.     whether Defendant should be enjoined from further TCPA violations.

50.     **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**Violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do-Not-Call Registry Class)**

51.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

52.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telemarketing solicitations, except for emergency purposes, to the Plaintiff and the National Do-Not-Call Class despite their numbers being on the National Do-Not-Call Registry.

53.     Defendant violated the TCPA willfully or knowingly.

54.    Plaintiff and National Do-Not-Call Class Members seek statutory damages of $500 (or $1,500) for each unlawful telephone call.

55.    Plaintiff and National Do-Not-Call Class Members seek injunctive relief prohibiting Defendant from making further unlawful telephonic solicitations to Plaintiff and National Do-Not-Call Class Members.

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the Class, appointing Plaintiff as class representative/representatives, and appointing her counsel to represent the Class;

B.    Awarding statutory damages to Plaintiff and Class Members;

C.    Providing the injunctive relief requested herein; and

D.    Granting such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

10

Date: May 2, 2026                    Respectfully submitted,


By: /s/ *Jeremy C. Jackson*
Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com



Carly M. Roman*
croman@straussborrelli.com
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109

*Pro hac vice forthcoming*
*Attorneys for Plaintiff and Proposed Class*