**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NILA COBB,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **OFFICE OF THE LIEUTENANT** | : | |
| **GOVERNOR OF PENNSYLVANIA,** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Nila Cobb (hereinafter "Plaintiff"), by and through her attorney, Koller Law,

LLC, bring this civil matter against Office of the Lieutenant Governor of Pennsylvania (hereinafter

"Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"),

the Pennsylvania Human Relations Act ("PHRA") and the Family and Medical Leave Act of 1993,

as amended ("FMLA").  In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Enola, PA.

3. Upon information and belief, Defendant Office of the Lieutenant Governor of Pennsylvania

   is the Office of the Lieutenant Governor of Pennsylvania with a location and headquarters

   at 200 Main Capitol Building, Harrisburg, PA 17120.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweeks in the current or preceding year relevant to the matter at issue.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted her administrative remedies under the ADA and the PHRA.

15. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on January 22, 2025, alleging disability discrimination and retaliation against Defendant.

16. The Charge was assigned a Charge Number 530-2025-02939 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated February 9, 2026.

18. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

20. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. On or about August 7, 2023, Defendant hired Plaintiff in the position of Communications Assistant.

23. Plaintiff was well qualified for his position and performed well.

## PLAINTIFF'S SUPERVISOR SUBJECTED PLAINTIFF TO A HOSTILE WORK ENVIRONMENT

24. Upon the start of her employment, Kirsten Alvanitakis, Communications Director, subjected Plaintiff to workplace bullying, microaggressions, and sabotage.

25. Alvanitakis initially spoke to Plaintiff in a demeaning manner and later escalated their behavior by alienating her from essential workplace communications.

26. Alvanitakis excluded her from email chains relevant to her job responsibilities, and involved her in projects at the last minute, seemingly creating circumstances to obstruct Plaintiff from completing tasks effectively and efficiently.

27. Additionally, Alvanitakis created a hostile workplace environment by raising her voice and slamming her hands on her desk in front of office staff when Plaintiff asked work-related questions.

4

28. During Teams meetings, Alvanitakis would speak to Plaintiff as if she had little comprehension, which occurred in front of Jason Henry, Chief of Staff, and members of staff.

29. Both parties expressed that this behavior was inappropriate and made them feel uncomfortable.

## PLAINTIFF COMPLAINED ABOUT ALVANITAKI'S CONDUCT

30. In or around early 2024, Plaintiff raised her concerns about Alvanitakis's behavior to Jason Henry, Chief of Staff.

31. Initially, Henry stated that he would act as a middleman for communications between Alvanitakis and Plaintiff.

## ALVANITAKIS RETALIATED AGAINST PLAINTIFF FOLLOWING HER COMPLAINT

32. However, seemingly in retaliation for raising concerns to Henry, Alvanitakis's behavior worsened as she began assigning Plaintiff miniscule, frivolous tasks in an apparent effort to negatively affect Plaintiff's work performance.

## PLAINTIFF REQUESTED A TITLE CHANGE DUE TO HER WORKLOAD AND LACK OF SUPPORT FROM ALVANITAKIS WHICH DEFENDANT DENIED

33. On or about August 26, 2024, Plaintiff asked Henry for a title change due to the high amount of work she was handling at Defendant without support from her supervisor, often managing projects independently or in collaboration with other agencies.

34. She emphasized the high quality of her work, which was well-received, appreciated, and valued by colleagues and other agencies.

35. Plaintiff believed her then-title, Communications Assistant, did not accurately reflect the scope of her responsibilities and that her title should align with the work she was performing.

36. Henry informed her that the Lieutenant Governor was not interested in changing her title.

**PLAINTIFF COMPLAINED TO THE LIEUTENANT GOVERNOR REGARDING ALVANITAKIS'S CONDUCT, BUT IT WAS DISMISSED**

37. Plaintiff also raised concerns about Alvanitakis's behavior to Lieutenant Governor Austin Davis.

38. However, the Lieutenant Governor immediately dismissed Plaintiff's concerns by stating that he did not believe Alvanitakis would harass or sabotage Plaintiff.

**PLAINTIFF IS DISABLED**

39. Importantly, Plaintiff has the serious health condition of Major Depressive Disorder ("MDD") which is considered to be a disability under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

40. The major life activities affected by MDD include, but are not limited to, concentrating, thinking and communicating.

**PLAINTIFF TOOK FMLA LEAVE DUE TO HER DISABILITY SYMPTOMS BEING EXACERBATED BY ALVANITAKIS'S CONDUCT**

41. Alvanitakis's conduct exacerbated the symptoms Plaintiff's MDD.

42. On or about August 30, 2024, Plaintiff requested Family and Medical Leave Act ("FMLA") leave due to her exacerbated disability symptoms.

43. Deb Wolfe, Human Resources Medical Leave Coordinator, approved this leave.

44. Originally, Plaintiff was set to return to work October 1, 2024.

6

45. Plaintiff extended her FMLA leave for one (1) week.

46. Wolfe approved Plaintiff to return to work at full duty on October 10, 2024.

## PLAINTIFF RETURNED FROM HER FMLA LEAVE, BUT WAS SENT HOME BECAUSE HENRY BELIEVED SHE HAD RESIGNED

47. On or about October 10, 2024, Plaintiff reported to work.

48. However, Plaintiff's employee badge would not scan in.

49. Plaintiff called Henry.

50. Henry stated he thought Plaintiff quit because she had taken some personal belongings off her desk during her FMLA leave.

51. Plaintiff explained she just took what she needed home and put some other belongings inside her desk for when she was gone.

52. Henry told Plaintiff to go home for the day and call Human Resources to discuss the situation.

## PLAINTIFF CALLED WOLFE ABOUT BEING SENT HOME AND WAS TOLD THAT SHE WOULD SPEAK WITH MANAGEMENT

53. Plaintiff called Wolfe while still at Defendant and explained the situation.

54. Wolfe stated that she had all the proper paperwork documenting her FMLA leave and disability.

55. Wolfe informed Plaintiff that that she would call her back after speaking with management.

## PLAINTIFF CALLED HENRY WHO REQUESTED TIME TO ADDRESS THE SITUATION

56. After speaking with Wolfe, Plaintiff called Henry again.

57. Henry stated that medical leave procedures had not been followed but did not provide any further details.

7

58. Additionally, Henry requested time to address the situation, suggesting a mistake may have occurred without elaborating.

### WOLFE CALLED PLAINTIFF AND INSTRUCTED HER TO GO HOME

59. Wolfe called Plaintiff back and informed her that her assignment for the day was to go home.

60. Plaintiff went home.

### PLAINTIFF FOLLOWED UP REGARDING BEING SENT HOME, BUT DID NOT RECEIVE A RESPONSE

61. Plaintiff sent a follow up email to Wolfe, Matthew Updegrove, Human Resource Analyst 5, and Henry about being sent home.

62. Plaintiff summarized the events and asked if anyone needed any additional FMLA leave paperwork from her.

63. Plaintiff's email went unanswered and she did not receive an update on when she should return to work.

64. Plaintiff sent Henry a text message at the end of the workday asking when she should report to the office and did not receive an answer.

### HENRY INFORMED PLAINTIFF THAT HUMAN RESOURCES WOULD CONTACT HER

65. On or about October 11, 2024, Henry responded to Plaintiff's text message stating that someone from Human Resources would call her to sort everything out.

### HUMAN RESOURCES CALLED PLAINTIFF AND INFORMED HER THAT SHE COULD EITHER RESIGN OR TAKE A "NO LONGER NEEDED" FROM EMPLOYMENT

66. On or about October 11, 2024, Natalie Sowers, Human Resource Analyst 3, called Plaintiff.

67. Sowers stated that they were calling to discuss Plaintiff's separation from the Commonwealth, stating that she could either resign or take a "no longer needed" from employment with Defendant.

**PLAINTIFF REQUESTED ADDITIONAL INFORMATION AND TIME TO DECIDE, BUT SOWERS DENIED HER REQUEST**

68. When Plaintiff asked for additional information, Sowers stated that they were only to discuss Plaintiff's separation from the Commonwealth and could not provide any additional explanation.

69. Plaintiff asked for time to decide, expressing that she was shocked and confused by the situation.

70. Sowers informed her that if she did not decide immediately, a decision would be made on her behalf.

**PLAINTIFF INFORMED DEFENDANT THAT SHE DID NOT WANT TO RESIGN**

71. Plaintiff sent an email to Lieutenant Governor Davis, Updegrove, Wolfe and Henry after the call stating that she did not want to resign from Defendant.

**DEFENDANT TERMINATED PLAINTIFF**

72. Thereafter, Updegrove sent Plaintiff a termination letter, stating that her services were no longer needed.

73. However, Plaintiff's exact position was posted online as an open position one (1) week later.

74. Defendant discriminated against Plaintiff due to her disability, subjected Plaintiff to a hostile work environment and retaliated against Plaintiff for engaging in protected activity in violation of the ADA and the PHRA.

9

75. In addition, Defendant retaliated against Plaintiff for utilizing her rights under the FMLA in violation of the FMLA.

76. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

77. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

78. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

79. Plaintiff was qualified to perform the job.

80. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

81. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

82. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

83. Plaintiff's disability motivated Defendant's decision to take adverse actions against Plaintiff.

84. The purported reason for Defendant's decision is pretextual.

85. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

86. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

87. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – DISABILITY DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

88. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

89. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

90. Plaintiff was qualified to perform the job.

91. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

92. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

93. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

94. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

95. The purported reason for Defendant's decision is pretextual.

96. Others similarly situated but outside of Plaintiff's protected class were treated more

favorably.

97. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

98. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

99. Plaintiff engaged in activity protected by the ADA.

100. Plaintiff requested reasonable accommodations due to his disability to Defendant.

101. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

102. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

103. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

104. Plaintiff engaged in activity protected by the PHRA.

105. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

106. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – RETALIATION
## THE FAMILY AND MEDICAL LEAVE ACT OF 1993

107. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

108. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

109. At all times material, Defendant knew, or should have known, of Plaintiff's need for Intermittent FMLA Leave to care for her own serious medical condition.

110. Plaintiff gave Defendant sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

111. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke her federally protected rights under the FMLA.

112. As a result of Plaintiff's attempt to invoke her FMLA rights, by requesting and utilizing her FMLA rights, Defendant has retaliated against Plaintiff by terminating her employment.

113. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

114. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

115. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or

non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

116. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

117. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, Nila Cobb, requests that the Court grant her the following relief against Defendant:

(a)    Compensatory damages;

(b)    Punitive damages;

(c)    Liquidated damages;

(d)    Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, the PHRA and the FMLA.

(j)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

15

Date: May 11, 2026          **By:**  ***/s/David M. Koller***
                                       David M. Koller, Esquire
                                       Jordan D. Santo, Esquire
                                       2043 Locust Street, Suite 1B
                                       Philadelphia, PA 19103
                                       215-545-8917
                                       davidk@kollerlawfirm.com
                                       jordans@kollerlawfirm.com

                                     *Counsel for Plaintiff*

16