# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHELLE MORNINGSTAR

*Plaintiff,*

vs.

YORK CITY SCHOOL DISTRICT

*Defendant.*

NO. _____

CIVIL ACTION

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, by and through undersigned counsel, hereby makes the following Complaint against Defendant and in support thereof avers as follows:

## INTRODUCTION

1. This is an action brought by Plaintiff, a current employee, against Defendant for unlawful violations of the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), the Pennsylvania Human Relations Act ("PHRA") and other applicable law as pleaded herein.

## JURISDICTION AND VENUE

2. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

3.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because this action arises under federal law.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in this district and Defendant conducts business here.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

## PARTIES

6.      Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

7.      Plaintiff Michelle Morningstar is an individual who resides in York, Pennsylvania.

8.      At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of the federal and state law as pleaded herein.

9.      Defendant York City School District is a believed and therefore averred to be a domestic Pennsylvania public school district with a principal place of business at 31 N. Pershing Avenue York, PA 17401.

10. At all times relevant hereto, Defendant acted by and through its duly authorized agents, servants, employees, and/or representatives, each of whom was acting within the course and scope of his or her actual or apparent authority, agency, and employment, and whose acts and omissions are legally attributable to Defendant.

## ADMINISTRATIVE REMEDIES

11. Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

12. On or about January 29, 2024, Plaintiff filed a *pro se* Charge of Discrimination with the EEOC alleging violations of the ADAAA and cross-filed the same with the Pennsylvania Human Relations Commission ("PHRC").

13. On or about August 27, 2025, the EEOC issued a "cause" determination finding that Defendant discriminated against the Plaintiff on the basis of her disability when it failed to provide a reasonable accommodation as described herein.

14. On or about February 27, 2026, the EEOC determined that its efforts to conciliate the charge were unsuccessful and thus referred the matter to the U.S. Department of Justice ("DOJ") for a litigation review as required by law. *See e.g.* 29 C.F.R. § 1601.28(d).[1]

---

[1] Although the EEOC issued a purported Notice of Right to Sue that same day, it formally rescinded the Notice in writing on May 4, 2026, upon Plaintiff's application, on the ground that it had been issued in error. Because Defendant is a governmental

15.     On or about May 13, 2026, the DOJ issued a "right to sue" letter declining to file suit and advising Plaintiff of her right to commence a civil action within ninety ("90") days. *See e.g.* 29 C.F.R. § 1601.28(d).

16.     Plaintiff exhausted federal and state administrative remedies with respect to her anti-discrimination claims in this action.

## FACTUAL ALLEGATIONS

17.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

18.     Plaintiff is currently employed by Defendant as a "Cyber Teacher" for the Bearcat Cyber School and has worked in that capacity since approximately September 15, 2021.

19.     In or around 2013, Plaintiff was diagnosed with Interstitial Cystitis ("IC"), a chronic medical condition affecting bladder function.

20.     Plaintiff's IC substantially limits one or more major life activities, including bladder function and urination, within the meaning of the ADAAA.

21.     Plaintiff's IC causes painful bladder spasms, urinary urgency, and frequent need for restroom access. Symptoms occur unpredictably and periodically flare.

---

respondent, only the United States Department of Justice—not the EEOC—has authority to issue a notice of right to sue under these circumstances. See 29 C.F.R. § 1601.28(d). In any event, this Complaint is timely because it was filed within ninety days of the original issuance date.

22.    Plaintiff requires ongoing medical treatment to manage her IC.

23.    At all relevant times, Plaintiff has been able to perform the essential functions of her position with or without reasonable accommodation.

24.    As a Cyber Teacher, Plaintiff teaches students remotely using Defendant's secure virtual private network ("VPN") system and online instructional platforms.

25.    The essential functions of Plaintiff's position include delivering instruction remotely, communicating with students electronically, preparing lesson materials, grading assignments, and maintaining student records.

26.    Students are not regularly physically present in the building where the cyber school operates.

27.    Students appear in person only when a pre-scheduled appointment has been arranged.

28.    Defendant's VPN system is accessible not only from within the school building but also remotely.

29.    Teachers have accessed the VPN system from home during snow days, weather closures, and other building closures.

30.    At all relevant times, Defendant maintained a telework policy, Policy No. 309.1 ("Telework Policy").

31.    The Telework Policy recognized that during limited circumstances it may be necessary to allow or require employees to work remotely in order to maintain continuity of district educational programs or operations.

32.    The Telework Policy contemplated remote work arrangements, typically from an employee's residence, and typically required execution of a telework agreement.

33.    The Telework Policy delegated responsibility for determining employee eligibility for telework to the Superintendent.

34.    The Telework Policy did not contain specific provisions addressing telework as a reasonable accommodation for employees with disabilities.

35.    Plaintiff provided Defendant with medical documentation from her treating physician confirming her IC diagnosis.

36.    Beginning as early as October 2021, Plaintiff requested reasonable accommodation under the ADAAA in the form of intermittent telework on days when she experienced IC flare-ups or had scheduled medical appointments related to her condition.

37.    Plaintiff's requested accommodation was consistent with the remote instructional nature of her position and the existing technological infrastructure used by Defendant.

38.    Defendant did not grant Plaintiff's request to work intermittently from home as a reasonable accommodation.

39.    Instead, Defendant offered Plaintiff the use of a classroom with access to a bathroom uncomfortably shared with another teacher.

40.    Beginning in or around 2023, Plaintiff was assigned to share a classroom with a male teacher. Due to her IC symptoms, Plaintiff required frequent restroom access during the workday.

41.    The shared classroom arrangement did not eliminate the limitations caused by Plaintiff's disability and did not provide the flexibility necessary to manage unpredictable IC flare-ups.

42.    Plaintiff also sought intermittent leave under the Family and Medical Leave Act ("FMLA") related to her condition.

43.    On or about August 23, 2023, Plaintiff tripped at work and injured her hip which ultimately required surgery in 2024.

44.    Separately, Plaintiff underwent medical treatment and ultimately required surgery, which was performed on September 14, 2023.

45.    The surgery in September 2023 was meant to attempt revision of the "box" (the Implantable Pulse Generator or IPG) in her sacrum for sacral neuromodulation (SNM) therapy. This is a common procedure used to address issues with the device or to improve the treatment of bladder/bowel dysfunction relating to IC.

46.    In a note dated September 19, 2023, Plaintiff's physician, Steven Falowski, M.D., stated that Plaintiff was recovering from surgery, was unable to drive, and recommended that she return to work remotely for a six-week post-operative period, after which she could likely return to working physically in the school building.

47.    Plaintiff provided Dr. Falowski's note to Defendant and requested temporary remote work consistent with her physician's recommendation.

48.    Defendant did not grant Plaintiff's request for temporary remote work during her post-operative recovery period.

49.    On or about November 10, 2023, Plaintiff made an additional request for reasonable accommodation related to her IC diagnosis and need for flexibility during flare-ups.

50.    Defendant's response to Plaintiff's accommodation requests was limited to permitting her to use FMLA leave for doctor appointments and to continue using the shared classroom with bathroom access.

51.    Defendant did not offer intermittent telework or otherwise engage in further discussion regarding telework as a potential reasonable accommodation.

52.    In response to Plaintiff's administrative charge of discrimination, Defendant submitted a counseled position statement.

53.     In its position statement, Defendant admitted that Plaintiff had made accommodation requests related to her IC diagnosis as early as October 2021 and had made additional requests in September 2022 and September 2023.

54.     Defendant further admitted that Dr. Falowski provided medical documentation in September 2023 supporting Plaintiff's request for remote work during her recovery period.

55.     In its position statement, Defendant asserted that it was "essential" for Plaintiff to be physically present in the building to interact with students, faculty, and staff and to utilize instructional tools—notwithstanding the fact she was a remote teacher.

56.     Additionally, with respect to faculty oversight, Plaintiff was frequently in scenarios where a classroom observation was conducted remotely as opposed to somebody physically reporting to the room to observe her teaching.

57.     Defendant also asserted that teachers were expected to teach as though students were physically present in the classroom and cited the need to access the District's secure network.

58.     At all relevant times, however, the secure network is believed and therefore averred to have been accessible remotely, and students were not regularly physically present in the building unless a pre-scheduled appointment had been arranged.

59.    After investigating Plaintiff's administrative charge, the EEOC issued a

determination finding reasonable cause to believe that Defendant violated the

ADAAA by failing to provide Plaintiff with an effective reasonable

accommodation.[2]

60.    The EEOC further determined that Defendant violated ADAAA

recordkeeping requirements by maintaining medical information in personnel files

rather than in separate confidential medical files.

61.    A copy of the EEOC's determination is attached hereto as Exhibit "A" and

incorporated by reference.

62.    Defendant did not resolve the matter during conciliation, and as set forth

more fully above, the U.S. DOJ issued Plaintiff a "right to sue" notice on or about

May 13, 2026.

63.    As a direct and proximate result of Defendant's actions, Plaintiff has

suffered damages, including but not limited to emotional distress, inconvenience,

and other compensable losses.

---

[2] Accordingly, "[i]t is widely held that prior administrative findings made with respect to an employment discrimination claim may be admitted pursuant to Rule 803(8)(C)." EEOC v. Smokin' Joe's Tobacco Shop, Inc., No. 06-01758, 2007 U.S. Dist. LEXIS 62047, at *16 (E.D. Pa. Aug. 22, 2007) (Stengel, J.) (internal citations and quotations omitted).

## COUNT I
### Violations of the ADAAA
### (Failure to Provide Reasonable Accommodation)
### 42. U.S.C. § 12101 *et seq.*

64.    Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

65.    At all relevant times, Plaintiff was an individual with a disability within the meaning of the ADAAA.

66.    Plaintiff's Interstitial Cystitis substantially limits one or more major life activities, including bladder function and urination.

67.    At all relevant times, Plaintiff was a qualified individual under the ADAAA in that she was able to perform the essential functions of her position as a Cyber Teacher, with or without reasonable accommodation.

68.    The essential functions of Plaintiff's position included delivering instruction remotely, communicating electronically with students, preparing instructional materials, grading assignments, and maintaining student records.

69.    Plaintiff's position was structured to permit remote instruction through Defendant's VPN and online learning platforms.

70.    Beginning as early as October 2021, and on multiple occasions thereafter, Plaintiff requested reasonable accommodation under the ADAAA.

71.   Plaintiff specifically requested intermittent telework during periods of IC flare-ups and during medically necessary appointments, as well as temporary remote work during her post-operative recovery period in September 2023.

72.   Plaintiff supported her requests with medical documentation from her treating physician.

73.   Plaintiff's requested accommodation—intermittent or temporary remote work—was reasonable on its face given the remote instructional nature of her position and the existing technological infrastructure available to Defendant.

74.   Defendant did not grant Plaintiff's requested accommodation.

75.   Defendant instead limited Plaintiff to using FMLA leave for medical appointments and assigned her to a shared classroom arrangement that did not address the unpredictable nature of her IC symptoms.

76.   Defendant did not provide intermittent telework, temporary remote work, or any alternative accommodation that effectively addressed Plaintiff's disability-related limitations.

77.   Defendant failed to engage in a good-faith interactive process to identify and implement a reasonable accommodation that would enable Plaintiff to perform the essential functions of her position.

78.   Defendant's refusal to provide a reasonable accommodation was not based on undue hardship.

79. As a direct and proximate result of Defendant's failure to accommodate her disability, Plaintiff suffered damages, including but not limited to emotional distress, inconvenience, and other compensable losses.

80. Defendant's conduct was intentional and in reckless disregard of Plaintiff's federally protected rights.

## COUNT II
### Violations of the ADAAA
### (Retaliation)
### 42. U.S.C. § 12101 *et seq.*

75. Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

76. Plaintiff engaged in protected activity under the ADAAA when she, *inter alia*:

    a) Requested reasonable accommodation for her disability beginning in or around October 2021 and on multiple occasions thereafter;

    b) And filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

77. Defendant was aware of Plaintiff's protected activity.

78. After Plaintiff engaged in protected activity, Defendant continued to refuse her requests for reasonable accommodation, including intermittent and temporary telework.

13

79. Following Plaintiff's accommodation requests and medical leave requests, Defendant pressured Plaintiff to return to in-person work despite medical documentation supporting remote work during her post-operative recovery period.

80. Defendant's conduct included refusing to approve remote work recommended by Plaintiff's physician and requiring her physical presence in the building notwithstanding the remote nature of her position.

81. Defendant's actions would dissuade a reasonable employee from requesting accommodation or pursuing rights under the ADAAA.

82. There is a causal connection between Plaintiff's protected activity and Defendant's adverse actions, including the temporal proximity between Plaintiff's requests and Defendant's continued refusals and pressure to return to in-person work.

83. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered damages, including emotional distress, inconvenience, and other compensable losses.

84. Defendant's conduct was intentional and in reckless disregard of Plaintiff's federally protected rights.

## COUNT III
**Violations of the ADAAA**
**(Improper Medical Record Maintenance and Confidentiality Violations)**
**42. U.S.C. § 12101 *et seq*.**

14

85.     Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

86.     In connection with Plaintiff's requests for accommodation and medical leave, Defendant obtained medical documentation concerning Plaintiff's disability and medical condition.

87.     The medical documentation provided to Defendant included information concerning Plaintiff's diagnosis of Interstitial Cystitis, her surgical procedure, and related medical limitations.

88.     Under the ADAAA, employers are required to collect and maintain medical information obtained from employees on separate forms and in separate confidential medical files, apart from general personnel records.

89.     Upon information and belief and based on the EEOC's cause determination, Defendant maintained Plaintiff's medical documentation within her general personnel file rather than in a separate confidential medical file.

90.     Upon information and belief, Plaintiff's medical information was accessible to individuals who did not have a legitimate business need to review such information.

91.     Defendant failed to maintain the confidentiality of Plaintiff's medical information as required by the ADAAA.

15

92.     The EEOC determined that Defendant violated the ADAAA's recordkeeping and confidentiality requirements by improperly maintaining Plaintiff's medical information in her personnel file.

93.     As a direct and proximate result of Defendant's failure to comply with the ADAAA's confidentiality and recordkeeping provisions, Plaintiff suffered harm, including invasion of privacy, embarrassment, and emotional distress.

94.     Defendant's conduct was intentional and in reckless disregard of Plaintiff's federally protected rights.

**<u>COUNT IV</u>**
**Violations of the ADAAA**
**(Disability Discrimination / Disparate Treatment)**
**42. U.S.C. § 12101 *et seq*.**

95.     Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

96.     At all relevant times, Plaintiff was an individual with a disability within the meaning of the ADAAA.

97.     Plaintiff was qualified to perform the essential functions of her position as a Cyber Teacher.

98.     Defendant subjected Plaintiff to adverse employment actions because of her disability.

16

99.   Defendant required Plaintiff to exhaust paid sick and personal leave and to take unpaid FMLA leave rather than permitting her to work remotely during disability-related flare-ups and recovery periods.

100.   Defendant denied Plaintiff the flexibility and remote work arrangements that had previously been permitted within the Bearcat Cyber School and that were operationally feasible given the remote nature of her position.

101.   Defendant treated Plaintiff less favorably than similarly situated employees by refusing to permit paid remote work during disability-related medical events while permitting remote instruction during snow days, building closures, and other circumstances.

102.   During the interactive process, Defendant stated that it would not make "special accommodations" and required Plaintiff to take leave "like any other similarly situated employee," notwithstanding Plaintiff's documented disability and medical recommendations.

103.   Defendant's actions resulted in loss of pay, depletion of accrued leave, financial hardship, and other tangible harm.

104.   Defendant's conduct was intentional and because of Plaintiff's disability.

105.   As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered damages including economic loss, emotional distress, embarrassment, and other compensable harm.

17

## COUNT V
### Violations of the ADAAA
### (Hostile Work Environment)
### 42. U.S.C. § 12101 *et seq.*

106.   Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

107.   Plaintiff is an individual with a disability within the meaning of the ADAAA.

108.   Beginning in or around late 2023 and continuing thereafter, Plaintiff was subjected to unwelcome conduct related to her disability and her requests for accommodation.

109.   During meetings regarding her accommodation requests, Defendant's Human Resources Director stated that he would not make "special accommodations" and required Plaintiff to take leave "like any other similarly situated employee," notwithstanding her documented disability.

110.   During an accommodation meeting in January 2024, Defendant's Human Resources Director reviewed a letter from Plaintiff's neuropsychologist recommending remote work and responded in a dismissive and mocking tone, declining to address the medical recommendations contained therein.

111.   Plaintiff was required to describe in detail the symptoms of her condition, including incontinence, pain, and medication side effects, in meetings attended by multiple administrators.

18

112.   Defendant repeatedly denied Plaintiff's requests for remote work despite consistent medical documentation supporting such accommodation.

113.   The manner in which Defendant addressed Plaintiff's disability-related needs was dismissive and demeaning and caused Plaintiff embarrassment and humiliation.

114.   The conduct described above was based on Plaintiff's disability and her need for accommodation.

115.   The harassment was severe or pervasive and created an intimidating, hostile, and offensive work environment.

116.   As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress and other damages.

## COUNT VI
### Concurrent Violations of the PHRA
### 43 P.S. § 955(a)

117.   Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

118.   The conduct alleged above with respect to Counts I through V is also violative of the PHRA insofar as that statute is construed coextensively with the ADAAA. *See e.g.* Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir. 1995); Morgan v. Allison Crane & Rigging LLC, 114 F.4th 214, n.21 (3d Cir. 2024) (noting in *dicta* the PHRA should interpreted coextensively with the ADAAA, not its predecessor).

19

119.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered emotional distress and other damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant and award:

a)    Front and/or back pay to the extent it becomes applicable, including lost wages, benefits, and other remuneration;

b)    Compensatory damages for emotional distress and other non-economic harms to the extent available as a matter of law;

c)    Reasonable attorney's fees and costs as a prevailing party under federal and state law;

d)    Punitive damages to the extent available as a matter of law, to deter Defendant and others from engaging in similar unlawful conduct;

e)    Pre-judgment and post-judgment interest as allowed by law; and

f)    Such other relief as the Court deems just and proper.

g)    Plaintiff demands a trial by jury on all issues so triable pursuant to Fed.R.Civ.P. 38.

Respectfully submitted,

SIPIO LAW P.C.

<u>/s/ W. Charles Sipio</u>
W. Charles Sipio, Esq.
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
(T) 609-454-6799 / (D) 609-251-4119
charles@sipiolaw.com

*Attorneys for Plaintiff*

Dated: May 14, 2026

21