## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRED J. FAUST** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.** |
| | ) **Judge** |
| **YORK LABORATORY ASSOCIATES** | ) |
| | ) |
| **Defendant.** | ) |

_____

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Fred J. Faust ("Plaintiff" or "Mr. Faust"), by and through undersigned counsel, files this Complaint against Defendant York Laboratory Associates ("Defendant" or "York Laboratory"), and avers as follows:

### INTRODUCTION

1. This is an action for disability discrimination, failure to accommodate, hostile work environment, age discrimination, retaliation, and wrongful termination in violation of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101 et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq.

2. Plaintiff devoted more than seventeen years of loyal and exemplary service to Defendant as a Physician Assistant.

1

3. Throughout his employment, Plaintiff was known for his professionalism, technical expertise, institutional knowledge, equipment maintenance support, training assistance, and commitment to quality patient care.

4. Beginning in approximately 2024, Defendant and younger coworkers increasingly targeted Plaintiff because of his age and disability.

5. Defendant treated Plaintiff's medically documented neurological symptoms as behavioral misconduct rather than accommodating his disability or engaging in the interactive process required by law.

6. Defendant subjected Plaintiff to escalating hostility, ridicule, discriminatory scrutiny, public humiliation, retaliatory discipline, and ultimately termination.

7. Defendant's conduct culminated in Plaintiff being publicly escorted from the workplace by three male pathologists in front of coworkers before being terminated shortly thereafter.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under federal anti-discrimination statutes including the ADA and ADEA.

9. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

2

10. Venue is proper in the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391 because the acts complained of occurred in York County, Pennsylvania

## PARTIES

11. Plaintiff is an adult individual residing in York, Pennsylvania during the period when these matters incurred.

12. Plaintiff was employed by Defendant York Laboratory Associates for approximately seventeen years.

13. At all relevant times, Plaintiff was sixty-eight (68) years old and was therefore a member of a protected class under the ADEA.

14. Plaintiff suffers from medically documented silent migraines and related neurological impairments that substantially limit one or more major life activities, including concentration, visual processing, neurological functioning, and working under certain environmental conditions.

15. Plaintiff was also regarded by Defendant as disabled within the meaning of the law because Defendant perceived Plaintiff as suffering from concentration deficits, reduced productivity, and diminished workplace functioning.

16. At all relevant times, Plaintiff was qualified to perform the essential functions of his position with reasonable accommodation.

17. Defendant York Laboratory Associates is a business entity located at 1001 South George Street, York, Pennsylvania 17403.

18. Defendant employed more than the statutory minimum number of employees necessary to qualify as an employer under the ADA, ADEA, and PHRA.

## ADMINISTRATIVE EXHAUSTION

19. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC"), Charge No. 530-2026-00309.

20. Plaintiff alleged discrimination and retaliation based on disability, age, and hostile work environment.

21. The EEOC issued Plaintiff a Notice of Right to Sue dated May 6, 2026.

22. Plaintiff has commenced this action within ninety (90) days of receipt of the Notice of Right to Sue. See **Exhibit A**.

23. All administrative prerequisites to suit have been satisfied.

## FACTUAL ALLEGATIONS

24. Plaintiff worked for Defendant for more than seventeen years with a previously unblemished employment record.

25. Plaintiff consistently received favorable treatment throughout most of his employment and was relied upon for his institutional knowledge, troubleshooting abilities, and workplace expertise.

26. Plaintiff's silent migraines are medically documented since at least 2020.

27. Plaintiff's condition causes neurological symptoms including visual disturbances, impaired concentration, and heightened sensitivity to loud noises, bright lighting, perfumes, and stress.

28. Defendant and Plaintiff's supervisors were aware of Plaintiff's disability and medical restrictions.

29. Beginning in approximately 2024, Plaintiff perceived increasing hostility from younger Physician Assistants and coworkers who viewed him as "too slow" because of his age and disability.

30. Despite these perceptions, Plaintiff's productivity increased during 2025, and he continued contributing substantially to Defendant's operations.

31. Plaintiff was nevertheless subjected to increased scrutiny, arbitrary productivity expectations, and hostility from younger coworkers.

32. Upon information and belief, younger and/or non-disabled employees were not subjected to the same level of scrutiny, disciplinary escalation, or negative interpretation of workplace incidents as Plaintiff.

33. Defendant increasingly credited accusations and complaints made by younger employees while disregarding Plaintiff's explanations and documented medical condition.

34. On March 12, 2025, Plaintiff was dissecting a uterus specimen in the grossing room when a loud noise occurred directly behind him.

35. The sudden noise triggered one of Plaintiff's silent migraine episodes.

36. As a reflexive startle response related to his neurological condition, Plaintiff quickly dropped the blade he was using onto the grossing table.

37. Plaintiff did not intentionally throw a blade or threaten any coworker.

38. Younger coworkers nevertheless spread rumors that Plaintiff had "thrown a blade" or threatened to throw a blade if startled and they also engaged in aggressive conduct.

39. Plaintiff apologized shortly after the incident and attempted to explain his medical condition and the circumstances involved.

40. Defendant failed to conduct a fair investigation and instead characterized the incident as a behavioral and safety problem.

41. Defendant made no meaningful effort to resolve the misunderstanding or engage Plaintiff in an interactive discussion concerning accommodations.

42. On March 18, 2025, supervisors made comments suggesting Plaintiff's "stress" and "startling" reactions were "because of age," thereby associating Plaintiff's age with diminished workplace capacity.

43. These comments reflected discriminatory stereotypes concerning older employees and failed to acknowledge Plaintiff's medical condition.

44. On March 21, 2025, Defendant placed Plaintiff on administrative leave and required a medical evaluation to determine whether Plaintiff could perform his job "with or without accommodation."

45. Defendant's medical inquiry referenced Plaintiff's alleged "reduced concentration," "slow productivity," and "difficulty focusing."

46. Defendant thereby treated Plaintiff as impaired and incapable despite Plaintiff's long history of successful job performance.

47. Defendant allowed rumors and speculation concerning Plaintiff's condition and workplace incidents to spread among coworkers, further isolating and humiliating Plaintiff.

48. On or about April 18, 2025, Defendant received medical confirmation that Plaintiff was capable of performing his duties with accommodations.

49. Rather than accommodate Plaintiff, Defendant issued Plaintiff a Performance Improvement Plan ("PIP") accusing him of "aggressive" and

"unprofessional" behavior. Further, the PIP improperly converted manifestations of Plaintiff's disability into disciplinary infractions.

50. Furthermore, the PIP falsely accused Plaintiff of "involuntarily throwing" a blade and "slamming tools," despite the fact that these events were tied directly to Plaintiff's neurological symptoms and startle responses.

51. During the spring and summer of 2025, younger Physician Assistants pressured Plaintiff to satisfy arbitrary productivity quotas.

52. The quotas and productivity expectations were driven by younger coworkers rather than by longstanding performance standards. Once more, Plaintiff continued to experience hostility from coworkers upon his return to work.

53. On May 13, 2025, while checking lighting conditions associated with his migraine-related needs, another Physician Assistant aggressively yelled at Plaintiff, "Hey, what are you doing?" in a hostile manner.

54. Coworkers openly mocked Plaintiff's need for quieter conditions and accommodations by stating, among other things, "there's always noise in the gross room" and "if you can't handle it, maybe you shouldn't be in there."

55. These comments directly ridiculed Plaintiff's disability and medical restrictions, yet Defendant failed to stop or correct the discriminatory conduct.

56. Plaintiff requested fair investigation and clarification of incidents involving coworkers and workplace procedures, but Defendant ignored those requests.

8

57. On September 24, 2025, Plaintiff encountered confusion and delay involving maintenance procedures during a frozen section call.

58. Plaintiff attempted to reassure the involved technician and explain the misunderstanding. Defendant nevertheless escalated the matter against Plaintiff while preventing meaningful clarification.

59. On September 26, 2025, Plaintiff's request for workplace coordination concerning frozen sections was publicly mocked during a workplace huddle as a "resounding no."

60. Later that day, another Physician Assistant approached Plaintiff in a menacing manner while Plaintiff was holding a scalpel used during specimen work.

61. Plaintiff immediately set the scalpel down and did not threaten anyone.

62. Defendant nevertheless escalated the situation and publicly removed Plaintiff from the workplace. Thereafter, Plaintiff was escorted from the building by three male pathologists in front of coworkers and colleagues, causing severe humiliation and reputational harm.

63. Defendant terminated Plaintiff on or about October 3, 2025.

64. Upon information and belief, Defendant treated younger and/or non-disabled employees accused of workplace disagreements or performance issues more favorably than Plaintiff.

65. Defendant's stated reasons for disciplining and terminating Plaintiff were false, exaggerated, selectively enforced, and pretextual.

66. The cumulative discriminatory and retaliatory conduct caused Plaintiff substantial emotional distress, anxiety, humiliation, worsening migraine symptoms, sleep disruption, heart palpitations, and damage to his professional reputation. Once more, Plaintiff has suffered substantial economic losses including lost wages, benefits, retirement contributions, Social Security losses, and other financial harm.

67. Plaintiff now presently seeks front pay in lieu of reinstatement due to the severe breakdown in the employment relationship and the humiliating circumstances surrounding his discharge.

## COUNT 1 - DISABILITY DISCRIMINATION
### Americans with Disabilities Act ("ADA")

68. Plaintiff incorporates by reference all preceding paragraphs.

69. Plaintiff is disabled within the meaning of the ADA and/or was regarded as disabled by Defendant.

70. Plaintiff was qualified to perform the essential functions of his position with reasonable accommodation.

71. Defendant discriminated against Plaintiff because of his disability and/or perceived disability. Further, Defendant treated manifestations of Plaintiff's neurological condition as misconduct.

72. Defendant subjected Plaintiff to discriminatory discipline, hostile treatment, administrative leave, a discriminatory PIP, and termination.

73. Defendant's conduct was intentional, willful, malicious, and/or undertaken with reckless indifference to Plaintiff's federally protected rights.

74. As a direct and proximate result, Plaintiff suffered damages.

## COUNT 2 - FAILURE TO ACCOMMODATE
## Americans with Disabilities Act ("ADA")

75. Plaintiff incorporates by reference all preceding paragraphs.

76. Defendant knew of Plaintiff's disability and accommodation needs.

77. Plaintiff requested and required reasonable accommodations relating to environmental triggers associated with his silent migraines.

78. Defendant failed to engage in the interactive process in good faith.

79. Defendant failed and refused to provide reasonable accommodations.

80. Instead of accommodating Plaintiff, Defendant disciplined and stigmatized him because of disability-related symptoms.

81. As a direct and proximate result, Plaintiff suffered damages.

## COUNT 3 - HOSTILE WORK ENVIRONMENT - ADA

82. Plaintiff incorporates by reference all preceding paragraphs.

83. Plaintiff was subjected to severe and pervasive harassment based upon disability. The harassment included ridicule, mocking comments, hostility from younger coworkers, discriminatory scrutiny, public humiliation, false accusations, and disparate disciplinary treatment.

84. Defendant knew or should have known about the harassment but failed to take prompt and effective remedial action.

85. The discriminatory conduct altered the terms and conditions of Plaintiff's employment and created an abusive and hostile working environment.

86. As a direct and proximate result, Plaintiff suffered damages.

## COUNT 4 – RETALIATION - ADA

87. Plaintiff incorporates by reference all preceding paragraphs.

88. Plaintiff engaged in protected activity by requesting accommodations, reporting discriminatory conduct, opposing disability discrimination, and seeking fair investigation of workplace incidents.

89. Defendant subjected Plaintiff to materially adverse actions after he engaged in protected activity.

90. Those adverse actions included administrative leave, discriminatory scrutiny, hostile treatment, discipline, public humiliation, and termination.

91. There is a causal connection between Plaintiff's protected activity and Defendant's retaliatory actions.

92. As a direct and proximate result, Plaintiff suffered damages

## COUNT 5 - AGE DISCRIMINATION

## Age Discrimination in Employment Act ("ADEA")

93. Plaintiff incorporates by reference all preceding paragraphs.

94. Plaintiff was over forty years old at all relevant times.

95. Plaintiff was qualified for his position and performed his job satisfactorily.

96. Defendant discriminated against Plaintiff because of his age.

97. Defendant stereotyped Plaintiff as slow, diminished, or unable to handle workplace stress because of his age.

98. Defendant favored younger employees and relied upon complaints and accusations made by younger coworkers while disregarding Plaintiff's explanations and experience.

99. Defendant subjected Plaintiff to disparate discipline and terminated his employment because of age. Therefore, age was a determinative factor in Defendant's adverse employment actions.

100. Defendant's conduct was willful within the meaning of the ADEA.

101. As a direct and proximate result, Plaintiff suffered damages.

13

## COUNT 6 - HOSTILE WORK ENVIRONMENT - ADEA

102.    Plaintiff incorporates by reference all preceding paragraphs.

103.    Plaintiff was subjected to severe and pervasive harassment based upon age. The harassment included ridicule, mocking comments, hostility from younger coworkers, discriminatory scrutiny, public humiliation, false accusations, and disparate disciplinary treatment.

104.    Defendant knew or should have known about the harassment but failed to take prompt and effective remedial action.

105.    The discriminatory conduct altered the terms and conditions of Plaintiff's employment and created an abusive and hostile working environment.

106.     As a direct and proximate result, Plaintiff suffered damages

## COUNT 7 – RETALIATION - ADEA

107.    Plaintiff incorporates by reference all preceding paragraphs.

108.    Plaintiff engaged in protected activity by requesting accommodations, reporting discriminatory conduct, opposing age discrimination, and seeking fair investigation of workplace incidents.

109.    Defendant subjected Plaintiff to materially adverse actions after he engaged in protected activity.

14

110. Those adverse actions included administrative leave, discriminatory scrutiny, hostile treatment, discipline, public humiliation, and termination.

111. There is a causal connection between Plaintiff's protected activity and Defendant's retaliatory actions.

112. As a direct and proximate result, Plaintiff suffered damages

## COUNT 8 - VIOLATIONS OF THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA")

113. Plaintiff incorporates by reference all preceding paragraphs.

114. Defendant's conduct violated the PHRA by discriminating and retaliating against Plaintiff on the basis of age and disability.

115. Defendant failed to accommodate Plaintiff's disability.

116. Defendant subjected Plaintiff to a hostile work environment.

117. Defendant retaliated against Plaintiff for engaging in protected activity.

118. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered economic loss, emotional distress, humiliation, embarrassment, reputational harm, and other damages

## PRAYER FOR RELIEF

119. WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendant and award the following relief:

A. Declare that Defendant violated the ADA, ADEA, and PHRA;

B. Award backpay, front pay, lost wages, lost bonuses, and lost benefits;

C. Award compensation for emotional distress, humiliation, embarrassment, pain and suffering, and reputational harm;

D. Award liquidated damages under the ADEA;

E. Award punitive damages as permitted by law;

F. Award restoration of lost retirement-related benefits and employment benefits;

G. Award pre-judgment and post-judgment interest;

H. Award attorney's fees and costs;

I. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Date: May 20, 2026                    Respectfully submitted,

**DONHAM LAW**

*By: /s/ Jeremy A. Donham, Esquire*
Jeremy Donham, Esquire
Attorney I.D. 206980
714 Venture Dr. Suite 144
Morgantown, WV 26508
PH: 717.881.7855
FAX: 888.370.5177
J.Donham@Donhamlaw.com