## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SHIRLEY WOODYARD | Case No.: |
| Plaintiffs, | Hon. |
| v. | **Jury Trial Demanded** |
| JACKSON SIEGELBAUM GASTROENTEROLOGY | |
| Defendant. | |

## COMPLAINT

Plaintiff Shirley Woodyard ("Plaintiff") brings her Complaint against the Jackson Siegelbaum Gastroenterology ("Defendant" or "JSG") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for disability discrimination, failure to accommodate, failure to engage in the interactive process, discriminatory refusal to hire, and retaliation in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 et seq.

2. Plaintiff seeks compensatory damages, punitive damages, equitable relief, back pay, front pay, reinstatement or instatement, attorney's fees, costs, and all other relief authorized by law.

1

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 because this action arises under the laws of the United States, including the ADA.

4. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391 because the unlawful employment practices complained of occurred within this District.

## THE PARTIES

6. Plaintiff Shirley Woodyard is an adult resident of Dover, York County, Pennsylvania.

7. Defendant Jackson Siegelbaum Gastroenterology is a Pennsylvania medical practice conducting business in Camp Hill, Pennsylvania with a principal place of business as 423 North 21st Street, Camp Hill, Pennsylvania 17011.

8. At all relevant times Defendant employed more than fifteen employees and was an employer within the meaning of the ADA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff timely filed a Charge of Discrimination with the EEOC and Pennsylvania Human Relations Commission on January 10, 2025, alleging disability discrimination and retaliation arising from Defendant's refusal to rehire her and refusal to accommodate her disability.

10. The Plaintiff received a right to sue on May 20, 2026, over one (1) year after her filing of the charge. (See **Exhibit A**)

11. Plaintiff has satisfied all administrative prerequisites to suit as to her federal and state claims.

## FACTUAL ALLEGATIONS

12. Plaintiff was hired by Defendant on or about February 28, 2018.

13. Plaintiff initially worked as a receptionist and later became a Patient Service Representative ("PSR").

14. Plaintiff performed call center and patient service functions for Defendant.

15. Plaintiff suffers from disabilities including Major Depressive Disorder ("MDD"), Attention Deficit Hyperactivity Disorder ("ADHD"), and Post-Traumatic Stress Disorder ("PTSD").

16. These conditions substantially limit one or more major life activities, including concentrating, interacting with others, sleeping, eating, and managing stress.

17. During the COVID-19 pandemic in March 2020, Defendant transitioned Plaintiff and other call center employees to remote work.

18. Plaintiff successfully performed her duties remotely.

19. Defendant became aware of Plaintiff's disabilities and her need for accommodation.

20. In or about March 2023, Defendant informed PSRs that a hybrid schedule would

be implemented.

21. Plaintiff notified Defendant of her disabilities and requested continued remote work as a reasonable accommodation.

22. Defendant approved Plaintiff's request and granted fully remote work as an ADA accommodation.

23. Plaintiff successfully performed the essential functions of her position while working remotely.

24. Plaintiff consistently received positive performance evaluations while working remotely.

25. Defendant admits Plaintiff received an overall annual performance rating of "4," meaning she exceeded expectations.

26. Plaintiff also received a bonus for her performance while working remotely.

27. Defendant's Human Resources Director, Lorena McIntyre, and supervisor Debby Glaviano were aware of Plaintiff's disabilities and accommodation needs.

28. In late 2023 Defendant decided to outsource its call center operations.

29. Plaintiff subsequently accepted employment with Medical Bureau of Harrisburg ("MBH").

30. Prior to the transition, Plaintiff informed MBH of her disabilities and her need for continued remote work.

31. In or around May 2024 Defendant terminated its relationship with MBH and decided to bring call center operations back in-house.

32. Defendant posted call center positions and considered former employees for rehire.

33. On or about May 16, 2024, Plaintiff contacted Defendant seeking reemployment.

34. Plaintiff reminded Defendant of her disabilities and her previously approved accommodation.

35. Plaintiff requested the same remote-work accommodation that had enabled her to perform successfully for years.

36. Defendant informed Plaintiff that the position would be in-office only.

37. Defendant told Plaintiff it would consider her only if she abandoned her request for remote work and agreed to report to the office.

38. Plaintiff was otherwise qualified for the position.

39. Plaintiff could perform the essential functions of the position with the same accommodation Defendant had previously provided.

40. Defendant did not conduct an individualized assessment of Plaintiff's accommodation request.

41. Defendant did not meaningfully engage in the interactive process.

42. Defendant did not explore alternative accommodations.

43. Defendant adopted a blanket rule requiring in-office attendance.

44. Defendant refused to rehire Plaintiff because she required disability-related accommodation.

45. Defendant later admitted that it rejected Plaintiff's accommodation request because it had decided remote work was not acceptable for call center employees.

46. Defendant's stated rationale is pretextual because Plaintiff successfully performed remotely for years, received positive evaluations, and received bonus compensation while working remotely.

47. As a direct and proximate result of Defendant's actions, Plaintiff suffered loss of earnings, emotional distress, humiliation, inconvenience, frustration, and other damages.

48. By March 2023, Defendant had actual knowledge that Plaintiff suffered from Major Depressive Disorder ("MDD"), Attention Deficit Hyperactivity Disorder ("ADHD"), and Post-Traumatic Stress Disorder ("PTSD"). Defendant admits that Plaintiff disclosed her medical conditions and requested accommodation at that time. Defendant further admits that it approved Plaintiff's request for full-time remote work as an ADA accommodation.

49. Defendant's approval of remote work was not temporary, experimental, or conditional. Plaintiff successfully worked remotely for approximately nine months as a formal disability accommodation.

50. During the period in which Plaintiff worked remotely as an accommodated employee, Defendant continued to monitor Plaintiff's performance, evaluate her work, supervise her duties, and provide feedback concerning her performance.

51. Defendant admits that Plaintiff received favorable performance reviews while working remotely.

52. Defendant further admits that Plaintiff received an overall annual performance evaluation score of "4," meaning that she "Exceeded Expectations."

53. Plaintiff also received a monetary bonus of approximately $1,500 while working remotely.

54. Defendant's decision-makers, including Human Resources Director Lorena McIntyre and supervisor Debby Glaviano, were aware of Plaintiff's disabilities, her accommodation request, and her successful performance while working remotely.

55. In late 2023, Defendant decided to outsource its call center operations to Medical Bureau of Harrisburg ("MBH").

56. Plaintiff subsequently became employed by MBH.

57. In approximately May 2024, Defendant terminated its relationship with MBH and decided to bring call center operations back in-house. Defendant admits that it posted positions and considered prior employees for rehire.

58. On or about May 16, 2024, Plaintiff contacted Defendant seeking reemployment in the call center position she had previously performed successfully.

59. During that communication Plaintiff reminded Defendant of her disabilities and requested continuation of the same remote-work accommodation Defendant had previously approved.

60. Defendant did not dispute that Plaintiff had successfully performed the position while working remotely.

61. Defendant did not state that Plaintiff lacked the necessary skills, experience, qualifications, or ability to perform the work.

62. Instead, Defendant informed Plaintiff that the call center positions would be in-office only and that Defendant would consider her application only if she agreed to report physically to the office.

63. Defendant therefore conditioned Plaintiff's employment opportunity upon relinquishment of the very accommodation it had previously granted.

64. Plaintiff remained qualified to perform the essential functions of the call center position with the accommodation Defendant had successfully provided for years.

65. Defendant did not request updated medical documentation.

66. Defendant did not engage in meaningful discussions regarding possible accommodations.

67. Defendant did not explore alternative accommodations.

68. Defendant did not perform an individualized assessment of Plaintiff's circumstances.

69. Instead, Defendant adopted and applied a blanket rule that call center employees would be required to work in-office regardless of Plaintiff's disability-related needs.

70. Defendant later admitted that it rejected Plaintiff's request because it had concluded that remote call center employees were more difficult to supervise and because it had decided that remote work would no longer be permitted for call center personnel.

71. Defendant's explanation is contradicted by its own conduct because Defendant successfully supervised, evaluated, accommodated, and rewarded Plaintiff while she worked remotely.

72. Defendant's stated rationale is further undermined by its admission that Plaintiff received an overall "Exceeds Expectations" evaluation while working remotely.

73. Defendant refused to hire Plaintiff because of her disability, because of her need for reasonable accommodation, and/or because she exercised rights protected by disability-discrimination laws.

74. As a direct and proximate result of Defendant's conduct, Plaintiff suffered loss of earnings, loss of employment opportunities, emotional distress, humiliation, embarrassment, frustration, inconvenience, and other damages.

## REMOTE WORK WAS A PROVEN REASONABLE ACCOMMODATION

75. Plaintiff's disabilities, including Major Depressive Disorder ("MDD"), Attention Deficit Hyperactivity Disorder ("ADHD"), and Post-Traumatic Stress Disorder ("PTSD"), substantially limit one or more major life activities, including concentrating, managing stress, maintaining regular sleep patterns, interacting with others, and functioning effectively in highly stimulating environments.

76. As a result of those limitations, Plaintiff requested permission to continue working remotely when Defendant announced in 2023 that Patient Service Representatives would be required to return to a hybrid work schedule.

77. Defendant reviewed Plaintiff's request and approved full-time remote work as a disability accommodation.

78. Defendant's decision to approve the accommodation constituted a determination that Plaintiff could perform the essential functions of her position while working remotely.

79. Following approval of the accommodation, Plaintiff continued to perform her job duties successfully.

80. While working remotely, Plaintiff answered patient calls, communicated with patients and providers, documented information in Defendant's systems, scheduled appointments, and performed all other duties assigned to her position.

10

81. Defendant continued to monitor Plaintiff's performance and evaluate her work while she worked remotely.

82. Defendant never determined that Plaintiff was unable to perform the essential functions of her position while working remotely.

83. Defendant admits that Plaintiff received favorable performance evaluations while working remotely.

84. Defendant further admits that Plaintiff received an overall annual performance evaluation score of "4," reflecting that she exceeded expectations.

85. Plaintiff also received bonus compensation in recognition of her performance while working remotely.

86. The successful implementation of Plaintiff's remote-work accommodation over an extended period demonstrates that remote work was an effective and reasonable accommodation that enabled Plaintiff to perform the essential functions of her position.

87. At all relevant times, Plaintiff remained ready, willing, and able to perform the essential functions of the call-center position with the same accommodation Defendant had previously approved.

88. Defendant possessed first-hand knowledge that the accommodation was effective because Defendant observed Plaintiff's successful performance, evaluated her work, and rewarded her performance while she worked remotely.

89. Despite this knowledge, Defendant later refused to continue or consider the accommodation when Plaintiff sought reemployment in May 2024.

90. Defendant's refusal was not based upon any individualized assessment of Plaintiff's performance, qualifications, limitations, or accommodation needs.

91. Instead, Defendant relied upon a categorical decision that call-center employees would be required to work in-office regardless of whether a remote-work accommodation had previously proven successful.

## DEFENDANT'S STATED REASONS ARE PRETEXTUAL

92. Throughout the administrative proceedings, Defendant asserted that Plaintiff was not rehired because Defendant had concluded that remote work was detrimental to the operation of its call center and that remote employees could not be adequately supervised.

93. Defendant's stated explanation is inconsistent with its own admissions and conduct.

94. Defendant admits that it granted Plaintiff a full-time remote-work accommodation in or about March 2023 after becoming aware of Plaintiff's disabilities and accommodation needs.

95. Defendant continued that accommodation for approximately nine months until the outsourcing of the call-center operations.

96. During the period in which Plaintiff worked remotely as an accommodated employee, Defendant monitored her performance, evaluated her work, and supervised her duties.

97. Defendant admits that Plaintiff received favorable performance evaluations while working remotely.

98. Defendant further admits that Plaintiff received an overall annual performance rating of "4," meaning that she exceeded expectations while working remotely.

99. Plaintiff also received bonus compensation in recognition of her successful performance while working remotely.

100. Defendant's assertion that remote employees could not be adequately supervised is contradicted by Defendant's own ability to supervise, evaluate, counsel, accommodate, and reward Plaintiff throughout the period she worked remotely.

101. Defendant's assertion that remote work rendered Plaintiff unable to perform the essential functions of her position is contradicted by Defendant's own performance evaluations, bonus awards, and prior accommodation decisions.

102. Defendant did not identify any performance deficiency that prevented Plaintiff from performing the essential functions of her position while working remotely.

103. Defendant's stated rationale is therefore unworthy of credence and constitutes evidence that Defendant's refusal to rehire Plaintiff and refusal to continue her accommodation were motivated by disability discrimination, hostility toward accommodation obligations, retaliation, and/or other unlawful considerations.

## COUNT 1
## ADA DISABILITY DISCRIMINATION
## DISCRIMINATORY – FAILURE TO HIRE

104. Plaintiff incorporates Paragraphs 1 through 103.

105. Plaintiff is disabled within the meaning of the ADA because she suffers from MDD, ADHD, and PTSD.

106. Defendant had actual knowledge of Plaintiff's disabilities.

107. Plaintiff was qualified for the position she sought in May 2024 because she had previously performed the same position successfully for years.

108. Defendant's own records demonstrate Plaintiff's qualifications, including an overall annual rating of "Exceeds Expectations."

109. Plaintiff could perform the essential functions of the position with the same accommodation Defendant had already determined was effective.

110. Plaintiff applied for or sought reemployment with Defendant.

111. Defendant considered Plaintiff for rehire.

112. Defendant refused to hire Plaintiff unless she abandoned her disability-related accommodation.

113. Defendant's refusal to hire Plaintiff was because of her disability and because of her need for accommodation.

114. Defendant thereby violated the ADA.

## COUNT 2
### ADA DISABILITY-FAILURE TO ACOMMODATE

115. Plaintiff incorporates Paragraphs 1 through 114.

116. Plaintiff requested continuation of a remote-work accommodation.

117. Defendant had previously approved that same accommodation.

118. Defendant knew the accommodation was effective because Plaintiff successfully worked under it and received positive evaluations and bonus compensation.

119. Plaintiff could perform the essential functions of the position with that accommodation.

120. Defendant denied the accommodation.

121. Defendant denied the accommodation based on a blanket policy requiring in-office attendance.

122. Defendant failed to establish that continuation of Plaintiff's accommodation would create an undue hardship.

123. Defendant failed to reasonably accommodate Plaintiff's disability.

124. Defendant thereby violated the ADA.

## COUNT 3
## ADA FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

125. Plaintiff incorporates by reference Paragraphs 1 through 124 as though fully set forth herein.

126. The ADA requires employers to engage in a timely, good-faith interactive process when an employee or applicant requests a reasonable accommodation.

127. Defendant had actual knowledge of Plaintiff's disabilities and accommodation needs because it previously reviewed Plaintiff's medical documentation and granted her a full-time remote-work accommodation.

128. Defendant also possessed first-hand knowledge that the accommodation was effective because Plaintiff successfully performed her job duties while working remotely and received favorable performance evaluations.

129. On or about May 16, 2024, Plaintiff sought reemployment with Defendant and requested continuation of the same accommodation Defendant had previously approved.

130. Rather than engage in a meaningful discussion regarding Plaintiff's limitations, accommodation needs, or possible accommodations, Defendant informed Plaintiff that the position would be in-office only.

131. Defendant failed to request updated medical information.

132. Defendant failed to discuss whether the previously approved accommodation could continue.

133. Defendant failed to analyze Plaintiff's individual circumstances.

134. Defendant failed to consider whether Plaintiff's demonstrated success while working remotely supported continuation of the accommodation.

135. Defendant failed to explore alternative accommodations.

136. Defendant failed to engage in a good-faith interactive process and instead relied upon a blanket policy requiring in-office attendance.

137. Defendant's failure to engage in the interactive process prevented identification and implementation of reasonable accommodations that would have enabled Plaintiff to perform the essential functions of the position.

138. Defendant thereby violated the ADA.

**COUNT 4**
**ADA RETALIATION**

139. Plaintiff incorporates by reference Paragraphs 1 through 138 as though fully set forth herein.

140. Plaintiff engaged in protected activity under the ADA by disclosing her disabilities, requesting reasonable accommodations, utilizing accommodations previously approved by Defendant, and requesting continuation of those accommodations when seeking reemployment.

141. Defendant was aware of Plaintiff's protected activity because Defendant previously approved Plaintiff's accommodation request and maintained records concerning her disabilities and accommodation needs.

142. Plaintiff sought reemployment and expressly invoked the same disability-related accommodation Defendant had previously provided.

143. Immediately upon Plaintiff's request for accommodation, Defendant informed Plaintiff that she would not be considered for employment unless she abandoned her accommodation request and agreed to work in-office.

144. Defendant's refusal to hire Plaintiff constituted a materially adverse employment action.

145. The temporal proximity between Plaintiff's accommodation request and Defendant's refusal to consider her unless she relinquished that accommodation supports an inference of retaliatory motive.

146. Defendant's actions would deter a reasonable employee or applicant from requesting accommodations or exercising rights protected by the ADA.

147. Plaintiff's protected activity was a motivating factor and/or but-for cause of Defendant's refusal to hire her.

148. Defendant thereby violated the ADA.

## COUNT 5
## DISABILITY DISCRIMINATION – PENNSYLVANIA HUMAN RELATIONS ACT – REFUSAL TO HIRE

149. Plaintiff incorporates by reference Paragraphs 1 through 148 as though fully set forth herein.

150. Plaintiff is an individual with disabilities within the meaning of the PHRA.

151. Defendant had actual knowledge of Plaintiff's disabilities.

152. Plaintiff was qualified for the call-center position for which she sought reemployment.

153. Defendant's own records establish Plaintiff's qualifications, including years of successful performance, favorable evaluations, and an overall "Exceeds Expectations" rating while working remotely.

154. Plaintiff could perform the essential functions of the position with the same accommodation Defendant had previously determined was effective.

155. Defendant considered Plaintiff for rehire after bringing call-center operations back in-house.

156. Defendant conditioned Plaintiff's employment opportunity upon her willingness to abandon her disability-related accommodation.

157. Defendant refused to hire Plaintiff because of her disability and because of her need for accommodation.

158. Defendant's stated justification was a pretext for unlawful discrimination.

159. Defendant thereby violated the PHRA.

160. As a direct and proximate result of Defendant's conduct, Plaintiff suffered economic loss, emotional distress, humiliation, embarrassment, inconvenience, and other damages.

## COUNT 6
## DISABILITY – FAILURE TO ACCOMMODATE PENNSYLVANIA HUMAN RELATIONS ACT

161. Plaintiff incorporates by reference Paragraphs 1 through 160 as though fully set forth herein.

162. Plaintiff requested continuation of a remote-work accommodation that Defendant had previously granted as a disability accommodation.

163. Defendant knew that the accommodation enabled Plaintiff to perform the essential functions of her position.

164. Defendant knew that Plaintiff had successfully worked under the accommodation for an extended period of time.

165. Defendant nevertheless denied the accommodation request.

166. Defendant denied the request pursuant to a blanket requirement that call-center employees work in-office.

167. Defendant failed to conduct an individualized assessment of Plaintiff's circumstances and limitations.

168. Defendant failed to establish that continuation of Plaintiff's accommodation would impose an undue hardship.

169. Defendant denied Plaintiff equal access to employment opportunities by refusing to provide a reasonable accommodation.

170. Defendant thereby violated the PHRA.

20

171.  As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

## COUNT 7
## DISABILITY – FAILURE TO ACCOMMODATE – PENNSYLVANIA HUMAN RELATIONS ACT

172.  Plaintiff incorporates by reference Paragraphs 1 through 171 as though fully set forth herein.

173.  Plaintiff requested accommodation and informed Defendant of her continuing need for remote work because of her disabilities.

174.  Defendant possessed extensive prior knowledge regarding Plaintiff's medical conditions, limitations, and accommodation history.

175.  Defendant failed to engage in a meaningful discussion concerning accommodation.

176.  Defendant failed to seek additional information from Plaintiff.

177.  Defendant failed to conduct an individualized evaluation of Plaintiff's request.

178.  Defendant failed to consider continuation of an accommodation that had already proven successful.

179.  Defendant failed to explore reasonable alternatives.

180.  Defendant instead relied upon a categorical policy requiring physical presence in the office.

181.  Defendant therefore failed to engage in the interactive process in good faith.

182. Defendant thereby violated the PHRA.

183. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.

## COUNT 8
## RETALIATION - PENNSYLVANIA HUMAN RELATIONS ACT

184. Plaintiff incorporates by reference Paragraphs 1 through 183 as though fully set forth herein.

185. Plaintiff engaged in protected activity by requesting disability accommodations, utilizing accommodations previously granted by Defendant, and asserting rights protected under the PHRA.

186. Defendant was aware of Plaintiff's protected activity.

187. When Plaintiff sought reemployment, Defendant refused to consider her unless she abandoned her request for accommodation.

188. Defendant's refusal to hire Plaintiff constituted a materially adverse employment action.

189. The close temporal relationship between Plaintiff's protected activity and Defendant's refusal to hire supports a causal connection.

190. Defendant's actions were motivated, at least in part, by Plaintiff's protected activity.

191. Defendant's conduct would discourage a reasonable employee or applicant from exercising rights protected by the PHRA.

192.   Defendant retaliated against Plaintiff in violation of the PHRA.

193.   As a direct and proximate result of Defendant's conduct, Plaintiff suffered lost wages, emotional distress, humiliation, embarrassment, inconvenience, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant;

B. Declare Defendant's conduct unlawful;

C. Award back pay and lost benefits;

D. Award front pay or instatement/reinstatement;

E. Award compensatory damages for emotional distress and related harms;

F. Award punitive damages where and as applicable;

G. Award prejudgment and post-judgment interest;

H. Award attorney's fees, costs, and expenses;

I. Award such further relief as the Court deems just and proper

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby respectfully demands trial by jury on all counts so triable.

DATED the 25th day of June 2026.

*By: /s/ Jeremy A. Donham, Esquire*
Jeremy Donham, (206980)
**DONHAM LAW**
714 Venture Drive, Ste. 144
Morgantown, West Virginia 26508
717.881.7855 (Phone)
Email: J.Donham@Donhamlaw.com

24