**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BLANDA E NACE, | No: |
| Plaintiff | Civil Action - Law |
| *versus* | Jury Trial Demanded |
| CITY OF YORK and MICHAEL WALKER, | |
| Defendants | |

**COMPLAINT**

**Introduction**

1. This action arises from Plaintiff's good-faith report of a potential conflict of interest and related ethics concerns involving the attempted revival of a multi-million-dollar public funding proposal tied to a development project in the City of York. Plaintiff alleged that after he raised those concerns to the outgoing Mayor, Defendants retaliated by terminating his employment, depriving him of his livelihood in violation of the First Amendment, the Pennsylvania Whistleblower Law, and Pennsylvania common law.

**Parties**

2.    Plaintiff, Blanda E Nace ("Plaintiff"), is an adult individual residing in York County, Pennsylvania.

3.    Defendant City of York ("City") is a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with offices located in York County, Pennsylvania.

4.    Defendant Michael Walker ("Michael Walker") is an adult individual who, upon information and belief, acted as a representative and/or consultant for Four Squares Development in connection with the project and funding described herein.

**Jurisdiction And Venue**

5.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff's First Amendment claim arises under federal law.

6.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the unlawful employment practices complained of herein occurred in York County, Pennsylvania.

8. Venue is proper in York County because the acts and omissions complained of occurred in York County and Defendants are located in York County.

**Factual Allegations**

9. Plaintiff was employed by the City from approximately May 2019 until January 5, 2026.

10. At the time of his termination, Plaintiff served as the City's Chief Opportunity Development Officer.

11. During 2024 and 2025, a developer known as Four Squares Development sought to obtain approximately $3,000,000 in ARPA funding in connection with a proposed development project involving property owned by the Redevelopment Authority of the City of York.

12. During 2025, concerns arose regarding the developer's ability to satisfy financial and administrative requirements necessary for the project to proceed.

13. On December 12, 2025, then-Mayor Michael Helfrich formally rejected the developer's proposal and deemed the project "not viable."

14. Upon information and belief, after the rejection of the proposal, the developer retained Michael Walker as a representative or consultant in connection with efforts to revive the project and obtain the funding.

15. Upon information and belief, Michael Walker was both:

   a. the brother of Mayor-Elect Sandie Walker; and

   b. a member or co-chair of Mayor-Elect Walker's transition team.

16. On December 16, 2025, Mayor Helfrich publicly stated that decisions concerning the disputed funding allocation would be left to the incoming administration.

17. On or about December 17, 2025, Plaintiff engaged in a conversation with Mayor Helfrich concerning Plaintiff's concerns about a potential conflict of interest involving:

   a. the developer's retention of Michael Walker;

   b. Michael Walker's relationship to Mayor-Elect Walker; and

   c. Michael Walker's involvement with the incoming administration.

18.  At the time of his conversation with Mayor Helfrich, Plaintiff was not acting pursuant to any ministerial duty requiring him to report to the Mayor on ethics violations, conflicts of interest, or suspected improprieties involving third parties connected to a proposed public funding allocation.

19.  Plaintiff's role involved economic development, not ethics compliance or internal investigations.

20.  Plaintiff, in good faith, expressed concerns that proceeding with the funding allocation under those circumstances could violate Pennsylvania ethics laws and create legal and ethical issues for the City.

21.  Plaintiff made these reports as a citizen and not merely as part of his ordinary job duties, and the speech was outside the scope of any routine task or duty Plaintiff was required to perform as Chief Opportunity Development Officer.

22.  Plaintiff's report addressed corruption, conflict of interest, and the integrity of the use of public funds, all of which are matters of public concern.

23.  Following Plaintiff's report, Mayor Helfrich indicated that he intended to contact Mayor-Elect Sandie Walker regarding the issue.

24. Plaintiff thereafter departed on approved vacation leave from approximately December 19, 2025 through January 5, 2026.

25. Upon information and belief, after Plaintiff reported concerns regarding conflicts of interest and ethics issues, Michael Walker learned of Plaintiff's protected report and took actions intended to undermine Plaintiff's employment with the City.

26. On or about December 19, 2025, Michael Walker communicated complaints concerning Plaintiff's conduct and job responsibilities in connection with Plaintiff's ethics-related concerns and reports.

27. Upon information and belief, Michael Walker advocated for Plaintiff's removal from his position and/or otherwise encouraged City officials and the incoming administration to terminate Plaintiff's employment.

28. Michael Walker's actions were motivated, at least in part, by Plaintiff's reporting of concerns regarding Michael Walker's involvement in the project and funding process.

29. On January 5, 2026, Sandie Walker assumed office as Mayor of the City of York.

30. On January 5, 2026, Sandie Walker, in her first official act as Mayor, terminated Plaintiff's employment.

31. Upon information and belief, another City employee who had also raised concerns regarding the same conflict-of-interest issue was likewise terminated at the same time as Plaintiff on January 5, 2026.

32. Plaintiff's termination occurred shortly after his report of perceived wrongdoing and was motivated by retaliatory animus arising from his protected activity.

33. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered loss of employment, loss of wages and benefits, emotional distress, humiliation, and other damages.

## COUNT I
### First Amendment Retaliation (42 U.S.C. § 1983)
### *Defendant City of York*

34. Plaintiff incorporates the preceding paragraphs here.

35. Defendants, acting under color of state law, deprived Plaintiff of rights secured by the First and Fourteenth Amendments to the United States Constitution.

36. Plaintiff engaged in speech protected by the First Amendment because he spoke as a citizen, not pursuant to his official duties, on a matter of public concern, namely the potential misuse of public funds, conflicts

of interest, and ethics issues involving City-related decision-making and persons connected to the incoming administration.

37.  Plaintiff's protected speech was not part of his ordinary job responsibilities as Chief Opportunity Development Officer, was not required by his job description, and was not the type of speech he was employed to make as the City's employee.

38.  Plaintiff's report to Mayor Helfrich was a voluntary disclosure of suspected wrongdoing to a government official with authority to address the matter, and Plaintiff made the report because he believed the public and the City had a right to know of the potential conflict and ethical impropriety.

39.  Defendants took adverse action against Plaintiff, including termination of his employment.

40.  Plaintiff's protected speech was a substantial or motivating factor in the decision to terminate him.

41.  Defendants lacked an adequate justification for retaliating against Plaintiff or for treating Plaintiff differently from other members of the general public because of his speech.

42.  Upon information and belief, the City of York, through its final policymaker, Mayor Sandie Walker, adopted, ratified, and/or implemented the decision to terminate Plaintiff in retaliation for his protected speech.

43.  Upon information and belief, Mayor Sandie Walker possessed final policymaking authority with respect to the termination of City employees in Plaintiff's position, or alternatively ratified the decision to terminate Plaintiff after being informed of the protected report and the reasons for termination.

44.  Upon information and belief, the termination was not an isolated act, but part of a broader custom and practice of retaliating against City employees who reported corruption, conflicts of interest, misuse of public funds, or other ethics-related concerns.

45.  Upon information and belief, the City had notice that employees who raised such concerns would be subject to adverse treatment, including termination, and failed to train, supervise, or discipline officials responsible for such retaliation.

46. This policy, custom, ratification, and/or deliberate indifference was the moving force behind Plaintiff's termination and the resulting constitutional injury.

47. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered damages.

## COUNT II
### Violation of Pennsylvania Whistleblower Law
### *Defendant City of York*

48. Plaintiff incorporates the preceding paragraphs here.

49. Plaintiff was an employee of a public body within the meaning of the Pennsylvania Whistleblower Law.

50. Defendants are public bodies and/or persons acting on behalf of a public body within the meaning of the Pennsylvania Whistleblower Law.

51. Plaintiff made a good-faith report of perceived wrongdoing and/or waste concerning potential conflicts of interest and the administration of public funds.

52. Plaintiff's reports constituted protected activity under the Pennsylvania Whistleblower Law.

53. Defendants retaliated against Plaintiff because he engaged in protected whistleblowing activity.

54. Defendants' actions violated the Pennsylvania Whistleblower Law, 43 P.S. § 1423.

55. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages.

## COUNT III
## Wrongful Termination in Violation of Public Policy
### *Against Defendant City of York*

56. Plaintiff incorporates the preceding paragraphs here.

57. Pennsylvania recognizes a cause of action for wrongful termination where an employee is terminated for reasons that violate a clear mandate of public policy.

58. Pennsylvania public policy strongly favors the reporting of governmental wrongdoing, conflicts of interest, and misuse of public funds.

59. Plaintiff reported, in good faith, perceived ethical and legal concerns involving the administration of public funds and potential conflicts of interest involving public officials and persons closely associated with the incoming administration.

60. Defendants terminated Plaintiff in retaliation for making such reports.

61. Defendants' conduct violated clear public policy of the Commonwealth of Pennsylvania.

62. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages.

**COUNT IV**
**Tortious Interference with Contractual Relations**
***Against Defendant Michael Walker***

63. Plaintiff incorporates the preceding paragraphs here.

64. At all relevant times, Plaintiff maintained an existing employment relationship with Defendant City of York.

65. Defendant Michael Walker was aware of Plaintiff's employment relationship with the City.

66. After learning that Plaintiff had raised concerns regarding potential ethics violations and conflicts of interest involving Michael Walker and the proposed development project, Michael Walker intentionally undertook actions designed to interfere with Plaintiff's employment relationship.

67. Upon information and belief, Michael Walker communicated with City officials and/or representatives of the incoming administration in an effort to secure Plaintiff's termination.

68. Michael Walker acted for personal, political, and/or financial reasons related to the development project and funding dispute described herein.

69. Michael Walker's conduct was intentional, improper, malicious, and without privilege or justification.

70. As a direct and proximate result of Michael Walker's conduct, Plaintiff's employment was terminated.

71. As a direct and proximate result of Michael Walker's conduct, Plaintiff suffered loss of income, loss of benefits, reputational harm, emotional distress, and other damages.

**Prayer For Relief**

72. Plaintiff respectfully requests judgment in his favor and against Defendants for:

    a. Back pay and lost benefits;

    b. Front pay and/or reinstatement;

    c.  Compensatory damages;

    d.  Attorney's fees and costs pursuant to statute;

    e.  Interest;

    f.  Punitive damages, as permitted by law;

    g.  Costs and fees; and

    h.  Such other relief as the Court deems just and proper.

### Jury Demand

73.    Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Anthony T Bowser
Anthony T Bowser (PA # 204561)
Krevsky Bowser LLC
20 Erford Road, Suite 300A
Lemoyne, PA 17043
(717) 731-8600
abowser@krevskybowser.com
*Counsel for Plaintiff*