UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| XIUZHEN LIN, also known as | ) | |
| XIU FEN LIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**COMPLAINT TO REVOKE NATURALIZATION**

The United States of America ("Plaintiff") brings this civil action against Defendant Xiuzhen Lin, a.k.a. Xiu Fen Lin ("Defendant") to revoke her naturalized United States citizenship under 8 U.S.C. § 1451(a).  Plaintiff alleges that Defendant illegally procured her naturalization and that she willfully misrepresented and concealed material facts in applying to naturalize.

PRELIMINARY STATEMENT OF THE CASE

Before becoming a naturalized United States citizen in August 2011 under the name Xiuzhen Lin, Defendant applied in April 1997 for an immigration benefit with the legacy former Immigration and Naturalization Service ("INS") using the alternative name "Xiu Fen Lin."  In June 1997, the INS personally served Defendant, under the Xiu Fen Lin identity, with a Notice to Appear that charged her as

removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). When Defendant failed to appear for her hearing, the immigration judge ordered her, under the same Xiu Fen Lin identity, removed *in abstentia* to the People's Republic of China.

But Defendant failed to deport. Instead, Defendant continued her pursuit of an additional application for an immigration benefit pending with the INS under the alternative identity of Xiuzhen Lin. In 2011, Defendant naturalized as a United States citizen using that same Xiuzhen Lin identity. However, throughout her naturalization proceedings, Defendant failed to disclose her prior immigration history or her use of an alternative identity.

Through these actions and conduct, Defendant procured her naturalization by concealment and willful misrepresentation, which made her statutorily ineligible for United States citizenship. With the attached affidavit showing good cause, therefore, the United States of America brings this civil action on the grounds that Defendant illegally procured her naturalization and willfully misrepresented and concealed material facts during the naturalization process. Under 8 U.S.C. § 1451(a), the United States requests that the Court revoke and set aside the order admitting Defendant to citizenship and cancel her certificate of naturalization.

## JURISDICTION AND VENUE

1. This is an action under 8 U.S.C 1451(a) to revoke and set aside the order admitting Defendant to United States citizenship and to cancel Defendant's Certificate of Naturalization No. 34383767.

2. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § § 1331 and 1345 for this cause of action under 8 U.S.C. § 1451(a).

3. Venue is proper in this District under 8 U.S.C. § 1451(a) because Defendant resides here.  See Exhibit 2.

## PARTIES

4. Plaintiff is the United States of America.

5. Defendant Xiuzhen Lin, a/k/a Xiu Fen Lin, was purportedly born in the People's Republic of China and is a naturalized United States citizen, whose last known address is in Harrisburg, Pennsylvania.

6. Xiuzhen Lin and Xiu Fen Lin are one and the same person.

## FACTUAL ALLEGATIONS

7. The affidavit of Nasim Sargordan, an Adjudication Officer with U.S. Citizenship and Immigration Services ("USCIS"), an agency with the U.S. Department of Homeland Security ("DHS"), showing good cause for this action, as required by 8 U.S.C. § 1451(a), is attached hereto.

3

## I.    Defendant's Immigration History Using the Xiu Fen Lin Identity

8.    On April 21, 1997, Defendant, using the name Xiu Fen Lin, filed an application for immigration benefit with INS. Under this identity, INS issued her Alien Registration Number (A-Number) AXXX-XXX-692.

9.    On the application, which she signed April 15, 1997, under penalty of perjury, she represented that her name was Xiu Fen Lin, she was born in China, and she last entered the United States on December 12, 1996, at the United States and Mexico border, without inspection, and she was single.

10.    On May 27, 1997, she appeared at the INS Office in Rosedale, New York for an interview related to her benefit request. During her interview, she testified that her name was Xiu Fen Lin, she last arrived in the United States on December 12, 1996, at the United States and Mexico border, without inspection, and she was single.

11.    By notice dated May 29, 1997, INS informed Lin that she was referred to the immigration court.

12.    On May 29, 1997, INS issued a Form I-862, Notice to Appear (NTA) to Lin, under the name Xiu Fen Lin, charging her as removable from the United States pursuant to INA section 212(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled.

13. On June 10, 1997, INS personally served Lin the NTA, advising her to appear before the immigration judge on August 8, 1997.

14. But Lin did not appear at the scheduled hearing. On August 8, 1997, the immigration judge ordered her removed *in absentia* to the People's Republic of China.

15. By notice dated June 15, 1999, INS served Lin, via certified mail, with a Form I-166, instructing her to appear on July 21, 1999, at 9:00 am, at 26 Federal Plaza, New York, New York 10278, for deportation to China.

16. On July 21, 1999, Lin failed to surrender for deportation.

17. USCIS has no record that Lin departed the United States pursuant to the August 8, 1997 removal order.

## II. Defendant's Immigration History Using the Xiuzhen Lin Identity

18. Several years earlier, on June 7, 1993, Defendat, using the name Xiuzhen Lin, filed an application for immigration benefit with INS. Under this identity, INS issued her A-Number AXXX-XXX-091.

19. On the application, which she signed June 2, 1993, under penalty of perjury, she represented that her name was Xiu-Zhen Lin, she was born in China, and she arrived in the United States in January of 1993 as a stowaway.

20. On April 17, 1997, Lin married Xing Lin, in New York.

21.     On April 30, 1998, she appeared at the INS Office in Rosedale, New York, for an interview related to her benefit request. During her interview, she testified that her name was Xiuzhen Lin, she last arrived in the United States on January 12, 1993, at San Diego, without inspection, and she was married to Xing Lin.

22.     By notice dated May 4, 1998, INS informed Lin that she was referred to the immigration court.

23.     On May 5, 1998, INS issued a Form I-862, Notice to Appear (NTA), to Lin, under the name Xiuzhen Lin, charging her as removable from the United States pursuant to INA section 212(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled.

24.     On May 14, 1998, INS personally served Lin the NTA, advising her to appear before the immigration judge on July 15, 1998.

25.     On July 15, 1998, Lin appeared for her hearing with counsel, Andrew Wilson. The immigration judge continued the removal proceedings several times between July 15, 1998, and October 6, 2000.

26.     On October 6, 2000, the immigration judge held a merits hearing on the application that Lin had filed with INS on June 7, 1993, and conditionally granted that application.

27.    On April 14, 2005, the Executive Office for Immigration Review removed the condition on the grant.

28.    On November 21, 2006, Lin filed a Form I-485, Application to Register Permanent Residence or Adjust Status (Form I-485), with USCIS. On her Form I-485, which she signed October 29, 2006, under penalty of perjury, she represented that:

a. Her name was Xiuzhen Lin.

b. Her A-Number was AXXX-XXX-091.

c. She last arrived in the U.S. in August 1992, at San Diego, California, without inspection.

d. She was married to Xing Lin, who was born in China.

e. She had never, in or outside of the United States, been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic violations.

f. She had never been deported or removed from the United States at government expense, not been excluded within the past year, and was not then in exclusion or deportation proceedings.

g. She was not under a final order of civil penalty for violating section 274C of the INA for use of fraudulent documents, nor had she, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S., or any other immigration benefit.

29. In support of her Form I-485, Plaintiff filed a Form G-325A, which she signed on October 29, 2006, under severe penalties for knowingly and willfully falsifying or concealing a material fact. In her Form G-325A, she represented that:

    a. Her name was Xiuzhen Lin.

    b. She had not used other names.

    c. Her A-Number was AXXX-XXX-091.

    d. She was married to Xing Lin, whom she married on April 17, 1997, in New York.

30. On April 23, 2007, USCIS approved Lin's Form I-485 and she was accorded lawful permanent resident status as of April 23, 2006.

31. Prior to approving Lin's Form I-485, the adjudicating officer granted her two waivers of inadmissibility: 1) a waiver of her inadmissibility under INA § 212(a)(6)(A)(i) (for having entered the United States without inspection); and 2) a waiver of her inadmissibility under INA § 212(a)(1)(A)(ii) (for failure to receive a required vaccination).

32. On March 31, 2011, Lin filed with USCIS a Form N-400, Application for Naturalization (Form N-400) based upon having been a lawful permanent resident for at least five years. On her Form N-400, which Lin signed March 28, 2011, under penalty of perjury, she represented that:

    a. Her name was Xiu Lin.

    b. She had not used other names.

c. Her A-Number was AXXX-XXX-091.

d. She was married to Xing Lin, whom she married on April 17, 1997.

e. Her current spouse had been married 0 times.

f. She had never committed a crime or offense for which she was not arrested.

g. She had never been arrested, cited, or detained by any law enforcement officer (including USCIS or former INS and military officers) for any reason.

h. She had never been charged with committing any crime or offense.

i. She had never given any false or misleading information to any U.S. government official while applying for any immigration benefit to prevent deportation, exclusion, or removal.

j. She had never lied to any U.S. government official to gain entry or admission into the United States.

k. No removal, exclusion, rescission, nor deportation proceedings were pending against her.

l. She had never been removed, excluded, or deported from the United States.

m. She had never been ordered to be removed, excluded, or deported from the United States.

n. She had never applied for any kind of relief from removal, exclusion, or deportation.

o. She had taken two trips of 24 hours of more outside of the United States during the last five years to China.

33. On July 12, 2011, Lin appeared for an interview at the USCIS Field Office in Tampa, Florida, to determine her eligibility for naturalization.

9

34. During the interview, the interviewing officer placed Lin under oath. Lin made ten changes to the written responses on her application.

    a. She added "Zhen" to correct her first name as "Xiu Zhen."

    b. She changed the end date to her most recent employment as "current."

    c. Regarding her 2008 trip to China, she added that her "grandparent died."

    d. Regarding her 2010 trip to China, she added "visit brother."

    e. She changed her spouse's number of marriages from "0" to "1."

    f. In response to the question asking if she had ever "been arrested, cited, or detained by any law enforcement officer," she changed her response to "Yes."

    g. Regarding her "Yes" response to the preceding question, she clarified "cite only."

    h. She added that she had 3 traffic tickets between 2008 and 2010.

    i. In response to the question asking if she applied for relief from removal, she changed her answer to "yes."

    j. Regarding her "yes" response to the preceding question, she clarified "judge granted."

35. At the conclusion of her naturalization interview, Lin swore that the contents of her Form N-400, including the ten corrections/additions, were true and correct to the best of her knowledge and belief.

36. On the basis of Lin's written application and the testimony that she provided during her naturalization interview, USCIS approved Lin's Form N-400 on July 12, 2011.

37.    On August 10, 2011, Lin, under the name Xiuzhen Lin, took the Oath of Allegiance and was admitted as a citizen of the United States. USCIS issued her Certificate of Naturalization No. 34383767.

## III.    Fingerprint Analysis

38.    Xiuzhen Lin and Xiu Fen Lin are the same person.

39.    Fingerprint evidence demonstrates by clear, convincing, and unequivocal evidence that the same individual submitted fingerprints under both the Xiuzhen Lin and Xiu Fen Lin identities.  *See* Exhibit 1.

GOVERNING LAW

## I.    Congressionally Imposed Prerequisites to the Acquisition of Citizenship

40.    No alien has a right to naturalization "unless all statutory requirements are complied with." *United States v. Ginsberg*, 243 U.S. 472, 474-75 (1917).

41.    The Supreme Court has underscored that "[t]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981); *see also id.* ("An alien who seeks political rights as a member of this Nation can rightfully obtain them only upon the terms and conditions specified by Congress.") (quoting *Ginsberg*, 243 U.S. at 474)).

42.    Under the first ground for denaturalization, illegal procurement, citizenship is "illegally procured" if the applicant failed to comply

with any of the congressionally imposed prerequisites to the acquisition of citizenship. *Fedorenko*, 449 U.S. at 506.

43.    Among other requirements for naturalization, Congress mandated that an applicant for naturalization must demonstrate that he or she has been "lawfully" admitted to the United States for permanent residence. *See* 8 U.S.C. § 1427(a)(1); *see also* 8 U.S.C. § 1429.

44.    The term "lawfully admitted for permanent residence" means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws[.]" 8 U.S.C. § 1101(a)(20). Thus, for an alien to be "lawfully admitted," her adjustment of status must be in "compliance with substantive legal requirements, not mere procedural regularity." *In re Koloamatangi*, 23 I. & N. Dec. 548, 550 (B.I.A. 2003); *see Gallimore v. Att'y Gen.,* 619 F.3d 216, 223 & n.6 (3d Cir. 2010).

45.    Congress also mandated that an individual may not naturalize unless that person "during all periods referred to in [8 U.S.C. § 1427(a)] has been and still is a person of good moral character." *See* 8 U.S.C. § 1427(a).

46.    The required statutory period for good moral character begins five years before the date an applicant files the application for naturalization and continues until the applicant takes the oath of allegiance and becomes a United States citizen. 8 U.S.C. § 1427(a); 8 C.F.R. § 316.10(a)(1).

47.     Congress has explicitly precluded individuals from being able to establish the good moral character necessary to naturalize where they give false testimony during the statutory period for the purpose of obtaining immigration benefits.  8 U.S.C. § 1101(f)(6).

48.     Congress also created a "catch-all" provision, which states, "[t]he fact that any person is not within any of the [statutorily described] classes shall not preclude a finding that for other reasons such person is or was not of good moral character."  8 U.S.C. § 1101(f).

49.     Thus, individuals who commit unlawful acts adversely reflecting upon their moral character cannot meet the good moral character requirement, unless they prove that extenuating circumstances exist. *See* 8 U.S.C. § 1101(f); 8 C.F.R § 316.10(b)(3)(iii).

50.     "[A] conviction during the statutory period is not necessary for a finding that an applicant lacks good moral character . . . it is enough that the offense was 'committed' during that time." *United States v. Zhou*, 815 F.3d 639, 644 (9th Cir. 2016) (quoting *United States v. Suarez*, 664 F.3d 655, 661 (7th Cir. 2011)).

## II.     The Denaturalization Statute

51.     Recognizing that there are situations where an individual has naturalized despite failing to comply with all congressionally imposed prerequisites to the acquisition of citizenship or by concealing or misrepresenting facts that are

13

material to the decision on whether to grant him or her naturalization application, Congress enacted 8 U.S.C. § 1451.

52.   Under 8 U.S.C. § 1451(a), this Court must revoke an order of naturalization and cancel the individual's Certificate of Naturalization if her naturalization was *either*:

a. illegally procured, or

b. procured by concealment of a material fact or by willful misrepresentation.

53.   Failure to comply with any of the congressionally imposed prerequisites to the acquisition of citizenship renders the citizenship "illegally procured." *Fedorenko*, 449 U.S. at 506.

54.   Naturalization was procured by concealment of a material fact or by willful misrepresentation, where: (1) the naturalized citizen misrepresented or concealed some fact during the naturalization process; (2) the misrepresentation or concealment was willful; (3) the fact was material; and (4) the naturalized citizen procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States*, 485 U.S. 759, 767 (1988).

55.   Where the government establishes that the defendant's citizenship was procured illegally or by concealment of a material fact or by willful

misrepresentation, "district courts lack equitable discretion to refrain from entering a judgment of denaturalization." *Fedorenko*, 449 U.S. at 517.

## CAUSES OF ACTION

### COUNT I

**ILLEGAL PROCUREMENT OF NATURALIZATION**
**Not Lawfully Admitted for Permanent Residence**
**(Fraud or Willful Misrepresentation of Material Fact)**

56.    The United States re-alleges and incorporates by reference the foregoing paragraphs.

57.    As discussed above, to qualify for naturalization, an applicant must have been lawfully admitted to the United States for permanent residence. *See* 8 U.S.C. § 1429.

58.    The term "lawfully" requires compliance with substantive legal requirements for admission and not mere procedural regularity. *Gallimore*, 619 F.3d at 223 & n.6.

59.    "An alien who, by fraud or by willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under" the INA, is inadmissible. *See* 8 U.S.C. § 1182(a)(6)(C)(i).

60.    Defendant was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) at the time of her adjustment to permanent resident status because she both sought to

procure, and did procure, admission into the United States or other immigration benefits by fraud or by willfully misrepresenting material facts.

61.     Defendant sought to procure admission into the United States or another benefit provided for in the INA by fraud or by willfully misrepresenting material facts in the Form I-485, Application to Register Permanent Residence or Adjust Status, on or about November 21, 2006.

62.     Defendant additionally sought to procure admission into the United States or another immigration benefit by fraud or by willfully misrepresenting material facts in her Form G-325A, Biographic Information, on or about October 29, 2006.

63.     As set forth in paragraphs 8 through 37 of this Complaint, Defendant applied for admission as a lawful permanent resident using a different identity and date of birth than those which she previously used, but she represented that she had never used any other names, thus misrepresenting her immigration history in the United States.

64.     At the time Defendant was admitted as a permanent resident, thus, Defendant was inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C)(i).

65.     Defendant's false statements regarding her name, her date of birth, and her immigration history were material to determining her eligibility for the immigration benefits for which she applied.

66.     Defendant's false statements had the natural tendency to influence a decision to approve her Form I-485, Application to Register Permanent Residence of Adjust Status.

67.     Defendant, thus, sought to procure an immigration benefit by fraud or willfully misrepresenting material facts, rendering her inadmissible at the time her status was adjusted to that of a permanent resident.

68.     Because Defendant was inadmissible at the time her status was adjusted to that of a permanent resident, Defendant was not lawfully admitted for permanent residence.

69.     Because Defendant was not lawfully admitted for permanent residence, she was and remains ineligible for naturalization under 8 U.S.C. § 1429.

70.     Because Defendant was ineligible for naturalization, she illegally procured her naturalization.

71.     Because Defendant illegally procured her naturalization, this Court must revoke that naturalization as provided for in 8 U.S.C. § 1451(a).

## COUNT II

### ILLEGAL PROCUREMENT OF NATURALIZATION
**Lack of Good Moral Character**
**(False Testimony)**

72.     The United States re-alleges and incorporates by reference the foregoing paragraphs.

17

73.    Defendant illegally procured her naturalization because she was statutorily precluded from establishing the good moral character necessary to naturalize on account of her providing false testimony for the purpose of obtaining an immigration benefit.

74.    As discussed above, an applicant for naturalization must satisfy the statutory requirement of demonstrating that she is a person of good moral character for the five-year statutory period before she filed her naturalization application, and until the time she becomes a naturalized United States citizen.  8 U.S.C. § 1427(a); 8 C.F.R. § 316.10(a)(1).

75.    Defendant was required to establish that she was a person of good moral character from March 31, 2006 (five years before her Form N-400, Application for Naturalization), until the date she became a U.S. citizen, on August 10, 2011 (the statutory period).

76.    Defendant was statutorily barred from establishing the good moral character necessary to naturalize because, during the statutory period, she provided false testimony, orally and under oath, for the purpose of obtaining an immigration benefit, including naturalization.  *See* 8 U.S.C. § 1101(f)(6).

77.    As set forth above in Paragraph 34, during the statutory period Defendant provided false testimony for the purpose of obtaining an immigration

18

benefit when, after being placed under oath during her July 12, 2011 naturalization interview, she failed to correct representations on her Form N-400 that:

a. Her name was Xiu Lin.

b. She had not used other names.

c. Her A-Number was AXXX-XXX-091.

d. She was married to Xing Lin, whom she married on April 17, 1997.

e. Her current spouse had been married 0 times.

f. She had never committed a crime or offense for which she was not arrested.

g. She had never been arrested, cited, or detained by any law enforcement officer (including USCIS or former INS and military officers) for any reason.

h. She had never been charged with committing any crime or offense.

i. She had never given any false or misleading information to any U.S. government official while applying for any immigration benefit to prevent deportation, exclusion, or removal.

j. She had never lied to any U.S. government official to gain entry or admission into the United States.

k. Neither removal, exclusion, rescission, nor deportation proceedings were pending against her.

l. She had never been removed, excluded, or deported from the United States.

m. She had never been ordered to be removed, excluded, or deported from the United States.

n. She had never applied for any kind of relief from removal, exclusion, or deportation.

78.    At the conclusion of her naturalization interview, Defendant swore that the contents of her Form N-4000, including the corrections/additions identified in Paragraph 34, were true and correct to the best of her knowledge and belief.

79.    Because she provided false testimony under oath for the purpose of obtaining her naturalization, Defendant was barred under 8 U.S.C. § 1101(f)(6) from showing that she had the good moral character necessary to become a naturalized United States citizen.

80.    Because Defendant was not a person of good moral character, she was ineligible for naturalization under 8 U.S.C. § 1427(a)(3).

81.    Because she was ineligible to naturalize, Defendant procured her citizenship illegally.

82.    Because she procured his citizenship illegally, the Court must revoke her citizenship, as provided for by 8 U.S.C. § 1451(a).

## <u>COUNT III</u>

### **PROCUREMENT OF UNITED STATES CITIZENSHIP BY CONCEALMENT OF A MATERIAL FACT OR WILLFUL MISREPRESENTATION**

83.    The United States re-alleges and incorporates by reference the foregoing paragraphs.

84. Under 8 U.S.C. § 1451(a), this Court must revoke Defendant's citizenship and cancel her Certificate of Naturalization if she procured her naturalization by concealment of a material fact or by willful misrepresentation.

85. As discussed in paragraphs 8 through 37 above, throughout the naturalization process, Defendant willfully misrepresented and concealed facts related to her use of an alternate identity and her immigration history.

86. Specifically, Defendant misrepresented on her Form N-400 and later testified at her naturalization interview before a USCIS adjudicator that, among other things, she had never used other names; that she had never given false information for the purpose of obtaining any immigration benefit or to prevent deportation, exclusion, or removal; that she had never lied to any U.S. government official to gain entry or admission into the United States; that she had never applied for any kind of relief from removal, exclusion, or deportation; and that she had never been ordered to be removed, excluded, or deported from the United States.

87. Defendant made the misrepresentations and concealments identified in the foregoing paragraph voluntarily, despite knowing that such representations were false and misleading.

88. Accordingly, Defendant made these representations willfully.

89. Defendant's false statements and testimony about these matters were material to determining her eligibility for naturalization.

90. Defendant's false statements and testimony had the natural tendency to influence a decision by USCIS to approve her Form N-400. In fact, as shown above, the concealed and misrepresented facts rendered Defendant ineligible for naturalization, and USCIS would have denied the N-400 application had she been truthful.

91. Defendant therefore procured her naturalization by concealment of material facts and willful misrepresentations.

92. Because Defendant procured her naturalization by concealment of material facts and willful misrepresentations, the Court must revoke her citizenship under 8 U.S.C. § 1451(a).

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the United States of America respectfully requests:

1. A declaration that Defendant illegally procured her citizenship;

2. A declaration that Defendant procured her citizenship by concealment of material facts and by willful misrepresentation;

3. Judgment revoking and setting aside the order admitting Defendant to citizenship and canceling Certificate of Naturalization No. 34383767, effective as of the original date of the order and certificate, August 10, 2011.

4.    Judgment forever restraining and enjoining Defendant from claiming any rights, privileges, benefits, or advantages related to United States citizenship that she obtained as a result of her August 10, 2011 naturalization;

5.    Judgment requiring Defendant to surrender and deliver, within ten days of the entry of judgment against her, her Certificate of Naturalization No. 34383767 and any copies thereof in her possession – and to make good faith efforts to recover and immediately surrender any copies thereof that she knows are in the possession of others – to the Attorney General, or his designated representative, including undersigned counsel;

6.    Judgment requiring Defendant to surrender and deliver, within ten days of the entry of judgment against her, any other indicia of U.S. citizenship, including, but not limited to, U.S. passports (whether valid or expired), U.S. passport cards (whether valid or expired), and Enhanced Driver's Licenses (whether valid or expired), and other relevant documents, whether current or expired, and any copies thereof in his possession, and to make good faith efforts to recover and then surrender any copies thereof that she knows are in the possession of others, to the Attorney General, or to his designated representative, including undersigned counsel; and

7.    Judgment granting the United States such other relief that may be lawful and proper in this case.

Respectfully submitted,

BRIAN D. MILLER
United States Attorney

/s/ Richard D. Euliss
Richard D. Euliss
Chief, Civil Division
DC 999166
1501 North 6th Street
Harrisburg, PA 17102
Tel: (717) 221-4482
Fax: (717) 221-4493