**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ADREAN ROGERS | : | |
| 1283 Main Street, Apt. 3 | : | |
| Harrisburg, PA 17113 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.:_____ |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| LAND O'LAKES, INC. | : | |
| d/b/a LAND O'LAKES PURINA MILLS | : | |
| 4001 Lexington Avenue North | : | |
| Arden Hills, MN 55126 | : | |
| | : | |
| Defendant. | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

Ms. Adrean Rogers ("Plaintiff," or "Ms. Rogers,") by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.     Ms. Rogers has initiated this action to redress violations by Land O' Lakes, Inc. d/b/a Land O'Lakes Purina Mills ("Defendant") of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 et seq.); the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 et seq.), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e et seq.), and the Pennsylvania Human Relations Act ("PHRA" - 43 P.S. Section 951 et seq.).

2.     Ms. Rogers alleges, *inter alia*, that Defendant discriminated against her on the basis of her disabilities by failing to grant her requests for reasonable accommodations and retaliating against her for using protected medical leave.

3.    In addition, Ms. Rogers was subjected to severe and/or pervasive sexual harassment as one of the only female employees. While Ms. Rogers repeatedly complained of sexual harassment, her concerns were ignored and she was subsequently terminated just months later.

4.    Defendant then terminated Ms. Rogers for concocted attendance violations, which were in fact disability-protected absences.

5.    As a direct consequence of Defendant's unlawful actions, Ms. Rogers seeks damages as set forth herein.

### JURISDICTION AND VENUE

6.    This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. This Court has supplemental jurisdiction over Plaintiff's state law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

7.    This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

8.    Pursuant to 28 U.S.C. § 1391(b)(1)-(2), venue is properly laid in this district because the events giving rise to this lawsuit occurred here and Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

9.     Ms. Rogers filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed the Charge with the Pennsylvania Human Relations Commission ("PHRC").

**PARTIES**

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Ms. Rogers is an adult female individual, with an address as set forth in the caption.

12.     Defendant is a Minnesota business corporation with a principal place of business as set forth in the caption.

13.     Defendant owns and operates a feed mill located at 470 Terminal Street, Camp Hill, PA 17011 (the "Camp Hill Mill") at which it employed Ms. Rogers.

14.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

15.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

16.     On or about February 14, 2022, Defendant hired Ms. Rogers as a Lead Operator and employed her in that capacity for three (3) years until unlawfully terminating her on or about March 6, 2025, as discussed herein.

17.     Throughout her employment with Defendant, Ms. Rogers was a hard-working, dedicated employee who performed her job in a competent manner.

18.     Ms. Rogers was initially hired and supervised by Defendant's Manager Shane Shoop ("Shoop") for approximately two (2) years until Cam DeKruif ("DeKruif") assumed supervisor responsibilities in or about November 2024.

19.     Ms. Rogers was also supervised by Defendant's Regional Manager Thomas "Mike" Mercer ("Mercer").

### Defendant Allows Rampant Sexual Harassment

20.     Beginning in or about 2022 and continuing into December 2024, Ms. Rogers was continuously subjected to an objectively hostile working environment rife with severe and pervasive sexual harassment.

21.     Specifically, Ms. Rogers' co-worker Steven Koppenhaver ("Koppenhaver") made daily sexually explicit comments and remarks towards and about Ms. Rogers. By way of brief example, Koppenhaver:

a.  Would routinely state how large Ms. Rogers' buttocks were;

b.  Would state that Ms. Rogers was "probably sucking dick" because she came in early on certain days;

c.  Would state that girls are "good for being on their knees" if Ms. Rogers was wearing knee pads;

d.  Would offer Ms. Rogers food (i.e. venison sticks) and state openly that she should "just stick it in your mouth, you're used to it;"

e.  Would make comments suggesting Ms. Rogers was engaged in sexual relations with other employees; and

f.  Would state that Ms. Rogers was not working because she was "probably somewhere fucking on a skid."

22.    In addition, other male employees would frequently comment on the size of her breasts and the thickness of her lips.

23.    Another male employee stated to Ms. Rogers that he had "never been with a Black chick," but that he would "love to have a piece of chocolate." The same employee would walk past Ms. Rogers and blow kisses and address her in sexually suggestive names such as "sweet thang."

24.    These comments happened with such frequency that Ms. Rogers complained to Shoop repeatedly about the ongoing sexual harassment, yet nothing was done and the harassment continued.

25.    In or about November 2024, Ms. Rogers complained about the continuing sexual harassment to Mercer.

26.    Mercer too ignored Ms. Rogers' complaints, nothing was done, and Koppenhaver continued to subject Ms. Rogers to sexual harassment on a near daily basis through December 2024.

27.    The harassment unreasonably interfered with Plaintiff's work performance and caused her embarrassment, humiliation, and emotional distress.

28.    Eventually, after repeated complaints were made to DeKruif about Koppenhaver, in or about January 2025, DeKruif finally went to Human Resources.

29.    In addition, several other employees made complaints about the ongoing sexual harassment with Human Resources and Defendant finally took remedial action and terminated Koppenhaver's employment in or about January 2025.

30.     Thereafter in or about February 2025, Mercer and Defendant's Human Resources Representative came to the Camp Hill Mill and threatened everyone to "grow up" because if they had to respond to complaints again, "people will be fired."

**<u>Defendant Refuses to Accommodate Ms. Rogers and Terminates her Twice</u>**

31.     Ms. Rogers separately suffers from several ADA qualifying disabilities such as Type II Diabetes and gastrointestinal issues. These aforementioned disabilities, at times, limit Ms. Rogers from performing major life activities such as regulating her blood sugar levels, managing her digestive functions, and managing chronic pain and cramps in her stomach.

32.     In or about October 2024, Ms. Rogers notified Defendant of her aforementioned disabilities and requested reasonable accommodations, including intermittent FMLA leave to treat and care for her serious medical conditions when they flared up.

33.     Ms. Rogers was open about her conditions and need for accommodations with both Defendant's Third-Party Administrator Lincoln Financial ("Lincoln Financial") and her direct management including Andrew Norris and Devin (LNU).

34.     While Defendant purported to initially grant Ms. Rogers' request, it quickly terminated her on or about November 19, 2024, shortly after making complaints about the aforementioned sexual harassment, for allegedly not following the FMLA call out procedure.

35.     However, Ms. Rogers had properly followed the call-out procedure and protested Defendant's blatantly illegal termination.

36.     After a very brief "investigation," Defendant conceded that Ms. Rogers had properly followed the call-out procedure and reinstated her on or about November 21, 2024.

37.     While Ms. Rogers continued to use her intermittent FMLA leave sparingly, she faced mounting criticism, increased scrutiny, and a pattern of escalating antagonism and scorn from management, including DeKruif.

38.     On or about January 31, 2025, Ms. Rogers complained to Mercer about DeKruif's ongoing and continuous mistreatment of her.

39.     Then later that same day, DeKruif approached Ms. Rogers and two other employees who were smoking during a break. Without any basis to do so, DeKruif accused only Ms. Rogers of smoking marijuana and being under the influence and demanded that she go for a drug test.

40.     Ms. Rogers was not smoking marijuana, went for the drug test, and passed with flying colors. It was clear DeKruif was singling Ms. Rogers out and trying to find any reason to terminate her.

41.     By way of further example, on or about February 7, 2025, DeKruif began denying Ms. Rogers overtime opportunities stating, "you take FMLA leave and now you're crying about overtime."

42.     Ms. Rogers objected to this denial as discriminatory and retaliatory and stated she should not be punished for taking FMLA as she needed.

43.     Shortly thereafter, on or about February 10, 2025, Ms. Rogers applied for a supervisor position.

44.     Ms. Rogers was uniquely qualified, having served in a leadership capacity prior to her employment with Defendant, and had also served in a leadership capacity for the prior two (2) years with Defendant, essentially performing the job she was applying for.

45.     Upon information and belief, Defendant instead chose to hire a male clerk with no leadership experience, no bachelor's degree and who wholly lacked the qualifications possessed by Plaintiff.

46.     On or about February 17, 2025, after learning of this blatantly discriminatory selection, Ms. Rogers aforementioned disabilities flared up and she requested to leave work early and use intermittent FMLA to cover her absence. Ms. Rogers also called off February 18, 2025, as her symptoms continued unabated.

47.     On or about February 22, 2025, and within five (5) days as required by Defendant's policy, Ms. Rogers contacted Lincoln Financial to report her February 17-18 absences as FMLA related.

48.     On or about February 24, 2025, Ms. Rogers contacted Lincoln Financial and Defendant's Human Resources again to ensure that her FMLA days for February 17-18 had been accepted. Both told Ms. Rogers that they were accepted without issue.

49.     On or about February 27, 2025, Ms. Rogers contacted Defendant's LOL Hotline to make a complaint of DeKruif's continued discriminatory and biased treatment.

50.     On or about March 5, 2025, Lincoln Financial called Ms. Rogers and stated that DeKruif had called and instructed Lincoln Financial to remove her FMLA designation for those absences.

51.     On or about March 6, 2025, DeKruif then terminated Ms. Rogers for purported attendance points, counting the FMLA days Ms. Rogers had utilized and properly called out for (February 17-18) against her points.

## COUNT I
## <u>Violations of the ADA</u>
## ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

52.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53.     Plaintiff suffers from qualifying health conditions under the ADA, which at times substantially limited one or more major life activities (as set forth *supra*).

54.     Despite Plaintiff's aforementioned health conditions and limitations, she was still qualified and able to perform the duties of her job well with Defendant.

55.     Prior to her pretextual termination, Plaintiff disclosed her aforementioned disabilities/serious medical conditions to Defendant's management and requested accommodations on several occasions shortly before Defendant terminated her employment.

56.     Defendant's management selectively applied policies and terminated Plaintiff while not similarly disciplining or terminating non-disabled employees for engaging in the same or similar conduct Defendant terminated Plaintiff for.

57.     Plaintiff therefore avers that her actual/perceived disabilities or record of impairment were a motivating and/or determinative factor in Defendant's decision not to promote Plaintiff and in the termination of her employment.

58.     Plaintiff also avers that Defendant failed to accommodate her, failed to engage in an interactive process and that she was terminated in retaliation for engaging in protected activity (requesting or utilizing accommodations) under the ADA.

59.     Defendant's actions as aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of the PHRA**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**and [3] Failure to Accommodate)**

60.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61.     Plaintiff suffers from qualifying health conditions under the ADA, which at times substantially limited one or more major life activities (as set forth *supra*).

62.     Despite Plaintiff's aforementioned health conditions and limitations, she was still qualified and able to perform the duties of her job well with Defendant.

63.     Prior to her pretextual termination, Plaintiff disclosed her aforementioned disabilities/serious medical conditions to Defendant's management and requested accommodations on several occasions shortly before Defendant terminated her employment.

64.     Defendant's management selectively applied policies and terminated Plaintiff while not similarly disciplining or terminating non-disabled employees for engaging in the same or similar conduct Defendant terminated Plaintiff for.

65.     Plaintiff therefore avers that her actual/perceived disabilities or record of impairment were a motivating and/or determinative factor in Defendant's decision not to promote Plaintiff and in the termination of her employment.

66.     Plaintiff also avers that Defendant failed to accommodate her, failed to engage in an interactive process and that she was terminated in retaliation for engaging in protected activity (requesting or utilizing accommodations) under the PHRA.

67.     Defendant's actions as aforesaid constitute violations of the PHRA.

10

## COUNT III
## Violations of the Family and Medical Leave Act ("FMLA")
### (Interference and Retaliation)

68.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

69.    Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(2)(A).

70.    Plaintiff had been employed by Defendant for at least twelve months and provided Defendant with appropriate notice of her need for protected leave.

71.    Plaintiff had at least 1,250 hours of service with the Defendant during her employment.

72.    Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or preceding calendar year, pursuant to 29 U.S.C § 2611(4)(A)(i).

73.    Plaintiff was entitled to receive leave pursuant to 29 U.S.C. § 2612(a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

74.    Defendant committed interference and retaliation violations of the FMLA by: (1) interfering with Plaintiff's FMLA rights by not designating her leave as FMLA; (2) intentionally instructing Lincoln Financial to remove FMLA designations for FMLA qualifying absences; (3) subjecting her to hostility upon her return; (4) not giving Plaintiff overtime and failing to promote her because she utilized FMLA; (5) terminating Plaintiff in retaliation for taking FMLA; and (6) taking actions toward her that would dissuade a reasonable person from exercising her rights under the FMLA.

75.    These actions as aforesaid constitute violations of the FMLA.

11

**COUNT IV**
**Violations of Title VII**
**[1] Sexual Harassment/Hostile Work Environment; and [2] Retaliation**

76.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

77.    Plaintiff was subjected to severe and/or pervasive gender discrimination/sexual harassment (discussed supra) sufficient to alter the conditions of her employment such that she was subjected to a hostile work environment.

78.    Plaintiff specifically opposed, rejected, and complained of gender discrimination/sexual harassment, retaliation, and hostile work environment (based on sex/gender).

79.    Following her opposition of, rejections to, and complaints about inappropriate sexual comments, advances, and gestures, Plaintiff was subjected to increased hostility and animosity (retaliatory discipline).

80.    Plaintiff's complaints were dismissed, and she was openly retaliated against (such that she was subjected to an intolerable hostile work environment based on sex/gender and retaliation for opposing/complaining about the same).

81.    In close proximity to Plaintiff's most recent complaints, Defendant terminated Plaintiff's employment citing unfounded and pretextual discipline.

82.    Plaintiff believes and therefore avers that Defendant terminated her employment because: [1] she was subjected to severe and/or pervasive discrimination/sexual harassment; [2] she opposed, rejected, and complained of inappropriate sexual comments, advances, gestures; and/or [3] she complained about the gender-related discriminatory treatment she was being subjected to.

83.    The aforesaid actions violate Title VII.

### COUNT V
### Violations of the PHRA
**[1] Sexual Harassment/Hostile Work Environment; and [2] Retaliation**

84.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

85.    Plaintiff was subjected to severe and/or pervasive gender discrimination/sexual harassment (discussed supra) sufficient to alter the conditions of her employment such that she was subjected to a hostile work environment.

86.    Plaintiff specifically opposed, rejected, and complained of gender discrimination/sexual harassment, retaliation, and hostile work environment (based on sex/gender).

87.    Following her opposition of, rejections to, and complaints about inappropriate sexual comments, advances, and gestures, Plaintiff was subjected to increased hostility and animosity (retaliatory discipline).

88.    Plaintiff's complaints were dismissed, and she was openly retaliated against (such that she was subjected to an intolerable hostile work environment based on sex/gender and retaliation for opposing/complaining about the same).

89.    In close proximity to Plaintiff's most recent complaints, Defendant terminated Plaintiff's employment citing unfounded and pretextual discipline.

90.    Plaintiff believes and therefore avers that Defendant terminated her employment because: [1] she was subjected to severe and/or pervasive discrimination/sexual harassment; [2] she opposed, rejected, and complained of inappropriate sexual comments, advances, gestures;

13

and/or [3] she complained about the gender-related discriminatory treatment she was being subjected to.

91.     The aforesaid actions violate the PHRA.


**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, overtime, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered unlawful employment practices, retaliation, and discrimination at the hands of Defendant until the date of verdict;

B.     Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including compensatory damages including damages for emotional distress;

D.     Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

14

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com
*Attorneys for Plaintiff*

Dated: June 29, 2026