**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**
**HARRISBURG DIVISION**

| | |
|---|---|
| KESHIA BROWN, individually and on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUAN TRANSPORTATION MANAGEMENT SYSTEMS, INC.<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Keshia Brown ("**Plaintiff**"), by the undersigned attorneys, on her own behalf and behalf of all others similarly situated, upon personal knowledge with respect to herself, and upon information and belief as to all other matters, brings this class action against Defendant Ruan Transportation Management Systems, Inc. ("**Defendant**"), pursuant to the Fair Credit Reporting Act ("**FCRA**"), 15 U.S.C. § 1681 *et seq*., and alleges as follows:

**NATURE OF THE ACTION**

1. Over 50 years ago, in enacting the FCRA, Congress recognized that with the "establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable[.]" 116 Cong. Rec. 36570 (1970).

1

2.     Congress was particularly concerned with the expanding practice [1] of "credit reporting," noting in a Senate Report accompanying the landmark legislation that a consumer's future employment could be jeopardized by an incomplete (or otherwise erroneous) credit or consumer report.  S. Report 91-517 at 4 (1970).

3.     Notably, Congress amended the FCRA in 1996, upon recognizing "the significant amount of inaccurate information that was being reported by consumer reporting agencies and the difficulties that consumers faced getting such errors corrected." S. Rep. No. 108-166 at 5-6 (2003). Specifically, prospective employers were, *inter alia*, obtaining and using consumer reports in a manner that violated the privacy rights of job applicants. S. Rep. No. 104-185 at 35 (1995).

4.     Consequently, when relying on consumer reports to make hiring and subsequent employment-related decisions, the FCRA now requires employers to: (i) disclose to consumers, in writing, that their consumer reports may be obtained for employment purposes; (ii) obtain authorization from consumers prior to procuring their reports; (iii) give notice to consumers before and upon taking adverse actions related to their reports; and (iv) provide consumers with copies of their reports and a reasonable time to address the information contained therein.  *See* 15 U.S.C. § 1681b(b)(1)-(3).

5.     Despite these and other prohibitions, Defendant violated the FCRA by, *inter alia*, failing to: (i) comply with the FCRA's authorization requirements in obtaining the permission of Plaintiff and other consumers to procure their consumer reports for employment purposes; (ii)

---

[1] Today, approximately three billion consumer credit reports are issued annually in the United States.  Moreover, every month, credit reporting agencies receive roughly 1.3 billion updates regarding 200+ million consumer files—an average of fifteen changes per file.  National Consumer Law Center, *Fair Credit Reporting* § 1.2.2 (10th ed. 2022), *updated at* www.nclc.org/library.

provide copies of consumer reports to Plaintiff and other consumers prior to taking adverse employment action against them based on such reports; and (iii) certify that Defendant complied with the FCRA's mandates prior to obtaining copies of consumer reports referencing Plaintiff and other consumers.

6. Upon information and belief, Defendant's actions in violation of the FCRA are part of a pattern of practice undertaken with numerous other individuals. As such, Plaintiff, on her own behalf and behalf of all others similarly situated, files this Class Action Complaint seeking statutory damages, punitive damages, costs and attorneys' fees, and all other relief available pursuant to the FCRA.

## PARTIES

7. Plaintiff Keshia Brown is, and was at all relevant times, a resident of Harrisburg, Pennsylvania. Plaintiff was the subject of a consumer report[2] procured by Defendant.

8. Defendant Ruan Transportation Management Systems, Inc. is engaged in the business of logistics and transportation in Pennsylvania and can be served through its registered agent, CT Corporation System, located at 600 N. 2nd Street, Suite 401, Harrisburg, PA 17101. Upon information and belief, Defendant employs approximately 5,000 individuals.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States.

---

[2] The FCRA defines "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for …(B) employment purposes[.]" 15 U.S.C. § 1681(d)(1)(B).

10.     This Court has personal jurisdiction over Defendant because Defendant operates in this District, and Defendant's contacts with this District are so continuous and systematic as to render Defendant essentially at home in this District. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District, and Defendant is subject to personal jurisdiction here.

## LEGAL AUTHORITY

12.     The FCRA is "undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it." *Cortez v. TransUnion*, 617 F.3d 688, 722 (3d Cir. 2010).

13.     Section 1681b(b)(1) of the FCRA dictates when a consumer reporting agency[3] may provide a consumer report to an employer for employment purposes as follows:

> (A) the person who obtains such report from the agency *certifies* to the agency that—
>
> (i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and
>
> (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and

---

[3] The FCRA defines "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681(a)(f).

(B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) [1] of this title.

15 U.S.C. § 1681b(b)(1) (emphasis added).

14.    Absent said certification from an employer, the consumer reporting agency must deny access to a consumer's personal information.  *See id*.  It is the "false certification of compliance" which creates liability under the FCRA.  *See U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996).

15.    Section 1681b(b)(2)(A) of the FCRA regulates the conduct of persons who procure a consumer report about employees or prospective employees as follows:

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a clear and conspicuous *disclosure* has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has *authorized* in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C § 1681b(b)(2)(A) (emphasis added).

16.    The FCRA's disclosure requirement places consumers on notice that a consumer report may be obtained as part of the employment application process.  In turn, the FCRA's authorization requirement provides consumers with an opportunity to consent to the lawful use of their personal information for limited purposes.  *See id*.

17.     Section 1681b(b)(3) regulates the conduct of persons intending to take an adverse

employment action against any employee or prospective employee based on a consumer report as

follows:

> Except as provided in subparagraph (B), in using a consumer report for
> employment purposes, *before* taking any adverse action[4] based in whole or
> in part on the report, the person intending to take such adverse action shall
> provide to the consumer to whom the report relates—
>
> (i) a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this
> subchapter, as prescribed by the Bureau under section 1681g(c)(3) 1
> of this title.

15 U.S.C. § 1681b(b)(3) (emphasis added).

18.     As a practical matter, Section 1681b(b)(3) provides consumers with a reasonable

amount of time to review their consumer reports and address any incomplete, inaccurate, or

misleading information therein, as well as to discuss any alleged errors with prospective employers

before any adverse employment action is taken.  *See id*.

### **FACTUAL ALLEGATIONS**

19.     In or around December 2025, Plaintiff applied for employment with Defendant for

a Dispatch Coordinator position at its Mechanicsburg, Pennsylvania, location.

20.     Plaintiff successfully progressed through Defendant's hiring process, which

included two phone screenings, a virtual interview, and coordination of an in-person interview.

21.     On December 17, 2025, Plaintiff received a follow-up email from Kelly Banning

("Banning"), an employee of Defendant, inviting Plaintiff to meet with Dave Hendricks

("Hendricks") the following day.

---

[4] 15 U.S.C. § 1681b(k)(1)(B)(ii) defines adverse action, in pertinent part, as "a denial of
employment or any other decision for employment purposes that adversely affects any current or
prospective employee."

22.     On December 18, 2025, Plaintiff met and interviewed with Hendricks at Defendant's Mechanicsburg facility.

23.     On December 30, 2025, Banning provided Plaintiff with a link for a virtual interview with Hendricks and another of Defendant's employees.

24.     On January 12, 2026, Plaintiff exchanged emails with Hendricks regarding an additional in-person interview on January 16, 2026, in Mechanicsburg.

25.     On January 20, 2026, Banning sent Plaintiff an email with a formal offer of employment for the Dispatch Coordinator position and a scheduled start date of February 2, 2026.

26.     Defendant's formal offer stated, "the offer is contingent upon successful completion of background verification (which is dependent on the requirements of your job and may include past employment and education."

27.     On or about January 21, 2026, Defendant procured consumer reports concerning Plaintiff for employment purposes.

28.     On January 21, 2026, Asurint, a consumer reporting agency, notified Plaintiff that "criminal or other public records" were reported to Defendant.

29.     On or about January 22, 2026, Defendant received a consumer report from Asurint relating to Plaintiff ("Asurint Consumer Report").

30.     The Asurint Consumer Report contained records of criminal charges relating to Plaintiff dating between 1998 and 2009 that were not relevant to the position Defendant had offered Plaintiff.

31.     On or about January 28, 2026, Defendant also obtained a consumer report concerning Plaintiff from Equifax ("Equifax Consumer Report").

32. On January 27, 2026, Plaintiff emailed Defendant to confirm her anticipated start date but received no response.

33. On January 29, 2026, Plaintiff received an adverse action notice from Linda Buckley ("Buckley"), an employee of Defendant's Human Resources Department, stating that Plaintiff's employment offer had been rescinded.

34. Defendant's January 29 adverse action notice email did not include a copy of the Asurint Consumer Report or the Equifax Consumer Report ("Consumer Reports"). It failed to notify Plaintiff that she had a right to receive, review, and contest the Consumer Reports that the adverse action was based on.

35. The January 29 adverse action notice email stated that Defendant's withdrawal of the job offer was based upon Plaintiff's alleged failure to accurately and completely report her employment history, as reflected in the Equifax Consumer Report.

36. Before Defendant took its adverse action, Plaintiff was not provided with a meaningful opportunity to review, dispute, explain, or otherwise address the information contained in her Consumer Reports.

37. Plaintiff was denied the opportunity to explain that the criminal history in the Asurint Consumer Report was not directly relevant to the position she was hired for, as required by Pennsylvania law.

38. On January 29, 2026, Plaintiff sent an email to Buckley requesting a copy of her Consumer Reports and disputing the accuracy of the information Defendant used to take the adverse action.

39.     On January 30, 2026, Buckley emailed Plaintiff a copy of the Equifax Consumer Report and informed Plaintiff that Defendant's adverse action related to her employment history, including her alleged failure to list all former employers.

40.     That same day, Plaintiff contacted Buckley to: (i)  again request every consumer report obtained by Defendant relating to Plaintiff that was considered in relation to the adverse action; (ii) dispute the accuracy of the Consumer Reports; and (iii)_inform Defendant that the allegedly inaccurate employment information might relate to her having been a recent victim of identity theft.

41.     Plaintiff later learned through her own investigation that there were at least two other individuals living in her geographic area with similar names and birthdates, which may account for the allegedly inaccurate employment information reflected in the Equifax Consumer Report.

42.     Despite her multiple requests, Defendant never provided Plaintiff with copies of all of her Consumer Reports.

43.     By taking adverse action before providing Plaintiff with copies of the Consumer Reports and a meaningful opportunity to address the information contained therein, Defendant deprived Plaintiff of the protections guaranteed by 15 U.S.C. § 1681 *et seq*.

44.     Had Plaintiff been provided with copies of the Consumer Reports before Defendant took adverse action, she would have had the opportunity to explain, dispute, and correct the inaccurate employment information before Defendant made its decision.

45.     Plaintiff was denied the opportunity to demonstrate that the information contained in the Consumer Reports relied upon by Defendant may have resulted from identity theft, mistaken identity, mixed-file reporting, or other inaccuracies.

46.     Plaintiff was further denied the opportunity to maintain her offer of employment and explain to Defendant that her criminal history, which was over 15 years old, was not directly relevant to the position offered.

47.     Defendant's decision to rescind Plaintiff's employment offer, in whole or in part, based upon information contained in the Consumer Reports, constitutes an adverse action under the FCRA.

48.     Defendant's failure to provide Plaintiff with copies of the Consumer Reports and a reasonable opportunity to respond before taking adverse action deprived Plaintiff of the procedural protections guaranteed by 15 U.S.C. § 1681b(b)(3).

49.     As a direct result of Defendant's actions, Plaintiff lost the promised employment opportunity and the wages and benefits associated with the Dispatch Coordinator position.

50.     Defendant's failure to follow the FCRA adverse action procedures caused Plaintiff to suffer frustration, embarrassment, garden-variety emotional distress, anxiety, uncertainty regarding her future employment prospects, and the loss of the opportunity to dispute and correct inaccurate information timely.

51.     Upon information and belief, before obtaining Plaintiff's Consumer Reports, Asurint and Equifax required Defendant to certify pursuant to 15 U.S.C. § 1681b(b)(1) that Defendant would comply with the disclosure, authorization, and adverse action requirements of the FCRA.

52.     Upon information and belief, Defendant certified that it would comply with the adverse action provisions of the FCRA before obtaining Plaintiff's Consumer Reports.

53.     Upon information and belief, Defendant also certified that information obtained from Plaintiff's Consumer Reports would not be used in violation of applicable federal or state law.

54.     Defendant's certifications were false because Defendant failed to provide Plaintiff with a copy of the Consumer Reports and a meaningful opportunity to review, dispute, explain, and address the information contained therein before taking adverse action.

55.     Plaintiff would not have authorized Defendant to obtain her Consumer Reports had she known that Defendant would fail to comply with the protections guaranteed by the FCRA.

56.     Defendant exceeded the scope of Plaintiff's authorization by obtaining and using her Consumer Reports in a manner that violated the FCRA's mandatory adverse action procedures.

57.     Upon information and belief, Defendant's conduct was consistent with its policies, practices, and procedures regarding the use of consumer reports in employment decisions.

58.     Defendant's violations were willful and/or carried out in reckless disregard of Plaintiff's rights under the FCRA.

59.     As a direct and proximate result of Defendant's violations of the FCRA, Plaintiff suffered injuries and damages and is entitled to all remedies available under the Act.

**CLASS ACTION ALLEGATIONS**

60.     **Class Definitions**: Pursuant to Federal Rule of Civil Procedure 23, Plaintiff proposes the following class definitions:

> **ADVERSE ACTION CLASS:** All individuals against whom Defendant took an adverse action based on information in their consumer report and did not receive a copy of the consumer report prior to the adverse action for the period of the previous two years prior to the date of filing, through the conclusion of this matter.

11

**AUTHORIZATION CLASS:** All individuals who were the subject of one or more consumer reports in which Defendant exceeded the authorization obtained from consumers for the period of the previous two years prior to the date of filing, through the conclusion of this matter.

**CERTIFICATION CLASS:** All individuals who were the subject of one or more consumer reports in which Defendant falsely represented that Defendant would comply with 15 U.S.C. § 1681b(b)(3) for the period of the previous two years prior to the date of filing, through the conclusion of this matter.

61.     As used herein, the term "Proposed Classes" shall refer to the aforementioned putative classes.

62.     Plaintiff reserves the right to amend the class definitions before the Court determines whether certification is appropriate, if discovery or further investigation reveals that the Proposed Classes should be expanded or otherwise modified.

63.     Excluded from the Proposed Classes are: (i) Defendant, its parents, subsidiaries, affiliates, officers, and directors; (ii) those who make a timely election to be excluded from the Proposed Classes, and (iii) any member of the judiciary presiding over this action.

64.     **Numerosity**: The Proposed Classes are so numerous that joinder of all members of each class is impracticable. Defendant, which employs approximately 5,000 individuals, regularly obtains and uses personal information in consumer reports to conduct background checks on prospective and current employees.  Defendant also regularly obtains consumer reports via false certifications and relies on the personal information therein, in whole or in part, as a basis for adverse employment action. Given the broad scope and nature of Defendant's business, Plaintiff believes that at least 500 individuals would fall within the definitions of the Proposed Classes during the relevant time period.  Members of the Proposed Classes can be identified through the Defendant's records.

12

65.   **Common Questions of Law and Fact**:  Virtually all issues of law and fact in this class action predominate over any questions affecting individual members of the Proposed Classes. The questions of law and fact common to the Proposed Classes include:

a.   Whether Defendant takes adverse employment actions based on information in consumer reports;

b.   Whether Defendant violated the FCRA by taking adverse actions against Plaintiff and other individual members of the Proposed Classes based on information in a consumer report without first providing them with a copy of the report;

c.   Whether Defendant obtained consumer reports via a false 15 U.S.C. § 1681b(b)(1) certification;

d.   Whether Defendant's actions exceeded the limited scope of the authorization for procuring the consumer reports;

e.   Whether Defendant's actions were reckless; and

f.   The proper measure of damages.

66.   **Typicality**:  Plaintiff's claims are typical of the members of the Proposed Classes in that Plaintiff is entitled to relief under the same causes of action and upon the same facts.  For example, the FCRA violations suffered by Plaintiff are typical of those suffered by other members of the Proposed Classes. Defendants typically fail to provide consumers with copies of their consumer reports before taking adverse action against them based on information in those reports. Additionally, before obtaining the consumer reports, Defendant typically certified that the reports would be used for employment purposes and that Defendant would abide by 15 U.S.C. § 1681b(b)(2) and (3). Finally, Defendant treated Plaintiff consistently with other members of the Proposed Classes in accordance with Defendant's standard policies and practices.

67.   **Adequacy of Representation**: Plaintiff is an adequate representative of the Proposed Classes because Plaintiff's interests coincide with, and are not antagonistic to, the

interests of the members of the Proposed Classes.  Plaintiff has retained attorneys competent and experienced in FCRA class action litigation.  Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of all members of the Proposed Classes.

68.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Moreover, questions of law and fact common to the members of the Proposed Classes overwhelmingly predominate over individual questions that may arise. Specifically, Defendant's conduct as described herein stems from common and uniform policies and practices which resulted in common violations of the FCRA.

69.    Even if members of the Proposed Classes were able or willing to pursue individual cases, a class action would still be preferable given that a multiplicity of individual actions would likely increase the expense and time of litigation in light of the complex legal and factual controversies presented.  Conversely, a class action provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single trier of fact. It would result in reduced time, effort, and expense for all parties and the Court, and ultimately, the uniformity of decisions.

70.    Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, and all other relief available pursuant to the FCRA on behalf of all members of the Proposed Classes.

71.    Plaintiff intends to send notice to all members of the Proposed Classes to the extent required by Fed. R. Civ. P. 23. The names and addresses of the members can be identified through Defendant's records.

## Count I
### ADVERSE ACTION
**(On Behalf of Plaintiff and the Adverse Action Class)**

72.    Plaintiff incorporates the foregoing paragraphs 9-71 of this Class Action Complaint as if fully set forth herein.

73.    Defendant obtained consumer reports concerning Plaintiff and the Adverse Action Class.

74.    Defendant used the consumer reports to take adverse action against Plaintiff and the Adverse Action Class.

75.    Defendant violated the FCRA by failing to provide Plaintiff and the Adverse Action Class with copies of their consumer reports before taking the adverse action.

76.    Defendant violated the FCRA by failing to provide Plaintiff and the Adverse Action Class with a reasonable time to review and address the information in their consumer reports.

77.    Defendant violated the FCRA by failing to provide Plaintiff and the Adverse Action Class with a reasonable time to dispute their consumer reports.

78.    Had Defendant complied with the FCRA, Plaintiff and the Adverse Action Class would have been given time to review, explain, dispute, and/or otherwise address the information contained in their consumer reports.

79.    Plaintiff and the Adverse Action Class would have never permitted Defendant to obtain copies of their consumer reports had they known that Defendant's policy was to take adverse employment actions in violation of the FCRA.

80.    Defendant's failure to comply with the mandates of the FCRA injured Plaintiff and the Adverse Action Class.

81.     Defendant acted in deliberate or reckless disregard of Defendant's obligations under the law and the rights of Plaintiff and the Adverse Action Class.

82.     Defendant's deliberate or reckless conduct is reflected by, among other things, the following facts:

  a.     Defendant has access to legal advice;

  b.     Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA;

  c.     15 U.S.C. § 1681b(b)(1) required Defendant to certify that the protections of 15 U.S.C. § 1681b(b)(3) would be followed; and

  d.     Defendant entered a contract by which Defendant agreed to abide by the FCRA's adverse action requirements.

83.     Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1000 for each of Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

84.     Plaintiff and the Adverse Action Class are also entitled to punitive damages for Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(2).

85.     Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

### Count II
### AUTHORIZATION VIOLATIONS
**(On Behalf of Plaintiff and the Authorization Class)**

86.     Plaintiff incorporates the foregoing paragraphs 9-71 as if fully set forth herein.

87.     Defendant procured consumer reports concerning Plaintiff and the Authorization Class under false pretenses.

88.     Plaintiff and the Authorization Class would never have permitted Defendant to obtain copies of their consumer reports had they known that Defendant exceeded their authorization in violation of the FCRA.

89.     Plaintiff and the Authorization Class would never have permitted Defendant to obtain copies of their consumer reports had they known that Defendant would not honor the FCRA's authorization requirements and protections.

90.     Plaintiff and the Authorization Class would never have authorized Defendant to obtain copies of their consumer reports if they had known that Defendant: (i) would violate the provisions of the FCRA; (ii) was obtaining their consumer reports in violation of the law; and (iii) had a policy, pattern, and practice of taking adverse actions in violation of the FCRA.

91.     Defendant's actions exceeded the scope of the limited consent granted by Plaintiff and the Authorization Class.

92.     Defendant acted in deliberate or reckless disregard of Defendant's obligations and the rights of Plaintiff and the Authorization Class under the provisions of the FCRA. Defendant's deliberate or reckless conduct is reflected by, among other things, the following facts:

      a.      Defendant has access to legal advice;

      b.      Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA; and

      c.      15 U.S.C. § 1681b certification addresses the requirement of obtaining and using a consumer report.

93.     Plaintiff and the Authorization Class are entitled to statutory damages of not less than $100 and not more than $1000 for each of Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

94.     Plaintiff and the Authorization Class are also entitled to punitive damages for Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(2).

95.     Plaintiff and the Authorization Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

### Count III
### CERTIFICATION VIOLATIONS
### (On Behalf of Plaintiff and the Certification Class)

96.     Plaintiff incorporates the foregoing paragraphs 9-71 of this Class Action Complaint as if fully set forth herein.

97.     Consumer reporting agencies are legally prohibited from providing employment-related consumer reports without first obtaining the certifications required by 15 U.S.C. § 1681b(b)(1).

98.     Prior to obtaining an applicant's consumer report for employment purposes, per 15 U.S.C. § 1681b(b)(1), Defendant was required to provide to the consumer reporting agency certification: (i) of the purpose for obtaining the report; and (ii) that Defendant would abide by FCRA protections.

99.     According to the provisions of 15 U.S.C. § 1681b(b)(1), Defendant cannot obtain an applicant's consumer report until Defendant has certified that Defendant complied with the mandates of 15 U.S.C. § 1681b(b)(2).

100.    According to the provisions of 15 U.S.C. § 1681b(b)(1), Defendant cannot obtain an applicant's consumer report until Defendant has certified that Defendant will comply with the mandates of 15 U.S.C. § 1681b(b)(3), if that section becomes applicable.

101.    According to the provisions of 15 U.S.C. § 1681b(b)(1), Defendant cannot obtain an applicant's consumer report until Defendant has certified that information from the consumer

report will not be used in violation of any applicable federal or state equal employment opportunity law or regulation.

102. On information and belief, prior to obtaining consumer reports concerning Plaintiff and the Certification Class, Defendant certified that Defendant had complied with 15 U.S.C. § 1681b(b)(2) and would comply with 15 U.S.C § 1681b(b)(3), if that section became applicable.

103. On information and belief, prior to obtaining consumer reports concerning Plaintiff and the Certification Class, Defendant also certified that personal information regarding Plaintiff and the Certification Class would not be used in violation of any applicable federal or state equal opportunity employment law or regulation.

104. Defendant knew that it would not comply with the mandates of 15 U.S.C. § 1681b(b)(1) prior to obtaining copies of consumer reports concerning Plaintiff and the Certification Class.

105. Defendant, therefore, made false certifications to obtain and use consumer reports concerning Plaintiff and the Certification Class for employment purposes.

106. The provisions of 15 U.S.C. § 1681b(b)(1) are intended to protect the privacy rights of Plaintiff and the Certification Class.

107. The provisions of 15 U.S.C. § 1681b(b)(1) are intended to protect the statutory right of Plaintiff and the Certification Class to review protected information.

108. Plaintiff and the Certification Class were injured by Defendant's practice of obtaining consumer reports via false certifications.

109. Absent Defendant's false certifications, Defendant would not have gained access to consumer reports concerning Plaintiff and the Certification Class, and Plaintiff and the Certification Class would not have suffered an adverse employment action.

19

110.    Plaintiff and the Certification Class would have never permitted Defendant to obtain copies of their consumer reports had they known that Defendant: (i) would violate the provisions of the FCRA; (ii) was obtaining their reports in violation of the law; and (iii) had a pattern, policy, and practice of taking adverse actions in violation of the FCRA.

111.    Moreover, Plaintiff and the Certification Class would have never permitted Defendant to obtain a copy of their consumer reports had they known that Defendant would deny them the opportunity to dispute their reports before taking any adverse action.

112.    Defendant's failure to comply with the unambiguous mandates of the FCRA injured Plaintiff and the Certification Class.

113.    Defendant acted in deliberate or reckless disregard of Defendant's obligations and the rights of Plaintiff and the Certification Class.

114.    Defendant's reckless conduct is reflected by, among other things, the following:

    a.    Defendant has access to legal advice;

    b.    Defendant has ignored regulatory guidance from FTC Informal Staff Opinions and the unambiguous language of the FCRA; and

    c.    Defendant made certifications per 15 U.S.C. § 1681b(b)(1) that it purposely violated.

115.    Plaintiff and the Certification Class are entitled to statutory damages of not less than $100 and not more than $1000 for each of Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

116.    Plaintiff and the Certification Class are also entitled to punitive damages for Defendant's violations pursuant to 15 U.S.C. § 1681n(a)(2).

117.    Plaintiff and the Certification Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and those similarly situated, respectfully requests that this Court enter judgment against Defendant as follows:

a.  Certifying the Adverse Action Class, Authorization Class, and Certification Class under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

b.  Designating Plaintiff as class representative and designating Plaintiff's undersigned counsel as counsel for the Proposed Classes;

c.  Finding that Defendant committed multiple, separate violations of the FCRA as to each Proposed Class Member;

d.  Finding that Defendant acted in deliberate or reckless disregard of Defendant's obligations under the FCRA and the rights of Plaintiff and the Proposed Classes;

e.  Awarding statutory damages as provided by the FCRA;

f.  Awarding punitive damages as provided by the FCRA;

g.  Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h.  Granting other and further relief, in law or equity, as this Court may deem just, equitable, and/or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all Counts so triable.

Dated: June 30, 2026                    Respectfully submitted,


                                        */s/ Andrew W. Ferich*
                                        Andrew W. Ferich (PA ID 313696)
                                        **AHDOOT & WOLFSON, PC**
                                        201 King of Prussia Road, Suite 650
                                        Radnor, Pennsylvania 19087
                                        Tel: (310) 474-9111
                                        aferich@ahdootwolfson.com

                                        Courtney C. Washington*
                                        **SIRI & GLIMSTAD LLP**
                                        107 McGraw St.

21

22

Forney, TX 75126
Tel: (212) 532-1091
cwashington@sirillp.com

***Attorneys for Plaintiff and the Putative Class***

*\* Pro hac vice application forthcoming*

22