# Exhibit 1

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

## CIVIL DIVISION

JEFFREY A. NELSON,
VICKI A. NELSON,
DOROTHY L. NELSON, and
DANIEL HOFFMANN,

        Plaintiffs,

v.

JETBLUE AIRWAYS CORPORATION and
ETIHAD AIRWAYS P.J.S.C.,

        Defendants.

No. 2026-SU-002572

CIVIL ACTION - COMPLAINT

RECEIVED
YORK COUNTY PROTHONOTARY
2026 JUN 24  PM 2: 10
JUDICIAL CENTER YORK PA

## NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.

You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiffs. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.

IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service of the York County Bar Association
(Attorney Connections)
York County Bar Center
137 East Market Street
York, Pennsylvania 17401
Telephone: (717) 854-8755

## AVISO PARA DEFENDERSE

USTED HA SIDO DEMANDADO EN LA CORTE. Si desea defenderse contra los reclamos expuestos en las páginas siguientes, debe tomar acción dentro de veinte (20) días después de que esta Demanda y Aviso le sean entregados, presentando una comparecencia escrita personalmente o por medio de un abogado y presentando por escrito ante la Corte sus defensas u objeciones a los reclamos presentados en su contra.

Se le advierte que si no lo hace, el caso puede continuar sin usted y la Corte puede dictar una sentencia en su contra sin más aviso por cualquier dinero reclamado en la Demanda o por cualquier otro reclamo o remedio solicitado por los Demandantes. Usted puede perder dinero, propiedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO DE INMEDIATO.

SI NO TIENE ABOGADO O NO PUEDE PAGAR UNO, VAYA O LLAME A LA OFICINA INDICADA ABAJO PARA AVERIGUAR DÓNDE PUEDE OBTENER ASISTENCIA LEGAL.

Lawyer Referral Service of the York County Bar Association
(Attorney Connections)
York County Bar Center
137 East Market Street
York, Pennsylvania 17401
Teléfono: (717) 854-8755

## COMPLAINT

## PRELIMINARY STATEMENT

1. This action arises from Defendants' failure to provide confirmed international air transportation to Plaintiffs despite the issuance of tickets, assignment of seats, repeated confirmations, an invitation to check in, and direct communications between Defendants before the scheduled departure.

2. Plaintiffs purchased four first-class airline tickets from New York, New York to Amsterdam, Netherlands through Defendant Etihad Airways P.J.S.C. ("Etihad") for travel on December 12, 2025, on flights operated by Defendant JetBlue Airways Corporation ("JetBlue").

3. Defendants repeatedly represented that Plaintiffs' transportation was confirmed and valid.

4. Less than twenty-four hours before departure, JetBlue invited Plaintiffs to check in online, displayed Plaintiffs' ticket numbers, itinerary, confirmation code, and seat assignments, and advised Plaintiffs that their trip was about to begin.

5. When Plaintiffs appeared at John F. Kennedy International Airport on December 12, 2025, JetBlue refused to issue boarding passes and advised Plaintiffs that Etihad was required to correct an internal ticketing issue.

6. For more than two hours before departure, representatives of JetBlue and Etihad communicated directly with each other regarding the issue but failed to resolve it.

7. Neither Defendant provided transportation, rebooking, substitute transportation, or other meaningful accommodation.

8. As a result, Plaintiffs lost the transportation purchased through Defendants, incurred additional expenses, redeemed additional airline miles to obtain replacement transportation, and suffered other damages.

## PARTIES

9. Plaintiff Jeffrey A. Nelson is an adult individual residing in York County, Pennsylvania.

10. Plaintiff Vicki A. Nelson is an adult individual residing in York County, Pennsylvania.

11. Plaintiff Dorothy L. Nelson is an adult individual residing in New Jersey and was a passenger under the transportation contract that is the subject of this action.

12. Plaintiff Daniel Hoffmann is an adult individual residing in California and was a passenger under the transportation contract that is the subject of this action.

13. Defendant JetBlue Airways Corporation is a foreign corporation engaged in the business of commercial passenger air transportation.

14. Upon information and belief, Defendant JetBlue Airways Corporation maintains its principal executive office at 27-01 Queens Plaza North, Long Island City, New York 11101 and may be served pursuant to applicable law.

15. Defendant Etihad Airways P.J.S.C. is a foreign corporation organized under the laws of the United Arab Emirates and engaged in the business of international commercial passenger air transportation.

16. Upon information and belief, Defendant Etihad Airways P.J.S.C. may be served through Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

17. Upon information and belief, Defendant Etihad Airways P.J.S.C. maintains a principal executive office within the United States at 250 Park Avenue, New York, New York 10177.

## JURISDICTION

18. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to the laws of the Commonwealth of Pennsylvania governing civil actions for damages, breach of contract, quasi-contract, and related causes of action.

19. This action is before this Court pursuant to Plaintiffs' timely appeal from the judgment entered by Magisterial District Judge Barry L. Bloss, Jr. at Docket No. MJ-19201-CV-000090-2026.

20. Pursuant to Pennsylvania Rule of Civil Procedure for Magisterial District Judge Appeals 1007, this matter proceeds de novo.

## PERSONAL JURISDICTION

21. This Court possesses personal jurisdiction over JetBlue because JetBlue regularly conducts business within the Commonwealth of Pennsylvania, contracts with Pennsylvania residents, purposefully directs commercial activities toward Pennsylvania residents, and avails itself of the benefits and protections of Pennsylvania law.

22. This Court possesses personal jurisdiction over Etihad because Etihad contracts with Pennsylvania residents for international air transportation, accepts consideration from Pennsylvania residents, communicates with Pennsylvania residents in connection with such transportation, purposefully directs commercial activities toward Pennsylvania residents, and is a party to the transaction giving rise to the claims asserted herein.

## VENUE

23. Venue is proper in York County, Pennsylvania.

24. Substantial portions of the transactions, occurrences, and events giving rise to Plaintiffs' claims occurred in York County.

25. Plaintiffs received Defendants' confirmations, itinerary modifications, seat assignments, travel communications, wheelchair-assistance communications, airport-travel advisories, and check-in instructions in York County.

26. On December 11, 2025, Plaintiffs received JetBlue's invitation to check in online while located in York County.

27. Plaintiffs attempted online check-in from York County but were unable to complete the process.

28. Plaintiffs communicated with JetBlue from York County concerning the failed online check-in and the status of their transportation.

29. During that communication, JetBlue advised Plaintiffs that their reservation was confirmed, their tickets were confirmed, their seat assignments were confirmed, and that they should proceed to the airport and check in at the JetBlue counter.

30. Plaintiffs reasonably relied upon the representations of JetBlue and the continuing confirmation of the transportation by Defendants while located in York County, Pennsylvania, undertook travel in reliance thereon, and received and relied upon the confirmations, itinerary modifications, seat assignments, check-in communications, transportation representations, and travel instructions described herein while located in York County.

31. The economic harm suffered by Plaintiffs was suffered in York County.

### JOINDER AND CLAIMS AGAINST ETIHAD

32. Plaintiffs previously asserted claims against Etihad in the underlying Magisterial District Court action.

33. The claims against Etihad were dismissed without prejudice after service upon Etihad was not successfully completed.

34. The dismissal of Defendant Etihad Airways P.J.S.C. in the Magisterial District Court proceeding was expressly entered without prejudice and did not constitute an adjudication on the merits of Plaintiffs' claims against Etihad.

35. Pursuant to Pennsylvania Rule of Civil Procedure for Magisterial District Judge Appeals 1007 and the de novo nature of this proceeding, Plaintiffs reassert their claims against Etihad herein.

36. The claims against JetBlue and Etihad arise from the same transaction, occurrence, and series of related events.

37. Common questions of law and fact exist regarding the issuance, confirmation, modification, validation, administration, and failure of Plaintiffs' transportation.

38. Judicial economy and the interests of justice favor resolution of all claims arising from the subject transportation transaction in a single proceeding.

## GENERAL FACTUAL ALLEGATIONS

39. On or about April 5, 2025, Plaintiffs purchased four first-class airline tickets through Etihad for transportation from New York, New York to Amsterdam, Netherlands.

40. The transportation was scheduled for December 12, 2025.

41. Plaintiffs redeemed approximately 321,000 Etihad Guest miles and paid applicable taxes and fees in connection with the purchase of the transportation.

42. Etihad issued an Electronic Ticket Receipt identifying Plaintiffs and the transportation purchased.

43. On September 27, 2025, Plaintiffs received notice that JetBlue had modified the original itinerary by replacing the originally scheduled nonstop flight from New York, New York to Amsterdam, Netherlands with a revised itinerary that included an additional segment through Boston, Massachusetts.

44. Upon information and belief, the ticketing discrepancy that ultimately prevented Plaintiffs from traveling arose after JetBlue modified Plaintiffs' original itinerary, although the precise timing and cause of that discrepancy remain within Defendants' possession, custody, and control.

45. Following the schedule change, JetBlue assigned seats for Plaintiffs on the revised JFK-to-Boston segment and retained previously assigned seats on the Boston-to-Amsterdam segment.

46. Between September 2025 and December 2025, Defendants continued to treat Plaintiffs' transportation as confirmed and active.

47. On December 9, 2025, JetBlue transmitted communications regarding wheelchair assistance and travel preparations.

48. On December 10, 2025, JetBlue transmitted communications concerning Plaintiffs' upcoming flight to Amsterdam.

49. On December 11, 2025, JetBlue advised Plaintiffs that it looked forward to seeing them onboard the following day.

50. On December 11, 2025, JetBlue invited Plaintiffs to check in online and displayed Plaintiffs' itinerary, ticket numbers, confirmation code, and assigned seats.

51. Plaintiffs attempted online check-in but were unable to complete the process.

52. Plaintiffs contacted JetBlue concerning the failed online check-in.

53. JetBlue advised Plaintiffs that their reservation was confirmed, their tickets were confirmed, their seat assignments were confirmed, and that they should proceed to the airport and check in at the JetBlue counter.

54. Plaintiffs reasonably relied upon the representations of JetBlue and the continuing confirmation of the transportation by Defendants and traveled to John F. Kennedy International Airport on December 12, 2025.

55. Plaintiffs arrived approximately three hours before departure.

56. JetBlue acknowledged that Plaintiffs' tickets and seat assignments were confirmed but advised that boarding passes could not be issued because of a ticketing discrepancy requiring action by Etihad.

57. Plaintiffs immediately undertook efforts to resolve the issue.

58. Representatives of JetBlue and Etihad communicated directly regarding the issue.

59. Additional communications occurred among Plaintiffs, JetBlue, Etihad, and Interline personnel.

60. During such communications, JetBlue advised Plaintiffs that Etihad was responsible for resolving the issue, while Etihad advised Plaintiffs that JetBlue was responsible for resolving the issue.

61. The specific cause of the ticketing discrepancy that prevented Plaintiffs from traveling, including which Defendant bore responsibility for preventing, correcting, revalidating, administering, processing, or resolving the discrepancy, is presently known only to Defendants and will be the subject of discovery.

62. Upon information and belief, Defendants possess records concerning reservation administration, ticket validation, ticket revalidation, interline procedures, schedule-change processing, boarding-pass eligibility, communications between carriers, and other matters relevant to determining responsibility for the transportation failure at issue in this action.

63. Upon information and belief, Defendants also possess records concerning any compensation, accounting, settlement activity, revenue allocation, reimbursement, mileage accounting, credits, or other consideration exchanged, retained, refunded, restored, or transferred between Defendants relating to Plaintiffs' transportation, and such information will be the subject of discovery.

64. Plaintiffs presently lack access to the information described above and reserve the right to amend, supplement, or modify their claims following discovery.

65. Despite more than two hours of notice before departure and direct communications between Defendants, the issue was not resolved.

66. Plaintiffs were not provided boarding passes.

67. Plaintiffs were not transported on the scheduled flights.

68. Plaintiffs were not provided substitute transportation by Defendants.

69. Despite Plaintiffs' desire and willingness to travel on the scheduled JetBlue flight, Plaintiffs inquired whether replacement seats could be purchased on the flight. No accommodation or transportation was provided.

70. Plaintiffs were forced to secure overnight accommodations and obtain replacement transportation through the redemption of additional airline miles and other expenditures.

71. In order to continue their planned international travel, Plaintiffs redeemed approximately 200,000 United Airlines MileagePlus miles to obtain replacement transportation to Amsterdam.

72. Plaintiffs subsequently pursued customer-service claims, internal appeals, executive-level complaints directed to the chief executive officers of both airlines, and complaints through the United States Department of Transportation. Correspondence directed to Etihad's chief executive officer was returned as undeliverable due to an insufficient address, while Plaintiffs continued their efforts to obtain relief through all available channels.

73. Defendants denied responsibility and failed to compensate Plaintiffs for the transportation that was not provided.

74. Plaintiffs thereafter commenced litigation and timely appealed the judgment entered in the Magisterial District Court action.

## COUNT I

## BREACH OF CONTRACT

### (Against Defendant Etihad Airways P.J.S.C.)

75. Plaintiffs incorporate by reference Paragraphs 1 through 74 of this Complaint as though fully set forth herein.

76. On or about April 5, 2025, Plaintiffs entered into a contract with Defendant Etihad Airways P.J.S.C. ("Etihad") for international air transportation from New York, New York to Amsterdam, Netherlands for travel on December 12, 2025. The contract included, among other things, the Electronic Ticket Receipt, reservation records, itinerary information, applicable Conditions of Carriage, and related contractual documents governing the transportation purchased by Plaintiffs.

77. In consideration for the transportation, Plaintiffs redeemed approximately 321,000 Etihad Guest miles and paid applicable taxes and fees.

78. Etihad accepted such consideration and issued an Electronic Ticket Receipt identifying Plaintiffs and the transportation purchased.

79. Plaintiffs fully performed all obligations required of them under the contract or were excused from further performance.

80. At all relevant times, Plaintiffs maintained valid reservations, confirmed ticket numbers, and confirmed seat assignments associated with the transportation purchased through Etihad.

81. Upon information and belief, following a schedule change implemented during the course of the reservation, Etihad continued to recognize and administer Plaintiffs' transportation and continued to hold itself out as the contractual carrier responsible for the transportation purchased by Plaintiffs.

82. Upon information and belief, Etihad owed contractual duties to Plaintiffs including, but not limited to:

    (a) issuing and maintaining valid transportation documents;

    (b) administering and validating the transportation purchased by Plaintiffs;

    (c) coordinating transportation provided through participating and/or operating carriers;

    (d) maintaining the ability of Plaintiffs to utilize the transportation purchased; and

    (e) providing the transportation purchased, whether directly or through participating carriers, or otherwise ensuring that Plaintiffs received the benefit of their bargain.

83. On December 12, 2025, Plaintiffs appeared for travel in accordance with the transportation purchased through Etihad.

84. Plaintiffs were prepared, willing, and able to travel.

85. Despite Plaintiffs' performance, the transportation purchased through Etihad was not provided.

86. During the events giving rise to this action, Etihad was advised that Plaintiffs had not received boarding passes and that a ticketing discrepancy existed preventing travel.

87. Etihad communicated with JetBlue and Plaintiffs regarding the issue.

88. Despite having notice of the issue and an opportunity to resolve it, Etihad failed to provide a resolution that would permit Plaintiffs to travel on the transportation purchased.

89. Upon information and belief, the facts concerning the administration, validation, revalidation, confirmation, ticket status, and internal handling of Plaintiffs' transportation are within the exclusive possession, custody, and control of Etihad and will be the subject of discovery.

90. Etihad breached its contractual obligations to Plaintiffs, including but not limited to its obligations concerning the issuance, confirmation, administration, validation, coordination, and provision of the transportation purchased by Plaintiffs.

91. As a direct and proximate result of Etihad's breaches of contract, Plaintiffs lost the benefit of the transportation purchased through Etihad.

Page 9

92. As a further direct and proximate result of Etihad's breaches, Plaintiffs incurred damages including, but not limited to:

    (a) .loss of the transportation purchased through Etihad;

    (b) loss and/or deprivation of approximately 321,000 Etihad Guest miles, the value of which will be established through discovery and trial;

    (c) replacement transportation expenses and mileage expenditures;

    (d) hotel expenses;

    (e) transportation expenses;

    (f) incidental and consequential damages recoverable under applicable law; and

    (g) such other damages as may be established through discovery and trial.

93. Etihad's breaches were a substantial factor in causing Plaintiffs' damages.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendant Etihad Airways P.J.S.C. in an amount within the jurisdictional limits applicable to compulsory arbitration, together with interest, costs, and such other relief as the Court deems just and proper.

## COUNT II

## BREACH OF CONTRACT

### (Against Defendant JetBlue Airways Corporation)

94. Plaintiffs incorporate by reference Paragraphs 1 through 93 of this Complaint as though fully set forth herein.

95. At all relevant times, JetBlue was the operating carrier responsible for transporting Plaintiffs on the flights that were the subject of the transportation purchased through Etihad.

96. JetBlue became a participant in and beneficiary of the transportation arrangement through its acceptance, administration, confirmation, modification, and operation of the transportation purchased by Plaintiffs.

97. The contractual relationship governing Plaintiffs' transportation included, among other things, Plaintiffs' reservation records, itinerary information, ticket records, seat assignments, applicable Conditions of Carriage, and related transportation documents maintained and administered by JetBlue.

98. On September 27, 2025, Plaintiffs received notice that JetBlue had modified the original itinerary by replacing the originally scheduled nonstop flight from New York, New York to Amsterdam, Netherlands with a revised itinerary that included an additional segment through Boston, Massachusetts.

Page 10

99. Upon information and belief, the ticketing discrepancy that ultimately prevented Plaintiffs from traveling arose after JetBlue modified Plaintiffs' original itinerary.

100. Following JetBlue's modification of the itinerary, JetBlue assigned seats to Plaintiffs on the revised JFK-to-Boston segment and retained Plaintiffs' seat assignments on the Boston-to-Amsterdam segment.

101. By modifying Plaintiffs' itinerary, assigning seats, maintaining Plaintiffs' reservations within its systems, and undertaking to transport Plaintiffs on the revised itinerary, JetBlue accepted Plaintiffs as ticketed passengers and undertook transportation services to be performed by JetBlue.

102. Thereafter, JetBlue continued to recognize Plaintiffs' transportation as confirmed and active.

103. On December 9, 2025, JetBlue transmitted communications concerning wheelchair assistance and travel preparations relating to Plaintiffs' upcoming trip.

104. On December 10, 2025, JetBlue transmitted communications concerning Plaintiffs' upcoming flight to Amsterdam.

105. On December 11, 2025, JetBlue advised Plaintiffs that it looked forward to seeing them onboard the following day.

106. On December 11, 2025, JetBlue invited Plaintiffs to check in online and displayed Plaintiffs' itinerary, ticket numbers, confirmation code, and assigned seats.

107. Plaintiffs attempted online check-in but were unable to complete the process.

108. Plaintiffs contacted JetBlue concerning the failed online check-in.

109. JetBlue advised Plaintiffs that their reservation was confirmed, their tickets were confirmed, their seat assignments were confirmed, and that they should proceed to the airport and check in at the JetBlue counter.

110. Plaintiffs reasonably relied upon JetBlue's representations and appeared for travel in accordance with the transportation purchased.

111. Upon information and belief, JetBlue owed contractual duties to Plaintiffs including, but not limited to:

   (a) administering and maintaining Plaintiffs' transportation records;

   (b) honoring valid and confirmed transportation;

   (c) coordinating transportation provided in connection with participating, ticketing, and/or interline carriers;

   (d) issuing boarding passes when Plaintiffs satisfied the requirements for travel;

   (e) transporting Plaintiffs in accordance with the transportation purchased; and

(f) providing Plaintiffs the benefit of the transportation for which consideration had been paid.

112. On December 12, 2025, Plaintiffs appeared at John F. Kennedy International Airport prepared, willing, and able to travel.

113. JetBlue acknowledged that Plaintiffs' tickets and seat assignments were confirmed.

114. Despite acknowledging that Plaintiffs' tickets and seat assignments were confirmed, JetBlue refused to issue boarding passes.

115. JetBlue advised Plaintiffs that Etihad was responsible for correcting a ticketing discrepancy preventing travel.

116. Representatives of JetBlue and Etihad communicated directly regarding the issue.

117. Despite having notice of the issue more than two hours before departure and despite direct communications with Etihad, JetBlue failed to provide a resolution that would permit Plaintiffs to travel on the transportation purchased.

118. JetBlue did not transport Plaintiffs on the scheduled flights.

119. JetBlue did not provide substitute transportation.

120. Despite Plaintiffs' desire and willingness to travel on the scheduled JetBlue flight, Plaintiffs inquired whether replacement seats could be purchased on the flight. No accommodation or transportation was provided.

121. Upon information and belief, the facts concerning Plaintiffs' reservation status, ticket status, check-in eligibility, boarding-pass eligibility, communications with Etihad, internal handling of the reservation, the September 27, 2025 itinerary modification, and the reasons Plaintiffs were denied transportation are within the exclusive possession, custody, and control of JetBlue and will be the subject of discovery.

122. JetBlue breached its contractual obligations to Plaintiffs, including but not limited to its obligations concerning the administration, confirmation, coordination, processing, modification, and provision of the transportation purchased by Plaintiffs.

123. As a direct and proximate result of JetBlue's breaches of contract, Plaintiffs lost the benefit of the transportation purchased.

124. As a further direct and proximate result of JetBlue's breaches, Plaintiffs incurred damages including, but not limited to:

(a) loss of the transportation purchased;

(b) loss and/or deprivation of approximately 321,000 Etihad Guest miles, the value of which will be established through discovery and trial;

(c) replacement transportation expenses and mileage expenditures;

(d) hotel expenses;

Page 12

(e) transportation expenses;

(f) incidental and consequential damages recoverable under applicable law; and

(g) such other damages as may be established through discovery and trial.

125. JetBlue's breaches were a substantial factor in causing Plaintiffs' damages.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendant JetBlue Airways Corporation in an amount within the jurisdictional limits applicable to compulsory arbitration, together with interest, costs, and such other relief as the Court deems just and proper.

## COUNT III

## NEGLIGENT MISREPRESENTATION

### (Against Defendant JetBlue Airways Corporation)

126. Plaintiffs incorporate by reference Paragraphs 1 through 125 of this Complaint as though fully set forth herein.

127. At all relevant times, JetBlue was engaged in the business of providing commercial passenger air transportation and related reservation, ticketing, check-in, customer-service, and transportation functions.

128. In the course of its business, JetBlue supplied information to Plaintiffs concerning the status of Plaintiffs' transportation, reservations, tickets, seat assignments, and ability to travel.

129. JetBlue supplied such information for the guidance of Plaintiffs in their travel-related decisions and actions.

130. On September 27, 2025, Plaintiffs received notice that JetBlue had modified the original itinerary by replacing the originally scheduled nonstop flight from New York, New York to Amsterdam, Netherlands with a revised itinerary that included an additional segment through Boston, Massachusetts.

131. Following JetBlue's modification of the itinerary, JetBlue assigned seats on the revised itinerary and continued to treat Plaintiffs' transportation as confirmed and active.

132. Upon information and belief, the ticketing discrepancy that ultimately prevented Plaintiffs from traveling did not arise until after JetBlue modified Plaintiffs' original itinerary.

133. On December 9, 2025, JetBlue transmitted communications concerning wheelchair assistance and travel preparations relating to Plaintiffs' upcoming trip.

134. On December 10, 2025, JetBlue transmitted communications concerning Plaintiffs' upcoming flight to Amsterdam.

Page 13

135. On December 11, 2025, JetBlue advised Plaintiffs that it looked forward to seeing them onboard the following day.

136. On December 11, 2025, JetBlue invited Plaintiffs to check in online and displayed Plaintiffs' itinerary, ticket numbers, confirmation code, and assigned seats.

137. After Plaintiffs were unable to complete online check-in, Plaintiffs contacted JetBlue concerning the status of their transportation.

138. During that communication, JetBlue advised Plaintiffs that their reservation was confirmed, their tickets were confirmed, their seat assignments were confirmed, and that they should proceed to the airport and check in at the JetBlue counter.

139. JetBlue intended and expected Plaintiffs to rely upon such information in making travel decisions and proceeding to the airport for travel.

140. Plaintiffs reasonably relied upon JetBlue's representations concerning the status and validity of their transportation.

141. Upon information and belief, JetBlue failed to exercise reasonable care in obtaining, communicating, maintaining, verifying, processing, administering, or updating information concerning Plaintiffs' transportation and reservation status.

142. Upon information and belief, JetBlue supplied information that was inaccurate, incomplete, misleading, or materially inconsistent with Plaintiffs' actual ability to travel on December 12, 2025.

143. Had Plaintiffs been accurately informed that they would be unable to travel on the transportation represented as confirmed, Plaintiffs could have pursued alternative arrangements before arriving at the airport.

144. Plaintiffs reasonably relied upon JetBlue's representations and appeared for travel as instructed.

145. On December 12, 2025, despite the prior confirmations and representations described above, JetBlue refused to issue boarding passes and Plaintiffs were not transported on the scheduled flights.

146. Upon information and belief, JetBlue knew or should have known that Plaintiffs would rely upon the information provided concerning the status and validity of their transportation.

147. As a direct and proximate result of Plaintiffs' reliance upon JetBlue's representations, Plaintiffs suffered damages including, but not limited to:

    (a) loss of the transportation purchased;

    (b) loss and/or deprivation of approximately 321,000 Etihad Guest miles, the value of which will be established through discovery and trial;

    (c) replacement transportation expenses and mileage expenditures;

Page 14

(d) hotel expenses;

(e) transportation expenses;

(f) incidental and consequential damages recoverable under applicable law; and

(g) such other damages as may be established through discovery and trial.

148. JetBlue's negligent misrepresentations were a substantial factor in causing Plaintiffs' damages.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendant JetBlue Airways Corporation in an amount within the jurisdictional limits applicable to compulsory arbitration, together with interest, costs, and such other relief as the Court deems just and proper.

## COUNT IV

### PROMISSORY ESTOPPEL / DETRIMENTAL RELIANCE

#### (Pled in the Alternative Against Defendant JetBlue Airways Corporation)

149. Plaintiffs incorporate by reference Paragraphs 1 through 148 of this Complaint as though fully set forth herein.

150. This Count is pled in the alternative to Count II.

151. At all relevant times, JetBlue possessed knowledge and information concerning Plaintiffs' transportation, reservations, tickets, seat assignments, check-in eligibility, and ability to travel that was not available to Plaintiffs.

152. Prior to September 27, 2025, Plaintiffs possessed confirmed transportation on the originally scheduled itinerary from New York, New York to Amsterdam, Netherlands.

153. On September 27, 2025, Plaintiffs received notice that JetBlue had modified the original itinerary by replacing the originally scheduled nonstop flight from New York, New York to Amsterdam, Netherlands with a revised itinerary that included an additional segment through Boston, Massachusetts.

154. Following JetBlue's modification of the itinerary, JetBlue assigned seats on the revised itinerary and continued to treat Plaintiffs' transportation as confirmed and active.

155. Upon information and belief, the ticketing discrepancy that ultimately prevented Plaintiffs from traveling did not arise until after JetBlue modified Plaintiffs' original itinerary.

156. On December 9, 2025, JetBlue transmitted communications concerning wheelchair assistance and travel preparations relating to Plaintiffs' upcoming trip.

157. On December 10, 2025, JetBlue transmitted communications concerning Plaintiffs' upcoming flight to Amsterdam.

Page 15

158. On December 11, 2025, JetBlue advised Plaintiffs that it looked forward to seeing them onboard the following day.

159. On December 11, 2025, JetBlue invited Plaintiffs to check in online and displayed Plaintiffs' itinerary, ticket numbers, confirmation code, and assigned seats.

160. After Plaintiffs were unable to complete online check-in, Plaintiffs contacted JetBlue concerning the status of their transportation.

161. During that communication, JetBlue advised Plaintiffs that their reservation was confirmed, their tickets were confirmed, their seat assignments were confirmed, and that they should proceed to the airport and check in at the JetBlue counter.

162. Through the conduct and representations described above, JetBlue represented and reasonably expected Plaintiffs to believe that their transportation remained valid, confirmed, and available for travel on December 12, 2025.

163. JetBlue reasonably should have expected that Plaintiffs would rely upon those representations.

164. Plaintiffs did in fact reasonably rely upon JetBlue's representations.

165. In reliance upon JetBlue's representations, Plaintiffs:

    (a) continued with their planned travel arrangements;

    (b) traveled to John F. Kennedy International Airport for the scheduled departure;

    (c) refrained from making alternative transportation arrangements prior to departure; and

    (d) incurred expenses and obligations associated with the planned travel.

166. Plaintiffs' reliance upon JetBlue's representations was reasonable and foreseeable.

167. On December 12, 2025, despite the representations described above, JetBlue refused to issue boarding passes and Plaintiffs were not transported on the scheduled flights.

168. As a result, Plaintiffs suffered a substantial detriment and incurred damages.

169. Injustice can be avoided only by enforcing JetBlue's promises and representations and awarding Plaintiffs appropriate relief.

170. As a direct and proximate result of Plaintiffs' reliance upon JetBlue's promises and representations, Plaintiffs suffered damages including, but not limited to:

    (a) loss of the transportation purchased;

    (b) loss and/or deprivation of approximately 321,000 Etihad Guest miles, the value of which will be established through discovery and trial;

    (c) replacement transportation expenses and mileage expenditures;

    (d) hotel expenses;

(e) transportation expenses;

(f) incidental and consequential damages recoverable under applicable law; and

(g) such other damages as may be established through discovery and trial.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendant JetBlue Airways Corporation in an amount within the jurisdictional limits applicable to compulsory arbitration, together with interest, costs, and such other relief as the Court deems just and proper.

## COUNT V

## UNJUST ENRICHMENT

### (Pled in the Alternative Against Defendant Etihad Airways P.J.S.C.)

171. Plaintiffs incorporate by reference Paragraphs 1 through 170 of this Complaint as though fully set forth herein.

172. This Count is pled in the alternative to Count I.

173. Plaintiffs conferred a benefit upon Etihad by redeeming approximately 321,000 Etihad Guest miles and paying applicable taxes and fees in connection with the transportation purchased.

174. Etihad accepted the benefit conferred by Plaintiffs.

175. The transportation purchased by Plaintiffs was not provided.

176. Upon information and belief, Etihad has not restored the approximately 321,000 Etihad Guest miles or refunded the consideration received in connection with the transportation that was not provided.

177. Plaintiffs repeatedly requested compensation, restoration of miles, reimbursement, or other relief from Etihad, but no such relief was provided.

178. Prior to commencing litigation, Plaintiffs pursued customer-service claims, internal appeals, executive-level complaints, and complaints through the United States Department of Transportation in an effort to obtain restoration of the consideration paid or other appropriate relief.

179. Upon information and belief, the records concerning the receipt, application, accounting, refund, restoration, retention, or other disposition of Plaintiffs' Etihad Guest miles, taxes, fees, and related consideration are within the possession, custody, and control of Etihad and will be the subject of discovery.

180. To the extent Etihad denies liability under an express contract, denies responsibility for the transportation not provided, or contends that another carrier bears responsibility for Plaintiffs' damages, Etihad has nevertheless been unjustly enriched at Plaintiffs' expense.

Page 17

181. Upon information and belief, Etihad retained some or all of the benefit conferred by Plaintiffs notwithstanding the failure of the transportation transaction.

182. Under the circumstances, it would be inequitable and unjust for Etihad to retain the benefit of the miles, taxes, fees, or other consideration received in connection with the transportation without compensating Plaintiffs.

183. As a direct and proximate result of Etihad's unjust enrichment, Plaintiffs suffered damages including, but not limited to, the loss and/or deprivation of approximately 321,000 Etihad Guest miles, the value of which will be established through discovery and trial, taxes and fees paid, the value of benefits retained by Etihad, the value of replacement transportation obtained as a result of the failed transportation transaction to the extent recoverable under applicable law, and such other damages as may be recoverable under applicable law.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendant Etihad Airways P.J.S.C. in an amount within the jurisdictional limits applicable to compulsory arbitration, together with interest, costs, and such other relief as the Court deems just and proper.

## JOINT, SEVERAL, AND ALTERNATIVE LIABILITY ALLEGATIONS

184. Plaintiffs incorporate by reference Paragraphs 1 through 183 of this Complaint as though fully set forth herein.

185. Plaintiffs allege that one or both Defendants are legally responsible for the transportation failure described in this Complaint.

186. Plaintiffs further allege that the precise allocation of responsibility between Defendants is presently unknown because information concerning reservation administration, ticket validation, ticket revalidation, interline procedures, internal communications, and transportation eligibility is within the possession, custody, and control of Defendants.

187. At all relevant times, each Defendant communicated with Plaintiffs and/or the other Defendant concerning Plaintiffs' transportation and the ticketing discrepancy that prevented travel.

188. Each Defendant asserted that the other Defendant bore responsibility for resolving the discrepancy.

189. Discovery is necessary to determine the nature and extent of each Defendant's responsibility for Plaintiffs' damages and the value of replacement transportation obtained as a result of the failed transportation transaction, to the extent recoverable under applicable law.

190. To the extent permitted by applicable law and the evidence developed through discovery, Plaintiffs seek recovery against Defendants jointly, severally, alternatively, or in such proportion as may be determined by the finder of fact.

Page 18

191. Plaintiffs reserve the right to amend, supplement, or modify their claims as additional information becomes available through discovery.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants JetBlue Airways Corporation and Etihad Airways P.J.S.C., jointly, severally, alternatively, or in such proportion as may be determined by the finder of fact, in an amount within the jurisdictional limits applicable to compulsory arbitration, together with pre-judgment interest as permitted by law, costs of suit, and such other legal, equitable, declaratory, and further relief as this Court deems just and proper.

## VERIFICATION

We verify that the statements made in the foregoing Complaint are true and correct to the best of our knowledge, information, and belief. We understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

JEFFREY A. NELSON
Date: 6/20/26

VICKI A. NELSON
Date: 6/22/26

DOROTHY L. NELSON
Date: June 21, 2026

DANIEL HOFFMANN
Date: June 22, 2026

Page 20

Respectfully submitted,

_____

**JEFFREY L. NELSON**
Plaintiff, Pro Se
Address: 677 Campbell Rd York, Pa 17402
Telephone: 717-659-3344
Email: Suservicesllc@outlook.com
Date: 6-22-26

_____

**VICKI A. NELSON**
Plaintiff, Pro Se
Address: 677 Campbell Rd York Pa 17402
Telephone: (717)655-3347
Email: v.nelson@comcast.net
Date: 6/22/26

_____

**DOROTHY L. NELSON**
Plaintiff, Pro Se
Address: 15 Lynwood Ave, Franklin Park, NJ 08823
Telephone: 732-242-3658
Email: queennit24@yahoo.com
Date: June 25, 2026

_____

**DANIEL HOFFMANN**
Plaintiff, Pro Se
Address: 4851 Kenworth, Shingle Springs ca 95682
Telephone: 916 367 9232
Email: Daniel@Hoffmann.net
Date: 6/22/2026

Page 21