**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ADAM NIMON | ) ) ) Case No.: |
| Plaintiff, | ) ) Hon. |
| v. | ) ) **Jury Trial Demanded** |
| THE SHADOWFAX CORPORATION | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff Adam Nimon ("Nimon" or "Plaintiff") through undersigned counsel, brings this Complaint against Defendant Shadowfax Corporation ("Shadowfax" or "Defendants"), and alleges as follows:

## I. INTRODUCTION

1. This is an employment discrimination, retaliation, and failure-to-accommodate action arising under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA"), and, to the extent applicable based upon the facts developed in discovery, the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").

2. Plaintiff Adam Nimon was a long-term employee of Defendant The Shadowfax Corporation where he worked as an Associate Director.

1

3. Mr. Nimon suffers from mental health disabilities, including depression and anxiety. Shadowfax knew of Mr. Nimon's disabilities and related medical limitations as Shadowfax had formal notice of Mr. Nimon's mental health condition through FMLA paperwork and later through express accommodation requests and medical documentation from his treating psychiatrist.

4. Mr. Nimon requested reasonable accommodations that would allow him to continue performing the essential functions of his position while protecting his mental health. His requested accommodations included a predictable schedule, clarification of job duties, limits on direct care duties outside of on-call medical or behavioral emergencies, and remote work where feasible.

5. However, rather than engage in a meaningful, good-faith interactive process, Shadowfax delayed, resisted, and ultimately imposed a one-sided accommodation proposal that did not address Mr. Nimon's actual medical restrictions. Specifically, after Mr. Nimon requested accommodations, Shadowfax altered the terms and conditions of his employment, removed him from meaningful Associate Director duties, assigned him tasks outside of his role, and treated him as though his request for accommodation was a burden or act of defiance. Shadowfax then terminated Mr. Nimon's employment on May 6, 2025.

6. Shadowfax claimed generally that Mr. Nimon was an at-will employee and later attempted to justify the termination through alleged insubordination and policy

violations. Shadowfax's stated reasons were false, pretextual, exaggerated, and/or causally connected to Mr. Nimon's disability, accommodation requests, protected activity, and need for medical leave.

7. Shadowfax's conduct violated the ADA and PHRA. Shadowfax's conduct also violated the FMLA in that Shadowfax interfered with, discouraged, or retaliated against Mr. Nimon because of his protected medical leave and/or FMLA-related limitations.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331 because the claims arise under federal law.

9. This Court has subject matter jurisdiction over Plaintiff's FMLA claims pursuant to 28 U.S.C. § 1331.

10. This Court has supplemental jurisdiction over Plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same facts and circumstances as Plaintiff's federal claims.

11. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred in York County, Pennsylvania, which is located within the Middle District of Pennsylvania.

12. Defendant conducts business in this District.

13. Defendant employed Plaintiff in this District.

3

### III. PARTIES

14. Plaintiff Adam Nimon is an adult individual residing in York County, Pennsylvania and where he was employed The Shadowfax Corporation.

15. Defendant Shadowfax is a Pennsylvania employer with an address at 386 Pattison Street, York, Pennsylvania 17403. Defendant is an employer within the meaning of the ADA, the PHRA and the FMLA. Further, at all relevant times, Defendant employed more than the minimum number of employees required for coverage under the ADA, PHRA, and FMLA.

### IV. ADMINISTRATIVE EXHAUSTION

16. Plaintiff timely filed an administrative charge of discrimination with the Pennsylvania Human Relations Commission. Plaintiff's PHRC case number is 202402044. Plaintiff's charge was dual filed with the Equal Employment Opportunity Commission. Plaintiff's EEOC case number is 17F202560591.

17. Plaintiff alleged disability discrimination, failure to accommodate, retaliation, discriminatory terms and conditions of employment, and discharge.

18. Plaintiff has satisfied all administrative prerequisites for filing suit under the ADA and PHRA. To the extent a Notice of Right to Sue is required for any claim, Plaintiff has received such notice before proceeding on that claim. See **Exhibit A**. Plaintiff brings this civil action within the applicable limitations periods.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Position

19. Plaintiff began employment with Shadowfax in or about December 2015.

20. Plaintiff worked for Shadowfax for approximately nine years and held the position of Associate Director.

21. As Associate Director, Plaintiff performed supervisory and managerial duties.

22. Plaintiff's role included supervisory functions, communication with staff, documentation, program support, administrative responsibilities, and oversight connected to Shadowfax's residential services operations.

23. Plaintiff's original job description identified the Associate Director role as a supervisory and managerial position.

24. Plaintiff's position was classified as exempt.

25. Plaintiff's position was not a manual labor, warehouse, moving, or file-purging position.

26. Plaintiff was qualified for the Associate Director position.

27. Plaintiff had successfully performed his position for years.

28. Plaintiff was able to perform the essential functions of his position with reasonable accommodations.

### B. Plaintiff's Disabilities and Shadowfax's Notice

29. Plaintiff suffers from depression and anxiety.

30. Plaintiff's depression and anxiety substantially limit one or more major life activities, including his ability to manage stress, maintain emotional stability, sleep, concentrate, and function during periods of unpredictable scheduling, excessive workload, and unsupported direct care assignments.

31. Plaintiff's disabilities were known to Shadowfax.

32. Shadowfax received medical documentation concerning Plaintiff's mental health conditions.

33. On or about June 12, 2023, Plaintiff informed Shadowfax of his disability through FMLA documentation.

34. That documentation provided Shadowfax with formal notice of Plaintiff's mental health disability and related limitations.

35. Plaintiff's medical documentation reflected that unpredictable schedules, awake overnight duties, sleep disruption, excessive hours, and unplanned direct care responsibilities could worsen his symptoms.

36. Shadowfax had repeated notice that Plaintiff required structure, predictability, and limits on certain duties because of his mental health disabilities.

37. Shadowfax also had notice that Plaintiff could continue working with reasonable accommodations.

**C. Plaintiff's Accommodation Requests**

38. In or around October 2024, Plaintiff formally requested reasonable accommodations.

39. Plaintiff submitted documentation from his treating psychiatrist, Dr. Gregory Bredow.

40. Plaintiff requested that he remain fully available during standard business hours, Monday through Friday.

41. Plaintiff requested that additional duties outside standard business hours, apart from on-call emergencies, be completed remotely where feasible.

42. Plaintiff requested limits on direct care duties outside regular business hours.

43. Plaintiff requested that direct care duties during on-call weeks be limited to medical and behavioral emergencies.

44. Plaintiff requested clarification of his job responsibilities so that he could understand the boundaries of his role and avoid unpredictable duties that exacerbated his mental health symptoms.

45. Plaintiff made clear that he wanted to continue performing his job.

46. Plaintiff did not request to stop working.

47. Plaintiff did not request to avoid all essential job duties.

48. Plaintiff requested reasonable accommodations that would permit him to continue performing the essential functions of his Associate Director position.

49. Plaintiff's requested accommodations were supported by medical documentation.

50. Plaintiff's requested accommodations were reasonable.

51. Plaintiff's requested accommodations were consistent with the nature of his supervisory role.

52. Plaintiff's requested accommodations would not have imposed an undue hardship on Shadowfax.

### D. Shadowfax's Response to the October 2024 Request

53. Shadowfax did not promptly grant Plaintiff's requested accommodations.

54. Shadowfax did not engage in a meaningful interactive process.

55. Instead, Shadowfax informally suggested that Plaintiff accept a transfer or demotion to another position.

56. Shadowfax suggested moving Plaintiff from his Associate Director position into a Day Program role.

57. Plaintiff understood that proposal as a material change to his existing position.

58. Plaintiff did not request a demotion.

59. Plaintiff did not request removal from his Associate Director position.

60. Plaintiff wanted to remain in his current role with reasonable accommodations.

61. Plaintiff asked Shadowfax to explain why his requested accommodations could not be provided in his existing position.

8

62. Shadowfax failed to provide a clear and adequate explanation.

63. Shadowfax failed to explain why Plaintiff's requested accommodation would prevent him from performing the essential functions of his position.

64. Shadowfax failed to identify any actual undue hardship that would result from Plaintiff's proposed accommodations.

65. Shadowfax treated reassignment or removal from Plaintiff's role as the preferred solution, even though Plaintiff could perform his current job with reasonable accommodation.

66. Plaintiff requested written clarification and continued to cooperate.

67. Plaintiff remained willing to participate in the interactive process.

68. Shadowfax's response was not a good-faith interactive process.

**E. Plaintiff's Medical Leave**

69. On or about November 5, 2024, Plaintiff went on medical leave for mental health treatment.

70. Plaintiff remained on medical leave until on or about January 6, 2025.

71. Plaintiff's medical leave related to the same mental health conditions that supported his accommodation requests.

72. During Plaintiff's medical leave, Shadowfax made little to no meaningful progress on his accommodation request.

73. Shadowfax did not use the leave period to finalize reasonable accommodations for Plaintiff's return.

74. Upon Plaintiff's return from leave, his accommodation request remained unresolved.

75. Plaintiff's need for leave further confirmed Shadowfax's knowledge of his disability and need for reasonable accommodation.

## F. Plaintiff's January 2025 Accommodation Submission

76. In January 2025, after returning from medical leave, Plaintiff resubmitted his accommodation request.

77. Plaintiff provided updated documentation from his psychiatrist.

78. The January 2025 medical documentation reiterated that Plaintiff needed accommodations to sustain his mental health and perform his supervisory and managerial responsibilities.

79. The January 2025 documentation requested that Plaintiff's in-person responsibilities outside regular business hours be limited to supervisory functions only.

80. The January 2025 documentation requested that, during on-call weeks, direct care responsibilities be limited to medical and behavioral emergencies.

81. The January 2025 documentation requested that additional duties outside the scope of Plaintiff's job be completed remotely where feasible to protect his health and ensure sustainable performance.

82. Plaintiff followed up with Shadowfax regarding the status of his accommodation request.

83. Plaintiff asked whether additional information was needed.

84. Plaintiff continued to cooperate.

85. Shadowfax continued to delay.

86. Shadowfax continued to demand additional paperwork and forms even though Plaintiff had already supplied medical documentation identifying his restrictions and requested accommodations.

87. Shadowfax's demands for repeated paperwork, and additional forms delayed the accommodation process.

88. Shadowfax's delays left Plaintiff working without a clear accommodation plan.

**G. Shadowfax's Changed Treatment of Plaintiff After His Accommodation Requests**

89. After Plaintiff requested accommodations and returned from medical leave, Shadowfax materially changed his working conditions.

90. Plaintiff was placed under the supervision of Ben Fierer.

91. Plaintiff was removed from meaningful Associate Director duties.

92. Plaintiff was assigned tasks that were not consistent with his managerial role.

93. Plaintiff was assigned to physically pack and unpack boxes.

94. Plaintiff was assigned to work in cold or freezing conditions.

95. Plaintiff was assigned to sort old paperwork and files alone in storage or warehouse-like settings.

96. These tasks were not part of Plaintiff's ordinary Associate Director duties.

97. These tasks did not meaningfully use Plaintiff's supervisory, managerial, or professional experience.

98. These assignments isolated Plaintiff.

99. These assignments diminished Plaintiff's role.

100. These assignments were humiliating and degrading.

101. These assignments were materially different from the duties Plaintiff performed before requesting accommodations.

102. These assignments were imposed after Plaintiff requested accommodation and returned from medical leave.

103. Plaintiff objected that his role was being diminished.

104. Plaintiff requested clarification regarding why he was being assigned tasks inconsistent with his position.

105. Plaintiff explained that he was being excluded from substantive managerial duties.

106.  Plaintiff explained that he was being asked to perform clerical, manual, and warehouse-type tasks rather than Associate Director responsibilities.

107.  Plaintiff also explained that he was being denied remote work flexibility while other management employees were permitted to work remotely.

108.  Plaintiff believed he was being singled out because of his disability, medical restrictions, and accommodation requests.

109.  Shadowfax did not restore Plaintiff to his full Associate Director responsibilities.

110.  Shadowfax's treatment of Plaintiff after his protected activity was adverse.

111.  Shadowfax's conduct would dissuade a reasonable employee from requesting disability accommodations.

### H. Shadowfax's Remote Work and Direct Care Restrictions

112.  Plaintiff requested remote work where feasible.

113.  Shadowfax had a flexible schedule and remote work policy for salaried staff.

114.  Shadowfax permitted other management-level employees to work remotely when in-person presence was not operationally necessary.

115.  Plaintiff's medical provider supported remote work when in-person presence was unnecessary.

116.  Plaintiff's assigned tasks during this period, including employee evaluations, paperwork, and administrative tasks, could often be performed remotely.

117. Shadowfax nevertheless restricted Plaintiff's remote work.

118. Shadowfax informed Plaintiff that he could not work remotely or limited him to remote work only under narrow circumstances.

119. Plaintiff questioned why remote work was being treated as unavailable to him despite the company's policy and practice.

120. Shadowfax did not provide a legitimate, consistent, or individualized explanation for denying remote work flexibility.

121. Shadowfax's approach was not tailored to Plaintiff's medical needs.

122. Shadowfax also failed to clarify how direct care duties would be limited consistent with Plaintiff's medical restrictions.

123. Plaintiff repeatedly asked whether direct care expectations would be limited to supervisory functions, medical emergencies, and behavioral emergencies.

124. Plaintiff repeatedly requested clarification so that he could comply with expectations without violating his medical restrictions.

125. Shadowfax did not provide clear, consistent, and effective accommodations.

**I. Shadowfax's One-Sided Accommodation Proposal**

126. On or about March 31, 2025, Shadowfax presented Plaintiff with a proposed accommodation memorandum or agreement.

127. The proposal was not developed through a meaningful interactive process.

128. The proposal did not reflect Plaintiff's requested accommodations.

14

129. The proposal did not reflect the medical recommendations from Plaintiff's treating psychiatrist.

130. The proposal did not adequately limit direct care duties.

131. The proposal did not adequately address Plaintiff's need for predictability and clarification of duties.

132. The proposal offered remote work of up to two days.

133. Remote work was already available under Shadowfax policy for salaried staff.

134. Offering a standard benefit already available to salaried staff was not a meaningful accommodation tailored to Plaintiff's disability.

135. Plaintiff requested time to review the proposal.

136. Plaintiff requested clarification.

137. Plaintiff was not given a meaningful opportunity to negotiate or propose modifications.

138. Plaintiff was effectively told that he had to accept the proposal or risk his job.

139. Shadowfax showed Plaintiff a version of the proposal that appeared to include or reuse a prior signature without his consent.

140. Plaintiff never agreed to the disputed version of the proposal.

141. Plaintiff disputed the legitimacy of the revised job description and accommodation memorandum.

142. Plaintiff signed under protest and made clear that he did not agree that the proposal satisfied his medical needs.

143. Plaintiff's objections were protected activity.

144. Plaintiff's refusal to blindly accept an inadequate accommodation proposal was protected activity.

145. Plaintiff's request for clarification and refusal to waive his rights were protected activity.

## J. Events Immediately Before Termination

146. In April 2025, Plaintiff continued to communicate with Shadowfax regarding the proposed accommodation.

147. Plaintiff continued to indicate that he was reviewing his options and objecting to the inadequacy of the proposal.

148. Plaintiff continued to ask for clarification.

149. Plaintiff continued to seek an accommodation that would allow him to remain employed.

150. Shadowfax treated Plaintiff's continued request for clarification as insubordination.

151. Shadowfax treated Plaintiff's refusal to accept an inadequate accommodation as misconduct.

152. Shadowfax did not provide Plaintiff with a reasonable opportunity to continue working with effective accommodations.

153. Shadowfax did not restore Plaintiff to meaningful Associate Director duties.

154. Shadowfax did not engage in a good-faith interactive process.

155. Shadowfax instead built a paper record to justify termination.

### K. Termination

156. On or about May 6, 2025, Shadowfax terminated Plaintiff's employment.

157. Shadowfax terminated Plaintiff shortly after his accommodation requests, medical leave, objections to the accommodation proposal, and requests for clarification.

158. Shadowfax did not identify a legitimate, non-discriminatory reason sufficient to justify termination.

159. Shadowfax cited general at-will policy rights.

160. Shadowfax later asserted that Plaintiff was terminated for alleged insubordination, attendance issues, timekeeping issues, disengagement, and failure to follow instructions.

161. Shadowfax's asserted reasons were false, exaggerated, inconsistent, and/or pretextual.

162. Shadowfax's asserted reasons were intertwined with Plaintiff's protected activity.

163. Shadowfax characterized Plaintiff's protected requests for clarification and accommodation as insubordination.

164. Shadowfax characterized Plaintiff's resistance to an inadequate accommodation proposal as misconduct.

165. Shadowfax relied upon alleged conduct that flowed directly from the unresolved accommodation process.

166. Shadowfax terminated Plaintiff because of his disability.

167. Shadowfax terminated Plaintiff because of his need for accommodation.

168. Shadowfax terminated Plaintiff because he requested accommodation.

169. Shadowfax terminated Plaintiff because he objected to the inadequate accommodation proposal.

170. Shadowfax terminated Plaintiff because he took or needed medical leave.

171. Shadowfax terminated Plaintiff in retaliation for protected activity.

172. Shadowfax failed to accommodate Plaintiff and then used the predictable consequences of that failure as a basis for termination.

## L. Damages

173. As a result of Shadowfax's unlawful conduct, Plaintiff suffered lost wages.

174. Plaintiff lost benefits.

175. Plaintiff lost employment opportunities.

18

176. Plaintiff suffered emotional distress, anxiety, humiliation, embarrassment, and loss of dignity.

177. Plaintiff's termination exacerbated his mental health symptoms.

178. Plaintiff suffered damage to his career and professional reputation.

179. Plaintiff has incurred and will continue to incur attorney's fees and costs.

180. Plaintiff seeks all remedies available under the ADA, PHRA, and FMLA, including back pay, front pay, compensatory damages, liquidated damages where applicable, punitive damages where available, attorney's fees, costs, interest, and equitable relief.

## COUNT 1 - ADA — FAILURE TO ACCOMMODATE

181. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

182. Plaintiff is an individual with a disability within the meaning of the ADA.

183. Plaintiff suffers from depression and anxiety.

184. Plaintiff's depression and anxiety substantially limit one or more major life activities.

185. Shadowfax knew of Plaintiff's disabilities.

186. Shadowfax had knowledge through FMLA paperwork, medical documentation, accommodation requests, and repeated communications from Plaintiff.

187. Plaintiff was qualified to perform the essential functions of the Associate Director position.

188. Plaintiff could perform the essential functions of his position with reasonable accommodation.

189. Plaintiff requested reasonable accommodations, including predictable scheduling, clarification of job duties, limits on direct care duties outside of medical or behavioral emergencies, limits on duties outside regular business hours, and remote work where feasible.

190. Plaintiff's requests were supported by medical documentation from his psychiatrist.

191. Shadowfax was required to engage in a good-faith interactive process.

192. Shadowfax failed to engage in a good-faith interactive process.

193. Shadowfax delayed the process after Plaintiff's October 2024 request.

194. Shadowfax failed to meaningfully progress the request while Plaintiff was on medical leave from November 2024 through January 2025.

195. Shadowfax continued to demand additional paperwork after Plaintiff returned to work and resubmitted medical documentation in January 2025.

196. Shadowfax failed to provide clear explanations as to why Plaintiff's requested accommodations could not be provided.

197. Shadowfax failed to identify an undue hardship.

198. Shadowfax failed to tailor accommodations to Plaintiff's actual medical restrictions.

199. Shadowfax's proposed transfer or reassignment was not a reasonable accommodation where Plaintiff could perform his existing position with reasonable accommodations.

200. Shadowfax's March 31, 2025, proposal was one-sided, non-negotiable, and inadequate.

201. The proposal did not meaningfully address Plaintiff's need for predictable duties, limits on direct care, limits on after-hours responsibilities, and clarification of job duties.

202. The proposal offered remote work that was already generally available under Shadowfax policy and was not tailored to Plaintiff's disability-related needs.

203. Shadowfax effectively required Plaintiff to accept an inadequate accommodation or lose his job.

204. Shadowfax failed to reasonably accommodate Plaintiff.

205. Shadowfax's failure to accommodate caused Plaintiff harm, including loss of employment, lost wages, emotional distress, and other damages.

206. Shadowfax violated the ADA.

## COUNT 2 - ADA — DISABILITY DISCRIMINATION / DISPARATE TREATMENT / TERMS AND CONDITIONS

207. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

208. Plaintiff is disabled within the meaning of the ADA.

209. Plaintiff was qualified for his position.

210. Shadowfax knew of Plaintiff's disability.

211. Shadowfax subjected Plaintiff to adverse changes in the terms and conditions of his employment.

212. After Plaintiff requested accommodation and returned from medical leave, Shadowfax materially changed his job duties.

213. Shadowfax removed Plaintiff from meaningful Associate Director responsibilities.

214. Shadowfax assigned Plaintiff to pack and unpack boxes.

215. Shadowfax assigned Plaintiff to sort and purge paperwork in isolated storage or warehouse-like settings.

216. Shadowfax required Plaintiff to work in cold or freezing conditions.

217. These duties were inconsistent with Plaintiff's Associate Director role.

218. These duties were materially less favorable than Plaintiff's prior duties.

219. These duties were humiliating, isolating, and professionally degrading.

220. Shadowfax denied Plaintiff remote work flexibility despite allowing remote work for other salaried or management employees where feasible.

221. Shadowfax failed to provide Plaintiff with clear, consistent job expectations.

222. Shadowfax treated Plaintiff differently after he disclosed his disability, requested accommodation, and returned from medical leave.

223. Shadowfax's conduct was because of Plaintiff's disability, record of disability, perceived disability, and need for accommodation.

224. Shadowfax's conduct altered Plaintiff's working conditions and caused harm.

225. Shadowfax violated the ADA.

## COUNT 3 - ADA — DISCRIMINATORY DISCHARGE

226. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

227. Plaintiff is disabled within the meaning of the ADA.

228. Plaintiff was qualified to perform the essential functions of his position with reasonable accommodation.

229. Shadowfax knew of Plaintiff's disability.

230. Shadowfax terminated Plaintiff's employment on or about May 6, 2025.

231. Plaintiff's termination occurred after Shadowfax had notice of his disability and after he requested reasonable accommodations.

23

232. Plaintiff's termination occurred shortly after Plaintiff objected to Shadowfax's inadequate accommodation proposal and disputed the legitimacy of the revised job description.

233. Shadowfax terminated Plaintiff instead of accommodating him.

234. Shadowfax terminated Plaintiff instead of restoring him to his Associate Director duties.

235. Shadowfax terminated Plaintiff instead of completing the interactive process in good faith.

236. Shadowfax claimed Plaintiff was terminated for at-will reasons, insubordination, policy violations, attendance issues, timekeeping issues, and alleged failure to follow directions.

237. Shadowfax's asserted reasons were false, exaggerated, inconsistent, and/or pretextual.

238. Shadowfax's asserted reasons were based in substantial part on Plaintiff's protected accommodation-related conduct.

239. Shadowfax characterized Plaintiff's requests for clarification, objections to inadequate accommodations, and refusal to surrender his rights as insubordination.

240. Shadowfax's termination decision was motivated by Plaintiff's disability and need for accommodation.

241. Shadowfax violated the ADA.

## COUNT 4 - ADA — RETALIATION

242. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

243. Plaintiff engaged in protected activity under the ADA.

244. Plaintiff requested reasonable accommodations in October 2024.

245. Plaintiff resubmitted and supplemented his accommodation request in January 2025.

246. Plaintiff provided medical documentation supporting his requested accommodations.

247. Plaintiff requested clarification regarding direct care duties, remote work, and job responsibilities.

248. Plaintiff objected to Shadowfax's inadequate accommodation proposal.

249. Plaintiff signed under protest and disputed the legitimacy of the revised job description and accommodation memorandum.

250. Shadowfax knew of Plaintiff's protected activity.

251. Shadowfax subjected Plaintiff to materially adverse actions.

252. Shadowfax delayed and obstructed the accommodation process.

253. Shadowfax removed Plaintiff from meaningful Associate Director duties.

254. Shadowfax assigned Plaintiff menial, isolating, and non-managerial work.

255. Shadowfax denied or restricted remote work flexibility.

256. Shadowfax characterized Plaintiff's protected accommodation-related communications as misconduct.

257. Shadowfax terminated Plaintiff's employment.

258. The timing between Plaintiff's protected activity and Shadowfax's adverse actions supports causation.

259. Shadowfax's treatment of Plaintiff escalated after he requested accommodations.

260. Shadowfax's termination of Plaintiff followed closely after his continued objections and requests for clarification.

261. Shadowfax's stated reasons for termination were pretextual.

262. Shadowfax retaliated against Plaintiff because he requested reasonable accommodations and opposed disability discrimination.

263. Shadowfax violated the ADA.

## COUNT 5 - PHRA — FAILURE TO ACCOMMODATE

264. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

265. Plaintiff is disabled within the meaning of the PHRA.

266. Plaintiff was qualified to perform the essential functions of his position with reasonable accommodation.

267. Shadowfax knew of Plaintiff's disability.

268. Plaintiff requested reasonable accommodations supported by medical documentation.

269. Plaintiff requested predictable scheduling, clarification of responsibilities, remote work where feasible, and limits on direct care duties outside medical or behavioral emergencies.

270. Shadowfax failed to engage in a good-faith interactive process.

271. Shadowfax failed to provide a reasonable accommodation.

272. Shadowfax delayed, demanded repeated paperwork, proposed reassignment or demotion, and ultimately imposed a one-sided accommodation proposal that did not satisfy Plaintiff's medical restrictions.

273. Shadowfax's conduct violated the PHRA.

## COUNT 6 - PHRA — DISABILITY DISCRIMINATION / TERMS AND CONDITION

274. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

275. Plaintiff is disabled within the meaning of the PHRA.

276. Plaintiff was qualified for his position.

277. Shadowfax knew of Plaintiff's disability.

278. Shadowfax changed the terms and conditions of Plaintiff's employment after his disability-related accommodation requests.

279. Shadowfax removed Plaintiff from meaningful Associate Director duties.

280. Shadowfax assigned Plaintiff manual, clerical, warehouse, storage, file-purging, and box-moving tasks that were inconsistent with his managerial role.

281. Shadowfax isolated Plaintiff and diminished his responsibilities.

282. Shadowfax denied Plaintiff flexibility and clarity while permitting other management employees to work remotely where feasible.

283. Shadowfax treated Plaintiff less favorably because of his disability and need for accommodation.

284. Shadowfax violated the PHRA.

### COUNT 7 - PHRA — DISCRIMINATORY DISCHARGE

285. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

286. Plaintiff is disabled within the meaning of the PHRA.

287. Plaintiff was qualified to perform his position with reasonable accommodation.

288. Shadowfax knew of Plaintiff's disability.

289. Shadowfax terminated Plaintiff's employment on or about May 6, 2025.

290. Shadowfax terminated Plaintiff after his accommodation requests, medical leave, and objections to Shadowfax's inadequate proposed accommodation.

291. Shadowfax terminated Plaintiff instead of providing reasonable accommodations.

292. Shadowfax's stated reasons for termination were false, exaggerated, and/or pretextual.

293. Plaintiff's disability and need for accommodation were motivating and/or determinative factors in Shadowfax's decision to terminate his employment.

294. Shadowfax violated the PHRA.

## COUNT 8 - PHRA — RETALIATION

295. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

296. Plaintiff engaged in protected activity under the PHRA.

297. Plaintiff requested reasonable accommodations.

298. Plaintiff provided medical documentation.

299. Plaintiff complained about the failure to accommodate him.

300. Plaintiff requested clarification regarding his job duties, direct care responsibilities, remote work, and the proposed accommodation memorandum.

301. Plaintiff objected to an accommodation proposal that did not meet his medical restrictions.

302. Shadowfax knew of Plaintiff's protected activity.

303. Shadowfax subjected Plaintiff to adverse action.

304. Shadowfax delayed the accommodation process, changed Plaintiff's duties, isolated Plaintiff, diminished his role, denied him meaningful flexibility, and terminated his employment.

305. Shadowfax's adverse actions were causally connected to Plaintiff's protected activity.

306. Shadowfax's stated reasons were pretextual.

307. Shadowfax violated the PHRA.

## COUNT 9 - FMLA — INTERFERENCE

308. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

309. Plaintiff was an eligible employee under the FMLA.

310. Shadowfax was a covered employer under the FMLA.

311. Plaintiff was entitled to protected medical leave for his serious health condition.

312. Plaintiff used and/or requested FMLA leave related to depression, anxiety, and related mental health conditions.

313. Shadowfax had notice of Plaintiff's need for FMLA leave.

314. Plaintiff used medical leave from approximately November 5, 2024 through January 6, 2025.

315. Shadowfax was required to restore Plaintiff to the same or an equivalent position after protected leave.

316. After Plaintiff returned from medical leave, Shadowfax did not restore him to the same meaningful Associate Director duties.

317. Instead, Shadowfax placed Plaintiff under altered supervision, assigned him diminished tasks, and failed to resolve his accommodation needs.

318. Shadowfax's conduct interfered with, restrained, and/or denied Plaintiff's FMLA rights.

319. Shadowfax's interference caused Plaintiff harm.

## COUNT 10 - FMLA — RETALIATION

320. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

321. Plaintiff engaged in protected FMLA activity by requesting and taking medical leave.

322. Shadowfax knew of Plaintiff's FMLA leave and mental health-related limitations.

323. After Plaintiff returned from leave, Shadowfax subjected him to materially adverse treatment.

324. Shadowfax changed Plaintiff's duties.

325. Shadowfax removed Plaintiff from meaningful Associate Director work.

326. Shadowfax assigned Plaintiff menial and isolating work.

327. Shadowfax treated Plaintiff's ongoing need for structure and accommodation as a workplace problem.

328. Shadowfax terminated Plaintiff on or about May 6, 2025.

329. The timing and circumstances support a causal connection between Plaintiff's FMLA activity and Shadowfax's adverse actions.

330. Shadowfax's stated reasons were pretextual.

331. Shadowfax retaliated against Plaintiff for exercising his FMLA rights.

## VI. PRAYER FOR RELIEF

332. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and award:

   a. Back pay and lost benefits;

   b. Compensatory damages for emotional distress, humiliation, embarrassment, anxiety, inconvenience, and loss of dignity;

   c. Liquidated damages under the FMLA; Punitive damages under the ADA.

   d. Equitable relief, including reinstatement or front pay in lieu thereof;

   e. Pre-judgment and post-judgment interest;

f. Costs and attorney fees;

g. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands trial by jury on all counts so triable.

DATED this the 28th day of July 2026.


Respectfully Submitted,

By: /s/ Jeremy A. Donham, Esquire
Jeremy Donham, (206980)
**DONHAM LAW**
714 Venture Drive, Ste. 144
Morgantown, West Virginia 26508
717.881.7855 (Phone)
Email: J.Donham@Donhamlaw.com