## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAKOTA R. PARKER | Case No.: |
| Plaintiff, | Hon. |
| v. | **Jury Trial Demanded** |
| DICK'S SPORTING GOODS, INC. | |
| Defendant. | |

## COMPLAINT

Plaintiff Dakota R. Parker, through undersigned counsel, brings this Complaint against Defendant Dick's Sporting Goods, Incorporated ("Dick's" or "Defendant") and alleges as follows:

### I. NATURE OF THE ACTION

1. This is an employment discrimination action arising under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").

2. During his employment, Plaintiff was a qualified employee with documented mental health disabilities, including anxiety, depression, attention deficit hyperactivity disorder ("ADHD"), and panic disorder, for which Defendant had previously approved workplace accommodations.

3. After Plaintiff transferred to Defendant's Hanover, Pennsylvania store, Defendant's store manager refused to recognize Plaintiff's disabilities, repeatedly

1

referenced them in a derogatory manner, subjected Plaintiff to escalating harassment, questioned coworkers regarding Plaintiff's perceived disabilities, disciplined Plaintiff shortly after Plaintiff complained to Human Resources, and ultimately terminated Plaintiff's employment.

4. Defendant's stated performance-based reasons for Plaintiff's discipline and termination were pretextual and served to conceal unlawful disability discrimination, disability-based harassment, and retaliation for Plaintiff's protected complaints regarding that conduct.

5. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, embarrassment, mental anguish, inconvenience, loss of enjoyment of life, and other compensable damages.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States, including the Americans with Disabilities Act.

7. This Court has supplemental jurisdiction over Plaintiff's Pennsylvania Human Relations Act claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the unlawful employment practices giving rise to this action occurred within the Middle District of Pennsylvania, including at Defendant's Hanover, York County, Pennsylvania facility.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") against Defendant alleging disability discrimination, hostile work environment, and retaliation. The Charge was docketed as EEOC Charge No. 530-2025-03375.

10. Plaintiff filed his Charge of Discrimination on or about February 4, 2025.

11. On June 26, 2026, the EEOC issued Plaintiff a Notice of Right to Sue.

12. Plaintiff has commenced this civil action within ninety (90) days of his receipt of the Notice of Right to Sue. see attached as Plaintiff **Exhibit A**.

13. Plaintiff has exhausted all administrative prerequisites to maintaining this action under the ADA and all applicable state law.

## IV. PARTIES

14. Plaintiff, Dakota R. Parker, is an adult individual residing in Spring Grove, York County, Pennsylvania.

15. Defendant Dick's Sporting Goods, Inc. is a foreign corporation authorized to conduct business within the Commonwealth of Pennsylvania and regularly conducts substantial business throughout this judicial district.

16. At all relevant times, Defendant employed well in excess of fifteen (15) employees and constituted an employer within the meaning of the ADA and PHRA.

17. At all times relevant hereto, Defendant acted through its officers, managers, supervisors, Human Resources personnel, and other employees, all of whom acted within the course and scope of their employment. Defendant is liable for their actions under the doctrines of agency and respondeat superior.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Successful Employment

18. Plaintiff began working for Defendant on or about October 2, 2022, as a full-time Sales Team Lead at Defendant's York, Pennsylvania location.

19. Plaintiff performed his job successfully and consistently met Defendant's legitimate expectations during the early portion of his employment.

20. As a result of his performance, Defendant promoted Plaintiff in approximately August 2023 to the position of Freight Flow Lead and Keyholder, a position involving increased leadership responsibilities and a corresponding wage increase.

21. As Freight Flow Lead, Plaintiff was responsible for supervising associates, coordinating freight operations, assisting with inventory management, ensuring compliance with merchandising standards, and helping manage store operations.

22. Throughout his employment, Plaintiff possessed the knowledge, experience, and ability necessary to perform the essential functions of his position.

**B. Plaintiff's Disabilities and Defendant's Knowledge**

23. Plaintiff suffers from anxiety, depression, ADHD, and panic disorder.

24. These conditions substantially limit one or more major life activities, including concentration, sleep, decision-making, and interacting with others.

25. Despite these impairments, Plaintiff remained capable of performing the essential duties of his position with reasonable accommodation.

26. Shortly after beginning his employment, Plaintiff informed Defendant of his disabilities and requested a workplace accommodation allowing him to leave work early on occasion to attend behavioral health treatment appointments.

27. Defendant approved Plaintiff's requested accommodation after receiving supporting medical documentation from Plaintiff's healthcare provider.

28. Defendant therefore possessed actual knowledge of Plaintiff's disabilities and his need for accommodation well before the events, giving rise to this litigation.

29. Plaintiff continued successfully performing his job while utilizing his approved accommodation.

## C. Plaintiff's Transfer to the Hanover Store

30. In approximately March 2023, Defendant transferred Plaintiff to its Hanover, Pennsylvania store to serve as Freight Flow Lead and Keyholder under Store Manager Daniel Diffenderfer ("Diffenderfer"). Defendant recruited Plaintiff for the position because of his experience and prior successful performance and represented that the position was closer to Plaintiff's residence.

31. Upon Plaintiff's transfer, Defendant continued to possess knowledge of Plaintiff's documented mental health disabilities and his previously approved workplace accommodation.

32. Shortly after Plaintiff began working under Diffenderfer, Plaintiff was informed that his previously submitted accommodation paperwork had been discarded and that Diffenderfer would not recognize Plaintiff's disabilities, characterizing the transfer as a "fresh start."

33. Plaintiff reasonably understood these statements to mean that Defendant would disregard his documented disabilities and approved accommodation despite having previously acknowledged and approved them.

34. Fearing retaliation from his immediate supervisor and hoping the situation would improve, Plaintiff continued performing his job and did not immediately file a complaint regarding Diffenderfer's conduct.

**D. Disability-based Harassment**

35. After Plaintiff transferred to the Hanover store, Diffenderfer's treatment of Plaintiff changed dramatically and became increasingly hostile, demeaning, and focused upon Plaintiff's perceived disabilities.

36. Among other things, Diffenderfer repeatedly belittled Plaintiff in front of coworkers, spoke to Plaintiff in an aggressive and demeaning manner, set unrealistic performance expectations without adequate training or support, and publicly questioned Plaintiff's competence.

37. During one morning meeting, after Plaintiff requested clarification concerning a newly implemented sales metric, Diffenderfer loudly responded by telling Plaintiff to "clean your ears because I'm tired of talking," despite Plaintiff's repeated requests for guidance rather than confrontation.

38. Plaintiff later learned that Diffenderfer had questioned other employees concerning whether Plaintiff was dyslexic, despite having no legitimate business reason to discuss Plaintiff's perceived medical condition with coworkers.

39. On another occasion, Diffenderfer asked Plaintiff directly whether he had a disability preventing him from performing his job duties, despite Defendant's existing knowledge of Plaintiff's documented disabilities and accommodation history.

40. Diffenderfer also advised Plaintiff that he should update his resume, seek other employment, and warned Plaintiff that if he remained employed his circumstances would "only get worse" because Diffenderfer intended to continue documenting alleged performance deficiencies until Plaintiff's employment ended.

41. Diffenderfer further dismissed Plaintiff's successful employment history at Defendant's York location and suggested Plaintiff was incapable of performing the leadership position for which Defendant had previously promoted him.

42. Collectively, these comments and actions created an intimidating, humiliating, and hostile work environment directed toward Plaintiff because of his known or perceived disabilities.

43. Prior to Plaintiff's transfer to the Hanover store and before Diffenderfer became his supervisor, Plaintiff had successfully performed his job duties, earned a promotion into a leadership position, maintained an approved workplace accommodation, and had not been subjected to the pattern of disciplinary action, disability-focused comments, or hostility that began only after Diffenderfer assumed supervisory authority over Plaintiff.

**E. Plaintiff Suffers a Work-Related Injury**

44. On or about July 8, 2024, Plaintiff sustained injuries to his neck and shoulder while performing his assigned work duties moving merchandise before Defendant's Hanover store opened for business.

45. Plaintiff promptly reported the injury to management and sought medical treatment as directed by Defendant.

46. Plaintiff thereafter complied with Defendant's instructions regarding medical treatment and work restrictions while continuing to perform his job to the extent medically permitted.

47. Plaintiff later reinjured his neck and shoulder on or about November 1, 2024, while unloading merchandise and reopened his workers' compensation claim.

48. As a result of that injury, Plaintiff's medical provider temporarily restricted him from lifting more than ten pounds while he continued treatment and physical therapy.

**F. Plaintiff Engages in Protected Activity**

49. As Diffenderfer's conduct continued, Plaintiff repeatedly complained to Defendant's Human Resources Department that he believed he was being subjected to disability discrimination, disability-based harassment, and unequal treatment because of his known and perceived disabilities.

9

50. Beginning in or about July 2024, Plaintiff made numerous reports to Human Resources representative Mark Zalakar through telephone messages, written correspondence, and follow-up communications describing the discriminatory treatment he was experiencing.

51. Plaintiff specifically reported that Diffenderfer had refused to recognize Plaintiff's documented disabilities and accommodation history, questioned coworkers regarding whether Plaintiff was dyslexic, questioned Plaintiff regarding whether he suffered from a disability preventing him from performing his job, publicly belittled and humiliated Plaintiff, imposed unrealistic expectations, and repeatedly threatened Plaintiff's continued employment.

52. At Human Resources' request, Plaintiff submitted a detailed written complaint identifying specific incidents of disability-based harassment, identifying witnesses with knowledge of the events, and requesting that Defendant investigate and correct the discriminatory conduct.

53. Plaintiff thereafter repeatedly requested updates concerning Defendant's investigation because the discriminatory and hostile treatment continued, adversely affected his mental health, and interfered with his ability to perform his job free from unlawful harassment.

54. Although Defendant acknowledged receiving Plaintiff's complaints and advised that an investigation remained ongoing, Defendant failed to take prompt and

effective corrective action, failed to prevent further disability-based harassment, and permitted Diffenderfer to continue supervising, evaluating, and disciplining Plaintiff.

55. Plaintiff's repeated complaints opposing disability discrimination and disability-based harassment constituted protected activity under the Americans with Disabilities Act and the Pennsylvania Human Relations Act.

**G. Defendant Escalates Discipline Following Plaintiff's Protected Activity**

56. Shortly after Plaintiff began reporting Diffenderfer's conduct to Human Resources, Defendant began subjecting Plaintiff to an escalating series of disciplinary actions concerning his alleged job performance.

57. Prior to Plaintiff's complaints of disability-related harassment, Plaintiff had successfully performed his leadership position and had been promoted by Defendant based upon his work performance.

58. After Plaintiff engaged in protected activity, however, Defendant abruptly began documenting alleged performance deficiencies that had either never previously been raised or had not prevented Plaintiff from successfully performing his position.

59. On or about August 5, 2024, Diffenderfer issued Plaintiff a Performance Game Plan ("PGP") identifying various alleged deficiencies.

60. During that meeting, Diffenderfer asserted that Plaintiff had failed to maintain Defendant's "TIME" board. However, Assistant Store Manager Robert Kelly confirmed during the meeting that the board had, in fact, been maintained and was current.

61. Rather than withdrawing the criticism, Diffenderfer altered his explanation and continued the disciplinary process despite the contradiction.

62. Defendant also criticized Plaintiff regarding replenishment metrics, inventory management, merchandising standards, employee coaching, and other operational issues despite Plaintiff's repeated requests for additional staffing, training, and realistic expectations.

63. Many of Defendant's criticisms lacked objective support, consisted of generalized conclusions, or involved operational issues beyond Plaintiff's individual control.

64. Plaintiff was frequently expected to complete numerous managerial, supervisory, freight, replenishment, and merchandising responsibilities simultaneously despite staffing limitations and Defendant's own operational directives restricting when certain work could be performed.

65. Defendant nevertheless continued documenting alleged deficiencies while disregarding Plaintiff's explanations, operational limitations, and prior successful work history.

66. Plaintiff reasonably believed Defendant's progressive discipline was being used as a mechanism to justify a decision that had already been made rather than to improve his performance.

67. Throughout this period, Plaintiff repeatedly expressed his desire to continue working for Defendant, improve where necessary, and remain employed.

68. Rather than assisting Plaintiff's professional development, Defendant continued escalating discipline while Plaintiff's previously reported concerns regarding disability-related harassment remained unresolved.

## H. Defendant Fails to Remedy the Harassment

69. Despite Plaintiff's repeated complaints, Defendant failed to conduct a prompt and effective investigation reasonably calculated to end the discriminatory and retaliatory conduct.

70. Plaintiff repeatedly sought updates concerning Defendant's investigation because the hostile treatment continued and adversely affected both his work performance and mental health.

71. Defendant informed Plaintiff only that the investigation remained ongoing while allowing Diffenderfer to continue supervising, evaluating, and disciplining Plaintiff.

72. At no time did Defendant advise Plaintiff that his complaints had been substantiated, implement meaningful corrective action, or separate Plaintiff from the supervisor whose conduct Plaintiff had repeatedly reported.

73. Instead, Plaintiff continued working under the direct supervision of the individual about whom he had repeatedly complained.

## I. Plaintiff's Termination

74. On or about November 1, 2024, Plaintiff reinjured his neck and shoulder while performing his assigned duties and reopened his workers' compensation claim.

75. Plaintiff thereafter continued treating for his injuries and complied with temporary medical lifting restrictions imposed by his healthcare providers.

76. On or about November 8, 2024, while Defendant's investigation purportedly remained ongoing, Plaintiff again contacted Human Resources to report that the disability-based harassment had not ceased, that Defendant had failed to correct the discriminatory treatment, and that the continuing hostile work environment was negatively affecting both his mental health and his ability to perform his job.

77. Approximately ten days later, on November 18, 2024, Defendant terminated Plaintiff's employment.

78. Defendant contended that Plaintiff's termination resulted from performance deficiencies.

79. Plaintiff denies that his performance warranted termination and avers that Defendant's stated reasons were false and pretextual. Plaintiff alleges that his termination resulted from Defendant's discriminatory animus toward his disabilities, his repeated opposition to disability discrimination and harassment, and, upon information and belief, his pursuit of workers' compensation benefits, rather than any legitimate performance deficiencies.

80. The close temporal proximity between Plaintiff's repeated protected complaints, the escalating disciplinary process, the reopening of his workers' compensation claim, and his termination further supports an inference that Defendant's stated reasons were not its true reasons for discharging Plaintiff.

81. As a direct and foreseeable result of Defendant's conduct, Plaintiff has sustained lost wages and employment benefits, loss of future earning capacity, emotional pain, mental anguish, embarrassment, humiliation, inconvenience, and other compensatory damages, and has incurred attorneys' fees and litigation costs.

82. Defendant's actions were intentional, willful, malicious, reckless, and undertaken with conscious disregard for Plaintiff's federally and state protected rights, thereby entitling Plaintiff to all available legal and equitable relief, including punitive damages under applicable law.

## COUNT 1 – DISABILITY DISCRIMINATION (ADA)
## 42 U.S.C. §12101 et seq.

83. Plaintiff incorporates by reference Paragraphs 1 through 82 as though fully set forth herein.

84. At all relevant times, Plaintiff was a qualified individual with disabilities within the meaning of the Americans with Disabilities Act.

85. Plaintiff suffered from anxiety, depression, ADHD, and panic disorder, conditions that substantially limited one or more major life activities, including concentration, sleep, decision-making, and interacting with others.

86. Plaintiff remained fully capable of performing the essential functions of his position with reasonable accommodation.

87. Defendant possessed actual knowledge of Plaintiff's disabilities through Plaintiff's approved workplace accommodation, medical documentation previously submitted to Defendant, and Plaintiff's continued communications regarding his disabilities and treatment.

88. Despite that knowledge, Defendant, through Store Manager Daniel Diffenderfer, refused to recognize Plaintiff's documented disabilities after Plaintiff transferred to the Hanover location, advised Plaintiff that his accommodation paperwork had effectively been discarded, and treated Plaintiff as though his disabilities no longer existed.

89. Defendant further demonstrated discriminatory animus by repeatedly referencing Plaintiff's disabilities, questioning coworkers regarding whether Plaintiff was dyslexic, asking Plaintiff whether he suffered from a disability preventing him from performing his job, and encouraging Plaintiff to seek employment elsewhere despite Plaintiff's successful employment history.

90. Following those disability-focused remarks, Defendant abruptly subjected Plaintiff to heightened scrutiny, increasingly severe discipline, and negative performance evaluations that differed markedly from Plaintiff's prior successful employment record.

91. Defendant ultimately terminated Plaintiff's employment while continuing to rely upon performance criticisms that Plaintiff alleges were exaggerated, inconsistent, selectively enforced, or otherwise pretextual.

92. Defendant's stated reasons for Plaintiff's discipline and termination were not its true reasons but instead constituted a pretext for unlawful disability discrimination.

93. Defendant intentionally discriminated against Plaintiff because of his disabilities in violation of the Americans with Disabilities Act.

94. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained lost wages, lost employment benefits, emotional distress, humiliation,

embarrassment, mental anguish, loss of enjoyment of life, and other compensatory damages.

95. Defendant's conduct was intentional, reckless, malicious, and undertaken with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to recover punitive damages to the fullest extent permitted by law.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant for compensatory damages, punitive damages, back pay, front pay or reinstatement, prejudgment and post-judgment interest, attorney's fees, costs, and such additional legal and equitable relief as the Court deems just and proper.

## COUNT 2 – DISABILITY-BASED HOSTILE WORK ENVIRONMENT
### ADA- 42 U.S.C. § 12101, et seq.

96. Plaintiff incorporates by reference Paragraphs 1 through 95 as though fully set forth herein.

97. At all relevant times, Plaintiff was a qualified individual with disabilities protected by the Americans with Disabilities Act.

98. Defendant knew of Plaintiff's disabilities through his approved accommodation, prior medical documentation, and Plaintiff's repeated communications concerning his disabilities and treatment.

99. After Plaintiff transferred to Defendant's Hanover location, Defendant, through Store Manager Daniel Diffenderfer, subjected Plaintiff to repeated disability-based harassment that altered the terms and conditions of Plaintiff's employment.

100. Shortly after Plaintiff's transfer, Diffenderfer informed Plaintiff that he had discarded Plaintiff's accommodation paperwork and would not recognize Plaintiff's disabilities, despite Defendant's previous approval of Plaintiff's accommodation.

101. Thereafter, Diffenderfer repeatedly referenced Plaintiff's actual or perceived disabilities by questioning coworkers regarding whether Plaintiff was dyslexic and by asking Plaintiff directly whether he suffered from a disability preventing him from performing his job.

102. Diffenderfer further subjected Plaintiff to repeated public humiliation by belittling Plaintiff before coworkers, raising his voice, speaking to Plaintiff in an aggressive and demeaning manner, criticizing Plaintiff for requesting clarification regarding work assignments, and making comments intended to undermine Plaintiff's confidence and authority as a supervisor.

103. Diffenderfer additionally advised Plaintiff that he should update his resume, seek other employment, and warned Plaintiff that his employment situation would continue to worsen because Defendant intended to continue documenting alleged performance deficiencies.

104. Defendant's conduct was not isolated or trivial but instead constituted an ongoing pattern of disability-focused harassment that continued for months despite Plaintiff's repeated complaints to Human Resources.

105. Plaintiff repeatedly notified Defendant's Human Resources Department that he was experiencing disability-related harassment and requested that Defendant intervene.

106. Defendant failed to take prompt or effective remedial action reasonably calculated to end the harassment, instead permitting Diffenderfer to continue supervising, evaluating, and disciplining Plaintiff while Defendant's purported investigation remained pending.

107. As a direct result of Defendant's failure to correct the hostile work environment, Plaintiff continued experiencing humiliation, anxiety, emotional distress, interference with his work performance, and worsening mental health.

108. The disability-based harassment to which Plaintiff was subjected was sufficiently severe and pervasive to alter the terms, conditions, and privileges of Plaintiff's employment and to create an objectively and subjectively hostile work environment.

109. Defendant knew or should have known of the discriminatory harassment and failed to take prompt and appropriate corrective action.

110. Defendant's conduct violated the Americans with Disabilities Act.

20

111.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained lost wages and benefits, emotional distress, humiliation, embarrassment, mental anguish, loss of enjoyment of life, and other compensatory damages.

112.   Defendant's conduct was intentional, malicious, reckless, and undertaken with reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to recover punitive damages as permitted by law.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered in his favor and against Defendant for compensatory damages, punitive damages, back pay, front pay or reinstatement, attorney's fees, costs, interest, and such additional legal and equitable relief as the Court deems just and proper.

### COUNT 3 – RETALIATION - ADA
### 42 U.S.C. §12101, et seq

113.   Plaintiff incorporates by reference Paragraphs 1 through 112 of this Complaint as though fully set forth herein.

114.   Plaintiff further incorporates by reference the allegations contained in Counts I and II to the extent consistent herewith.

115.   At all relevant times, Plaintiff engaged in protected activity under the Americans with Disabilities Act by opposing disability discrimination and disability-based harassment and by repeatedly reporting such conduct to Defendant's Human Resources Department.

21

116. Plaintiff complained that Defendant's store manager refused to recognize Plaintiff's documented disabilities, questioned coworkers regarding Plaintiff's perceived disabilities, questioned Plaintiff regarding whether he had a disability preventing him from performing his work, publicly belittled Plaintiff because of his disabilities, and subjected Plaintiff to discriminatory treatment.

117. Plaintiff also submitted a written complaint identifying specific examples of disability-based harassment, identifying witnesses, and requesting that Defendant investigate and remedy the discriminatory conduct.

118. Defendant had actual knowledge of Plaintiff's protected activity because Plaintiff's complaints were directed to Defendant's Human Resources Department and Defendant acknowledged receipt of those complaints and purportedly initiated an investigation.

119. Shortly after Plaintiff engaged in protected activity, Defendant subjected Plaintiff to escalating disciplinary action, increased scrutiny, negative performance evaluations, and continued hostility.

120. Defendant failed to conduct a prompt and effective investigation reasonably calculated to eliminate the discriminatory conduct and instead permitted the complained-of supervisor to continue supervising, evaluating, and disciplining Plaintiff.

121. Plaintiff continued opposing the discriminatory conduct by repeatedly following up with Human Resources and advising Defendant that the disability-based harassment had not ceased.

122. Approximately ten days after Plaintiff again complained that the discriminatory conduct remained ongoing, Defendant terminated Plaintiff's employment.

123. The temporal proximity between Plaintiff's repeated protected activity and Defendant's escalating discipline and ultimate termination supports a reasonable inference that Defendant retaliated against Plaintiff because he opposed disability discrimination.

124. Defendant's stated reasons for Plaintiff's discipline and termination were false, inconsistent, and pretextual, and were intended to conceal unlawful retaliation for Plaintiff's protected activity.

125. Defendant intentionally retaliated against Plaintiff in violation of the Americans with Disabilities Act.

126. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered lost wages, lost employment benefits, emotional distress, humiliation, embarrassment, mental anguish, and other compensatory damages.

127.   Defendant acted intentionally, maliciously, and with reckless indifference to Plaintiff's federally protected rights, thereby entitling Plaintiff to recover punitive damages as permitted by law.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, awarding compensatory damages, punitive damages, back pay, front pay or reinstatement, attorney's fees, litigation costs, pre-judgment and post-judgment interest, and such additional relief as the Court deems just and proper.

### COUNT 4 – DISABILITY DISCRIMINATION AND HOSTILE WORK ENVIRONMENT - PHRA
### 43 P.S. §951, et seq

128.   Plaintiff incorporates by reference Paragraphs 1 through 127 of this Complaint as though fully set forth herein.

129.   Plaintiff is an individual with disabilities within the meaning of the Pennsylvania Human Relations Act.

130.   Defendant is an employer subject to the provisions of the Pennsylvania Human Relations Act.

131.   Defendant knew of Plaintiff's disabilities through Plaintiff's approved accommodation, medical documentation, and repeated communications regarding his disabilities.

132. Defendant, through its managerial employees, intentionally discriminated against Plaintiff because of his disabilities by refusing to recognize Plaintiff's documented disabilities, subjecting Plaintiff to disability-focused comments, questioning Plaintiff and coworkers regarding Plaintiff's perceived disabilities, and treating Plaintiff differently than similarly situated employees.

133. Defendant further subjected Plaintiff to a continuing pattern of disability-based harassment, humiliation, intimidation, and disparate treatment that substantially interfered with the terms, conditions, and privileges of Plaintiff's employment.

134. Plaintiff repeatedly reported the discriminatory and hostile conduct to Defendant's Human Resources Department, yet Defendant failed to take prompt and appropriate corrective action.

135. Defendant instead permitted the discriminatory conduct to continue while escalating disciplinary action against Plaintiff and ultimately terminating his employment.

136. Defendant's stated reasons for its actions were pretextual and intended to conceal unlawful disability discrimination.

137. Defendant's conduct violated the Pennsylvania Human Relations Act.

138. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained lost wages, lost employment benefits, emotional distress,

humiliation, embarrassment, mental anguish, inconvenience, and other damages recoverable under Pennsylvania law.

**WHEREFORE,** Plaintiff requests judgment in his favor together with all relief authorized by the Pennsylvania Human Relations Act, including back pay, front pay, compensatory damages, attorney's fees, costs, interest, and such further relief as this Court deems just and proper.

### COUNT 5 – RETALIATION – PHRA - 43 P.S. § 951, et seq.

139. Plaintiff incorporates by reference Paragraphs 1 through 138 of this Complaint as though fully set forth herein.

140. Plaintiff further incorporates the allegations contained in the preceding Counts to the extent consistent herewith.

141. At all relevant times, Plaintiff engaged in protected activity under the Pennsylvania Human Relations Act by opposing disability discrimination and disability-based harassment and by repeatedly reporting that unlawful conduct to Defendant's Human Resources Department.

142. Defendant possessed actual knowledge of Plaintiff's protected activity because Plaintiff repeatedly notified Human Resources that he believed he was being subjected to disability discrimination, disability-based harassment, and unequal treatment by his supervisor because of his known and perceived disabilities.

26

143. Rather than remedying the discriminatory conduct, Defendant intensified its scrutiny of Plaintiff, escalated disciplinary action against him, subjected him to increasingly negative evaluations, and continued permitting the complained-of supervisor to direct Plaintiff's employment.

144. Plaintiff continued opposing the discriminatory conduct and repeatedly requested that Defendant intervene and stop the disability-based harassment.

145. Shortly after Plaintiff renewed his complaints, Defendant terminated Plaintiff's employment.

146. The temporal proximity between Plaintiff's protected activity and Defendant's adverse employment actions, together with Defendant's failure to meaningfully investigate Plaintiff's complaints and the evidence of disability-focused animus by Plaintiff's supervisor, support a reasonable inference that Defendant retaliated against Plaintiff because he opposed practices prohibited by the Pennsylvania Human Relations Act.

147. Defendant's stated reasons for disciplining and terminating Plaintiff were false, inconsistent, and pretextual.

148. Defendant's conduct constituted unlawful retaliation in violation of the Pennsylvania Human Relations Act.

149. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has sustained lost wages, lost employment benefits, emotional distress,

humiliation, embarrassment, mental anguish, inconvenience, and other compensable damages.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered in his favor and against Defendant for all damages available under the Pennsylvania Human Relations Act, together with attorney's fees, litigation costs, interest, and such additional relief as the Court deems just and proper.

### COUNT 6 – WRONGFUL DISCHARGE IN VIOLATION OF PENNSYLVANIA PUBLIC POLICY – WORKERS COMPENSATION RETALIATION

150. Plaintiff incorporates by reference Paragraphs 1 through 149 of this Complaint as though fully set forth herein.

151. Plaintiff further incorporates the allegations contained in the preceding Counts to the extent consistent herewith.

152. Pennsylvania recognizes a common law cause of action for wrongful discharge where an employee is terminated in retaliation for exercising rights guaranteed under the Pennsylvania Workers' Compensation Act.

153. Plaintiff sustained a work-related injury while performing his assigned duties on or about July 8, 2024.

154. Plaintiff promptly reported his injury, sought medical treatment, and pursued workers' compensation benefits as provided by Pennsylvania law.

155.  On or about November 1, 2024, Plaintiff sustained a subsequent work-related injury to his neck and shoulder while performing his assigned duties and lawfully reopened his workers' compensation claim.

156.  Following the reopening of his claim, Plaintiff continued treating for his work-related injuries and complied with temporary medical restrictions imposed by his healthcare providers.

157.  Defendant was aware that Plaintiff had reported his work-related injuries, pursued workers' compensation benefits, and reopened his workers' compensation claim.

158.  Within approximately seventeen (17) days after Plaintiff reopened his workers' compensation claim, Defendant terminated Plaintiff's employment.

159.  Plaintiff avers that Defendant's decision to terminate his employment was motivated, in whole or in part, by Plaintiff's exercise of his rights under the Pennsylvania Workers' Compensation Act.

160.  Defendant's stated performance-based reasons for Plaintiff's termination were false and pretextual and were used to conceal unlawful retaliation for Plaintiff's pursuit of workers' compensation benefits.

161.  Defendant's termination of Plaintiff violated the clear public policy of the Commonwealth of Pennsylvania protecting employees who seek workers' compensation benefits following workplace injuries.

162. As a direct and proximate result of Defendant's wrongful discharge, Plaintiff has sustained lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, embarrassment, and other consequential damages recoverable under Pennsylvania law.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered in his favor and against Defendant for compensatory damages, lost wages and benefits, interest, costs, and such other legal and equitable relief as this Court deems just and proper.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and grant the following relief:

**A.** Declare that Defendant violated the Americans with Disabilities Act, the Pennsylvania Human Relations Act; and the Public Policy of the Commonwealth of Pennsylvania;

**B**. Award Plaintiff all lost wages, salary, bonuses, benefits, and other compensation, including back pay;

**C.** Award front pay in lieu of reinstatement, or alternatively order reinstatement if appropriate;

**D**. Award compensatory damages for emotional distress, humiliation, embarrassment, mental anguish, inconvenience, and loss of enjoyment of life;

**E**. Award punitive damages under the Americans with Disabilities Act and the Wrongful Discharge count to the fullest extent permitted by law;

**F.** Award pre-judgment and post-judgment interest;

**G**. Award reasonable attorney's fees, litigation expenses, and costs;

**H**. Award such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands trial by jury on all counts so triable.

DATED this the 28th day of July 2026.

Respectfully Submitted,

*By: /s/ Jeremy A. Donham, Esquire*
Jeremy Donham, (206980)
**DONHAM LAW**
714 Venture Drive, Ste. 144
Morgantown, West Virginia 26508
717.881.7855 (Phone)
Email: J.Donham@Donhamlaw.com

31