**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DORIS E. DAY,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.** |
| **v.** | : | |
| | : | |
| | : | |
| **MULTI-COLOR** | : | |
| **CORPORATION** | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Defendant.** | : | |

## COMPLAINT

AND NOW comes the Plaintiff, Doris E. Day, by and through her undersigned

counsel, Laura E. Bayer, Esquire of Trinity Law, hereby files this Complaint and

states as follows:

## INTRODUCTION

1.      Plaintiff initiates the instant action to redress violations by Defendant

of the Americans with Disabilities Act, as Amended ("ADA"), 42 U.S.C. 12101 et.

seq., Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634

(1967); and, the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951–963,

and including 43 P.S. § 955(a), against Plaintiff who was an employees over the age

of 40 and disabled, and the Family and Medical Leave Act, 29 U.S.C. § 2601, et.

seq., §2615(a)(1)(2) and (b) and 2617.

1

## PARTIES

2.     Plaintiff, Doris E. Day, is an adult individual over the age of 40, and in fact over 70, and a resident in the Commonwealth of Pennsylvania in York County, Pennsylvania, 17404.

3.     Defendant, Multi-Color Corporation (also known as "MCC"), is a Pennsylvania employer that, provides services consistent with a commercial printing company[1] and has a business address of 405 Willow Springs Lane, York, PA 17406, and that employs approximately 250 or more individuals and is engaged in an industry affecting commerce within the meaning of the ADEA and ADA and also meeting the threshold of number of employees to be covered under FMLA, as she worked at a location that employees at least 50 employes within a 75 mile radius.

4.     Defendant is a foreign business corporation organized under the laws of Wisconsin and operating under the laws of Pennsylvania with a principal place of business in York, Pennsylvania.

## JURISDICTION AND VENUE

5.     This Court, in accordance with 28 U.S.C. §1331, has jurisdiction over Plaintiff's claims because this civil action arises under a law of the United States.

---

[1] The Multi-Color Corporation York site's core capability is producing premium in-mold labeling solutions, custom pressure sensitive labels, and specialized promotional packaging inserts.

6.     This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth in the United States Supreme Court in International Shoe v. Washington, 326 U.S. 310 (1945) and its progeny.

7.     Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.     On or about August 27, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) (Case Number 530-2025-04078) alleging age and disability discrimination by Defendant.

9.     More than 60 days have elapsed since the filing of the Charge of Discrimination.

10.     On or about **May 4, 2026**, the EEOC issued a Notice of Right to Sue letter (attached at Exhibit A).

11.     Plaintiff received the Notice of Right to Sue Letter on or around **May 4, 2026** (see Exhibit A).

12.    Plaintiff is filing this complaint within 90 days of receiving the letter of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

13.    The foregoing paragraphs are incorporated herein by reference as if fully set forth hereinafter at length.

14.    Plaintiff began employment with Defendant on or about November of 2009 as an inspector operator, and her final position was as an inspector, making $21.00 per hour.

15.    An inspector is a role that involves inspecting; however, Ms. Day specifically focused on final labels.

16.    Key duties included: conducting labels inspection audits and removing non-conforming products from distribution.

17.    Plaintiff performed her job in a satisfactory manner at all relevant.

18.    Plaintiff was fired verbally on or about October 31, 2024, under the guise of an absenteeism policy violation, which was clearly discriminatory and would not have happened but for her 72 years of age, disability and request to seek FMLA leave. However, a letter later stated she was terminated on October 21, 2026.

19.    The events leading to Ms. Day's termination began when Ms. Day was having ongoing knee issues, when in September of 2024, she stood up to respond to a supervisor, and her knee gave out at work.

4

20. At the incident, Ms. Day started to fall due to her knee weakness and caught herself. Her supervisor, Kirsty Mosser, and HR generalist, was present and saw the incident.

21. Ms. Mosser had Ms. Day follow her to her office and said, Ms. Day should "request FMLA leave", and Ms. Day said, "what is that."

22. Ms. Day followed the instructions given to her as Ms. Mosser said she should take off and was starting FMLA that day.

23. Defendant has a point system regarding employee attendance.

24. Nothing was mentioned about points accruing and Ms. Day was to work on getting the form filled out by her doctor.

25. Prior to the incident with her knee giving out, Ms. Day had given a doctor's note stating she must have a chair while running a stand-up machine.

26. However, Ms. Day still had to stand up from a seated position and walk a significant portion of the day and once her knee worsened, Ms. Day needed time off to sufficiently heal and seek care.

27. Since she was not needed on the machine all the time, Ms. Day was able to fully perform her position sitting at the rewinder.

28. However, once her knee worsened, Ms. Day requested time off to sufficiently heal and seek care.

29.    At the time of her termination, Ms. Day was diagnosed with bilaterial osteoarthritis of the knees and had other medical diagnosis as well that were compounding her pain.

30.    Ms. Day was seeking injections for her knees during this time, and the pain did not sufficiently subside yet at the time of firing, rather it took a period of rest and recovery.

31.    All MCC would have had to do is request the medical records to verify this and engage in the interactive process.

32.    There are no "magic words" required to request an ADA, and the state-related companion law, accommodation: simply communicating that a medical condition exists and a need for time off should have been enough to trigger Ms. Day's rights.

33.    The FMLA request should have inherently triggered a request for reasonable accommodation under ADA and to PHRC.

34.    HR requested that Ms. Day obtain a note from her doctor that she needed continuous FMLA.

35.    However, Ms. Day's primary provider, Sharon Knaub, CRNP, was out of the office on vacation during the time Ms. Day needed her to sign the FMLA form. Ms. Knaub's vacation lasted from October 1, 2024, through October 13, 2024. Ms. Knaub filled out the FMLA form as intermittent leave (attached as Exhibit B),

but did not see Ms. Day until October 18, 2024, and stated Ms. Day needed leave October 19, 2024, through April 19, 2024; (which was intended to say 4.19.25), which would be equivalent to 8 hours of time off, 2 times per week.

36. After this was submitted to MCC, MCC requested the form be changed to continuous leave.

37. Ms. Day reached out to MCC numerous times to confirm when they would have her return to work and to inform them that she was waiting for Sharon Knaub to return to the office to be able to complete the form.

38. Ms. Day was told she was not authorized by MCC to return to work.

39. Ms. Day was told not to come in for work because the information provided was being reviewed, there was no mention of points accruing.

40. The temporary time off should have been evaluated from an ADA perspective.

41. MCC is a large company and the additional, temporary time-off request made by a fifteen-year veteran employee should not have been considered an undue burden.

42. At the time she was fired, Ms. Day was not yet ready to retire, and her age range is extremely limited to replace the position she had and enjoyed at MCC.

43. Providing leave is typically considered reasonable accommodation. Ms. Day was under the impression, based on comments by the company, that the

FMLA leave was going to be granted and was not aware until after she was fired that ADA documentation would be needed, as she was never asked to provide that.

44. Ms. Day could have pursued workers' compensation for that matter, but again, she was just looking for a brief recovery leave. Her request was not unduly extensive or disruptive.

45. "An employer who obstructs or delays the interactive process, or fails to communicate by way of initiation or response and thereby depletes the range of possible accommodations is not fulfilling its duty to engage in process in good faith." See Taylor v. Phoenixville School District, 184 F.3d 296, 311 (3d Circ. 1999).

46. Ms. Day had an ADA qualifying disability at the time of her termination; in fact, she had several physical impairments that substantially limited a major life activity.

47. MCC was aware of her knee injury and that walking and standing up from a seated position was impaired, as well as the flare up had caused substantial pain.

48. With the accommodation of time off, Ms. Day could still have performed the essential functions of her job for some time, with the reasonable accommodation.

49. During the time her primary provider was on vacation she did seek temporary treatment at OSS, as it was advised by her primary care provider, and the

clinic was not the appropriate provider to complete the form as it lacked the continuity of care commitment to Ms. Day, that Ms. Knaub would have better knowledge of especially after meeting with Ms. Day.

50. The only form that Ms. Knaub had a chance to fill out was prior to her visit with Ms. Day, so she wasn't able to fully examine her yet due to the time pressure of the form needing to be turned in.

51. Ms. Knaub saw Ms. Day on October 18, 2024.

52. MCC told Ms. Day not to come into work during this time period.

53. MCC, without further investigation, and inquiry, verbally terminated Ms. Day.

54. Soon thereafter, Ms. Day received a call from SunLife, and its representative stated they were "surprised she was terminated" and directed Ms. Day to call MCC to ask that her position be reinstated, which Ms. Day promptly did. HR then told Ms. Day there was a hiring freeze.

55. Ms. Day was fired despite having a doctor's note with restrictions for a several-month period of time.

56. MCC should have pursued the additional steps in its obligation to continue to pursue the interactive process.

57. With the note the doctor provided, she should either be on FMLA and/or be given additional time for her provider to return from vacation and discuss FMLA again, and/or been allowed to return to work.

58. Neither were provided, and she was terminated. Furthermore, MCC Premium points system should not apply to individuals like Ms. Day, who need ADA medical leave and/or FMLA leave.

59. Ms. Day is being penalized by the point system that does not factor in ADA /FMLA medical leaves.

60. We believe the above readily establishes violations of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 et seq., (as amended) as well as the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. §951 et seq. As such, Ms. Day's claims involve a failure to make a reasonable accommodation and failure to meaningfully engage in the interactive process. All told, she is able to establish the elements of an ADA claim as articulated in Turner v. Hershey Chocolate U.S., 440 F.3d 604. (3d Cir. 2006).

61. We believe Ms. Day's age also was a reason for her discharge. Additional information is needed as to whether MCC's point system / absenteeism policy has a disparate impact on older workers, a procedure that does not pass the test of being reasonably designed and administered to achieve a legitimate business purpose.

10

62. Plaintiff was instructed to file for FMLA by her direct Supervisor.

63. A fair process was not performed, as HR and the investigator involved as employer did not pursue the interactive process.

64. Upon information and belief, the alleged policy used has a disparate impact and treatment on workers similarly situated as Plaintiff.

65. Said policy, if it even existed prior to her termination, was not properly communicated to Plaintiff and does not pass the test of being reasonably designed and administered to achieve a legitimate business purpose.

66. Defendant did not warn or give Plaintiff an opportunity for corrective action.

67. Defendant did not provide Plaintiff with a timely and formal letter of separation.

68. Defendants' agents involved in this alleged investigation clearly misunderstood and did not seek to clarify the circumstances surrounding Plaintiff's medical leave and misrepresented the time in question.

69. Plaintiff's only real option post-termination was to attempt to find another position which would be nearly impossible given her age and medical issues.

70. In 2025, Plaintiff had other health issues that affected her ability to search for work.

71. Plaintiff has experienced unexpected costs and emotional distress as a result of the termination.

72. MCC alleged Plaintiff violated an absenteeism policy; however, Plaintiff was not given fair chance to respond, although she attempted to explain that she had waited for her physician to return from vacation to complete the necessary medical documentation.

73. MCC did not prove absenteeism policy violation occurred as Plaintiff had understood she was compliant with the FMLA process, and there was no warning or opportunity given as the Company's actions were mere subterfuge for age discrimination.

74. Plaintiff's service was supported by 15 years of favorable performance.

75. Plaintiff was given no chance to remediate, and she did not receive a separation letter after 15 plus years with MCC and complimentary reviews, and MCC interfered with her ability to keep the attendance policy, leading Ms. Day to believe her time off was acceptable and did not allow her to come back during the time of review, then held it against her.

76. At best, the decision to fire Plaintiff was made in haste, with little care, as the decision was pretextual, with an actual motive behind it to eliminate Plaintiff from the company, due to her age, and disability.

77. As a result of the Defendant's discriminatory motive and actions, Plaintiff was fired from employment and suffered a loss of pay, benefits, contributions, and other economic and non-economic harm and losses.

**78.** Counsel for MCC provided a letter dated October 31, 2026, stating Ms. Day was terminated on October 21, 2024, but Ms. Day had not received that correspondence prior, only a telephone call on or around October 31, 2026, that she is terminated.

**COUNT I**
**DISCRIMINATION – AGE**
**AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA),**
**29 U.S.C. §§ 621–634 (1967) & PENNSYLANIA HUMAN RELATIONS**
**ACT ("PHRA"), 43 P.S. § 955**

79. All paragraphs of this document are incorporated herein by reference as if set forth more fully hereinafter at length.

80. Plaintiff was over the age of 40, and in fact 72 years of age, at the time she was fired on or about October 31, 2024.

81. As a result of the Defendant's discriminatory motive and actions, Plaintiff was fired from employment and suffered a loss of pay, benefits, contributions, and other economic and non-economic harm and losses.

82. Plaintiff worked for Defendant for over 15 years and circumstances surrounding Plaintiff's firing give rise to direct age discrimination and may be

additionally supported if circumstantial evidence exists of additional age discrimination by Defendant.[2]

83.    But for Plaintiff's age and disability, Defendant would not have fired Plaintiff.

84.    Defendant's attendance policy does not pass the test of being reasonably designed and administered to achieve a legitimate business purpose, as it related to employees with protected disabilities.

85.    The aforesaid actions violate the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1967).

86.    Based on the foregoing, Defendant violated the Defendant of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1967).

87.    Based on the foregoing, Defendant violated the PHRA, 43 P.S. § 955.

## COUNT II
## DISCRIMINATION – DISABILITY, RETAILATION
## AMERICANS WITH DISABILITIES ACT 42
## U.S.C. §§ 121101 ET. SEQ., AS AMENDED

88.    All paragraphs of this document are incorporated herein by reference

---

[2]See Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013), To make a showing of pretext, 'the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action;" and; Willis V. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638 (3d Cr. 2015), the Court of Appeals stated "Pointing to evidence demonstrating any of the following satisfied this second way to prove pre-text: (1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated substantially younger individual smore favorably." Id. at 65.

as if set forth more fully hereinafter at length.

89.    Plaintiff suffered from one or more medical conditions which substantially limited major life activities.

90.    Plaintiff has a record of her disabling condition/impairments, which record was known to Defendants, and she could have provided upon request, as she did provide the FMLA form.

91.    Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations.

92.    Plaintiff requested accommodations of Defendants for her medical conditions and complained about discriminatory treatment.

93.    Defendants failed to make any meaningful and reasonable accommodations for her condition and Defendants failed to enter into the interactive process with Plaintiff regarding her disability/disabilities and rather used the FMLA form and absenteeism policy as pretext for continuing engaging Plaintiff with regard to needed time off to heal, and did not state she could return to work.

94.    Plaintiff was discriminated against and constructively discharged because of her actual and/or perceived disabilities, because of her record of impairment, and in retaliation for requesting accommodation and for opposing disability discrimination.

95. The aforesaid actions violate the Americans with Disabilities Act, as Amended.

96. The sentiment that Plaintiff was "doctor shopping", is simply not true as she was waiting to discuss the matter with her provider who was familiar with her disabilities and who was on vacation at the time and completed the forms upon her return, and in fact, did not even have a chance to see her until after the form was completed.

97. At the time that MCC was seeking the FMLA paperwork Plaintiff's regular treating provider was on vacation and she was instructed by OSS to have her primary care provider complete the form.

98. Plaintiff's temporary time should all have been evaluated from an ADA perspective and is considered a reasonable accommodation.

99. Plaintiff chose not to pursue workers' compensation as she was only looking for a brief recovery leave which was in fact neither extensive nor disruptive.

100. "An employer who obstructs or delays the interactive process, or fails to communicate by way of initiation or response and thereby depletes the range of possible accommodations is not fulfilling its duty to engage in process in good faith." See Taylor v. Phoenixville School District, 184 F.3d 296, 311 (3d Circ. 1999).

101. Plaintiff did in fact have qualifying ADA disability as the time of her termination.

102. MCC's agent stated to Plaintiff she should not return to work, leading her to reasonably believe her leave was in fact covered by FMLA.

103. The ADA does not require a request for accommodation as Plaintiff's rights were in effect once MCC became aware of the medical conditions.

104. We believe the above readily establishes violations of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 et seq., (as amended) as well as the Pennsylvania Human Relations Act.

## COUNT III
### DISCRIMINATION – DISABILITY / RETAILIATION
### PA HUMAN RELATIONS ACT ("PHRA"), 43 P.S. § 955

105. All paragraphs of this document are incorporated herein by reference as if set forth more fully hereinafter at length.

106. Plaintiff suffered from medical conditions which substantially limit major life activities.

107. Plaintiff has a record of her disabling condition/impairments, which record was known to Defendants through her FMLA claim and / or additional records could be provided.

108. Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations.

109. Plaintiff requested accommodations of Defendants for her medical conditions and complained about discriminatory treatment.

17

110. Defendants failed to make any meaningful and reasonable accommodations for her condition.

111. Plaintiff was discriminated against and constructively discharged because of her actual and/or perceived disabilities, because of her record of impairment, and in retaliation for requesting an accommodation and opposing disability discrimination and also in interference with Plaintiff's ability to seek accommodation, FMLA and/or return to work with accommodations.

112. The aforesaid actions violate the Pennsylvania Human Relations Act.

## COUNT IV
## DISCRIMINATION –RETALIATION & INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE

113. Plaintiff incorporates paragraph 1 through 55 herein by reference.

114. Plaintiff invoked a right to FMLA benefits.

115. Plaintiff blocked the proper completion of the FMLA process, and/or retaliated against Plaintiff for requesting it, resulting in Plaintiff's termination and loss of income and decline in mental state.

116. Plaintiff was an eligible employee working for a covered employer under the FMLA.

117. Plaintiff provided proper notice and requested medical/family leave and was told it was granted, and employer discouraged Plaintiff from having follow-

up discussions with her employer and/or from returning from work and failing to restore her job position upon return.

118.   Plaintiff suffered an adverse action or employment decisions.

119.   The adverse action was causally related to the Plaintiff's invocation and/or exercise of FMLA rights.

120.   Defendant unlawfully interfered with, terminated, retaliated against, and otherwise discriminated against Plaintiff because of conduct protected by the FMLA.  See. *inter alia*, 29 U.S.C. 261.5(a)(2).

121.   Defendant's conduct was not in good faith, and the employer did not have reasonable grounds for believing it did not violate the FMLA, making Plaintiff think she was granted leave, not able to return to work, and then was fired.

122.   Plaintiff sustained damages as a result of Defendant's conduct, including lost compensation and benefits and accrual monetary losses, compensatory damages, liquidated damages attorney's fees, costs and witness fee, and is entitled to equitable relief, and an additional amount for the tax consequences for an award in Plaintiff's favor under the Third Circuit's <u>Eshelman</u> doctrine.

## **<u>PRAYER FOR RELIEF</u>**

Plaintiff, Doris E. Day, respectfully prays for judgment in favor of Plaintiff as allowed by law, providing that:

1. This Court award Plaintiff actual damages in an amount to be proven at trial. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits, together with any increases and contributions thereto, including but not limited to, past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits as permitted by law. Plaintiff should be awarded such pay and benefits from the date of her firing forward as allowed by law.

2. Plaintiff is awarded interest as allowed by law.

3. Plaintiff is awarded punitive damages and/or liquidated damages as allowed by law to the extent Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights.

4. Plaintiff is awarded costs of suit and expenses of this action and reasonable legal fees as allowed by law.

5. Plaintiff is awarded any and all other legal and equitable relief allowed by law.

6. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law.

7.    Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

TRINITY LAW

Laura E. Bayer, Esquire
Sup. Ct. I.D. No. 91057
TRINITY LAW
1681 Kenneth Road, Bldg. 2
York, PA 17408
Telephone No. (717) 843-8046
Facsimile No.  (717) 854-4362
LBayer@TrinityLaw.com
Attorney for Plaintiff, Doris E. Day

21