McNEES WALLACE & NURICK LLC
Jonathan H. Rudd
Attorney I.D. No. PA 56880
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
Phone: (717) 237-5405
Fax: (717) 260-1737
jrudd@mcneeslaw.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KATIE PAYTON                              :
1935 Patriot Street                       :
York, PA 17408                            :
   Plaintiff              :
                                          :
                                          :
                                          :
   v.                      :  No.
                                          :
THE LINCOLN NATIONAL LIFE                 :
INSURANCE COMPANY                         :
1301 South Harrison Street                :
Fort Wayne, IN 46802-3425                 :
   Defendant               :

## COMPLAINT

## PARTIES

1. Plaintiff is Katie Payton ("Ms. Payton"), an adult individual with a principal place of residence at 1935 Patriot Street, York, York County, Pennsylvania, 17408.

1

2.     Defendant is The Lincoln National Life Insurance Company ("Lincoln"), an Indiana corporation with its principal place of business at 1301 South Harrison Street, Fort Wayne, Indiana, 46802-3425.  Lincoln is licensed to carry out an insurance business in Pennsylvania and does business throughout the Commonwealth of Pennsylvania and specifically in the Middle District of Pennsylvania.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action in accordance with 28 U.S.C §1331, in that this matter involves a claim for benefits brought pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §1132(a)(1)(B). This Court has jurisdiction pursuant to 29 U.S.C. §1132(e)(1).

4.     Venue is proper in this District in accordance with 28 U.S.C. §1391(b) and 29 U.S.C. §1132(e)(2), in that a substantial part of the events giving rise to the claim occurred in this District and Defendant may be found in this District.

## FACTUAL BACKGROUND

5.     As of April 17, 2023, Ms. Payton was an employee of Crum & Forster Insurance/United States Fire Insurance Company ("Crum & Forster").

6.     Lincoln provided group insurance coverage to Crum & Forster under Group Life Insurance Policy No. SA3-830-510534-01 (the "Policy").

2

7.    The Policy included in part Dependent Accidental Death and Dismemberment Insurance in the amount of 10% of the amount of the Covered Employee's coverage.

8.    Ms. Payton maintained Basic Coverage of $80,000 and an additional Optional Coverage of $560,000, for total coverage of $640,000. Accordingly, the coverage available for the death of Ms. Payton's dependents is $64,000.

9.    Ethan Bert ("Mr. Bert") was the son and dependent of Ms. Payton.

10.    Mr. Bert was senselessly murdered on or about April 17, 2023. The specific details of his murder are still unknown since the perpetrators of this heinous act have provided inconsistent versions of what occurred.  However, it appears that Mr. Bert was shot and killed and then his body burned while visiting a friend in Virginia.

11.    Ms. Payton timely submitted a claim to Lincoln for the death benefits available due to Mr. Bert's untimely death.

12.    On July 1, 2023, Lincoln informed Ms. Payton that:  "In order to complete our investigation of the AD&D benefits, the following exclusion needs to be ruled out by the Virginia State Police, once the criminal investigation is concluded:  • 5. committing or attempting to commit a felony or misdemeanor."

13.    On August 4, 2023, Lincoln informed Ms. Payton that:  "Due to extenuating circumstances, we require an additional thirty days to render a full and fair determination on your claim for benefits under the policy. Currently, we are awaiting a response from Virginia State Police to rule out committing or

3

attempting to commit a felony or misdemeanor. Please be advised the [sic] if we do not receive the requested information by August 24, 2023, we will close the Accidental Death claim for failure to provide proof. Should you obtain this information within 24 months please contact us."

14. On August 30, 2023, Lincoln informed Ms. Payton that it had completed the review of the claim for benefits and was unable to pay the proceeds at this time.

15. Although Lincoln did not provide a specific basis for its purported inability to pay the death benefits as of August 30, 2023, it apparently based its determination on the position that Ms. Payton had the duty to prove that an exclusion did not apply as opposed to Lincoln having the duty to prove that an exclusion did apply.

16. On February 15, 2024, Ms. Payton submitted her First Appeal from Lincoln's refusal to pay the death benefits associated with Mr. Bert's death.

17. In her First Appeal, Ms. Payton pointed out that Lincoln was improperly attempting to shift the burden to her to prove that an exclusion does not apply or must be "ruled out" despite that nowhere in the Policy does it say that the claimant must prove an exclusion does not apply and it is a general rule of law that it is the insurance company that must prove an exclusion applies to preclude coverage.

18. Ms. Payton further pointed out in her First Appeal that Lincoln was placing her in a near impossible position since no one knew exactly what occurred immediately preceding Mr. Bert's murder.

4

19.     Ms. Payton pointed out in her First Appeal that there was no evidence that Mr. Bert has caused his own death during the commission of any felony.  She specifically pointed out what she believed was the clear intent of the exclusion that Lincoln raised about a death caused during the commission of a felony:  "It is clear that the exclusion for 'committing or attempting to commit a felony or the engagement in an illegal occupation' covers situations where the decedent dies based on his own direct conduct that resulted in his death.  For example, there would not be coverage for someone fleeing the police that drives his car into a tree and kills himself.   Similarly, there would not be coverage for someone engaged in a shootout with the police that in turn gets shot and dies.  However, these are completely different situations than someone that is murdered without having done anything to provoke the murderer to commit the murderous act.  Lincoln's extension of exclusion 5 to any situation where someone is killed through no fault of their own simply because they might have done or been doing something illegal goes way to far and is not supported by the policy or the law. "

20.     On May 28, 2024, Lincoln informed Ms. Payton that:  "We received your request for review of the recent claim determination of the above-referenced claim on February 15, 2024 and your letter of representation on February 25, 2024.  We have initiated the claim file and determined that additional information is needed to complete a full and fair review of the appeal.  Specifically, we have requested the police report from the Bedford County District Attorney's office.  On March 11, 2024, we spoke with the Virginia State

police department who directed us to the Bedford County District Attorney' office for the report. No information was currently available for this case. . . . We understand the documentation is pending release with the District Attorney's office therefore we will notify you when the documents are received. If you are able to obtain a copy of the police report, please submit it as soon as possible. We will continue to follow up on this report as well.  Since we are waiting for additional information to be submitted for this case, the days from the date of this letter until we receive the submission (police report) are not counted as part of the appeal determination period."

21.     On July 2, 2024, Lincoln sent a follow up later to Ms. Payton and stated that:  "We have initiated the claim file and determined that additional information is needed to complete a full and fair review of the appeal. Specifically, we have requested the police report from the Bedford County District Attorney's office."

22.     On July 31, 2024, Lincoln notified Ms. Payton that:  "We have completed our review and determined that additional information is needed to evaluate the eligibility for benefits.  The file has been returned to Crystal Conley at Phone No.: (888) 787-2129 Ext. 16263 for continued investigation."

23.     On January 9, 2025, over five months after the file had been returned for continued investigation, Lincoln notified Ms. Payton that:  "We have completed our review and determined that additional information is needed to evaluate the eligibility for benefits.  Please provide a copy of the police incident

6

report, this information can be emailed to LifeClaimDocs@LFG.com or faxed to the secure fax # below."

24.     On January 15, 2025, Ms. Payton informed Lincoln that: "she does not have the police report and has no ability to obtain the police report since the police will not release the police report to her.   Despite that Lincoln represented in your letter of August 4, 2023 that it was also requesting the police report, it is apparent that in over seventeen months since its direct request that Lincoln has not been able to obtain the police report.   It is outrageous that Lincoln continues to delay processing this claim based on Ms. Payton's inability to obtain a document that Lincoln has not been able to obtain itself despite its unlimited resources and superior ability and knowledge as to how to go about obtaining police reports."

25.     Ms. Payton further pointed out in the letter of January 15, 2025 that Lincoln was once again improperly attempting to shift the burden to Ms. Payton to prove that an exclusion did not apply and once again pointed out the absurdity of Lincoln's refusal to pay a claim after almost two years based on the insured's inability to prove that an exclusion did not apply:  "The absurdity and unfairness of Lincoln attempting to shift the burden to Ms. Payton to prove that an exclusion does not apply can easily be seen by taking one of the other exclusions quoted by Lincoln.   Exclusion 3 provides that:   'No benefits are payable for any loss that is contributed to or caused by: . . 3. suicide, or suicide attempt, while sane or insane.'   Take for an example someone who was found dead in their pool and the coroner concluded it was from drowning.   However, there was no

7

one present to witness the decedent falling into the pool, accordingly, there is no way of proving or ruling out that the decedent did not commit suicide by drowning as opposed to simply having died by an accidental drowning. There are a myriad of examples that I could provide of someone that died without anyone else being present and there being no way to determine if the person intentionally killed themselves or died by accident. Someone that fell down their stairs and broke their neck and died could have intentionally flung themselves down the steps or simply slipped by accident. It appears to be Lincoln's position that in every one of these accidental death cases where no one was present and/or there is no ability to disprove that the decedent committed suicide that it is entitled to deny benefits. This simply is outrageous and contrary to the law. Insurance companies charge a premium to insure a risk and part of the risk is that it might not always be known what caused the loss but the insurance company is still required to pay it out unless it can prove that the loss was caused by an excluded event."

26.    On August 13, 2025, Lincoln finally formally denied the requested death benefits. A true and correct copy of Lincoln's denial letter is attached hereto as Exhibit 1. Despite never having obtained the police report that it claimed was necessary for it to make a determination of benefits, Lincoln claimed that: "Bedford County Commonwealth's Attorney, Wes Nance, provided a verbal statement that indicates 'it is publicly known now, that evidence would have shown that Mr. Burt [sic] was traveling in with multiple pounds of marijuana into Virginia from out of state. This would be considered a

8

felony, had he survived the incident.' As such, we have determined that no Accidental death benefits are payable as outlined in the #5 exclusion of the Policy as noted above.'

27.    On August 14, 2025, Ms. Payton filed her Second Notice of Appeal.

28.    Ms. Payton pointed out in her Second Notice of Appeal that there was a complete lack of any evidence that Mr. Bert was murdered as a result of committing any felony at the time of his death.  Despite that by August 13, 2025 Lincoln had transcripts from the criminal proceedings involving the perpetrators of the heinous murder, Lincoln did not once mention anything about what was actually claimed by the perpetrators or determined by the Judge.  After having listened to the testimony of the perpetrators, the Presiding Judge over the criminal proceeding concluded that:  "Moreover, the facts are clear that once Mr. Bert arrived at Mr. Walker's house, the two almost immediately got into an argument over Mr. Bert calling Walker's mother. During this argument, Walker suddenly shot and killed Mr. Bert. Those facts demonstrate that the murder did not actually occur during the course of the robbery, nor were they in furtherance of the planned robbery, which had seemingly not even begun when Walker engaged in this argument with Bert resulting in Walker shooting and killing Mr. Bert."

29.    Ms. Payton pointed out in her Second Notice of Appeal that based on the totality of the testimony offered by the perpetrators, which was inconsistent and of questionable veracity, it appears that:  "Mr. Bert's death was

the result of some momentary instance of anger by Mr. Walker over Mr. Bert having called Mr. Walker's mother in an attempt to contact Mr. Walker.   Mr. Walker did not murder Mr. Bert over anything to do with the delivery of marijuana on April 17, 2023.   Mr. Walker shooting and killing Mr. Bert was entirely unprovoked."

30.     In her Second Notice of Appeal, Ms. Payton provided a number of sound arguments for the reason that the exclusion in the Policy for being killed while in the commission of a felony simply did not preclude coverage even if Mr. Bert has been transporting marijuana prior to being murdered, which had never been proven.

31.     On August 25, 2025, Lincon denied Ms. Payton's Second Appeal. A true and correct copy of Lincoln's decision denying Ms. Payton's Second Appeal is attached hereto as Exhibit 2.  Lincoln concluded that:   "We acknowledge the tragedy of Ethan Bert's death. However, his death, because of gunshot wounds to the head, was not the result of an accident. Furthermore, Ethan Bert's death occurred in the setting of his illegal occupation and in the setting of committing or attempting to commit a felony. According, accidental death dependent benefits are not payable."

32.     Lincoln notified Ms. Payton in its decision denying her Second Appeal that she had until August 22, 2026 "to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review."

33.     Ms. Payton is filing the present Action in order to obtain a review of Lincoln's denial of death benefits associated with the death of Mr. Bert.

10

COUNT I – CLAIM FOR BENEFITS UNDER 29 U.S.C. §1132(a)(1)(B)

34.    Plaintiff incorporates herein by reference paragraphs 1 through 33 above as if set forth herein at length.

35.    Lincoln provided Dependent Accidental Death and Dismemberment Benefits in accordance with the following Policy provision:

CHILD

Children (Age at Death):

Live birth, but under 26 years.

Without Dependent Spouse Accidental Death and Dismemberment coverage, an amount equal to 15.00% of the Covered Employee's elected amount. With Dependent Child Accidental Death and Dismemberment coverage, an amount equal to 10.00% of the Covered Employee's elected amount. If Annual Earnings are not a multiple of $1,000.00, the amount will be rounded to the next higher multiple of $1,000.00. This amount may not exceed $100,000.00.

36.    Ms. Payton had an elected amount of $640,000, consisting of Basic Coverage of $80,000 and an additional Optional Coverage of $560,000, for total coverage of $640,000.

37.    Ms. Payton was eligible to receive $64,000 (10% of $640,000) for the death of a child.

38.    Ethan Bert was Ms. Payton's child and was 21 years old at the time of his death.

39.    Ethan Bert's death entitled Ms. Payton to receive a death benefit of $64,000 under the terms of the Policy.

40.     No exclusion in the Policy precluded payment of the death benefit to Ms. Payton.

41.     There was no conclusive evidence that Mr. Bert's death was caused by his commission of a felony.

42.     Principal acted in an arbitrary and capricious manner in denying Ms. Payton's claim for benefits.

43.     Despite having repeatedly informed Ms. Payton that it needed to receive the police report before it could make a determination of benefits, Lincoln never received the police report and did not base its denial of benefits on any police report.

44.     Lincoln purportedly based its denial of benefits on an alleged verbal statement made by the Commonwealth Attorney that was never memorialized in writing and Ms. Payton is unable to confirm the full scope of any statement the Commonwealth Attorney might have provided to Lincoln.

45.     Based on what appears to be a written statement provided by the Commonwealth Attorney to Lincoln, Ms. Payton questions the accuracy and/or completeness of what Lincoln claims the District Attorney stated to Lincoln.

46.     The Commonwealth Attorney prepared a letter dated September 16, 2025 that appears to be intended for Lincoln wherein he begins the letter with the statement that: "Please be advised that I wish to expand on the short voicemail that I left you in reference to the death of Ethan Bert. Please allow this document to provide further context to your inquiry concerning the circumstances of his

death."   A true and correct copy of the letter from the Commonwealth Attorney is attached hereto as Exhibit 3.

47.    In his September 16, 2025 letter, the Commonwealth Attorney noted that:  "First, if Mr. Bert did in fact, transport marijuana into Virginia from out of state, the amount was never established to a degree that would have allowed for a successful prosecution. Only two individuals gave statements as to the amount that was brought to Virginia. Both of those individuals were already convicted felons and both were found to have made untruthful statements during the course of this investigation."

48.    In his September 16, 2025 written statement, the Commonwealth Attorney further noted that:  "Finally, all of the evidence elicited during the course of this investigation clearly reveals that the transportation of the marijuana was completed before Ethan Bert was murdered. After Bert arrived in Roanoke City, there was an argument between Bert and his killer, Joseph Walker. It was only after that argument that Mr. Bert was killed.  I would respectfully request that you consider these clarifications in rendering your decision of coverage."

49.    As made clear by the Commonwealth Attorney in his letter, Mr. Bert's death was not caused during his commission of any felony, and at most, occurred after any alleged transportation of marijuana occurred, which was never even established.

50.    Lincoln's decision denying Ms. Payton's claim for benefits was without reason, unsupported by substantial evidence, and erroneous as a matter of law.

51.     Lincoln never established that Mr. Bert was killed during the commission of any felony.

52.     Lincoln never established that Mr. Bert had any illegal occupation, much less that he was killed while performing any act in the pursuit of this illegal occupation.

53.     Lincoln never even explained the reason it initially claimed the subject exclusion precluded coverage for a death caused by "committing or attempting to commit a felony or misdemeanor" as quoted in its initial communications with Ms. Payton in 2023, and then later claimed that the subject exclusion precluded coverage for a death caused by "committing or attempting to commit a felony or the engagement in an illegal occupation".

54.     Regardless of which version of the exclusion applies, there is a complete lack of evidence as to Mr. Bert's occupation as a 21 year old at the time of his death, much less that Mr. Bert's occupation was an illegal occupation or that he was engaged in any such illegal occupation at the time of his death and such illegal occupation caused his death.

55.     Lincoln erroneously concluded that any event that might take place after the alleged transportation of marijuana by Mr. Bert must relate back to that transportation and be deemed to have occurred during the commission of a felony.

56.     There is a complete lack of any substantial evidence to support that Mr. Bert was killed due to any felonious act that he was committing at the time he was killed.

14

57.     The majority of the evidence, whether credible or not, is that Mr. Bert was simply having a conversation with a friend when the friend had some momentary fit of anger and shot and killed Mr. Bert.

58.     Lincoln ignored all evidence that Mr. Bert was not killed while engaged in a felonious act and created its own version of events by selectively piecing together facts to support its own narrative so as to deny coverage.

59.     Lincoln failed to consider all facts and make an objective determination of coverage.

60.     If Lincoln had appropriately considered all facts in support of coverage, as well as the absence of credible facts supporting any exclusion to coverage, it would have provided Ms. Payton with the death benefits due under the Policy.

61.     Ms. Payton has met all conditions to receiving benefits that are set forth in the Policy.

62.     Lincoln's denial of Ms. Payton's claim for benefits should be overturned and it should be ordered to pay her for all past due benefits, together with pre-judgment interest.

WHEREFORE, Plaintiff Katie Payton demands judgment in her favor and against Defendant The Lincoln National Life Insurance Company for $64,000, together with pre-judgment interest and costs.

Respectfully submitted,

McNEES WALLACE & NURICK LLC

By  /s/ Jonathan H. Rudd

Jonathan H. Rudd
Attorney I.D. No. PA 56880
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
(717) 237-5405
Fax: (717) 260-1737
jrudd@mcneeslaw.com

Attorneys for Plaintiff Katie Payton

Dated: August 9, 2026