**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NATHANIAL ROLAND<br>241 E. Market Street<br>Camp Hill, PA 17098<br><br>Plaintiff,<br><br>v.<br><br>TODD BEAR, *individually*<br>30 Erford Road<br>Camp Hill, PA 17011<br>and<br>AUDREY BEAR, *individually*<br>30 Erford Road<br>Camp Hill, PA 17011<br>and<br>BEAR AND BEAR, INC., d/b/a SIMPLY TURKEY & MORE<br>30 Erford Road<br>Camp Hill, PA 17011<br><br>Defendants. | : | CIVIL ACTION<br><br>No. _______________<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## I. INTRODUCTION

1. This action has been initiated by Nathanial Roland (hereinafter referred to as "Plaintiff," unless indicated otherwise) for violations of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. 201, *et. seq*.) and applicable state law(s). Plaintiff asserts herein that Defendants violated state and federal wage laws and terminated Plaintiff (illegally) in violation of the FLSA (for engaging in protected activity by complaining of illegality under the FLSA). As a direct consequence of Defendants' actions, Plaintiff seeks damages as set forth herein.

## II. JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. 1331, has jurisdiction over Plaintiff's claims because they arise under a federal law - the FLSA. Jurisdiction lies over any state-related legal claims herein because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## III. PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Bear and Bear, Inc., d/b/a Simply Turkey and More (hereinafter, "Defendant BB-ST" where referred to individually) is a family restaurant business in central Pennsylvania operating through two (2) locations.

8. Todd Bear ("Defendant T-Bear") and Audrey Bear ("Defendant A-Bear") are upon information and belief husband and wife, officers of Defendant BB-ST, and they are the

highest-level managers and owners of Defendant BB-ST. They control all aspects of operations and personnel, and oversee both locations of Defendant BB-ST (as well as payroll, hiring and terminations therein).

9. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## IV. FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was hired by Defendants on or about September 15, 2022; and in total, Plaintiff was employed by Defendants for slightly in excess of three (3) years.

12. Defendants do business publicly as "Simply Turkey & More," and they operate two (2) separate restaurants. Such restaurants are located at 4455 North Front Street, Harrisburg, PA 17110 (the "East Shore" location) and 30 Erford Road, Camp Hill, PA 17011 (the "West Shore" location.

13. From hire through termination, Plaintiff was employed by Defendants as the "General Manager" of both locations (although he generally spent most of his time at the West Shore location). In this capacity, Plaintiff reported to Defendants T-Bear and A-Bear (his management and the owners). Defendants T-Bear and A-Bear are being sued individually as to their personal assets in this lawsuit, in addition to claims against Defendant BB-ST.[1]

[1] *See e.g. Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 414 (3d Cir. 2012)(managers, owners or and corporate officers exercising control over matters that constitute violations of the FLSA (as to wage violations or unlawful retaliation) may be sued individually).

14. Employees of Defendants' two (2) locations participated in a tip pool for work each day (and every week) and shared tips from the tip pool amongst one another. Such employees of course relied on receipt of the tips in exchange for their gainful employment and necessary income.

15. In or about the timeframe of mid-2025 (***only months before*** he would be terminated and after years of exemplary work performance), Plaintiff learned that Defendants were committing rampant state and federal wage violations and involving Plaintiff.

16. A "tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 in tips." 29 U.S.C. § 203(t). 29 U.S.C. § 203(m) of the FLSA limits participation in tip pools to only employees who "customarily and regularly receive tips." *See e.g. Walsh v. Dayemi Org., Inc*., 2022 U.S. Dist. LEXIS 112477, *11-12 (S.D. Ill. 2022)(under federal law, even "dishwashers, cooks, chefs, and janitors" may not participate in a "tip pool" because they do not customarily receive tips as part of their job); *see also Montano v. Montrose Rest. Assocs*., 800 F.3d 186 (5th Cir. 2015)(it is unlawful for any non-tipped employee to participate in a tip pool under the FLSA); *see also* DOL Handbook § 30d04(c).[2]

17. The taking of any portion of employee tips is so obviously illegal under the FLSA that is posted online as a Fact Sheet for notice to employers stating in part:

> The FLSA prohibits an employer from keeping tips and from allowing a manager or supervisor to keep any portion of other employees' tips for any purpose. The FLSA, for example, prohibits a manager or supervisor from receiving tips from a tip pool or tip jar, because tip pools and tip jars include other employees' tips. This prohibition applies whether or not the employer pays tipped employees with a tip credit.

[2] The Pennsylvania Minimum Wage Act ("PMWA") expressly adopts the same regulatory restrictions on tip pools of employees and makes the same actions herein unlawful (under state law). *See* 34 Pa. Code § 231.112

*See* https://www.dol.gov/agencies/whd/fact-sheets/15b-managers-supervisors-tips-flsa

18. Plaintiff was paid a salary – and for example as of the end of his employment – a salary of $60,000.00. As a General Manager, he was paid the same salary irrespective of how many hours he worked (as he regularly worked well in excess of 40 hours per week). However, Defendants were paying part of Plaintiff's salary in "tips" being taken from the employee tip pool.

19. By mid-2025, Plaintiff came to learn that: (1) Defendants T-Bear and A-Bear were stealing approximately ten percent (10%) of all employee tips; and (2) using employee tips to retain for themselves and to pay Plaintiff (or other non-tipped personnel). *Such information was coming to light by virtue of employees inquiring of Plaintiff why their payroll checks or compensation seemed less than they earned or expected. As a result, Plaintiff was helping to investigate such shortages.*

20. In reviewing his own tax-related information and researching what laws permit, Plaintiff noticed that Defendants were attributing "Tips" to him (*a manager who is not legally permitted to participate in a tip pool or to receive other employees' compensation*). A screenshot of Plaintiff's W2 information <u>from Defendants</u> for 2023 – 2025 shows as follows:

W2

| Name | Total Tips |
|---|---|
| 2025 - Bear & Bear Inc - W2 | 4961.83 |
| 2024 - Bear & Bear Inc - W2 | 9055.11 |
| 2023 - Bear & Bear Inc - W2 | 8012.05 |

21. Part of Plaintiff's annual earnings were paid by Defendants *from employee tips* that did not belong to Plaintiff or Defendants (and which were illegally taken by Defendants and reallocated to management or ownership).

22. In mid-2025, Plaintiff was very distressed that he was merely supposed to be receiving a salary for his extremely hard work and long hours - - yet Defendants were making him complicit in unlawful conduct under the FLSA. Plaintiff researched matters online, sought legal advice, and he was honest with employees of Defendants that he believed that Defendant had engaged in an unlawful tip pool whereby ownership was taking their money illegally.

23. Plaintiff attempted to discuss his concerns of the aforesaid illegality with Defendants and was met with a high level of aggression such as T-Bear saying he can do whatever the fuck he wants and what he does with employee tips is none of the employees' (or Plaintiff's) fucking business. These are only examples of Defendants' blatant disregard of state and federal laws (and commentary of contempt towards such illegalities).[3]

24. Not only do employers violate statutory regulations by the non-payment of wages in compliance with the PMWA and FLSA (requiring civil penalties and financial remuneration), but it is also well-established that doing so is criminal. *See e.g.* 29 U.S.C. § 216(a)("Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction [of a misdemeanor] thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both; Criminal Justice Resource Manual ("Section 216(a) of Title 29,

[3] Plaintiff omits additional citations to state laws herein because the PMWA is interpreted very similarly to the FLSA on what is and is not considered unlawful. But Plaintiff focuses instead on FLSA claims as – unlike the PMWA – the FLSA affords very broad protection(s) of retaliation against Plaintiff (or other complaining employees).

United States Code, provides a criminal misdemeanor penalty for willful violations of 29 U.S.C. § 215.)”[4]; 43 P.S. § 333.112 (outlining criminal penalties for willful violations of PA wage laws).

25. After being honest with employees of Defendants and refusing to be evasive or lie to them, employees of Defendants engaged legal counsel and filed a federal “Collective Action” under the FLSA. The federal lawsuit, Docket No.: 25-CV-01343 (*Karman Chronister on behalf of herself and similarly situated employees v. Bear & Bear, Inc*.) was filed on July 22, 2025. The federal lawsuit alleged *inter alia* that Defendants violated the FLSA by distributing employee tips to non-tipped employees such as management and ownership.

26. Upon receipt of the aforesaid federal collective action lawsuit (in the late July 2025 timeframe), Plaintiff was angrily confronted by Defendant T-Bear. As of this timeframe, Plaintiff had been raising concerns about illegality for about 2-3 months (surrounding the very same matters for which the lawsuit was filed). This prompted T-Bear to ask Plaintiff if he was aware of or helped with the lawsuit being filed since Plaintiff was raising the same issues previously. Defendant T-Bear was very aggressive in the conversation.

27. When confronted with the federal collective action lawsuit in late July of 2025 by Defendant T-Bear, Plaintiff responded: “I 1000% knew” it was being filed and Plaintiff said he was not willing to be paid in tips, was not willing to be complicit in an illegal pay scheme, and Plaintiff demanded Defendants fix their payroll immediately (as Plaintiff’s prior concerns were disregarded). Plaintiff explained Defendants were making him potentially legally liable for actions he didn’t control and didn’t want to be involved within. *As will be learned during litigation discovery, Plaintiff was kept abreast of the anticipated lawsuit being filed (even pre-confrontation by Defendant T-Bear).*

[4] *See* https://www.justice.gov/archives/jm/criminal-resource-manual-2456-29-usc-201-219-fair-labor-standards-act

28. In August and September of 2025 (in the 2 months following lawsuit filing against Defendant), Plaintiff was treated horribly by Defendants, intimidated, accused of wrongdoing, and constantly criticized. On several occasions, Defendant T-Bear even brought up frustration with Plaintiff's FLSA-related concerns saying he should have stayed the fuck out of it (among other iterations of such admonishment).

29. Defendants are (and were) so unscrupulous, dishonest, and reckless, they elected to falsify wage records to defend the federal collective action lawsuit. For example, pre-lawsuit, Plaintiff was listed as a "General Manager" receiving tips in Defendant's payroll accounting as follows:

| | | | | |
|---|---|---|---|---|
| Peter Koester | General Manager | 0.00 | $93.35 | $19.87 |
| Nathanial Roland | General Manager | 0.00 | $2.81 | $18.49 |

30. The above screenshot is an image pre-lawsuit of Plaintiff being allocated tips and being identified as a "General Manager" (in a tip payment summary within Defendant). By mid-2025, Defendants manipulated records and attempted to falsely list Plaintiff as a "Cashier" as follows:

| | | | | |
|---|---|---|---|---|
| Nathanial Roland | Cashier | 8.90 | $32.97 | $26.18 |

31. Plaintiff had no control over payroll, he did not handle or submit payroll, and he did not change his own job title in payroll records which was showing he was being allocated

"Tips." ***Defendants engaged in wage theft, intentional violations of the FLSA, and falsified records for case defense(s).*** When Plaintiff complained it had to stop and was illegal, Defendants kept the same system and used profanity explaining they could do whatever they wanted (indicating clearly willful intent to engage in criminal conduct).

32. Prior to late July of 2025, Plaintiff had worked for Defendants for nearly three (3) years and he: (a) was praised; (b) worked long hours; (c) performed in an exemplary manner; and (d) was well liked by employees and customers. In sum, Plaintiff had never been disciplined for any reason.

33. During much of mid-2025 (the spring – summer of 2025), Plaintiff was being very direct in his concerns that Defendants needed to cease illegal pay practices (in violation of the FLSA) and Plaintiff confirmed he would absolutely testify honestly when confronted in late July of 2025 that the legal claims were accurate and true on behalf of employes. Thus, it was clear Plaintiff was going to also be a favorable FLSA witness for employees of Defendant (in pending federal litigation).

34. Plaintiff experienced a very hostile work environment until he was abruptly terminated on or about October 3, 2025 (during his last few months). He was terminated by both Defendant A-Bear and T-Bear (in-person) who jointly engaged in the retaliatory environment and retaliatory termination against him.

35. The apparent reason Defendants went with for the excuse to terminate Plaintiff was that – while they claim Plaintiff didn't steal anything or take any money from Defendants – they (suddenly) didn't like the way he timely handled deposits on behalf of Defendants. Of course, such a rationale was absurd and won't be believed by a judge or jury. Plaintiff performed in the same manner during his entire period of employ, and he didn't do anything wrong.

36. The FLSA is so broad in its protections against retaliation that ***any "oral" concern*** or complaint about FLSA-related violations if federally protected activity prohibiting any form of retaliation. *See Kasten v. Saint-Gobain Performance Plastics Corp*., 563 U.S. 1, 17, 131 S. Ct. 1325, 1336 (2011). It is also well established that complaints about unlawful tip pools are federally protected activity under the FLSA.[5]

37. Plaintiff was terminated for refusing to be paid in violation of the FLSA, for refusing to be complicit in violation of the FLSA, and for complaining of FLSA violations affecting himself and other employees.

38. Upon (and contemporaneous to) Plaintiff's termination, Defendants suddenly (upon information and belief) ceased engaging in tip theft and commenced paying tipped employes legally (and in compliance with the FLSA).

**Count I**
**<u>Violations of the Fair Labor Standards Act ("FLSA")</u>**
**(Wrongful, Retaliatory Termination & Overtime Violations)**
**- Against All Defendants -**

39. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40. Plaintiff's discharge from Defendants for engaging in protected activity under the FLSA constitutes unlawful retaliation under the FLSA. *See supra; see also Lambert v. Ackerley,* 180 F.3d 997, 1003-05 (9th Cir.1999)(*en banc*); *Valerio v. Putnam Assocs. Inc.,* 173 F.3d 35, 44-45 (1st Cir.1999); *EEOC v. Romeo Comty. Sch.,* 976 F.2d 985, 989-90 (6th Cir.1992); *EEOC v.*

---

[5] *See e.g. Rocksmore v. Hanson*, 2015 U.S. Dist. LEXIS 23778, *24 (D. Or. 2015)(explaining it is unlawful to terminate an employee under the FLSA under §215 because the employee opposed an unlawful tip pool); *see also Guillory v. PF&B Mgmt., LP*, 2013 U.S. Dist. LEXIS 39484, *19 (S.D. Tx. 2013)(employee terminated for submitting legal concern for invalid tip pool states valid claim for FLSA retaliation); *Stewart v. CUS Nashville, LLC*, 2013 U.S. Dist. LEXIS 16035, *34 (M.D. Tenn. 2013)(denying summary judgment to employer and explaining it's unlawful to terminate an employee under the FLSA who lodges a complaint for improper tip pooling).

*White & Son Enters.,* 881 F.2d 1006, 1011 (11th Cir.1989); *Brock v. Richardson,* 812 F.2d 121, 123-25 (3d Cir.1987); *Love v. RE/MAX of Am., Inc.,* 738 F.2d 383, 387 (10th Cir.1984); *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179, 181 (8th Cir.1975).

41. Plaintiff seeks all remedies available for unlawful (retaliatory) termination in violation of the FLSA.

**Count II**
**<u>Common Law Wrongful Termination</u>**
**(Retaliation)**
**- Against All Defendants -**

42. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43. It is clearly prohibited in this Commonwealth to terminate an employee for refusing to commit unlawful or criminal acts. *See. e.g. Levito v. Hussman Food Service Co. Victory Refrigeration Div*., WL 1426 (E.D. Pa. 1990); *Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699, 702 (3rd Cir.1988); *Shaw v. Russel Trucking Line, Inc.,* 542 F.Supp. 776 (W.D.Pa.1982); *Dugan v. Bell Tel. of Pennsylvania,* 876 F.Supp. 713, 725 (W.D.Pa.1990).

44. Plaintiff was terminated for his refusal to engage in (or be complicit or involved with) unlawful acts. Defendants T-Bear and A-Bear as named in the caption of the Complaint are corporate officers who participated and ratified the decision to terminate Plaintiff's employment - - making them individually liable herein.[6]

---

[6] It is well established that corporate officers are liable for torts in Pennsylvania in which they participate. In *Rowles v. Automated Prod. Sys.,* 1999 U.S. Dist. LEXIS 21605 (M.D. Pa. 1999), the court explained **<u>any</u>** corporate officer is individually liable for their tortious actions, stating:

> In *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86, 90 (Pa. 1983), the Pennsylvania Supreme Court recognized the participation theory as a basis for ***corporate officer liability***:
>
> Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting overtime violations and retaliation;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' wrongful actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

C. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendants' actions;

D. Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

E. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F. Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees if permitted by applicable law; and

G. Plaintiff is permitted to have a trial by jury.

---

alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

*Id.* at * 43.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801 Phone
(215) 639-4970 Fax
akarpf@karpf-law.com

Dated: August 25, 2026