**IN THE UNITED STATES DISCTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTOPHER FOUNTAINE<br>322 E. King St.<br>Dallastown, PA 17313 | CIVIL ACTION |
| Plaintiff, | CASE NO.: |
| v. | **JURY TRIAL DEMANDED** |
| COUNTY OF YORK<br>28 E. Market St.<br>York, PA 177401 | |
| Defendant. | |

## CIVIL ACTION COMPLAINT

Christopher Fountaine (hereinafter referred to as "Plaintiff "unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against Defendant County of York (hereinafter referred to as "Defendant" unless indicated otherwise) for violation of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, et. seq.) and the Pennsylvania Human Relations Act ("PHRA").[1]

[1] Plaintiff's claims under the PHRA and are referenced herein for notice purposes. Plaintiff intends to amend his complaint to include claims pending before the Pennsylvania Human Relation Commission ("PHRC") once such claims are fully and administratively exhausted. Plaintiff has commenced this action at this time because he has received a Notice of Right to Sue from the EEOC with respect to his other claims. Plaintiff's PHRA claim, once exhausted, will mirror the ADA claims asserted herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under the ADA.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted his administrative remedies before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

**PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant The County of York is the administrative municipal office for the County of York, PA. Defendant is responsible for various activities and proceedings within the County of York's courthouse and local government.

9. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a 34-year-old male with a Bachelor's Degree from Full Sail University.

12. Plaintiff has worked in the Information/Technology field for approximately five years.

13. Plaintiff was initially hired by Defendant on or about February 17, 2026.

14. Plaintiff was employed by Defendant for approximately two months prior to his unlawful termination on or about April 20, 2026.

15. Plaintiff worked as a Service Desk Technician within Defendant's Information Technology department.

16. Plaintiff was qualified for the position, as he had the requisite skill and ability to perform the job duties.

17. Plaintiff was supervised by Director Elizabeth Parry, (hereinafter "Parry") and Manager Shawn Williams, (hereinafter "Williams"). Defendant's Human Resources Executive Director was Emily Hornet (hereinafter "Hornet").

18. Defendant's Information Technology department typically required approximately eight employees, but for the entirety of Plaintiff's employment, only four employees worked in this department. For this reason, Plaintiff was often asked to perform many duties.

19. Despite the lack of full staff, Plaintiff was still a hard-working employee and performed his job in a highly competent and professional manner.

20. Initially, Plaintiff was praised for his performance and given positive feedback for his work. Plaintiff was not issued any discipline, reprimands or warnings for any reason.

21. Plaintiff played a key role in reducing requests, or "tickets," submitted to the department. In any given week, Plaintiff was tasked with responding to approximately 150-200 tickets. Plaintiff was able to complete nearly 20 tickets per day, at a minimum of 75 tickets per week. As a result of this hard work, Plaintiff reduced Defendant's overall workload significantly, with only 30-40 tickets remaining by the end of any given week.

22. Upon information and belief, Plaintiff's ability to efficiently clear tickets placed him as one of the highest performers in his department.

23. Plaintiff has and continues to suffer from ADA-qualifying disabilities, including but not limited to autism spectrum disorder/Asperger's Syndrome and other related medical symptoms, conditions, and complications.

24. As a result of the aforesaid disabilities, Plaintiff has experienced and continues to experience symptoms, impairments, and limitations that affect and/or limit Plaintiff's daily functioning, including, *inter alia*, concentrating, thinking, interacting with others, communication processing, overstimulation, and at times, working.

25. Plaintiff has and continues to obtain mental health/medical treatment for these conditions.

26. Despite his health conditions and limitations, Plaintiff remained fully capable of performing the essential functions of his job and was never reprimanded or given any sort of written or verbal discipline regarding the quality of his work.

27. In or about late March 2026, Plaintiff informed Defendant's management about his disabilities.

28. Prior to this disclosure, Williams actively engaged in conversations with Plaintiff, provide detailed feedback to Plaintiff's questions, appeared receptive to Plaintiff's ideas and suggestions, and treated Plaintiff in a generally friendly and respectful manner.

29. However, shortly after Plaintiff disclosed his disabilities, Williams's demeanor towards Plaintiff shifted significantly. For example:

a. Williams became increasingly cold and unresponsive towards Plaintiff;

b. Williams became curt when giving feedback to Plaintiff, including merely giving short and vague replies to Plaintiff's questions, sometimes giving no response at all.

c. Williams frequently dismissed Plaintiff's accomplishments, his ideas, opinions, and had a generally unwelcoming demeanor whenever Plaintiff approached him.

30. Williams did not treat Plaintiff's non-disabled co-workers in the same manner. In fact, Plaintiff observed that Williams was pleasant, friendly and talkative with other (non-disabled) employees.

31. Plaintiff was required to meet with Williams at one-on-one meetings throughout his employment with Defendant. However, Williams would often cancel or even fail to appear at these one-on-one meetings entirely.

32. These cancellations were so abrupt and so frequent that Plaintiff was left standing outside of Williams's office on more than one occasion, due to the lack of clarity and communication.

33. On the rare occasion that Plaintiff and Williams did meet, Williams's feedback and questions remained at the surface level. All discussion were brief, and Williams would merely ask if Plaintiff was "doing ok." When Plaintiff asked for feedback regarding his body of work, Williams would merely reply that Plaintiff's performance was "fine."

34. Plaintiff was never informed that his job was in jeopardy during any of his meetings with Williams. To the contrary, Plaintiff was told that his performance was "fine."

35. On or about April 20, 2026, only a few weeks after Plaintiff disclosed his disability to Defendant, Plaintiff was abruptly terminated by Tolley, Williams, and Parry.

36. During Plaintiff's termination meeting, Plaintiff was told that he was being terminated for allegedly "failing to meet performance expectations." When Plaintiff asked for more clarity or proof regarding this claim, he was not provided with any substantive explanation.

37. Shortly after his termination, Plaintiff received several text messages from his co-workers who all confirmed that Plaintiff had performed well, had not been told of any performance issues and had been a good asset to the County.

38. After Plaintiff's termination, he was replaced by a non-disabled employee.

39. Based on the foregoing, Plaintiff asserts that his actual and/or perceived disabilities were motivating and/or determinative factors in Defendant's termination of him.

**COUNT I**
**<u>Violations of the Americans with Disabilities Act, as Amended ("ADA")</u>**
**(Actual/Perceived/Record of Disability Discrimination and Hostile Work Environment)**

40. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

41. Plaintiff suffers from qualifying health conditions under the ADA which affect his ability (at times) to perform some daily life activities (set forth *supra*).

42. Plaintiff informed Defendant's management of his disabilities.

43. Despite Plaintiff's health conditions and limitations, he was still qualified and able to perform the duties of his job well.

44. Defendant treated Plaintiff rudely and with animosity because of his medical conditions, unlike his non-disabled co-workers.

45. Defendant's discriminatory treatment of Plaintiff occurred over several weeks and was frequent, unwelcome and humiliating.

46. Plaintiff subjectively perceived his work environment to be hostile, as would any reasonable person.

47. Defendant is vicariously liable for this conduct because management-level employees engaged and/or orchestrated the discriminatory conduct and/or failed to take any remedial action to remedy it.

48. Defendant's conduct created a hostile work environment for Plaintiff.

49. Plaintiff's actual and/or perceived disabilities were motivating and/or determinative factors in Defendant's decision to terminate him.

50. Defendant's actions constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay, and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant from engaging in such misconduct in the future;

D. Plaintiff is to be accorded equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: August 26, 2026