**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

Juan Doe, a minor, by and through his Next Friend and father, Father of Juan Doe,

Petitioners/Plaintiffs,

v.

ROBERT F. KENNEDY, JR. in his official capacity as Secretary of Health and Human Services, 200 Independence Avenue SW, Washington, DC 20201; ANGIE SALAZAR, in her official capacity as Acting Director of the Office for Refugee Resettlement, 330 C Street SW, Room 5123, Washington, DC 20201; SONNYA ACUQUI, in her official capacity as Federal Field Specialist, Office of Refugee Resettlement, and JANE DOE WARDEN, in her official capacity as Director of ABC Detention Center,

Respondents/Defendants.

Civil Case No.:

**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**PETITION FOR WRIT OF HABEAS CORPUS**

[redacted] petitions this Court for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241 and the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*., to remedy his continued unlawful detention by Respondents. Petitioner hereby requests that an immediate hearing be set on this matter. Petitioner also requests that he be released during the pendency of this Petition. In support of this Petition, Petitioner alleges as follows:

**INTRODUCTION**

1. Petitioner, [redacted], is a [redacted] who was detained by the Department of Homeland Security ("DHS") on or about March 4, 2026. [redacted] fled his home country and came to the United States after armed individuals attempted to coerce him into involuntary servitude under threat of death. Petitioner was detained by DHS near Hidalgo, Texas, identified as an unaccompanied child, and transferred to the custody of the Office of Refugee Resettlement ("ORR").

2. [redacted] is currently detained in custody of ORR at [redacted] in [redacted]. [redacted] has been in custody of ORR since March 4, 2026, for approximately 174 days. For over five months, [redacted] has been detained and separated from his father, who is his proposed sponsor in the United States. During detention, [redacted] attends academic classes and weekly therapy sessions, interacts appropriately with peers, and remains engaged. Despite this, [redacted]'s prolonged isolation from his family and separation from his father who is actively seeking to reunite with him profoundly impacts [redacted]'s well-being.

3. ORR records identify [redacted]s father as the proposed sponsor and classify him as a Category 1 sponsor. ORR has a statutory and regulatory responsibility to "promptly" place [redacted] "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A); 45 C.F.R. §§ 410.1003(f), 410.1205(b) (family member sponsor applications must

be adjudicated within 10-14 days). To fulfill its mandate, ORR releases most unaccompanied children in ORR custody to their parents or other relatives in the United States.

4. [redacted]'s unlawful prolonged detention is the result of the long delays in ORR's sponsor-vetting, fingerprinting, home-study, background-check, and documentation practices for family reunification, including repeated requirements that his father and household members provide or correct addresses, identification, and related sponsor-vetting materials.

5. Despite his status as [redacted]'s Category 1 sponsor[1] and his active participation in the sponsor process, ORR has failed to promptly reunify [redacted] with his father. [redacted]'s counsel has contacted local Federal Field Specialist Sonnya Acuqui multiple times seeking an update on Petitioner's release, with the most recent response being "I have received your email and will review the cases and provide an update as soon as I am able to" on June 29, 2026. (*See* Exhibit A., Sonnya Acuqui correspondence.) On August 17, 2026, Counsel for [redacted] sent a demand letter to Respondent Sonnya Acuqui requesting Petitioner's release, which went unacknowledged, with the exception of an automated "out of office" response which has since expired. (*See* Exhibit B., [redacted], Demand Letter.) ORR's failure to act promptly violates [redacted]'s constitutional rights to due process and family integrity.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction under the U.S. Constitution. U.S. Const. art. I § 9, cl. 2 ("The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require.").

---

[1] A Category 1 sponsor is classified by ORR as the highest priority person for the safe release of an unaccompanied child into the United States. 45 C.F.R. § 410.1201(a).

7. The Court also has jurisdiction under 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1651 (the All Writs Act); 28 U.S.C. § 2241 (habeas corpus); and 5 U.S.C. § 701 (the Administrative Procedure Act).

8. This Court has additional remedial authority under 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act) and Fed. R. Civ. P. 65 to grant declaratory and injunctive relief.

9. Venue is proper in the Middle District of Pennsylvania because a substantial part of the events giving rise to these claims occurred and continue to occur in this district.

10. Venue is also proper under 28 U.S.C. § 2241 because [redacted] is detained within this district.

**PARTIES**

11. Petitioner [redacted] is a [redacted] unaccompanied child in ORR custody. He is detained at [redacted] in [redacted] [redacted]. He is trying to reunify with his father in [redacted].

12. [redacted], Petitioner's father, is the Next Friend of Petitioner. [redacted] is Petitioner's biological father. Petitioner [redacted] appears by and through his father, [redacted]

13. Respondent Angie Salazar is the Acting Director of ORR, the subagency of the U.S. Department of Health and Human Services ("HHS") responsible for overseeing the care and custody of unaccompanied minors. ORR is the government entity directly responsible for the detention of [redacted] As the Acting Director of ORR, Respondent Salazar is a custodian of Petitioner, with authority to produce and release him. Respondent Salazar is sued in her official capacity.

14. Respondent Robert F. Kennedy Jr. is the Secretary of HHS, a cabinet-level department of the United States Government. ORR is a component of HHS. As the Secretary of

HHS, Respondent Kennedy is a custodian of Petitioner, with authority to produce and release him. Respondent Kennedy is sued in his official capacity.

15. Respondent Sonnya Acuqui is an ORR Federal Field Specialist. Federal Field Specialist Acuqui is the government official responsible for the care and custody of children who ORR has placed in [redacted]. In this role, Federal Field Specialist Acuqui is responsible for determining [redacted]'s placement and has authority to approve his release to an appropriate sponsor's care. Accordingly, Respondent Acuqui is a custodian of Petitioner, with authority to produce and release him. Respondent Acuqui is sued in her official capacity.

16. Respondent [redacted] is the Director of [redacted], where [redacted] is being held at the time of this petition. As Director of [redacted], Respondent [redacted] is a custodian of Petitioner, with authority to produce and release him. Respondent [redacted] is sued in her official capacity.

## LEGAL FRAMEWORK

### A. The Care, Custody, and Release of Unaccompanied Immigrant Children: Statutory and Regulatory Framework

17. The care and custody of unaccompanied immigrant children is governed by a comprehensive legal framework that imposes specific obligations on ORR to promptly release children to vetted sponsors. This framework consists primarily of two statutes, a settlement agreement that is binding on the pertinent federal agencies, and federal regulations: the Homeland Security Act of 2002, the Trafficking Victims Protection Reauthorization Act, the 1997 *Flores* Settlement Agreement, and the Foundational Rule.

18. In 2002, Congress passed the Homeland Security Act ("HSA"), transferring authority over the care and custody of unaccompanied immigrant children from the INS to ORR, housed within HHS. 6 U.S.C. § 279. [2]

19. Congress' decision to transfer responsibility for the care and custody of unaccompanied children to ORR reflected Congress' determination that caring for children who arrive to the United States without their parent or legal guardian and immigration enforcement were incompatible roles for a single agency.[3] Within HHS, ORR is responsible for children's safety and welfare and is explicitly not a law enforcement agency. *See* Foundational Rule, 89 Fed. Reg. at 34399, 34423 ("it is not a law enforcement agency, unlike the former INS..."), 34591.

20. With strong bipartisan support, Congress then expanded protections for unaccompanied children in the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), reaffirming Congress' intent to treat unaccompanied children differently than the manner in which adults are treated by the Department of Homeland Security ("DHS"), both in detention and in immigration proceedings. 8 U.S.C. § 1232 *et seq*.

21. The TVPRA requires federal officials who discover an unaccompanied child to transfer the child to the care and custody of HHS within 72 hours (absent exceptional circumstances). *Id.* § 1232(b)(3). The TVPRA also tasks ORR with ensuring that unaccompanied children are "promptly placed in the least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A). This is usually with a sponsor. *See, e.g.*, *Saravia v. Sessions*, 905 F.3d 1137,

---

[2] Following the promulgation of the Foundational Rule, the *Flores* Settlement Agreement was partially terminated as to HHS. *Flores v. Garland*, 2024 WL 3467715 (C.D. Cal., June 28, 2024).

[3] *See, e.g.*, 148 Cong. Rec. S11295 (Nov. 18, 2002) (statement of Sen. Feinstein); 148 Cong. Rec. S8189 (Sept. 4, 2002) (reprinting letter from Sens. Kennedy and Brownback). *See also* 148 Cong. Rec. S5960 (Oct. 1, 2002) ("As we transfer and reshape the INS in this legislation, it is imperative to relieve the agency of its responsibility of the care and custody of unaccompanied children. Doing so would accomplish two ends: one, it would permit the INS to focus its energies, efforts, and attention on its core missions; and two, it would transfer the care and custody of these children to the Office of Refugee Resettlement, ORR, an office that is better suited and much more experienced in handling the complexities of the children's situations.")

1142–43 (9th Cir. 2018). Congress enacted the TVPRA specifically to facilitate the safe, speedy release and minimally restrictive placement of unaccompanied children. *See, e.g.*, 154 Cong. Rec. S10886 (daily ed. Dec. 10, 2008) (statement of Sen. Feinstein, sponsoring senator).

22. Neither the HSA nor the TVPRA make any mention of a sponsor's potential immigration status as a prerequisite to receive an unaccompanied child into their custody. Similarly, neither statute gives ORR authority to: (1) inquire into immigration status as a condition for sponsorship; (2) collect information about potential sponsors for immigration or law enforcement purposes; or (3) share potential sponsor's immigration status with law enforcement or immigration enforcement entities.

23. In 2024, ORR promulgated regulations ("The Foundational Rule") codifying the "policies, standards, and protections for [unaccompanied children], consistent with the HSA and TVPRA, and to implement the substantive requirements of the [*Flores* Settlement Agreement] as they pertain to ORR." 89 Fed. Reg. at 34385 (promulgating 45 C.F.R. §§ 410.1000 *et seq.*).

24. The Foundational Rule includes "policies and procedures regarding release, without unnecessary delay, of an unaccompanied child from ORR custody to a vetted and approved sponsor." 89 Fed. Reg. at 34439. The Foundational Rule is consistent with the agency's "strong belief that, generally, placement with a vetted and approved family member or other vetted and approved sponsor, as opposed to placement in an ORR care provider facility . . . is in the best interests of unaccompanied children." *Id*.

25. The Foundational Rule establishes that "ORR shall release a child from its custody without unnecessary delay" to sponsors in a specific order of preference with parents and legal guardians taking first priority and other family members following. 45 C.F.R. § 410.1201(a). As required by the section 410.1201(a), sponsor suitability assessments must include various

investigations and background checks, and "may include" background checks "based on fingerprints for some potential sponsors and adult residents of the potential sponsor's household." *Id.* § 410.1201(c). Furthermore, "ORR shall adjudicate the completed sponsor application of a parent or legal guardian; brother, sister, or grandparent; or other close relative who has been the child's primary caregiver within 10 calendar days . . . absent an unexpected delay". *Id.* § 410.1205(b). Other completed sponsor applications by close relatives who were not the child's primary caregiver must be adjudicated within 14 days, absent unexpected delay. *Id.* § 410.1205(c).

26. As part of its sponsor suitability process, ORR may require "verification of the employment, income, or other information provided by the potential sponsor as evidence of the ability to support the child." 45 C.F.R. § 410.1202(c). In the Preamble to the Foundational Rule, ORR stated that although employment is "a permissible consideration as part of the suitability assessment[,] . . . ORR will not deny an otherwise qualified sponsor solely on the basis of low income or employment status." 89 Fed. Reg. at 34446.

27. ORR's subregulatory framework is laid out in the UC Policy Guide. The UC Policy Guide was first published publicly in 2015 and is available on ORR's website. Office of Refugee Resettlement, *Unaccompanied Alien Children Bureau Policy Guide* (2025) ("Policy Guide"), https://acf.gov/orr/policy-guidance/unaccompanied-children-bureau-policy-guide (last visited on Aug. 19, 2026). The Policy Guide governs the placement, care, and release of unaccompanied children in ORR custody, consistent with ORR's legal authorities. Policy Guide, Introduction.

28. Section 2 of the Policy Guide sets out ORR's policy with respect to securing "[s]afe and timely release" of unaccompanied children "to parents, guardians, relatives, or individuals designated by the child's parents, referred to as 'sponsors.'" Policy Guide, § 2.1. Under the Policy

Guide, "[s]afe and timely release must promote public safety and ensure that sponsors are able to provide for the physical and mental well-being of the children." *Id.* The Policy Guide describes the sponsor identification and application process in detail, including specific ORR requirements prior to application adjudication and approval. *Id.* at §§ 2.2-2.7.

29. Historically, ORR policy changes have caused significant harm to unaccompanied children. In 2018, ORR policy changes caused unaccompanied children's length of custody in ORR to increase significantly, with children spending months in congregate care designed to hold children for only a few weeks. *See, e.g.*, Dep't of Health and Hum. Servs., Office of the Inspector Gen., Care Provider Facilities Described Challenges Addressing Mental Health Needs of Children in HHS Custody, 13 (Sept. 2019), https://perma.cc/YLT7-R3HP ("HHS OIG Report") ("[C]hildren's average length of stay in ORR custody increased markedly after ORR implemented the new fingerprinting policy in June 2018", from 61 days in June 2018 to 93 days in November 2018 and then decreased after ORR ended fingerprinting requirements for adult household members and then for parents, reaching 48 days in April 2019).

30. The then-Assistant Secretary for the Administration for Children and Families has conceded that the ORR policy requiring fingerprints and increasing length of detention did not "add[] anything to the protection and safety of the children." Extended lengths of stay in ORR custody harmed children's mental health and wellbeing. *See, e.g.*, HHS OIG Report, 13 (After implementing new restrictive reunification policies, "[ORR f]acilities reported that it became more difficult to identify sponsors willing to accept children after the new fingerprinting requirements were implemented, which delayed placing children with sponsors, adding further stress and uncertainty."); *see also id*. at 12–13 ("According to facility staff, longer stays resulted

in higher levels…hopelessness…among children, along with more instances of self-harm and suicidal ideation.”).

**B. Constitutional Framework**

31. The Due Process Clause of the Fifth Amendment constrains the government’s authority to detain unaccompanied children. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). When detention implicates fundamental liberty interests, the government must demonstrate that the infringement is narrowly tailored to serve a compelling state interest. Two distinct constitutional rights are at stake: the right to freedom from physical restraint and the right to familial association.

32. The substantive component of due process forbids the government from infringing in any way upon fundamental liberty interests unless the infringement is narrowly tailored to serve a compelling state interest. *United States v. Salerno*, 481 U.S. 739, 749 (1987). In the immigration context, whether the infringement is narrowly tailored to serve a compelling governmental interest is determined by evaluating whether the infringement on liberty: 1) is impermissible punishment or permissible regulation; and 2) is excessive in relation to the regulatory goal Congress sought to achieve. *See id.* at 747; *see also Zadvydas*, 533 U.S. at 690 (“government detention violates [the Due Process] Clause . . . [except] in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual’s constitutionally protected interest in avoiding physical restraint.” (internal citations omitted.)); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).

**i. The Right to Freedom from Physical Restraint**

33. “[T]he interest in being free from physical detention” by the state is “the most elemental of liberty interests[.]” *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). A child’s interest in being free from confinement is no narrower than that of an adult. *In re Gault*, 387 U.S. 1, 13

(1967) ("neither the Fourteenth Amendment nor the Bill of Rights is for adults alone"); *see also Reno v. Flores*, 507 U.S. 292, 316 (1993) (O'Connor, J. and Souter, J., concurring), quoting *Gault*, 387 U.S. at 13 ("[The Supreme Court] ha[s] consistently [...] rejected the assertion that 'a child, unlike an adult, has a right 'not to liberty but to custody.'"). Further, "incarceration is rarely if ever a necessary condition for raising the living standards of those capable of surviving safely in freedom, on their own or with the help of family or friends." *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975). Therefore minors, like adults, have a substantial liberty interest "in avoiding unjustified physical restraint." *Lucas R. v. Becerra*, 2022 WL 2177454, at *14 (C.D. Cal. Mar. 11, 2022). *See also, e.g.*, *Parham v. J.R.*, 442 U.S. 584, 600 (1979). Importantly, when a child is held in a secure or restrictive placement, like a juvenile detention center or a residential treatment center, that placement "indisputably implicates their interest in freedom from institutional restraint." *Lucas R.*, 2022 WL 2177454 at *17.

**ii. The Right to Familial Association**

34. The constitutional right to family integrity or to familial association is "well established." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011); *see also Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (holding that parents and children have a well-elaborated constitutional right to live together without government interference); *Ching v. Mayorkas*, 725 F.3d 1149, 1157 (9th Cir. 2013) ("The right to live with and not be separated from one's immediate family is 'a right that ranks high among the interests of the individual' and that cannot be taken away without procedural due process."); *D.B. v. Cardall*, 826 F.3d 721, 740 (4th Cir. 2016) (children "enjoy a familial right to be raised and nurtured by their parents") (internal quotation marks omitted); *Beltran v. Cardall*, 222 F. Supp. 3d 476, 482 (E.D. Va. 2016) ("It is beyond dispute that [a mother's] right to the care and custody of her son – and [a son's] reciprocal right to his mother's care . . . is deserving of the greatest solicitude.") (internal quotation marks

and citation omitted); *Jordan v. Jackson*, 15 F.3d 333, 343 (4th Cir. 1994); *see also Smith v. Org. of Foster Families for Equality & Reform*, 431 U.S. 816, 845 (1977) ("the liberty interest in family privacy has its source, and its contours are ordinarily to be sought...in intrinsic human rights."); *Hodge v. Jones*, 31 F.3d 157, 163 (4th Cir. 1994) (the "sanctity of the family unit is a fundamental precept firmly ensconced in the Constitution"); *Angelica S. v. U.S. Dep't of Health & Hum. Servs.*, 786 F. Supp. 3d 158, 175 (D.D.C. 2025) ("Courts have found that family separation and prolonged detention qualify as irreparable injury.") (citing *Jacinto-Castanon de Nolasco v. U.S. ICE*, 319 F. Supp. 3d 491, 502 (D.D.C. 2018); *Andrieu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir. 2001) (en banc)). *See also Ms. L. v. U.S. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. June 26, 2018) (finding likely substantive due process violation stemming from "zero tolerance" policy of family separation).

35. Longstanding Supreme Court precedent establishes that when a government action deprives an individual of a fundamental constitutional interest, that individual is entitled to procedural due process consisting of notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306 (1950). Furthermore, "'significant' and 'unexplained delay[s] in responding to [a proposed sponsor's] unification request' violate due process irrespective of other procedural defects." *Lucas R.*, 2022 WL 2177454, at *27 (citing *Santos v. Smith*, 260 F. Supp. 3d 598, 613-14 (W.D. Va. 2017).

36. In accordance with these procedural and constitutional safeguards, ORR has a statutory and regulatory responsibility to determine the safety and suitability of Petitioner's father, his sponsor, without unnecessary delay.

37. Based on the facts provided below, [redacted].'s sponsor is safe and qualified, and ORR has a duty to grant his father's reunification request and place [redacted] in the least restrictive setting that is in his best interests, with his sponsor.

## FACTUAL BACKGROUND

**A. [redacted] is an unaccompanied child with a vetted sponsor capable of providing for his physical and mental well-being.**

38. [redacted] is a [redacted] citizen and national of [redacted]. On or about March 3, 2026, [redacted] entered the United States near Hidalgo, Texas. He was apprehended by U.S. Border Patrol agents in the Rio Grande Valley, Texas Border Patrol Sector and transported to the Rio Grande Valley Centralized Processing Center in McAllen, Texas. [redacted] was then transferred to ORR custody and placed in the [redacted] facility on or about March 5, 2026, where he has remained since that date. [redacted] has a pending asylum application

39. [redacted]'s proposed sponsor is his father, [redacted], who resides in [redacted]. Reunification has been delayed due to the Government's lack of responsiveness and processing of his father's completed application, submitted as of July 6, 2026.

**B. Respondents refuse to promptly release Petitioner to his vetted sponsor, his father, [redacted], in Petitioner's best interests.**

40. [redacted] is a Category 1 sponsor who has diligently followed all steps to complete the sponsorship process. Immediately after being notified of his son's arrival in the United States, [redacted] completed Parts 1 and 2 of the application by March 11, 2026 and [redacted]'s case was sent for DSA FFS assignment (less than 2 weeks after detention begun). On April 16, 2026, [redacted]. made all requested modifications and resubmitted all of the missing application information to DSA. However, his documents remained "pending" from DSA FFS until May 12, 2026 (more than 60 days after detention commenced), when the application had been elevated to submit for a home study.

41. In addition to completing his sponsor application, Petitioner's father is fit to be a sponsor and is capable of providing for [redacted]'s safety and wellbeing. [redacted] has reported feeling safe with his father and that he would be happier if sent to live with his father.

42. Prolonged detention has well-documented, serious harms. *See Lucas R.*, 2022 WL 2177454 at *17 ("Numerous child welfare experts have expounded on the harm that detention causes children," and "[i]t is undisputed that being separated from family members is inimical to a child's well-being.").

43. [redacted] is not immune to the established harms of prolonged detention. The prolonged isolation from his family, both those he left behind, and from his father who is waiting to reunite with him, continues to negatively affect [redacted] While he maintains hope that the process will result in his release from detention, [redacted] experiences anxiety as a result of being unable to leave detention and reunify with his father, with whom he shares a close relationship.

44. As of 2025, children and youth are now being detained in ORR facilities for increasingly long periods of time—now an average of *six months*—causing emotional and psychological injuries, including developmental delays, post-traumatic stress disorder, anxiety, depression, and suicidal ideation.[4]

45. "[C]hildren in ORR custody are inherently navigating a challenging, disruptive, and distressing transitional experience," which "becomes 'traumatic' when the individual has a limited sense of agency or control over their circumstances, limited knowledge about what is happening to them or what to expect, limited access to support and coping resources, and a lack of resolution to the threat or fear."[5]

46. ORR custody is "characterized by these exact factors" because youth in ORR facilities "are restricted in their autonomy and agency, they have little knowledge or control over

[4] Dr. Ryan Matlow, et al., The Unraveling of ORR: A Quick and Calculated Undoing of a System Intended to Protect Children, National Center for Youth Law (September 29, 2025) at 16, (https://youthlaw.org/sites/default/files/attachments/2025-09/NCYL_The%20Unraveling%20of%20ORR_Sept2025_FINAL.pdf).
[5] *Id*. at 17.

requirements or processes for release, they feel helpless in their circumstance, they experience chronic worry about their well-being (or that of their loved ones), and they experience various barriers to engaging with the coping and support resources that have traditionally helped them."[6] These experiences "create the conditions for trauma and a lasting posttraumatic stress response."[7]

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF PROCEDURAL DUE PROCESS

47. Petitioner restates and realleges all paragraphs above as if fully set forth herein.

48. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. Due process protects "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. A child's interest in being free from confinement is no narrower than that of an adult. *Gault*, 387 U.S. at 13; *Flores*, 507 U.S. at 316 (O'Connor, J. and Souter, J., concurring) ("[The Supreme Court] ha[s] consistently [...] rejected the assertion that 'a child, unlike an adult, has a right 'not to liberty but to custody.'"). This includes the right of a child "to be raised and nurtured by their parents." *D.B.*, 826 F.3d at 740 (citations omitted); *Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("[T]he interest of parents in the care, custody, and control of their children [] is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court.").

49. Due process requires that the government may not deprive an individual of their constitutional rights without meaningful notice and an opportunity to be heard before a neutral arbiter to protect against the risk of erroneous deprivation. *Mathews*, 424 U.S. at 335. Due process

5 *Id.*
6 *Id.*

also requires that government action be rational and non-arbitrary. *See U.S. v. Trimble*, 487 F.3d 752, 757 (9th Cir. 2007).

50. Non-citizens like [redacted] are entitled to the constitutional rights against unlawful detention afforded by the Due Process Clause. *See, e.g.*, *Zadvydas*, 533 U.S. at 690.

51. Respondents have deprived [redacted] of his fundamental liberty interests without due process of law. [redacted] possesses two distinct constitutional interests at stake: (1) his interest in freedom from physical restraint, and (2) his interest in familial association with his father.

52. [redacted] has been detained in ORR custody since March 4, 2026—a period now exceeding five months. Petitioner's father, [redacted], a Category 1 sponsor, has actively participated in the reunification process and completed his sponsorship application on July 6, 2026. Despite this, Respondents have failed to release [redacted] or provide any meaningful explanation for the continued delay. ORR's own regulations require adjudication of a parent's completed sponsor application within 10 calendar days. 45 C.F.R. § 410.1205(b). Respondents' failure to act for over six weeks since the application was completed—and over five months since [redacted] entered custody—constitutes an unexplained and unjustified deprivation of [redacted]'s liberty and his constitutional right to meaningful notice regarding that deprivation.

53. The government may detain individuals only in "certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690. No such special justification exists here. [redacted] has attended the limited academic classes offered in his detention facility, participated in weekly therapy sessions, interacted appropriately with peers, and remained engaged throughout his detention despite the harm his continued detention is causing him. [redacted] presents no harm-threatening mental illness,

poses no danger to the community, and presents no flight risk. Under *Zadvydas*, continued detention without a compelling governmental justification violates his due process.

54. Respondents have also failed to provide [redacted] or his father with the procedural protection required by the Due Process Clause by denying [redacted] reunification with his father who has complied with all sponsorship requirements and prolonging [redacted]'s detention. Most notably, Respondents have deprived Petitioner of his constitutional rights to meaningful notice of the bases for his prolonged deprivation of liberty through detention and the opportunity to be heard before a neutral arbitrator to challenge those bases and ensure against a substantial risk of erroneous deprivation. *See J.E.C.M. v. Lloyd*, 352 F.Supp.3d 559, 583, 586 (E.D. Va. 2018) (finding sufficient facts alleged indicating that ORR's "opaque procedures deprive[s them] of any opportunity to contest ORR's findings, and thus any meaningful opportunity to alter its conclusions") (citation omitted).

55. Neither [redacted] nor [redacted] has been afforded an opportunity to be heard before a neutral arbiter regarding Petitioner's continued detention. Counsel's inquiries to Federal Field Specialist Sonnya Acuqui have been met with non-substantive responses or silence. *See Mathews*, 424 U.S. at 335. "[S]ignificant and unexplained delay[s] in responding to a [proposed sponsor's] unification request" violate due process. *Lucas R.*, 2022 WL 2177454, at *27 (internal quotation marks and citation omitted). Respondents' conduct is neither rational nor based on any articulable standard but is instead arbitrary and in violation of [redacted]'s procedural due process rights.

## **<u>SECOND CLAIM FOR RELIEF</u>**
## **VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT (TVPRA), 8 U.S.C. § 1232**

56. Petitioner restates and realleges all paragraphs above as if fully set forth herein.

57. Respondents have a non-discretionary duty under the TVPRA to promptly place [redacted] "in the least restrictive setting" that is in his best interests, usually with "a suitable family member." 8 U.S.C. § 1232(c)(2)(A).

58. The least restrictive setting for [redacted] is placement with his father, [redacted] a Category 1 sponsor of the highest priority under ORR's own sponsor category framework. Petitioner's father has completed all required steps in the reunification process: he submitted his sponsor application, completed Parts 1 and 2 of the application by March 11, 2026, provided fingerprints that returned clear, underwent DNA testing, and participated in a home study.

59. Respondents have failed to promptly place Petitioner in the least restrictive setting in his best interests. Petitioner has been detained in ORR custody for approximately 174 days, more than six times the average 27-day length of stay that ORR itself reported in 2023. *See* 45 C.F.R. § 410.1203(a) (citing ORR "Unaccompanied Children Fact Sheet" https://acf.gov/orr/about/ucs/facts-and-data#lengthofcare).

60. [redacted]'s sponsor, his father, [redacted], is capable, proper, and fit. [redacted] has maintained consistent contact with his son, Petitioner, throughout his detention, speaking with him every two days. [redacted] has expressed an unequivocal desire to live with his father and reports feeling safe with him. ORR's own background checks on Petitioner's father returned clear, and the sponsor risk assessment did not identify [redacted] as presenting any risk of abuse, maltreatment, or trafficking nor has ORR identified any concerns with [redacted]'s ability to provide for the care and wellbeing of his son.

61. Petitioner does not present any flight risk or danger to the community. He has no criminal history, no juvenile-justice involvement, and no behavioral concerns during his time in

ORR custody. His clinicians have consistently reported that he is calm, emotionally stable, and cooperative, and he has complied with all program expectations during his detention.

62. The TVPRA's prompt-placement mandate carries particular force here because Petitioner was threatened with trafficking. The TVPRA expressly tasks the ORR with ensuring that unaccompanied children "are protected from traffickers and other persons seeking to victimize or otherwise engage such children in criminal, harmful, or exploitative activity." 8 U.S.C. § 1232(c)(2). Continued institutional detention and failure to follow prompt placement, of a trafficking victim—separated from a vetted and safe family member—does not protect Petitioner. Rather, it prolongs his vulnerability and compounds the harm he has already suffered.

63. Respondents' policies and actions described above, which have resulted in [redacted]'s unnecessary prolonged detention and separation from his suitable sponsor and lack of prompt placement, violate Section 235 of the TVPRA, 8 U.S.C. § 1232. Respondents have no discretion to indefinitely warehouse Petitioner, an unaccompanied child, in institutional custody while a vetted parent stands ready, willing, and able to receive him and when no legitimate safety or flight-risk concern justifies Petitioner's continued detention.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT (APA),**
**5 U.S.C. §§ 701 *et seq.***

64. Petitioner restates and realleges all paragraphs above as if fully set forth herein.

65. Counsel's repeated inquiries to ORR's FFS Officer regarding the status of Petitioner's sponsor's application have been met with no substantive responses. There is no administrative mechanism by which Petitioner can compel ORR to act on his father's application or challenge his continued detention, and a demand letter has already been sent as of August 17, 2026. *See* Ex. B.

66. [redacted] has no recourse to judicial review other than by this action.

67. Respondents' continued detainment of and failure to release [redacted] to his vetted sponsor constitutes final agency action.

68. Respondents' action—specifically, ORR's prolonged failure to adjudicate and approve [redacted]'s Category 1 sponsor, his biological father's application, despite his completion of all required submissions, clear fingerprint results, DNA testing, and a completed home study—determines the "rights and obligations" of Petitioner and creates "legal consequences" of continued detainment and separation from his family members, in violation of [redacted]'s fundamental right to family integrity. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1977). Accordingly, [redacted] is entitled to judicial review of ORR's actions under 5 U.S.C. §§ 702 and 704.

69. Respondents' detention of [redacted] and their failure to release [redacted]. to his fit sponsor is arbitrary, capricious, and not in accordance with the law. 5 U.S.C. § 706(2)(A).

70. [redacted] has exhausted all administrative remedies available to him as of right. ORR does not provide a formal administrative appeal process for children or sponsors challenging delays in sponsor application adjudication.

## <u>FOURTH CLAIM FOR RELIEF</u>
## VIOLATION OF THE FOUNDATIONAL RULE, 45 C.F.R. §§ 410.1000 *et seq.*, AND THE ORR UC POLICY GUIDE

71. Petitioner restates and realleges all paragraphs above as if fully set forth herein.

72. Federal agencies and their officials are required to follow their own "existing valid regulations." *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). When an agency fails to comply with binding regulations, such actions are not in accordance with law. *See Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959).

73. Under the Foundational Rule, Respondents have a non-discretionary duty to promptly place [redacted] in the least restrictive setting that is in his best interests. 45 C.F.R. §

410.1003(f). ORR is also required to make and record prompt and continuous efforts towards a child's release. *Id*. § 410.1203(a).

74. Additionally, the Policy Guide requires that Respondents adjudicate Category 1 applications within 10 calendar days of receipt of the completed sponsor application. 45 C.F.R. § 410.1205(b). No matter the category of release, federal regulation requires ORR "to release a child from its custody without unnecessary delay." *Id.* § 410.1201(b). The Policy Guide further requires ORR to secure "[s]afe and timely release" of unaccompanied minors to sponsors. Policy Guide, § 2.1. ORR must also give first priority to release to parents and legal guardians, 45 C.F.R. § 410.1201(a), and must "make and record prompt and continuous efforts towards" a child's release. *Id*. § 410.1203(a).

75. Respondents have failed to adjudicate [redacted]'s completed Category 1 sponsor application within the required 10-day period, release [redacted] to his vetted sponsor without unnecessary delay, and make prompt and continuous efforts towards Petitioner's release while providing Petitioner's father appropriate priority as a Category 1 parent sponsor. These actions are in violation of their own regulations and guidance; therefore, Respondents are holding [redacted] unlawfully.

## <u>FIFTH CLAIM FOR RELIEF</u>
## VIOLATION OF THE *FLORES* SETTLEMENT AGREEMENT

76. The *Flores* Settlement Agreement ("FSA") authorizes any minor who disagrees with ORR's placement or custodial determination to seek review in "any United States District Court with jurisdiction and venue over the matter to challenge that placement determination . . ." FSA ¶ 24B. Paragraphs 28A (incorporating by reference Paragraph 14), 32, and 33 of the FSA continue to apply, and these paragraphs together with Paragraph 21.A continue to apply to ORR

secure, heightened supervision, and out-of-network facilities. *Flores v. Garland*, 2024 WL 3467715, at *5-6, 9 (C.D. Cal. June 28, 2024).

77. The FSA requires that if a child is not a flight risk or a danger to the community, they be released "without unnecessary delay" to a sponsor. FSA ¶ 14.

78. The FSA prohibits a child from being placed in a secure facility for isolated or petty offenses. FSA ¶ 21.A.

79. Petitioner's continued detention at [redacted] constitutes detention in a facility that functions as a heightened supervision placement for purposes of the FSA. Although classified by ORR as a "shelter," the facility operates with the hallmarks of a restrictive custodial environment: [redacted] is subject to 24-hour supervision, unable to choose when or what he eats, has no control over his daily schedule, must be escorted between rooms within the facility, and cannot meet freely with legal counsel without institutional scheduling. The facility is equipped with an alarm system on its stairwell doors that sounds if anyone attempts to leave, depriving Petitioner of all freedom to exit. *See* FSA ¶ 19 (requiring placement be "the least restrictive" consistent with the minor's needs).

80. As an unaccompanied immigrant minor detained in a secure and heightened supervision facility, [redacted] is a member of the *Flores* class detained in a facility subject to the FSA and is therefore authorized to challenge Respondents' custodial decision in this Court.

81. Respondents' failure to promptly release [redacted] to the custody of his father, [redacted], despite his father being a fit sponsor who is capable and willing to care for Petitioner, during Respondents' continued incarceration of [redacted] in a secure and heightened supervision facility, is a violation of the *Flores* Settlement Agreement.

## PRAYER FOR RELIEF

Petitioner prays that the Court assume jurisdiction over this Petition and Complaint and grant the following relief:

I. Issue a Writ of Habeas Corpus compelling Respondents to release [redacted] to the custody and care of his father, [redacted]

II. A declaratory judgment that Respondents have violated Petitioner [redacted]'s constitutional and statutory rights.

III. An injunction prohibiting Petitioner [redacted]'s continued custody by ORR because a suitable sponsor is available, as required by federal statutes, the Foundational Rule, the *Flores* Settlement Agreement, and the U.S. Constitution.

IV. An award of costs and reasonable attorneys' fees under the Equal Access to Justice Act, and any other applicable statute or regulation; and

V. Any other relief the Court deems just and proper.

Dated: August 26, 2026

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Benjamin R. Grossman*
Benjamin R. Grossman (PA ID No. 329219)
One Logan Square, Ste. 2000
Philadelphia, PA 19103
Phone: (215) 988-5914
Email: ben.grossman@faegredrinker.com

*Counsel for Petitioner*

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, [redacted], and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Date: August 26, 2026

Respectfully submitted,

*/s/ Benjamin R. Grossman*
Benjamin R. Grossman

*Attorney for Petitioner*

**CERTIFICATE OF SERVICE**

I, undersigned counsel, hereby certify that on this date, I filed this Petition for a Writ of Habeas Corpus and all attachments using the CM/ECF system. I will also mail a copy by USPS Certified Priority Mail to each of the undersigned individuals:

ROBERT F. KENNEDY, JR.
Secretary of Health and Human Services
200 Independence Avenue SW
Washington, DC 20201

ANGIE SALAZAR
Acting Director of Office of Refugee Resettlement
Office for Refugee Resettlement
330 C Street SW, Room 5123
Washington, DC 20201

SONNYA ACUQUI,
Federal Field Specialist
Office for Refugee Resettlement
330 C Street SW, Room 5123
Washington, DC 20201

[redacted]
Director of [redacted]
[redacted]

Date: August 26, 2026

Respectfully submitted,

*/s/ Benjamin R. Grossman*
Benjamin R. Grossman

*Attorney for Petitioner*