**IN THE UNITED STATES DISTRICT COURT FOR**
**THE MIDDLE DISTRICT OF PENNSYLVANIA**

**THOMAS L. WILLIAMS AND JACQUESE SPRINGS,**

**Plaintiffs,**

**v.**

**CORPORAL CHAD MILLER, OFFICER CODY WEBSTER, AND LOWER PAXTON TOWNSHIP,**

**Defendants.**

**Civil Action No.**

**JURY TRIAL DEMANDED**

## COMPLAINT IN CIVIL ACTION

AND NOW come Plaintiffs, Thomas L. Williams and Jacquese Springs, by and through their undersigned attorneys, George R. Farneth II, Esquire and The Farneth Law Group, LLC, and Nicholas A. Miller, Esquire and Brenlove & Fuller, LLC, and files this Complaint in Civil Action, averring as follows:

## INTRODUCTION

Plaintiffs bring this action to redress violations of the civil and constitutional rights afforded to him under federal and state law, including but not limited to those rights afforded to them pursuant to the Civil Rights Act of 1873, as amended, 42 U.S.C. §1983 and under the United States Constitution, as well as various state and common laws. Plaintiffs' claims arise from the intentional, illegal, unlawful, willful, wanton, malicious, outrageous, oppressive, vindictive, retaliatory, recklessly indifferent, and/or negligent conduct of the Lower Paxton Township, by and through its Police Department and at least one of its police officers, who acted in part under color of state law to deprive Plaintiffs of their civil and constitutional rights through their actions,

omissions, and systemic discriminatory beliefs. Plaintiffs are seeking compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as this Court deems appropriate.

## THE PARTIES

1. Plaintiff, Thomas L. Williams ("Williams"), is an adult individual who, at all times pertinent hereto, resided in the Middle District of Pennsylvania.

2. Plaintiff, Jacquese Springs ("Springs"), is an adult individual who, at all times pertinent hereto, resided in the Middle District of Pennsylvania.

3. Williams and Springs will sometimes hereinafter be collectively referred to as "Plaintiffs."

4. Plaintiffs are African Americans.

5. Plaintiffs have been and continue to be in a long-term, committed relationship.

6. Defendant, Corporal Chad Miller, ("Miller"), is an adult individual who, at all times pertinent hereto, maintained his principal place of business at 425 Prince Street, Harrisburg, Pennsylvania 17109, which is in the Middle District of Pennsylvania.

7. Miller is a Caucasian who, by and through his actions and omissions, is clearly biased and prejudiced against African Americans.

8. Defendant, Officer Cody Webster, ("Webster"), is an adult individual who, at all times pertinent hereto, maintained his principal place of business at 425 Prince Street, Harrisburg, Pennsylvania 17109, which is in the Middle District of Pennsylvania.

9. Webster is a Caucasian who, by and through his actions and omissions, is clearly biased and prejudiced against African Americans.

10. Defendant, Lower Paxton Township ("Township") is a Township in the Commonwealth of Pennsylvania which, at all times pertinent hereto, maintained its principal place

of business at 425 Prince Street, Harrisburg, Pennsylvania 17109, which is in the Middle District of Pennsylvania.

11. Miller, Webster, and Township will sometimes hereinafter be collectively referred to as "Defendants."

12. At all times pertinent hereto, Township was authorized to and did own, operate, manage, supervise, direct, control, and maintain a police department which, at all times pertinent hereto, was and is known as the Lower Paxton Township Bureau of Police which is believed to employee dozens of police officers, Detectives, Lieutenants, Commanders, and other personnel ("Police") which, at all times pertinent hereto, maintained a principal place of business located at 425 Prince Street, Harrisburg, Pennsylvania 17109, which is in the Middle District of Pennsylvania.

13. At all times pertinent hereto, Township and Police were acting by and through their authorized agents, servants, employees, and representatives, including but not limited to its Command Staff officials, including Deputy Chiefs, Assistant Chiefs, Commanders, officers, and other members of the Police, including but not limited to Miller and Webster, who were then and there acting exclusively, in substantial part, or partially within the course and scope of their employment and/or agency relationship with Township and Police and/or under color of state law and as state actors in furtherance of the business operations and interests of Township and Police, generally and in accordance with the Policies of Township and Police, whose actions were substantially intertwined with those of the state in furtherance of the state's alleged pursuit of a police investigation.

14. At all times pertinent hereto, Miller and Webster were simultaneously acting on their own behalf and in furtherance of their own personal interests, biases, prejudices, and agendas.

## JURISDICTION AND VENUE

15. This action is brought pursuant to 42 U.S.C. §1983.

16. Jurisdiction is founded upon 28 U.S.C. §1331, 1343 and 1367.

17. This Court has pendent jurisdiction over Plaintiffs' state and common law claims.

18. Venue is proper in this Court as, at all times pertinent hereto, Defendants maintained their principal places of business within the Middle District of Pennsylvania and all the events which give rise to the instant action occurred within the Middle District of Pennsylvania.

## BACKGROUND FACTS

19. Township and Police have also taught and trained, through informal custom, practice, and policy of ratifying racially discriminatory behavior through intentional indifference to it, that police officers, including Miller and Webster, could violate the civil and constitutional rights of the African American citizens they are obligated to serve and protect and/or they committed criminal and other illegal and unlawful acts they would not be prosecuted or disciplined, which serves to encourage police officers to engage in such conduct, including the conduct at issue in this case.

20. The foregoing racially discriminatory conduct and beliefs were developed, condoned, accepted, approved, ratified, and adopted by Township and Police to be permanent, pervasive, systemic, widespread, and prevalent so as to have the force of law and a perpetual official custom, usage, pattern, practice, and policy ("Policies").

21. Township is a middle class, suburban community that is predominately White.

22. The Police hiring practices are such that the police force is also predominately White.

**The Incident of August 27, 2024**

23. At the time of the events that gave rise to the instant litigation, Springs, who was a front seat passenger, was the owner and Williams was the operator of a gray 2018 Mercedes S560 ("Vehicle").

24. The value of the Vehicle when new was over $100,000.

25. The Vehicle had window tinting and screens on the back window.

26. Even though the Vehicle had window tinting and screens on the back window, anyone looking through the windshield of the Vehicle could plainly see the front seat occupants and determine their race.

27. At nearly midnight on August 27, 2024, Plaintiffs stopped at a gas station on Union Deposit Rd. in Lower Paxton Township.

28. When they stopped at the gas station, Plaintiffs fully opened both front and rear driver side and passenger side windows.

29. After completing their purchase and as they were waiting in the Vehicle to exit the gas station to turn westbound on Union Deposit Rd. in Lower Paxton Township with both front and rear driver side and passenger side windows still open, they noticed a large police presence in the area.

30. As they were waiting for the light to turn, they observed Miller traveling east bound on Union Deposit Rd. in a marked police vehicle.

31. As Miller was passing the Vehicle, he turned to look at the occupants who he could plainly see through the windshield and the fully open driver side and passenger side windows.

32. Although it was dark at the time, because of the substantial amount of artificial lighting in the area, Miller was undeniably able to see into the Vehicle and knew there were at least two African Americans inside.

33. After he drove past and observed two African Americans in the Vehicle, Miller negotiated a U-turn on Union Deposit Rd. and stopped near the laundromat.

34. As soon as the light turned green and Plaintiffs turned left onto Union Deposit Rd., Miller illuminated the emergency lights and activated the siren on his police vehicle, and he proceeded to pull Plaintiffs over.

35. Under the circumstances, Miller did not have probable cause or the legal right to stop Plaintiffs and the Vehicle.

36. Rather, Miller stopped, detained/arrested, and searched Plaintiffs and the Vehicle based on racial profiling.

37. When he approached the driver side window, Miller told Plaintiffs that "I am pulling you over for tint," even though the side windows had been down so Miller could not see any tint on the windows and the back window was equipped with a courtesy blind that does not constitute "tint."

38. In fact, at the preliminary hearing on May 19, 2025, Miller testified under oath subject to the penalties of perjury that the tint for which he pulled over the Vehicle was the front driver's door and the front passenger's door.

39. At the scene, Miller then claimed he smelt marijuana and used it as a basis to seize the Vehicle and search it without probable cause or a search warrant.

40. Under the circumstances, Miller did not have probable cause or the legal right to seize and search the Vehicle.

41. Miller proceeded to search Plaintiffs, the Vehicle, and some of Plaintiffs' belongings even though Plaintiffs invoked their constitutional rights and protested the search as an illegal search and seizure.

42. Miller and Webster then began harassing and hassling Plaintiffs which included them forcibly removing Springs from the Vehicle when she attempted to roll up the passenger side windows.

43. Neither Miller, Webster, nor any other police officers at the scene ever conducted any field sobriety testing of either Plaintiff and they did not transport either Plaintiff to a medical facility for urine and/or blood testing.

44. Instead, Miller and the other officers had the Vehicle towed and confiscated Springs' purse that contained Plaintiffs' money and Springs' medication.

45. When Plaintiffs requested their money and Springs' medication, Miller and the other officers refused to give it to them allegedly because it was part of a drug investigation.

46. When Plaintiffs asked how they were supposed to get home, Miller said he did not care. Phone a friend.

47. Miller and the other officers then cleared the scene, leaving Plaintiffs stranded without any concern for their ability to get home or their overall safety.

48. Because they were African Americans, Defendants racially profiled Plaintiffs and used the alleged tint violation as a pretext for stopping, detaining/arresting, searching, and seizing Plaintiffs and to illegally seize and search the Vehicle and Springs' purse.

49. When the Vehicle was finally returned to Plaintiffs, they discovered it had been damaged while in police custody.

50. On or about April 8, 2025, over seven months after he was stopped by Miller, Williams was charged with possession of a small amount of marijuana, possession of drug paraphernalia which are both ungraded misdemeanors and a summary offense of operating or permitting operation of unsafe equipment due to the window tinting.

51. Following a trial on August 12, 2026, the marijuana charges against Williams were dismissed with prejudice and he was found guilty of the tint violation and ordered to pay a $25.00 fine.

52. The portion of the verdict that found Williams guilty of the tint violation and ordered to pay a $25.00 fine is in the process of being appealed.

53. As a direct, proximate, factual, and legal result of the Defendants' individual and collective conduct as aforesaid, Plaintiffs have suffered, and will continue to suffer, the following severe, serious, and potentially permanent injuries:

a. Anxiety;

b. Anger;

c. Fear;

d. Depression;

e. Headaches;

f. Trouble Sleeping;

g. PTSD;

h. Low self-esteem;

i. Fear of retaliation;

j. Feeling disconnected from others in the community solely on the basis of their race; and

k. Other severe, serious, and potentially permanent injuries that will be developed in discovery and proven at trial.

54. As a direct, proximate, factual, and legal result of the Defendants' individual and collective conduct as aforesaid, Plaintiffs have suffered, and will continue to suffer, the following severe, serious, and potentially permanent damages, losses, and harm:

a. They have suffered and will continue to suffer severe anxiety, depression, embarrassment, humiliation, emotional distress, mental anguish, psychological trauma, nightmares, flashbacks, inconvenience, and a loss of life's pleasures;

b. They may be obliged to receive and undergo medical and psychological care and treatment and spend significant sums of money in an effort to restore their physical and emotional health;

c. They were deprived of and lost their civil and constitutional rights, including but not limited to life, liberty, and the pursuit of happiness;

d. They have suffered a violation of their rights under the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment;

e. They have suffered a violation of their rights under the Fourth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, to be free from unreasonable and malicious prosecution, false arrest and false prosecution;

f. They have and continue to be defamed and their reputations have been damaged, if not destroyed;

g. Their privacy was invaded;

h. Their earning capacity and power have been impaired, as has their ability to obtain suitable employment;

i. They have been rendered suspicious and fearful of the police and other law enforcement officials;

j. Their general health, strength and vitality have been greatly impaired, thereby depriving them of the normal joys of life;

k. The Vehicle was damaged while in police custody;

l. They have incurred and will continue to incur significant attorneys' fees and costs; and

m. They have suffered other severe, serious and significant injuries, damages and losses that will be developed in discovery and proven at trial.

55. Defendants' individual and collective conduct has been and continues to be so intentional, illegal, unlawful, willful, wanton, malicious, outrageous, oppressive, vindictive, retaliatory, and recklessly indifferent to the safety and the civil and constitutional rights of so as to warrant the imposition of punitive damages in favor of Plaintiffs and against Defendants.

**COUNT I**

**PLAINTIFFS V. DEFENDANTS, CORPORAL CHAD MILLER, AND OFFICER CODY WEBSTER**

**VIOLATION OF TITLE 42 U.S.C. §1983, THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

56. Plaintiffs incorporate herein by reference as though fully set forth at length paragraphs 1 through 55 above.

57. The Fourth Amendment to the United Stated Constitution protects individuals from unreasonable stops, detainments, searches, and seizures, particularly without probable cause.

58. These Constitutional rights were readily known, or should have been known, by Miller and Webster.

59. Miller and Webster, at all times knew, or should have known, that their actions and omissions on and after August 27, 2024 amounted to a violation of Plaintiffs' Fourth Amendment Constitutional Rights.

60. At all times pertinent hereto, Miller and Webster were acting under color of state law individually and/or with the help of and/or in concert with others who were acting under color of state

law.

61. At all times pertinent hereto, Miller and Webster had a duty to protect and defend Plaintiff and to not violate Plaintiffs' civil and constitutional rights.

62. Miller and Webster were, at all times relevant hereto, on duty as officers of the law.

63. When Miller stopped and detained Plaintiffs, he identified himself as a police officer and used police authority.

64. When Webster joined in, he identified himself as a police officer and used police authority.

65. At all times on August 27, 2024 Miller and Webster were present in uniform, badge, and arrived by way of a marked vehicle.

66. At all times on August 27, 2024 Miller and Webster initiated an investigation and/or other police operations during which they gave commands and acted with police authority.

67. For the reasons set forth herein, Miller's and Webster's actions and omissions on August 27, 2024 were unlawful and constituted an unreasonable stop, detainment, search, and seizure of Plaintiffs and the Vehicle.

68. Miller and Webster, acting under color of state law, intentionally, knowingly, and/or with deliberate indifference, caused Plaintiffs and the Vehicle to be subjected to an unreasonable stop, detainment, search, and seizure.

69. For the reasons set forth herein, Miller and Webster deprived Plaintiff of the rights, privileges, and immunities secured to him by 42 U.S.C. §1983 and by the Fourth Amendment to the United States Constitution which caused the aforementioned severe, serious, and potentially permanent injuries, damages, losses, and harm Plaintiffs have suffered and may continue to suffer.

70. Miller's and Webster's conduct was arbitrary, capricious, and deliberately reckless

and indifferent to Plaintiff's health, safety, and well-being and his civil and constitutional rights.

71. Miller's and Webster's conduct was and is shocking to the conscience.

72. Any reasonable police officer in Miller's and Webster's position would have known that they were violating the rights, privileges, and immunities secured to Plaintiffs by 42 U.S.C. §1983 and by the United States Constitution, without probable cause.

73. Under the circumstances, Miller's and Webster's conduct was intentional, malicious, and recklessly indifferent to the rights, privileges and immunities secured to Plaintiffs by 42 U.S.C. §1983 and by the United States Constitution and warrants the imposition of punitive damages in favor of Plaintiffs and against Miller and Webster.

WHEREFORE, Plaintiffs, Thomas L. Williams and Jacquese Springs, demand judgment in their favor and against Defendants, Corporal Chad Millerand Defendant, Officer Cody Webster for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as this Court deems appropriate under the circumstances.

**COUNT II**

**PLAINTIFFS V. DEFENDANTS, CORPORAL CHAD MILLER, AND OFFICER CODY WEBSTER**

**VIOLATION OF TITLE 42 U.S.C. §1983, THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION: SUBSTANTIVE DUE PROCESS**

74. Plaintiffs incorporate herein by reference as though fully set forth at length paragraphs 1 through 73 above.

75. The Fourteenth Amendment to the United Stated Constitution protects an individual's rights to substantive due process to be free of a state created danger.

76. These Constitutional rights were readily known, or should have been known, by

Miller and Webster.

77. Miller and Webster, at all times knew, or should have known, that their actions and omissions on August 27, 2024 amounted to a violation of Plaintiffs' Fourteenth Amendment constitutional rights.

78. At all times pertinent hereto, Miller and Webster were acting under color of state law individually and/or with the help of and/or in concert with others who were acting under color of state law.

79. At all times pertinent hereto, Miller and Webster had a duty to protect and defend Plaintiff and to not violate Plaintiffs' civil and constitutional rights.

80. Miller and Webster were, at all times relevant hereto, on duty as officers of the law.

81. When Miller stopped and detained Plaintiffs, he identified himself as a police officer and used police authority.

82. When Webster joined in, he identified himself as a police officer and used police authority.

83. At all times on August 27, 2024 Miller and Webster were present in uniform, badge, and arrived by way of a marked vehicle.

84. At all times on August 27, 2024 Miller and Webster initiated an investigation and/or other police operations during which they gave commands and acted with police authority.

85. For the reasons set forth herein, Miller's and Webster's actions and omissions on August 27, 2024 were unlawful and constituted an unreasonable stop, detainment, search, and seizure of Plaintiffs and the Vehicle.

86. Miller and Webster, acting under color of state law, intentionally, knowingly, and/or with deliberate indifference, caused Plaintiffs and the Vehicle to be subjected to an unreasonable

stop, detainment, search, and seizure.

87. By and through stranding Plaintiffs along the side of the road in the middle of the night, Miller and Webster subjected Plaintiffs to an increasing foreseeable danger, which caused Plaintiffs a great deal of anxiety, stress, and emotional trauma.

88. It is shocking to the conscious that Miller and Webster, as officers of the law, would simply leave individuals stranded along the side of the road in the middle of the night.

89. Miller's and Webster's conduct was arbitrary, capricious, and deliberately reckless and indifferent to Plaintiffs' health, safety, and well-being and his civil and constitutional rights.

90. Miller's and Webster's conduct was and is shocking to the conscience.

91. Any reasonable police officer in Miller's and Webster's position would have known that they were violating the rights, privileges, and immunities secured to Plaintiffs by 42 U.S.C. §1983 and by the Fourteenth Amendment to the United States Constitution.

92. Under the circumstances, Miller's and Webster's conduct was intentional, malicious, and recklessly indifferent to the rights, privileges and immunities secured to Plaintiffs by 42 U.S.C. §1983 and by the United States Constitution and warrants the imposition of punitive damages in favor of Plaintiffs and against Miller and Webster.

WHEREFORE, Plaintiffs, Thomas L. Williams and Jacquese Springs, demand judgment in their favor and against Defendants, Corporal Chad Miller, , and Defendant, Officer Cody Webster, for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as this Court deems appropriate under the circumstances.

## COUNT III

## PLAINTIFFS V. DEFENDANTS, CORPORAL CHAD MILLER, AND OFFICER CODY WEBSTER,

## FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

**EQUAL PROTECTION/DISCRIMINATORY POLICING**

93. Plaintiffs incorporate herein by reference as though fully set forth at length paragraphs 1 through 92 above.

94. The Fourteenth Amendment entitles individuals to equal protection under the law and protects them from disparate policing based on race.

95. Based on the facts presented above, race was a motivating factor in Miller and Webster stopping, detaining, searching, and seizing Plaintiffs and was a direct, proximate, and legal cause of the harm suffered by Plaintiffs.

96. At all times pertinent hereto, Miller and Webster knew and/or should have known that they were engaging in the discriminatory and unconstitutional activity of “disparate policing” based on race in violation of Plaintiffs’ constitutionally protected rights.

97. Miller and Webster, at all times pertinent hereto, acted under color of law, and in an intentional, illegal, unlawful, willful, wanton, malicious, outrageous, oppressive, vindictive, retaliatory, racially discriminatory, and recklessly indifferent manner which resulted in disparate policing and treatment of Plaintiffs based solely on Plaintiffs’ race.

98. Under the circumstances, Defendants’ individual and collective conduct was intentional, malicious, and/or wantonly and recklessly indifferent to the rights, privileges and immunities secured to Plaintiffs by 42 U.S.C. §1983 and by the Fourteenth Amended to the United States Constitution and warrants the imposition of punitive damages in favor of Plaintiffs and against Defendants.

WHEREFORE, Plaintiffs, Thomas L. Williams and Jacquese Springs, demands judgment in their favor and against Defendants, Corporal Chad Miller, and Defendant, Officer Cody

Webster, for compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as this Court deems appropriate under the circumstances.

**COUNT IV**

**PLAINTIFFS V. DEFENDANT, LOWER PAXTON TOWNSHIP**

**MONELL LIABILITY**

99. Plaintiff incorporates herein by reference as though fully set forth at length paragraphs 1 through 98 above.

100. "Local governing bodies…can be sued directly under §1983 for monetary, declaratory, or injunctive relief where…the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v Dep't of Soc.Servs., 436 U.S. §658, 690 (1978).*

101. Township, through Police, and its final policy makers, supervisors, and authorized decision makers, maintained, permitted, encouraged, tolerated, or failed to correct the customs and practices, endemic to Police, and which caused the Constitutional violations alleged herein.

102. At all times pertinent hereto, Police failed to supervise its officers to ensure that any racial bias they may have did not impact their policing, and thus cause, disparate treatment of African Americans.

103. At all times pertinent hereto, Police failed to properly train its officers related to constitutional rights, and violations thereof, especially those based on a racial animus.

104. Township is thus liable for the conduct of Miller and Webster.

105. Police's, custom, practice, failure to train, failure to supervise, failure to discipline, and deliberate or reckless indifference of the racially biased policing of Police's officers was the moving force behind the above stated violations of Plaintiffs' constitutional rights.

106. As a direct, proximate, and legal result of Township's custom, practice, failure to

train, failure to supervise, failure to discipline, and deliberate or reckless indifference of the racially biased policing of Police's officers caused the aforementioned severe, serious, and potentially permanent injuries, damages, losses, and harm Plaintiffs have suffered and may continue to suffer.

107. Under the circumstances, Township's actions and omissions were intentional, malicious, and/or wantonly and recklessly indifferent to the rights, privileges and immunities secured to Plaintiffs by 42 U.S.C. §1983 and by the United States Constitution and warrants the imposition of damages against Township.

WHEREFORE, Plaintiffs, Thomas L. Williams and Jacquese Springs, demand judgment in their favor and against Defendant, Lower Paxton Township, for compensatory damages, attorneys' fees, costs, and such other relief as this Court deems appropriate under the circumstances.

**COUNT V**

**PLAINTIFFS V. DEFENDANTS, CORPORAL CHAD MILLER, AND OFFICER CODY WEBSTER,**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

108. Plaintiffs incorporate herein by reference as though fully set forth at length paragraphs 1 through 107 above.

109. Miller and Webster knew and/or reasonably should have known that their extreme and outrageous conduct on August 27, 2024 would likely cause Plaintiff to suffer emotional distress and the physical manifestations therefrom.

110. The extreme and outrageous conduct of Miller and Webster as aforesaid went well beyond the bounds of decency in society and deviated greatly from the course of conduct expected of police officers.

111. Miller and Websters' extreme and outrageous conduct did, in fact, cause the aforementioned severe, serious, and potentially permanent injuries, damages, losses, and harm Plaintiffs have suffered and may continue to suffer.

112. Under the circumstances, Miller and Websters' conduct was intentional, malicious, and recklessly indifferent and warrants the imposition of punitive damages against them

WHEREFORE, Plaintiffs, Thomas L. Williams and Jacquese Springs, demand judgment in their favor and against Defendant, Lower Paxton Township, for compensatory damages, attorneys' fees, costs, and such other relief as this Court deems appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial.

Respectfully submitted,

August 27, 2026

**THE FARNETH LAW GROUP, LLC**
By: *s/George R. Farneth II, Esquire*
George R. Farneth II, Esquire
445 Fort Pitt Blvd., Suite 160
Pittsburgh, PA 15219
Tel: (412) 863-7092
Fax: (412) 586-4713
Email: grf@farnethlaw.com
PA ID #53914
WV ID #10749

**BRENLOVE & FULLER, LLC**
By: *s/ Nicholas A. Miller, Esquire*
Nicholas A. Miller, Esq.
401 Washington Avenue
Bridgeville, PA 15017
PA ID: 204141
412-221-0640 x 112
nmiller@brenlovefuller.com

*Attorneys for Plaintiff*