**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTOPHER GEORGE LEE,<br>Plaintiff,<br>v.<br>BENJAMIN A. FRANTZ, in his individual capacity; MICHAEL CONVILLE, in his individual capacity; JOHN DOES 1-3, in their individual capacities; and GEORGE L. BIVENS, in his official capacity as Acting Commissioner of the Pennsylvania State Police,<br>Defendants. | **Case No. _____________**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff and Pennsylvania State Constable Christopher George Lee ("Lee"), by and through counsel Goldstein Law Partners, LLC, brings this action against Defendants Benjamin A. Frantz ("Frantz"), Michael Conville ("Conville"), John Does 1-3 ("John Doe Defendants") (collectively, "Individual Defendants"), and George Bivens ("Bivens") (collectively, "Defendants"), [1] and alleges as follows:

## INTRODUCTION

1. This civil-rights action arises from the prolonged detention and custodial

[1] Individual Defendants are sued in their individual capacities for damages under 42 U.S.C. § 1983, and Bivens is sued in his official capacity for the purpose of obtaining prospective relief.

transport of a Pennsylvania State Constable after an equipment-related traffic stop, the subsequent seizure and towing of his marked vehicle before a search warrant was issued, and the intentionally destructive manner in which Pennsylvania State Police ("PSP") personnel executed the warrant at the Carlisle barracks.

2. This action does not advance a theory that police lack authority to investigate or enforce generally applicable vehicle-equipment laws. Instead, Lee alleges that the Individual Defendants converted a roadside stop based on a suspected window tint and spotlight equipment violation into an unreasonable, hours-long custodial seizure, then used physically destructive methods that were punitive and unnecessary to identify, inspect, document, or seize allegedly offending lighting and siren equipment from Lee's vehicle.

3. A warrant issued hours after the roadside stop authorized a bumper-to-bumper search for specified emergency lighting, siren components, and related wiring and controls, and it authorized officers to start the car and activate or manipulate the lights and siren. The warrant did not authorize what Individual Defendants actually did, including gratuitous damage to the vehicle, destruction of nonresponsive components, indiscriminate cutting of live wiring, and dismantling of Lee's recording system.

4. Lee seeks compensatory, nominal, and punitive damages against the Individual Defendants, reasonable attorney's fees and costs, and prospective relief against Bivens

requiring an inventory and return of property no longer lawfully retained.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in Cumberland County, Pennsylvania, within the Middle District of Pennsylvania.

7. Declaratory and prospective relief is authorized by 28 U.S.C. §§ 2201 and 2202.

## PARTIES

8. Plaintiff Christopher George Lee is an adult resident of Wayne County, Pennsylvania. At all relevant times, Lee was an elected Pennsylvania State Constable for Damascus Township and used—like most other constables in Pennsylvania—a privately owned, marked vehicle in connection with official and private-contract work.

9. Defendant Benjamin A. Frantz was at all relevant times a Corporal and member of the PSP, assigned to Troop H/Carlisle, badge number 10585. He is sued in his individual capacity.

10. Defendant Michael Conville was at all relevant times a member of the PSP, also assigned to Troop H/Carlisle, and participated in one or more parts of the detention, disarmament, transport, seizure, search, or warrant execution described herein. He is

sued in his individual capacity.

11. Defendants John Does 1-3 are presently unidentified PSP employees who personally participated in the seizure, search, dismantling, damage, inventory, retention, or failure to intervene described herein. They are sued in their individual capacities and will be identified by amendment as their names are discovered.

12. At all relevant times, each of the Individual Defendants acted under color of state law and within or under the apparent authority of his PSP office.

13. Defendant George L. Bivens is PSP's Acting Commissioner and is named only in his official capacity for prospective relief. Compensatory damages are not sought from Bivens, PSP, or the Commonwealth.

## FACTUAL ALLEGATIONS

### A. Roadside Stop and Extended Detention

14. On April 22, 2026, at approximately 11:51 a.m., Lee was driving southbound on Interstate 81 near mile marker 52.7 in Cumberland County.

15. At that time, Lee was traveling to Greencastle, Pennsylvania in connection with official constable and private-contract work.

16. Lee was operating a white 2018 Dodge Charger Police AWD, VIN ending 181151, bearing Pennsylvania registration PSC01OC and State Constable markings.

17. Frantz initiated a traffic stop. Upon confronting Lee, Frantz stated that the grounds for the stop were Lee's tinted windows and an A-pillar-mounted spotlight.

18. Rather than promptly addressing those stated grounds, however, Frantz began questioning Lee about the vehicle's emergency lighting and siren equipment and directed Lee to activate the equipment while the vehicle was stopped on the shoulder of the interstate.

19. Lee notified his dispatch service, MATCOM, that he had been stopped. As a result, Frantz became agitated and ordered Lee to remain in the vehicle.

20. While Lee remained detained at roadside, Frantz placed calls to the Wayne County and Cumberland County District Attorney's Offices. Together, those calls took approximately thirty (30) minutes.

21. However, Frantz did not choose to complete the stop at that time by issuing a warning or citation and allowing Lee to leave. Instead, Franz represented that Lee's vehicle was being seized for a search warrant based on potentially illegal lighting and that Wayne and Cumberland County District Attorney offices had allegedly approved this course.

22. Frantz ordered Lee out of the vehicle, took possession of Lee's firearm, and arranged for Lee to be transported to PSP's Carlisle barracks.

23. Frantz told Lee that the vehicle would be returned after "several hours."

24. At no point did Lee voluntarily agree to convert the roadside stop into custodial transport and detention at the barracks.

25. Conville participated in or assisted Frantz by removing Lee from the vehicle,

disarming him, transporting or guarding him, arranging the tow, securing the vehicle, and/or maintaining the custodial detention.

26. Frantz and Conville transported Lee in a PSP vehicle to the Carlisle barracks, where Lee was detained while PSP sought and executed a warrant. Lee was not arrested, presented to a judicial officer, or charged at that time.

27. Lee was not free to leave and reasonably believed as much, from initiation of the vehicle stop until release. Lee was detained in this manner for nearly five (5) hours (from 11:53am to 4:46pm).

28. The length, place, and custodial character of the detention exceeded what was reasonably necessary to address the equipment issues, absent probable cause sufficient to arrest Lee.

**B. Seizure and Towing of the Vehicle**

29. Individual Defendants seized Lee's vehicle at roadside and directed that it be towed to the Carlisle barracks before a warrant had been issued.

30. Lee's vehicle was not left secured at roadside, released to a driver approved by Lee and/or PSP, or held only long enough to complete an examination of the tinted windows, spotlight, or any other equipment.

31. Lee did not consent to the seizure or towing of his vehicle.

32. At that point, no judicial officer had authorized a search or seizure of the vehicle, and the facts supporting the later warrant are not presently available because

the supplied warrant package omits the probable-cause affidavit.

**C. The Warrant and Execution**

33. On April 22, 2026, Frantz applied for a warrant identified with PSP incident number PA 2026-512783. The face of the warrant indicates that it was issued at approximately 3:37 p.m. A true and correct copy of the search warrant as provided to Lee is attached hereto as Exhibit A.

34. The warrant authorized a bumper-to-bumper search of the interior and exterior of Lee's vehicle for siren speakers; red, blue, white, or amber emergency lighting; combinations of such lighting; and related cables, switches, and control boards.

35. The warrant also authorized officers to start the vehicle and to activate and manipulate the emergency lights and siren, including components in the exterior, interior, and engine area.

36. By the time the warrant was executed, Lee's vehicle was secured within PSP barracks. There was no immediate flight risk, no roadside hazard requiring hurried removal, and no exigency requiring officers to sever wiring instead of documenting and safely disconnecting the equipment.

37. Individual Defendants deliberately tampered with Lee's NEXAR recording system, deliberately or accidentally erasing recordings that would have captured video taken from approximately 4:00pm to 4:45pm ET, while Lee's vehicle was in PSP custody.

38. However, available camera footage and the condition of the wires and equipment indicate that Frantz used a large knife to cut wiring and physically pull lighting or siren-related components from the vehicle.

39. Photographs taken after PSP returned Lee's vehicle show that one or more of the Individual Defendants cut wiring, including exposed copper at a red conductor.

40. Individual Defendants could have photographed, tested, inventoried, unplugged, or professionally removed the relevant components without cutting wiring in a manner that damaged the vehicle or created an ongoing electrical hazard.

41. Individual Defendants' forceful removal of Lee's equipment also damaged or required replacement of vehicle components beyond the value of any seized light or siren unit, including grille, closure-panel, and spotlight-related components.

42. Between approximately 4:00 and 4:45 p.m., while Lee's vehicle was under PSP's control, one or more Individual Defendants disassembled Lee's NEXAR camera system. Lee later found the camera modules separated in the vehicle, and the system did not record the interval during which the dismantling occurred.

43. The camera system itself was not identified on the warrant as contraband, evidence to be seized, or an object of which dismantling was necessary to locate lighting or siren components.

44. The precise identity and role of each person who cut wiring, removed components, dismantled the recording system, prepared the inventory, and approved

the manner of execution is uniquely within Defendants' knowledge and will be established in discovery.

**D. Return of the Vehicle, Damage, and Property Retention**

45. Lee was required to secure the release of his own vehicle after Defendants had his car towed to HJ Towing & Recovery, Inc., where Lee was forced to pay $350.00 in exchange for his vehicle.

46. Upon return of the vehicle, Lee found that the dash camera was removed from its position. He found one of the three camera components on the floor next to the passenger seat, with the other two stuck between the driver's seat and the center console.

47. Lee also discovered that the Individual Defendants has slashed the engine and radiator "splash guard" with a knife, most likely, a knife with a serrated edge, leaving pieces of the guard dangerously laying all around the engine area, including the fan belt and alternator belt.

48. Lee further discovered that the Individual Defendants had forcefully removed his hand controller—the unit used to manage emergency warning lights and sirens—leaving approximately five (5) feet of wire frayed and loose under the driver's seat.

49. Lee also discovered that the Individual Defendants had forcefully removed certain components not included in the warrant, including an amplifier for the siren, a switchboard for Lee's lights, and a Santa Cruz rifle-release timer, all housed in the

trunk of his vehicle, leaving two (2) raw positive live red wires left exposed in the trunk of his vehicle that, if left uncapped, would have caused an explosion.

50. Individual Defendants also removed Lee's Xbright visor/deck lights, leaving a sharp point that would be extremely dangerous if Lee experienced a collision and was pressed against the dashboard of the vehicle.

51. Lee's patrol rifle had not been removed, but its release button, which was on the hand controller, had been ripped out.

52. Individual Defendants seized Lee's lighting, siren, control, wiring, and related components from the vehicle. None of these items have been returned.

53. Individual Defendants's removal of equipment and resulting damage to the vehicle impaired Lee's ability to use the vehicle safely and effectively in contracted traffic control, security, patrol, parking enforcement, and constable-related work.

54. A Cunningham's Body Shop ("Cunningham's") preliminary estimate dated April 27, 2026, identifies $2,282.18 in parts, labor, supplies, and tax to replace the upper grille, closure panel, and A-pillar-mounted left spotlight. A true and correct copy of the repair estimate for Lee's vehicle is attached hereto as Exhibit B.

55. A separate Cunningham's labor estimate dated May 28, 2026, totals $991.10 for work associated with Feniex sirens, Typhoon controllers, a Santa Cruz rifle-release timer, and Xbright visor/deck lights. A true and correct copy of the repair estimate for Lee's vehicle is attached hereto as Exhibit C.

56. Without his lights, Lee has been forced to forgo opportunities to perform Constable and Constable-related work. Among other opportunities, Lee has forgone a parking lot detail that could have resulted in $59,400 annually and warrant work in Mifflin County that could have resulted in $30,000 annually. Lee has also reduced his hours working at a mobile home community because, without lights, siren, and speaker, he cannot reasonably enforce the community's ATV policies.

57. Moreover, Lee has been put in dangerous situations—including crowd and traffic control—without lights on his vehicle.

**E. Untimely Traffic Citations**

58. Defendants did not issue any traffic citations on the day of the stop and seizure, April 22, 2026.

59. Instead, on May 29, 2026—thirty-seven (37) days later—six (6) related citations were filed on May 29, 2026, and two (2) more on June 1, 2026. Four (4) citations were brought against Lee personally and four (4) against Damascus Constables LLC.

60. The charges attributed to Lee include alleged violations of 75 Pa.C.S. §§ 4524(e), 4535(b), 4571(b), and 4572(c), relating generally to window tint, sound devices, visual/audible signals, and amber lighting.

61. Lee, through separate counsel, requested dismissal under 42 Pa.C.S. § 5553 on the ground that the summary proceedings were commenced more than thirty days after the April 22 incident. However, this request was denied without prejudice,

pending a hearing scheduled for July 28, 2026, before Magisterial District Judge David J. Rogers in Middlesex Township, Cumberland County.

62. However, the day before the July 28, 2026 hearing, Lee's case was continued to October 21, 2026.

63. On information and belief, the proceeding was rescheduled at the request of the Cumberland County District Attorney so that one or more District Attorney employees could be present for the proceeding.

**COUNT I**
**Fourth Amendment to the United States Constitution**
**Unreasonable Seizure of Lee**
(*Against Frantz, Conville, Bivens*)

64. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

65. Lee's nearly-five (5) hour detention and *de facto* arrest were objectively unreasonable and violated the Fourth Amendment, as incorporated and applied to the states by the Fourteenth Amendment.

66. "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez v. United States*, 575 U.S. 348, 350-51 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).

67. "Not all inquiries during a traffic stop qualify as ordinarily incident to the stop's mission. In particular, those 'measure[s] aimed at detect[ing] evidence of ordinary criminal wrongdoing' do not pass muster. 'On-scene investigation into other crimes . . . detours from th[e] mission,' as do 'safety precautions taken . . . to facilitate such detours.'" *United States v. Clark*, 902 F.3d 404, 410 (3d Cir. 2018) (quoting *Rodriguez*, 575 U.S. at 355) (internal citations omitted); *see also United States v. Hurtt*, 31 F.4th 152, 163 (3d Cir. 2022) ("[Officer] Cannon did not just look inside the truck, however. He entered it. He kneeled on the front seat with only his feet dangling outside the door. In doing so, he placed himself in jeopardy and created a situation whereby Officer Gonzalez felt compelled to pause the DUI inquiry to ensure Cannon's safety. Again, this type of police-created exigency cannot justify going off-mission.") (footnote omitted).

68. Indeed, the U.S. Supreme Court's 2015 decision in "*Rodriguez* made clear that unrelated investigations that cause even a *de minimis* prolongment of a traffic stop is not tolerated under the Fourth Amendment, absent reasonable suspicion. Accordingly, a traffic stop is impermissibly extended 'when an officer, without reasonable suspicion, diverts from a stop's traffic-based purpose to investigate other crimes.'" *United States v. Mateo*, No. 1:24-CR-00080, 2025 WL 2154364, at *6 (M.D. Pa. July 29, 2025).

69. Even when officers have a reasonable suspicion sufficient to initiate or prolong

an investigatory detention under *Terry v. Ohio*, 392 U.S. 1 (1968), "*Terry* investigatory detentions clearly do not permit law enforcement officials to detain individuals 'for as long as necessary to discover whether probable cause can be established.'" *United States v. Fraguela-Casanova*, 858 F. Supp. 2d 432, 443 (M.D. Pa. 2012) (quoting *United States v. Sharpe*, 470 U.S. 675, 691 (1985) (Marshall, J., concurring in judgment)). "[T]he length of the stop may make the detention 'tantamount to an arrest.'" *Fraguela-Casanova*, 858 F. Supp. 2d 432, 443 (M.D. Pa. 2012) (quoting *United States v. Leal*, 235 Fed. Appx. 937, 942 n.1 (3d Cir. 2007)).

70. Frantz and Conville lacked probable cause to arrest Lee for any offense, let alone an offense sufficient to justify Lee's prolonged detention.

71. Frantz and Conville also lacked reasonable suspicion to go "off-mission" and prolong Lee's stop for the purpose of investigating a potential crime unrelated to the purpose of the stop.

72. More specifically, neither Frantz nor Conville had constitutional authority to prolong the stop beyond the time reasonably necessary to address the stated tint and spotlight issues.

73. Instead, in the middle of the stop, Frantz engaged in an extensive, 30-minute conversation with other law enforcement officials, then returned to Lee's vehicle before ordering Lee out of the vehicle, disarming him, retaining his vehicle, transporting him to the barracks, and holding him there while seeking and executing a

warrant, unjustifiably detaining Lee for nearly five (5) hours.

74. Conville directly participated in Lee's seizure by joining in the extensive, 30-minute phone call and approving or ratifying Frantz's conduct. At the very least, Conville indirectly participated by observing the stop in its entirety, even as it was evolving into an extended custodial detention, and failing to take meaningful steps to prevent or end the detention, despite a reasonable opportunity to do so.

75. Even if Frantz and/or Conville developed reasonable suspicion to justify a *Terry* stop, they "failed to diligently pursue 'a means of investigation that was likely to confirm or dispel' [their] suspicions quickly." *Fraguela-Casanova*, 858 F. Supp. 2d at 443 (quoting *Sharpe*, 470 U.S. at 687).

76. The unlawfulness of an unreasonably prolonged stop and involuntary detention without adequate cause was clearly established before April 22, 2026.

77. Frantz and Conville are liable for compensatory and nominal damages, and Frantz is liable for punitive damages to the extent the evidence establishes reckless or callous disregard.

78. Bivens is sued in his official capacity for the purposes of securing a declaratory judgment against PSP and for any other prospective relief.

**COUNT II**
**Article I, Section 8 of the Pennsylvania Constitution**
**Unreasonable Seizure of Lee**
(*Against Frantz, Conville, Bivens*)

79. The foregoing paragraphs are incorporated by reference as if set forth fully

herein.

80. Typically, "an investigative detention under the Fourth Amendment and Article I, § 8 'is coterminous.'" *Commonwealth v. Chase*, 960 A.2d 108, 117 (Pa. 2008) (quoting *Commonwealth v. Revere*, 888 A.2d 694, 699 n. 6 (Pa. 2005)). However, "[t]he protections of individual privacy against unreasonable governmental searches and seizures under the Pennsylvania Constitution are more expansive than those afforded under the United States Constitution." *Commonwealth v. Parker*, 619 A.2d 735, 738 (Pa. Super. 1993).

81. For the same reasons articulated above, Lee's nearly-five (5) hour detention and *de facto* arrest were objectively unreasonable and violated Article I, Section 8 of the Pennsylvania Constitution.

82. Additionally, Lee's nearly-five (5) hour detention and *de facto* arrest constituted an "unwarranted and even vindictive incursion[ ] upon [Lee's] privacy," in that Frantz and Conville forced Lee to be observed for hours, surrender his firearm, submit to transport, abandon the remainder of his daily Constable and Constable-related duties, and ultimately face public disparagement and prosecution. *Commonwealth v. Miller*, 518 A.2d 1187, 1191–92 (Pa. 1986).

83. The unlawfulness of an unreasonably prolonged stop and involuntary detention without adequate cause was clearly established before April 22, 2026.

84. Frantz and Conville are liable for compensatory and nominal damages, and

Frantz is liable for punitive damages to the extent the evidence establishes reckless or callous disregard.

85. Bivens is sued in his official capacity for the purposes of securing a declaratory judgment against PSP and for any other prospective relief.

**COUNT III**
**Fourth Amendment to the United States Constitution**
**Unreasonable Pre-warrant Seizure of Property**
(*Against all Defendants*)

86. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

87. "[W]hen officers have probable cause to believe that personal effects may contain evidence, the Fourth Amendment is permissive: They may—as they did here—'seize [ ] and secure[ ]' the item 'to prevent destruction of evidence while seeking a warrant.'" *United States v. Woodley*, 788 F. App'x 100, 104 (3d Cir. 2019) (quoting *Riley v. California*, 573 U.S. 373, 388 (2014)).

88. Even with probable cause, however, "a seizure reasonable at its inception because based upon probable cause may become unreasonable as a result of its duration or for other reasons." *Segura v. United States*, 468 U.S. 796, 812 (1984).

89. Individual Defendants violated Lee's Fourth Amendment rights by unreasonably seizing Lee's vehicle before a warrant was issued.

90. Individual Defendants lacked probable cause to believe the vehicle contained evidence of an offense or lacked an objectively reasonable basis to tow and impound

the entire vehicle rather than use less intrusive means.

91. Even if temporary immobilization and towing were permissible to seek a warrant, the manner and duration of the seizure were unreasonable, as Individual Defendants used the seizure to facilitate unnecessary detention, damage, removal of nonresponsive property, or retention beyond evidentiary need.

92. Even if Frantz and Conville developed probable cause to believe that Lee's vehicle was being operated in violation of the law, there were no exigent circumstances to support immediate seizure of Lee's vehicle, as the allegedly violative items—Lee's lighting, siren, control, wiring, and related components—could not reasonably have been irretrievably lost or destroyed before a warrant could be obtained.

93. Frantz and/or Conville directed or caused the seizure and tow, while Individual Defendants directly participated, assisted, or approved the seizure and tow, then failed to release the property when constitutionally required.

94. Individual Defendants' conduct caused loss of use, towing expense, property loss, and consequential damages.

95. The unlawfulness of Individual Defendants' pre-warrant seizure of a vehicle without probable cause was clearly established before April 22, 2026.

96. Individual Defendants are liable for compensatory and nominal damages as well as for punitive damages to the extent the evidence establishes reckless or callous

disregard.

97. Bivens is sued in his official capacity for the purposes of securing a declaratory judgment against PSP and for any other prospective relief.

**COUNT IV**
**Article I, Section 8 of the Pennsylvania Constitution**
**Unreasonable Pre-warrant Seizure of Property**
(*Against all Defendants*)

98. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

99. "[T]he 'detention,' *i.e.*, the immobilization, of a vehicle pending the filing of an application for a search warrant unquestionably constitute[s] a seizure of the vehicle under the Fourth Amendment." *Commonwealth v. Rosario*, 350 A.3d 243, 250 (Pa. Super. 2025) (quoting *Commonwealth v. Joseph*, 34 A.3d 855, 861 (Pa. Super. 2011)).

100. "Pursuant to Pennsylvania's 'limited automobile exception,' warrantless vehicle searches *and/or seizures* must be accompanied by both probable cause *and* exigent circumstances beyond the mere mobility of the vehicle." *Rosario*, 350 A.3d at 250 (emphases added) (quoting *Joseph*, 34 A.3d at 861); *see also Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020) (re-adopting the limited automobile exception).

101. For the same reasons articulated above, the pre-warrant seizure of Lee's property was objectively unreasonable and violated Article I, Section 8 of the Pennsylvania Constitution.

102. Additionally, the pre-warrant seizure of Lee's property violated Article I,

Section 8, because it was not supported by probable cause *and* exigent circumstances beyond the mere mobility of the vehicle.

103. Defendants' conduct caused loss of use, towing expense, property loss, and consequential damages.

104. The unlawfulness of Defendants' pre-warrant seizure of a vehicle without probable cause was clearly established before April 22, 2026.

105. Individual Defendants are liable for compensatory and nominal damages as well as for punitive damages to the extent the evidence establishes reckless or callous disregard.

106. Bivens is sued in his official capacity for the purposes of securing a declaratory judgment against PSP and for any other prospective relief.

**COUNT V**
**Fourth Amendment to the United States Constitution**
**Unreasonable Execution of Warrant and Needless Property Destruction**
(*Against all Defendants*)

107. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

108. "The general touchstone of reasonableness which governs Fourth Amendment analysis, *see Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (*per curiam*), governs the method of execution of the warrant. Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful . . . ." *United States v. Ramirez*, 523 U.S. 65, 71

(1998).

109. Individual Defendants violated the Fourth Amendment by unreasonably causing excessive and unnecessary destruction of property and by exceeding the scope of the search and seizure authorized by the warrant.

110. The warrant only permitted officers to search for, activate, manipulate, and seize specified lighting, siren, wiring, switching, and control components.

111. Lee's vehicle was secured at a police barracks, and Individual Defendants had time and control sufficient to photograph, test, inventory, disconnect, and remove any responsive component safely.

112. Instead, Individual Defendants deliberately caused damage that had no reasonable relationship to locating or seizing the items described in the warrant, including cutting wiring with a knife, pulling out components, damaging vehicle parts, leaving exposed conductors, and dismantling the NEXAR recording system.

113. Additionally, Individual Defendants deliberately tampered with Lee's NEXAR recording system, deliberately or accidentally erasing recordings that would have captured video taken from approximately 4:00pm to 4:45pm ET, while Lee's vehicle was in PSP custody.

114. Individual Defendants have yet to return the items removed from Lee's vehicle, including his Feniex sirens, Typhoon controllers, a Santa Cruz rifle-release timer, and Xbright visor/deck lights.

115. These actions were not reasonably necessary to locate or seize the property described in the warrant and were disproportionate to any legitimate evidentiary need.

116. In addition, Individual Defendants searched, dismantled, or seized items outside the warrant's objectively reasonable scope, including nonresponsive recording equipment.

117. Frantz personally participated in and directed the destructive execution. John Doe Defendants personally participated in or approved discrete acts of cutting, removal, dismantling, inventory, or retention. Conville is liable to the extent discovery confirms direct participation or knowing acquiescence.

118. The right to be free from needless or excessive property destruction during execution of a warrant was clearly established long before April 22, 2026.

119. Individual Defendants are liable for compensatory and nominal damages as well as for punitive damages to the extent the evidence establishes reckless or callous disregard.

120. Bivens is sued in his official capacity for the purposes of securing a declaratory judgment against PSP and for any other prospective relief.

**COUNT VI**
**Article I, Section 8 of the Pennsylvania Constitution**
**Unreasonable Execution of Warrant and Needless Property Destruction**
(*Against all Defendants*)

121. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

122. Like the Fourth Amendment, "Article I, § 8 of the Pennsylvania Constitution prohibits unreasonable searches and seizures, and this applies to the execution of the search warrant." *Commonwealth v. Ceriani*, 600 A.2d 1282, 1288 (Pa. Super. 1991).

123. For the same reasons articulated above, the pre-warrant seizure of Lee's property was objectively unreasonable and violated Article I, Section 8 of the Pennsylvania Constitution.

124. The right to be free from needless or excessive property destruction during execution of a warrant was clearly established long before April 22, 2026.

125. Individual Defendants are liable for compensatory and nominal damages as well as for punitive damages to the extent the evidence establishes reckless or callous disregard.

126. Bivens is sued in his official capacity for the purposes of securing a declaratory judgment against PSP and for any other prospective relief.

**PRAYER FOR RELIEF**

WHEREFORE, Lee respectfully requests this Honorable Court to:

a) Pursuant to 28 U.S.C. §§ 2201-2202, enter a declaratory judgment establishing that Defendants violated Lee's rights under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution;

b) Award compensatory damages to Lee against Individual Defendants in an

amount to be determined at trial;

c) Award nominal damages against all Defendants for each completed constitutional violation where compensatory damages are not proven;

d) Award punitive damages against Individual Defendants to the extent their conduct was malicious, wanton, or in reckless or callous disregard of Plaintiff's rights;

e) Other prospective equitable relief should it be necessary;

f) Reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

g) Taxable costs and pre- and post-judgment interest as permitted by law; and

h) Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all matters triable by jury pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

GOLDSTEIN LAW PARTNERS, LLC

Dated: September 5, 2026

**Jonathan Goldstein**
Pa. Attorney I.D. No. 201627
Email: jgoldstein@goldsteinlp.com
**David R. Osborne**
Pa. Attorney I.D. No. 318024
Email: dosborne@goldsteinlp.com
GOLDSTEIN LAW PARTNERS, LLC

200 School Alley, Suite 5
Green Lane, PA 18054
Telephone: 610-949-0444
Facsimile: 215-257-1910
*Counsel for Plaintiff*