**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Michael Maresca, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. |
| v. | **Complaint – Class Action** |
| Utz Brands, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Michael Maresca ("Maresca" or "Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, brings this Complaint against Defendant Utz Brands, Inc. ("Utz" or "Defendant"), and based upon personal knowledge with respect to himself, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action on behalf of himself and a class of all other similarly situated persons, as defined below.

2. This action concerns Defendant's deceptive and unfair tactic of marketing and selling chips that are purportedly made with exclusively avocado oil instead of other oils, but in fact do not contain exclusively avocado oil. Specifically, Defendant's Boulder Canyon brand potato chips (the "Potato Chips" or the "Products") identifies on the front label that they are made with "Avocado Oil," and the ingredient lists name avocado oil as the only oil ingredient and one of just three ingredients, along with potatoes and sea salt. Utz markets and sells at least 10 chip products that claim to contain exclusively avocado oil instead of other oils.

3. However, a recent study published by researchers at the University of California, Davis (the "UC Davis 2026 Study") found that Defendant's Potato Chips contain oils that are not consistent with 100% pure avocado oil.

4. Consumers like Plaintiff purchased the Products because of the representations that they contained avocado oil and no other oils. Products such as the Potato Chips have higher prices because they are supposed to contain exclusively avocado oil, and no other oils, based on Utz's representations. Consumers prefer products containing avocado oil as opposed to other oils, such as seed oils, due to their taste profile and association with health benefits, and Utz sold the Potato Chips at a premium while concealing the fact that the Potato Chips did not contain just avocado oil.

5. Plaintiff and the other members of the Class and Subclass (as defined below) would not have purchased Defendant's Products at the prices they did had they known the Products contained other oils besides avocado oil, and have been damaged by paying the unwarranted price premium for the Products.

6. Defendant's conduct as alleged herein violates the unlawful, unfair, and fraudulent prongs of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") 73 P.S. § 201-9.2; the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") N.C. Gen. Stat. §§ 75-1, et seq.; and amounts to a breach of its contract for the sale of goods to Plaintiff and class members.

## PARTIES

1. Plaintiff is a natural person who is a citizen of the United States and who is domiciled in the State of North Carolina.

2. Defendant Utz Brands, Inc. is a Delaware corporation with its headquarters and principal place of business in Hanover, Pennsylvania. Defendant's mailing address is 900 High St Hanover, PA 17331.

3. Defendant markets and sells snack-food products, including some that claim to be made exclusively with avocado oil, and no other oils, to consumers throughout the United States.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is a class action in which there are 100 or more class members; the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; and at least one member of the class(es) is a citizen of a state different from Defendant.

5. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is headquartered in this District.

7. Upon information and belief, Defendant has sold the Products nationwide.

## FACTUAL ALLEGATIONS

***Defendant Utz's Boulder Canyon Products***

8. Utz advertises its Boulder Canyon line of products as the fastest expanding salty-snack label in the United States and the leading salty-snack offering sold through natural-food distribution channels.[1]

9. Utz widely markets Boulder Canyon products as being prepared with higher-quality cooking oils and straightforward ingredients, and explicitly distinguishes them from traditional snack foods, which are commonly produced using refined seed-based oils, as depicted below:




---

1 BusinessWire, Utz Brands Showcases New Chips, Pretzels and Bestsellers at Natural Products Expo West, Feb 27, 2026, https://www.businesswire.com/news/home/20260227548219/en/UtzBrands-Showcases-New-Chips-Pretzels-and-Bestsellers-at-Natural-Products-Expo-West. (Last accessed Aug. 24, 2026).

*Source:* https://www.bouldercanyon.com/our-story (https://perma.cc/M3DU-G85D).




*Source:* https://www.bouldercanyon.com/our-way (https://perma.cc/79UG-L92X).

10. Utz's Boulder Canyon website specifically states that the Products "are made exclusively with the oil or fat identified on the label—they are not mixed or blended with other oils or fats."

11. By promoting its Boulder Canyon products in this manner, Utz represents the brand as an upscale and health-conscious alternative, which creates consumer expectations of enhanced quality and ingredient integrity.

12. Consistent with its emphasis on premium oil usage in its branding, Utz prominently features the statement identifying avocado oil on the principal display panel of the Product across all package variations, as depicted below:




*Source:* https://www.bouldercanyon.com/products/boulder-canyon-avocado-oil-sea-salt-malt-vinegar-kettle-chips ( https://perma.cc/Q5GS-X47S)

13. Utz includes the avocado-oil statement as a central marketing feature in all package variations. The all-capital "AVOCADO OIL" is almost the largest text on the package. It is larger than the description of the flavor (e.g., "Malt vinegar & sea salt") or the type of chip (e.g., "kettle style potato chip"). The phrase forms part of the Product's formal name and appears conspicuously on the front packaging. Utz thereby differentiates the Product from other potato chips that are manufactured with lower-cost oils, whose front labels do not similarly highlight the oil source.

14. The rear package panel strengthens the front-label message. The ingredient list contains only three components: potatoes, avocado oil, and sea salt, with no indication that the Potato Chips contain any additional cooking oil.

15. Utz's Boulder Canyon website reinforces the importance of the oil used in the Products. For example, the page listing the available kettle chips categorizes the chips by their advertised oil, such as "avocado oil," "olive oil," or "classic" (i.e., see oil).




*Source*: https://www.bouldercanyon.com/our-products/kettle-chips, archived at https://perma.cc/PB7S-3PFY

16. Utz represents to consumers that avocado oil is the sole oil ingredient. The label does not contain either a blended-oil disclosure or any alternative-oil designation. By contrast, Boulder Canyon products made with seed oils expressly disclose those oils. Accordingly, purchasers reasonably conclude that avocado oil is

the exclusive oil used in the Product because their "classic" style "Kettle Style Potato Chips" are stated to have "sunflower oil and/or safflower oil," as depicted below:




*Source:* https://www.bouldercanyon.com/products/boulder-canyon-lightly-salted-kettle-chips (https://perma.cc/C357-VUY6)

17. These representations are false and materially misleading because testing conducted by UC Davis researchers determined that the Product's recovered oil did not match the established composition of genuine pure avocado oil and instead resembled lower-cost refined vegetable oils.

18. Consequently, Utz represents to consumers they are receiving a snack prepared solely with premium avocado oil, and sells the Potato Chips at a premium accordingly, when that is not the case.

19. Utz's representations regarding avocado oil are material to consumers, who consider the respective oil content when deciding which chips to purchase and at what price.

20. Avocado oil is widely regarded as a desirable culinary oil due to reported health-related attributes, its favorable fat composition, and its suitability for high-temperature cooking applications.[2]

21. It is widely considered to be healthier for use in fried foods such as potato chips than other oils.[3]

22. Because of these perceived benefits, shoppers are willing to spend more on products made with avocado oil than on comparable items using vegetable, canola, soybean, sunflower, safflower, corn, or peanut oils.

23. For instance, on the Wal-Mart website, a 5.25 oz. bag of the Potato Chips costs about $5.50, or approximately $1.05 per ounce.[4] In comparison, as of August 25, 20206, an 8 oz. bag of Lay's Kettle Sea Salt Cooked Potato Chips, which

[2] Healthline, Evidence-Based Health Benefits of Avocado Oil, https://www.healthline.com/nutrition/9-avocado-oil-benefits (last visited Aug. 25, 2026).

[3] MasterClass, What Is Avocado Oil? A Guide to Cooking With Avocado Oil, https://www.masterclass.com/articles/what-is-avocado-oil-a-guide-to-cooking-with-avocado-oil (last visited Aug. 25, 2026).

4 https://www.walmart.com/ip/Boulder-Canyon-Chips-Potato-Avocado-Oil-Sea-5-25-Ounce/7141812893?classType=REGULAR&from=/search (last visited Aug. 25, 2026).

are made with vegetable oil and do not contain any representations otherwise, costs about $2.97, or approximately $0.37 per ounce.[5]

24. Indeed, key Utz officials have explicitly stated that the Company sold its Products at higher prices based on the representation that they contained "premium ingredients," and that this was important to its business. For example, Utz CEO Howard Friedman was asked by a market analyst at the Company's Earnings Call for the Second Quarter of 2025 held on July 31, 2025 if "there any way to isolate the margin of Boulder Canyon in relation to the rest of the portfolio? Is this a higher margin brand and will that eventually help your path towards margin expansion as it continues to grow?" In response, CEO Friedman stated "I think it is fair to say that ***Boulder Canyon is a premium brand and that we expect – that it actually has a margin benefit to the business a little bit***…" and that "you should see a benefit over time there. And we think that that actually will supports [*sic*] the higher EBITDA guide that we have in the back half of the year." (Emphasis added).

25. On the Company's Earnings Call for the Third Quarter of 2025 held on October 30, 2025, CEO Friedman again told market analysts that consumer interest in snack foods containing avocado oil "continues to drive a lot of growth for us. And

[5] https://www.walmart.com/ip/Lay-s-Classic-Potato-Chips-8-oz-Bag/33282303?classType=VARIANT&athbdg=L1300&from=/search (last visited Aug. 25, 2026).

it's really driven by, obviously, the ***consumers looking for better-for-you credentials*** and great tasting products… over the last period, year-to-date we are – it is the number one potato chip brand in the natural channel, and we actually have the number one SKU in the channel over all time periods for 13 weeks, 26 weeks, and 52 weeks. So, that business is growing really nicely, and I expect it to continue." (Emphasis added).

26. On the Company's Earnings Call for the Fourth Quarter of 2025 held on February 12, 2026, CEO Friedman was asked by a market analyst about non-vegetable oils in Utz's products, which would include avocado oils: "But all of these ingredients, I imagine, are significantly higher cost than vegetable oil, but also on the back of a premium product. Can you just give us an idea of how that impacts the mix as we see a brand like Boulder taking more and more position in the portfolio?"

27. In response, CEO Friedman stated that "[W]e think about the contribution of innovation to our overall portfolio, look, our expectation when we launch a new item is that it's margin accretive, that the value that we're offering to a consumer, that ***there is a propensity to be willing to pay for those premium ingredients, whether it's protein in the Utz pretzels and puffs or the beef tallow for Boulder Canyon or avocado oil or really anything else that we do***. So, we would anticipate it being a net positive on the margin line and obviously on the ***higher-***

***priced items***. As they grow more, you'll also see a positive price benefit to the P&L." (Emphasis added).

28. On the Company's Earnings Call for the First Quarter of 2026 held on May 6, 2026, CEO Friedman stated that regarding "Better-For-You attributes and non-seed oil… that business continues to grow in both the natural and conventional. I think we've also seen that it's actually able to stretch with, to your point, with both unflavored and now flavored tortilla chips, which we feel very good about the authorizations and early consumption trends on that business is strong."

29. Utz does not disclose anywhere on the Products that the oil may be mixed with, diluted by, or replaced with less expensive vegetable-based oils. Purchasers therefore reasonably believe avocado oil, when stated, is the oil utilized.

30. Even apart from any generalized health considerations, consumers consider it important that a food product contains the ingredients identified on its label and that its label is accurate. Many individuals have dietary restrictions, allergies, or personal preferences that make the identity of the oil material.

***Testing Results***

31. In July 2026, researchers at UC Davis published a peer-reviewed study in the journal *Applied Food Research* that was the first study of whether

representations regarding avocado and oil ingredients in food products were accurate.[6]

32. The UC Davis researchers analyzed 74 samples, representing 37 distinct commercial products, each of which was collected in two separate production lots. Defendant's Products were among the products tested. In the product information accompanying the Study, Boulder Canyon's "Avocado Oil Classic Sea Salt Kettle Style Potato Chips" is identified as Sample Nos. 1 and 2.[7]

33. The UC Davis 2026 Study measured authenticity based on the Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999) (the "Codex"). It measured both fatty acids and sterol markers. A sample was only considered inconsistent with the requirements in the Codex if more than two measurements exceeded the acceptable amounts of fatty acids and sterol markers by more than 10%.[8]

34. The UC Davis 2026 Study highlighted three fatty acids that are included in the Codex and exhibited the greatest difference between products classified as

---

[6] *See* Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, Authenticity of avocado and olive oils used as ingredients in commercially processed foods, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389.

[7] UC Davis, Studied Products AFRES, https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2347698985551?sb=/details.

[8] Lopez-Alvarez, et al., supra note 6, at 4.

consistent and inconsistent with authentic avocado oil: palmitic acid (C16:0), palmitoleic acid (C16:1), and stearic acid (C18:0).[9] The UC Davis 2026 Study also highlighted three sterol markers that are included in the Codex: campesterol, stigmasterol, and Δ7-avenasterol. Elevated levels of these three sterol markers are consistent with avocado oil that has been substituted or diluted with other vegetable oils.

35. Principal component analysis of the fatty acid and sterol profiles "demonstrated clear separation between samples classified as consistent and inconsistent with their labeled oil claims." "Many avocado oil–labeled samples clustered near" a vegetable-oil comparator sample "containing canola, corn, soybean, and/or sunflower oil, suggesting that the fatty acid profiles of those products are more consistent with polyunsaturated vegetable oil compositions than with authentic avocado oil."[10]

36. Pursuant to this method, the UC Davis 2026 Study Product identified the oils in both lots of the Potato Chips tested as inconsistent with the composition

---

[9] *Id.*

[10] *Id.*

of avocado oil.[11] *See* UC Davis 2026 Study, Supplemental materials, Table S3: "Fatty acid profiles of all samples."

37. For example, 11.0% to 26.0% of the fatty acids in avocado oil are supposed to be palmic acid, but the two samples were 8.1% and 8.7%. Similarly, 4.0% to 17.1% of the fatty acids in avocado oil are supposed to be palmitoleic acid (C16.1), both samples were only 1.0%. Further, stearic acid is not supposed to exceed 1.3%, but the Boulder Canyon samples were 2.6% and 2.5% stearic acid. This is not consistent with avocado oil.

38. The sterol markers for the Boulder Canyon samples are also inconsistent with the composition of avocado oil. *See* UC Davis 2026 Study, Supplemental materials, Table S4: "Sterol profiles of all samples." For example, only 4.0% to 8.3% of the sterols in avocado oil are supposed to be campesterol, but the two Boulder Canyon samples measured 9.8% and 11.5% of campesterol. Similarly, only 0.3% to 2.0% of the sterols in avocado oil are supposed to be stigmasterol, but the two samples from Boulder Canyon were 6.6% and 7.0%. Finally, delta-7-avenesterol is supposed to be less than 1.5% of the sterol markers, but the two samples from Boulder Canyon were 2.8% and 3.0%. This is not

[11] UC Davis, Studied Products AFRES, https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2347698985551?sb=/details.

consistent with avocado oil. Additionally, less than 0.75% of the fatty acids in safflower oil and less than 1.3% of the fatty acids in sunflower oil are C18:1 (n-7), while 5.5% to 7.5% of the fatty acids in avocado oil are C18:1 (n-7). The UC Davis 2026 Study found that the two samples from Boulder Canyon had C18:1 (n-7) values of 1.7% and 2.3%. This is not consistent with avocado oil.

39. Despite the fact that it did not contain purely avocado oil, Utz charges a price premium for the Product because it is labeled as containing avocado oil and, sold under the Boulder Canyon label, deemed a healthier product of Utz.

40. The UC Davis 2026 Study concluded that "Retail prices showed consistent premiums for products labeled as containing avocado oil or olive oil relative to vegetable oil counterparts."[12]

41. The labels and ingredient lists for the Products claim that they include avocado oil.

42. The Products contain oils that are not consistent with the usual and customary name of avocado oil.

43. The Products do not exclusively contain avocado oil.

44. The Products do not contain 100% pure avocado oil.

45. The Products do not list all of their ingredients.

---

[12] Lopez-Alvarez, et al., supra note 6, at 4.

***Plaintiff's Experiences***

46. Plaintiff is a consumer who favors products containing avocado oil to the exclusion of other oils for a myriad of reasons, which include its taste profile and association with health benefits. Plaintiff watches very carefully what he consumes on a daily basis and has to trust that the products make accurate claims.

47. Plaintiff purchased Defendant's Potato Chips several times, including Avocado Oil Classic Sea Salt Kettle Style Potato Chips, because of the representation that it contained exclusively avocado oil.

48. Plaintiff paid a higher price for the Potato Chips relative to other similar products because it was supposed to contain exclusively avocado oil.

49. After he learned from the UC Davis 2026 Study that the Potato Chips do not contain pure avocado oil, he cannot trust that the Potato Chips or any of the Boulder Canyon Products would exclusively contain avocado oil.

## CLASS ACTION ALLEGATIONS

50. This action is brought by Plaintiff, individually and on behalf of all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

51. Plaintiff seeks to represent the following class: all persons in the United States who purchased Utz's Products within the statute of limitations period (the "Class").

52. Plaintiff also seeks to represent the following subclass: all persons in the State of North Carolina who purchased Utz's Products within the statute of limitations period (the "North Carolina Subclass" or "the Subclass").

53. Unless specifically indicated otherwise, all allegations below concerning the Class include and apply equally to the Subclass.

54. Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the Class definition(s).

55. Excluded from this Class are Defendant and its officers, directors, and employees, as well as Defendant's affiliates, parents, and subsidiaries and their respective officers, directors, and employees.

56. The members of the Class and Subclass are so numerous and dispersed that it would be impracticable to join them individually. The precise number of Class members and their identities are unknown to Plaintiff at this time but can be determined through discovery. For example, Class members have receipts of products they purchased and the prices they purchased them at. In addition, Defendant's retailers have records of the products sold, in addition to credit and debit card information that can be used to identify members of the Class and Subclass.

57. Common questions of law and fact exist as to all members of each Class and predominate over any questions affecting solely individual members of the

Class. Among the questions of law and fact common to one or more of the Class or Subclass are:

i. Whether Defendant represented that the Products contained avocado oil;

ii. Whether the Products contained avocado oil;

iii. Whether Defendant represented that the Products did not contain oils other than avocado oil, such as seed oils;

iv. Whether the Products contained oils other than avocado oil, such as seed oils;

v. Whether Defendant failed to disclose that the Products contained oils other than avocado oil, such as seed oils;

vi. Whether Defendant's conduct violates the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL");

vii. Whether Defendant's conduct violates the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA");

viii. Whether Defendant's wrongful conduct caused Plaintiff and the Class and Subclass members damages;

ix. The measure and amount of damages suffered by Plaintiff, and members of the Class and Subclass;

x. Whether Defendant's conduct caused it to be unjustly enriched;

xi. The amount of restitution to which Plaintiff, and members of the Class and Subclass are entitled;

xii. Whether Plaintiff and members of the Class and Subclass are entitled to punitive damages;

xiii. Whether Plaintiff and members of the Class and Subclass are entitled to equitable relief, injunctive relief, and/or specific performance;

xiv. Whether Plaintiff and members of the Class and Subclass are entitled to an award of reasonable attorney fees, interest, and costs of suit.

58. Plaintiff's claims are typical of the claims of the members of each of the Class and Subclass they seek to represent because they were purchasers of the Products.

59. Plaintiff will fairly and adequately protect the interests of members of the Class and Subclass and have retained counsel competent and experienced in class actions and consumer litigation. Plaintiff has no interests antagonistic to or in conflict with those of any Class or Subclass members.

60. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class and Subclass is impracticable. Furthermore, because the damages suffered by individual Class and Subclass members may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class and

Subclass individually to redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

61. Defendant has acted on grounds that apply generally to the Class and Subclass, such that final injunctive relief or corresponding declaratory relief is appropriate respecting each Class and Subclass as a whole.

62. Class certification is also appropriate because there is a readily identifiable class and subclass on whose behalf this action can be prosecuted. Class and Subclass members are readily ascertainable. A notice of pendency or resolution of this class action can be provided to Class and Subclass members by direct mail, email, publication notice, or other similar means.

## CAUSES OF ACTION

### *COUNT I*

Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")
Pa. Stat. Ann. Tit. 73, §§201-1, et seq.
*On Behalf of the Class*

63. Plaintiff hereby incorporates by reference all prior allegations.

64. Utz is a "person" as defined in the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Pa. Stat. Ann. §201-2(2).

65. Utz's marketing and sale of the Products constitute "trade" or "commerce" as defined in Pa. Stat. Ann. §201-2(3).

66. The UTPCPL declares unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," which includes, among others, "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Pa. Stat. Ann. §§201-3, 201-2(4)(xi) and (xxi).

67. As alleged herein and above, Utz has engaged in unfair methods of competition and unfair or deceptive acts or practices in connection with its false and materially misleading representations regarding avocado oil in its Products, and sold its Products at a premium based on these false and materially misleading representations. These acts and practices violate the UTPCPL.

68. As alleged herein and above, Utz has engaged in deceptive conduct by selling the Products under the representation that they contained exclusively avocado oil, while omitting the fact that they contained other oils, which it had a duty to disclose because failing to do so rendered its representations misleading.

69. Plaintiff has been and continue to be injured as a direct and proximate result of Utz's violations of the UTPCPL.

70. Plaintiff is entitled to pursue a claim on behalf of the Class against Utz pursuant to Pa. Stat. Ann. §201-9.2 for damages, treble damages, equitable relief, and attorneys' fees and costs to remedy Utz's violations of the UTPCPL.

***COUNT II***

Violations of the North Carolina Unfair And Deceptive Trade Practices Act,
N.C. Gen. Stat. §§ 75-1, Et Seq.
*On Behalf of the North Carolina Subclass*

71. Plaintiff hereby incorporates by reference all prior allegations made in paragraphs 1 through 62.

72. The North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") declares unlawful any "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a).

73. Defendant's conduct as alleged herein is "in or affecting commerce" under N.C. Gen. Stat. § 75-1.1(a).

74. As alleged herein, while engaging in trade or commerce within the State of North Carolina during the time period relevant hereto, Utz made false and materially misleading representations regarding avocado oil in its Products, and sold its Products at a premium based on these false and materially misleading representations. These acts and practices violate the NCUDTPA.

75. Each sale of any Product that misleadingly stated or implied that it contained just avocado oil when it in fact did not establishes a separate offense of the NCUDTPA pursuant to N.C. Gen. Stat. § 75-8.

76. Plaintiff and the other members of the North Carolina Sub-Class have been and continue to be injured as a direct and proximate result of Utz's violations of the NCUDTPA.

77. Plaintiff is entitled to pursue a claim on behalf of the North Carolina Sub-Class against Utz seeking actual damages and treble damages pursuant to N.C. Gen. Stat. § 75-16.

78. Plaintiff and the other members of the North Carolina Subclass are also entitled to seek attorneys' fees for bringing this action to remedy Utz's violations of the UDTPA, under N.C. Gen. Stat. § 75-16.1.

## ***COUNT III***

Breach of Contract
*On Behalf of the Class*

79. Plaintiff hereby incorporates by reference all allegations made in paragraphs 1 though 62.

80. Plaintiff brings this claim individually and on behalf of the members of the Class.

81. As alleged above, Defendant promised to sell its Products with pure avocado oil and not other oils.

82. Plaintiff and the Class members purchased the Products pursuant to that promise.

83. Defendant breached its contract with Plaintiff and Class members by failing to providing Products with pure avocado oil and instead providing products that contained other oil.

84. Plaintiff and the other members of the Class were injured and suffered damages as a direct and proximate result of Defendant's breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class and Subclass, request that the Court award the following relief:

85. Certify this action as a class action, appoint Plaintiff as the Class representative, and designate the undersigned as Class counsel;

86. Declare Defendant's conduct unlawful;

87. Enjoin Defendant from the unlawful conduct alleged herein;

88. Award Plaintiff and the Class and Subclass damages under common law and/or by statute, including treble and/or punitive damages;

89. Award Plaintiff and the Class and Subclass restitution and/or disgorgement;

90. Award Plaintiff's attorneys' fees, costs, and pre-judgment and post-judgment interest; and

91. Grant such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as to all issues so triable in the present action.

DATED: September 15, 2026

Respectfully submitted,

By: */s/Max S. Morgan*
Max S. Morgan
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Chet B. Waldman (*pro hac vice* application to be filed)
cwaldman@wolfpopper.com
Matthew Insley-Pruitt (*pro hac vice* application to be filed)
minsley-pruitt@wolfpopper.com
Samuel Coffin (*pro hac vice* application to be filed)
scoffin@wolfpopper.com
WOLF POPPER LLP
570 Lexington Avenue
New York, NY 10022

Telephone: 212.759.4600

*Counsel for Plaintiff and the Proposed Class and Subclass*