**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KAYCE FISHER<br>2636 Heister Valley Rd<br>Mt. Pleasant Mills, PA 17853<br><br>Plaintiff,<br>v.<br><br>CB MANUFACTURING COMPANY, INC.<br>700 Anderson Hill Road<br>Purchase, NY 10577<br><br>and<br><br>PEPSICO, INC.<br>700 Anderson Hill Road<br>Purchase, NY 10577<br><br>Defendants. | : | CIVIL ACTION<br><br>CASE NO.:<br><br>**JURY TRIAL DEMANDED** |

**<u>CIVIL ACTION COMPLAINT</u>**

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

**<u>INTRODUCTION</u>**

1. This action has been initiated by Kayce Fisher (hereinafter referred to as "Plaintiff") against CB Manufacturing Company, Inc. ("Defendant CB"), and PepsiCo, Inc. ("Defendant Pepsi") (collectively as "Defendants"). Plaintiff asserts violations of the Americans with Disabilities Act, as Amended ("ADA" - 42 U.S.C. §§ 12101 et seq.), Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA").

2. Plaintiff asserts, *inter alia*, that she was subjected to unlawful discriminatory and retaliatory mistreatment culminating in the termination of her employment by Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

3. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. State claims asserted herein are proper under this Court's ancillary or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

4. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

5. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because actions underlying this case occurred in this District, and Defendants are deemed to reside where they are subject to personal jurisdiction (rendering venue appropriate for multiple reasons).

6. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

7. Plaintiff has properly exhausted her administrative remedies regarding her PHRA claims by dual-filing her Charge of Discrimination with the Pennsylvania Human Relations

Commission ("PHRC") and by waiting at least one year since the filing before asserting her claims under the PHRA.

## PARTIES

8. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9. Plaintiff is an adult female residing at the above-captioned address.

10. Defendant Pepsi is a food and beverage production company with corporate headquarters at the address set forth above in the caption.

11. Defendant CB is a wholly owned subsidiary of Defendant Pepsi.

12. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

13. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

14. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15. Plaintiff is a 38-year-old female.

16. On or about August 28, 2020, Defendants hired Plaintiff and employed her for approximately three and a half (3.5) years until unlawfully terminating her on or about February 23, 2024.

17. Plaintiff physically worked for Defendants at their Harrisburg, PA location.

18. Plaintiff was promoted multiple times throughout her employment. She most recently served as a Line Driver until the time of her unlawful termination as discussed further *infra*.

19. Plaintiff's manager was initially Mark Whitehurst ("Whitehurst" – Male) before his separation from Defendants.

20. After Whitehurst's separation from Defendants, Plaintiff reported to the Head of Warehouse, Amanda (last name unknown, "Amanda" - Female); the Manufacturing Associate Leader, Shannon Winfield ("Winfield" – Male); and the Nighttime Manager of Warehouse, Matt (last name unknown – "Matt" – Male).

21. The HR personnel relevant to the instant matter include Defendants' Human Resources ("HR") Manager, Bill Harper ("Harper" - Male); the HR Representative, Kristan Hassler ("Hassler" - Female); and the Senior HR Manager, Lavette Bass-Norris ("Bass" - Female).

22. Plaintiff a hard-working employee who performed her job well during her employment with Defendants.

23. Plaintiff suffers from various disabilities as defined under the ADA, including without limitation, Phonological Disorder, Dysphonic Dyslexia, Adjustment Disorder with Anxious Mood, and associated conditions/symptoms/disabilities.

24. Plaintiff's aforementioned disabilities, at times, substantially limit her ability to perform major life activities such as (without limitation): reading; thinking; learning; communicating; audio and visual comprehension; and processing and handling stress.

25. As a result of the foregoing disabilities, Plaintiff at times required reasonable accommodations, discussed further *infra*.

26. Plaintiff's requests for accommodation were received with open disdain by her managers.

27. By way of illustrative example, in or about early April 2023, Defendants' management told Plaintiff she had to drive and operate 18-wheeler trucks.

28. Because of her disability, Plaintiff needed additional time to accomplish this task.

29. On or about April 5, 2023, Plaintiff met with Amanda and Hassler in person to verbally inform them of her disabilities and request reasonable accommodations.

30. Specifically, Plaintiff requested that she be given additional time when being directed to move 18-wheeler trucks.

31. Immediately, Amanda reacted negatively to Plaintiff's request by stating: "I'm not opening another position for a truck driver to move;" "If you can't do it, maybe this just isn't the job for you;" and "Oh well, it's your position, you have to do it."

32. On or about April 26, 2023, Plaintiff again requested reasonable accommodations for her aforementioned disabilities by submitting a formal letter to HR from her doctor, which specifically requested:

a. Additional assistance when backing up trailers in the yard;

b. Short breaks as needed;

c. Extra time to back up trailers; and

d. Assistance from other employees in backing up trailers at times.

33. Although Hassler helped Plaintiff fill out the accommodation paperwork in person on April 26, 2023, Hassler separated from Defendants before she could submit the paperwork to Defendants' system.

34. Upon information and belief, Hassler's replacement never submitted Plaintiff's accommodation requests and never provided Plaintiff with any further information on how to complete the process.

35. Plaintiff suffered a flare-up of her anxiety condition on or about December 17, 2023, caused by the death of her nephew. Plaintiff informed Winfield that she was experiencing a flare-up of her disabilities and thus requested reasonable accommodations to take a brief mental health leave.

36. In response, Winfield refused to accommodate her and stated dismissively that Plaintiff must "figure it out" for herself.

37. Suddenly, on or about February 16, 2024, Harper called Plaintiff into a meeting and proceeded to interrogate her for nearly three (3) hours about her time punches.

38. Plaintiff explained that she was following Whitehurst's explicit directive to clock in ahead of time and then wait for pre-shift meetings to begin.

39. Plaintiff objected to this selective scrutiny and explained that the aforesaid practice was uniform, and many other male/non-disabled employees were also clocking in early and waiting for their shifts to start.

40. Despite Plaintiff's explanations and complaints that she was being treated differently than employees outside of her protected classes, Defendants suspended Plaintiff immediately pending an "investigation."

41. However, on or about February 23, 2024, Defendants then terminated Plaintiff, falsely accusing her of committing time theft while skipping all progressive discipline steps provided in Defendants' handbook.

42. Defendants provided Plaintiff with the opportunity to appeal her termination, which Plaintiff did.

43. Specifically, Plaintiff again informed Defendants that she had been given explicit permission to clock in and wait for her shift to start by her previous manager, Whitehurst.

44. Plaintiff objected to this disparate treatment and explained that numerous other male/non-disabled employees including without limitation, Alfonso Spriggs ("Spriggs"); Jake Messinger ("Messinger"); Ryan Davenport ("R. Davenport"); and Benjamin Davenport ("B. Davenport") clocked in early and waited in the breakroom but had not been disciplined in any way.

45. Spriggs would even take selfies and make Facebook posts while waiting in the breakroom before a shift, but he was never disciplined/terminated for the same.

46. Other male/non-disabled employees, Josh Erdman ("Erdman") and Rodney Stamm ("Stamm") were also not penalized for similar behavior.

47. Erdman would arrive one hour early and either wait wherever he liked or smoke outside, claiming that he could not begin work because no forklift was available (even though there were forklifts available).

48. Stamm would arrive early in the morning and clock in one hour early.

49. Defendants upheld Plaintiff's termination despite explicit notice that Plaintiff had been directed to clock in early, and that other male/non-disabled employees clocked in early but were not similarly disciplined.

50. Further, Defendants intentionally misrepresented Plaintiff's participation in the "investigation," stating that she did not provide information as requested, despite her participating in a documented three (3) hour interview.

51. By way of example, and without limitation, Defendants' purported reason for terminating Plaintiff is clear pretext for discrimination as:

a. Defendants neither disciplined nor terminated several male employees for committing the same or more serious conduct for which Plaintiff was terminated;

b. Prior to February 2024, Plaintiff had no history of progressive discipline;

c. Tellingly, Defendants began treating Plaintiff in a hostile manner and selectively enforcing policies against her after she informed Defendants of her disabilities and requested reasonable accommodations; and

d. Defendants failed to engage in the interactive process with Plaintiff.

52. Plaintiff therefore believes and avers that her disability and/or sex/gender were motivating factors in Defendants' decision to terminate her employment.

53. Plaintiff also avers that Defendants terminated her because she requested reasonable accommodations and/or because she objected to discriminatory employment practices.

54. Plaintiff finally avers that Defendants refused to accommodate her requests for reasonable accommodations.

## COUNT I
## Violations of the Americans with Disabilities Act, as Amended ("ADA")
## ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. Plaintiff suffered from qualifying disabilities under the ADA which affected her ability (at times) to perform some daily life activities.

57. Plaintiff kept Defendants' management informed of her disabilities and need for medical treatment and other accommodations.

58. At all relevant times, Plaintiff was qualified to perform the essential functions of her position, with or without reasonable accommodation.

59. Plaintiff requested/required reasonable accommodations from Defendants.

60. Defendants failed to engage in the interactive process and failed to accommodate Plaintiff.

61. Plaintiff was terminated from her employment with Defendants on or about February 23, 2024, for completely pretextual reasons.

62. Plaintiff believes and therefore avers that she was subjected to discrimination and retaliation because of: (1) her actual/perceived/record of disabilities; (2) her requested medical accommodations (set forth *supra*); and (3) her expressed complaints of unfair treatment as a result of her aforesaid health conditions.

63. Plaintiff also believes and therefore avers that aforementioned disabilities were motivating or determinative factors in Defendants' decision to terminate her employment.

64. These aforesaid actions constitute violations of the ADA.

**COUNT II**
**<u>Violations of Pennsylvania Human Relations Act ("PHRA")</u>**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual-filing her claims with the EEOC) and the charge has been pending for at least one year.

67. The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims as set forth in Count I.

**COUNT III**
**Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Sex/Gender Discrimination)**

68. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

69. Plaintiff believes and avers that her gender was a motivating or determinative factor in Defendants' decisions to subject Plaintiff to pretextual discipline and terminate her employment.

70. Plaintiff asserts that Defendants' decisions (discussed *supra*) were made in violation of Title VII.

**COUNT IV**
**Violations of Pennsylvania Human Relations Act ("PHRA")**
**(Sex/Gender Discrimination)**

71. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

72. Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual-filing her claims with the EEOC) and the charge has been pending for at least one year.

73. The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims as set forth in Count III.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E. Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: October 5, 2026