**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

LATICIA HOAGLAND, individually and on behalf of all others similarly situated,
Plaintiff,
v.
JOHN DOE(S) AND MICHAEL F. J. PIECUCH,
Defendants.

**CLASS ACTION COMPLAINT (496)- Conspiracy to Deprive Constitutional Rights under 42 U.S.C. § 1983; Conspiracy to Violate the United States Constitution; Conspiracy to Violate the Pennsylvania Constitution; and Pennsylvania Civil Conspiracy,-Michael F J Piecuch (violations and conspiracy to commit violations)**

Plaintiff Laticia Hoagland, individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendant Michael F J Piecuch. Plaintiff incorporates by reference the Motions attached to this complaint. Attached to this Complaint as Exhibit A is a Motion for Recusal, and attached to this Complaint as Exhibit B is a Motion for Joinder and for Declaratory Relief that Rules 8, 12, and 26 are unconstitutional, that fact-pleading is unconstitutional, that the only role for a Court is to schedule a jury trial every single time a complaint is filed, as long as the complaint lists the required elements, without requiring the pleading of facts, or raises mixed questions of law and fact, like standing, jurisdiction, and immunity, as only juries can decide mixed questions of law and fact like standing or immunity, and that until America amends the Seventh Amendment, pre-trial dismissals by judges are unconstitutional.

**COA 496 — CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983; CONSPIRACY TO VIOLATE THE UNITED STATES CONSTITUTION; CONSPIRACY TO VIOLATE THE**

**PENNSYLVANIA CONSTITUTION; AND PENNSYLVANIA CIVIL CONSPIRACY**

## NATURE OF ACTION

1. Plaintiff Laticia Hoagland brings this class action against Michael F. J. Piecuch for alleged participation in coordinated conduct that deprived Plaintiff of federal and Pennsylvania constitutional rights, retaliated against speech and petitioning by her legal representatives, interfered with independent legal assistance, and preserved unconstitutional exercises of governmental and professional authority through county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs.

2. The challenged conspiracy involves county judges, bar officers, courthouse administrators, CJAB participants, and local pro bono gatekeepers, together with governmental, professional, and legal-aid participants who allegedly acted in concert to protect established institutions from scrutiny, burden criticism of attorney misconduct, and interfere with independent representation. Defendant's alleged role concerns county judicial authority, courthouse access, USCBA participation, CJAB and behavioral-health advisory programs, and Wills for Heroes involvement.

3. Plaintiff asserts conspiracy to deprive rights secured by the United States Constitution, including, but not limited to, rights protected by the First, Seventh, and Fourteenth Amendments and other applicable constitutional provisions; conspiracy to violate the Pennsylvania Constitution, including, but not limited to, Article I, §§ 1, 6, 7, 11, 20, and 26, and other applicable constitutional provisions; and Pennsylvania

common-law civil conspiracy involving intentional interference with contractual and prospective legal-services relationships and other underlying tortious conduct.

4. Plaintiff further challenges the coordinated use of judicially created substantive law, binding precedent, common-law doctrines, judicial immunity, stare decisis, and court-created procedural restrictions to exercise legislative power, restrict constitutional rights, eliminate jury determinations, insulate governmental misconduct from accountability, and prevent litigants from obtaining remedies guaranteed by constitutional text and enacted law.

5. Plaintiff challenges these exercises of power under Article I, § 1, Article III, and the Seventh Amendment of the United States Constitution; Article II, § 1, Article III, § 1, Article I, §§ 1, 6, 7, 11, 20, and 26 of the Pennsylvania Constitution; the constitutional separation of governmental powers; and all other applicable constitutional protections.

6. Plaintiff seeks declaratory, injunctive, compensatory, and other legally available relief for the coordinated constitutional violations and underlying tortious conduct, including relief against continued governmental interference with independent representation, protected petitioning, court access, constitutional jury rights, and judicial accountability.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff Laticia Hoagland resides in Pennsylvania and obtained representation through Susquehanna Legal Aid for Adults and Youth (“SLAAY”) and attorney Paige Martineau to investigate the loss of her home, the abandonment of her representation

by North Penn Legal Services, Inc. ("NPLS"), and the resulting legal and financial injuries.

8. Defendant Michael F. J. Piecuch is identified in connection with county judicial authority, courthouse access, USCBA participation, CJAB and behavioral-health advisory programs, and Wills for Heroes involvement. The challenged conduct concerns access to county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs and the consequences of those access arrangements for legal-service clients and Plaintiff's representatives.

9. Plaintiff challenges Defendant's use of institutional or professional authority and its connections to court-facing practices in coordination with governmental actors exercising authority over judicial, administrative, and professional access. The asserted § 1983 theory rests on that joint action and resulting constitutional deprivation.

10. Other participants in the challenged coordinated conduct include NPLS, professional and bar organizations, judicial and disciplinary actors, legal-aid management and funding organizations, and persons exercising control over access to legal representation, court records, and professional participation.

11. This Court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), and supplemental jurisdiction over related Pennsylvania claims under 28 U.S.C. § 1367(a). Plaintiff invokes 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 2201–2202. Venue is proper under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

12. Hoagland's residence was unlawfully sold at tax sale, even though she had been standing outside, cash in hand, trying to pay her taxes, but a security guard, during COVID, unilaterally determined that the fabric she used for her mask was insufficient, and would not allow her inside to pay her taxes. NPLS abandoned Hoagland without leave of court or complying with their ethical duties. After NPLS abandoned her, she proceeded pro se, and the Commonwealth Court affirmed the sale of her home. The NPLS Board of Directors had been repeatedly warned that NPLS was abandoning clients when attorneys left NPLS, and did nothing to stop the ongoing malpractice. When Plaintiff's attorney, a former employee, began whistleblowing about mass malpractice at NPLS, other defendants retaliated against Plaintiff's attorney, interfered with Plaintiff's legal representation, or created the unconstitutional and monopolistic structural conditions that enabled malpractice and harm to the public.

## PROTECTED ACTIVITIES AND CONSTITUTIONAL INJURIES

13. Hoagland retained SLAAY and attorney Paige Martineau to obtain her records, investigate NPLS's abandonment of representation, challenge professional misconduct, pursue remedies concerning her property, and seek accountability from institutions responsible for regulating legal services and administering judicial proceedings.

14. Plaintiff's authorized attorney and legal team engaged in protected speech, criticism, investigation, advocacy, and petitioning by demanding records, identifying deficiencies in NPLS's practices, reporting institutional misconduct, communicating with governmental bodies, and pursuing judicial remedies on Hoagland's behalf.

15. The criticism concerned professional competence, attorney accountability, legal-aid practices, judicial administration, constitutional separation of powers, judicially created law, and the conduct of institutions entrusted with public authority.

16. Plaintiff exercised her own rights through her retained representatives. Interference directed against those representatives injured Plaintiff because it impaired their ability to perform legal work on her behalf, required additional expenditures of time and resources, and reduced Plaintiff's practical access to legal services and judicial remedies.

17. The challenged conduct burdened Plaintiff's rights to seek redress, obtain meaningful and nondiscriminatory access to judicial processes, pursue the protection of her property, secure the assistance of independently chosen legal representation, and demand adjudication under the Constitution and duly enacted law.

18. Plaintiff further challenges the use of governmental authority to restrict constitutional jury rights, substitute judicially created substantive rules for enacted law, and prevent litigants from obtaining independent judicial determinations of constitutional challenges to governmental institutions.

## DEFENDANT-SPECIFIC CONDUCT AND CONSPIRATORIAL PARTICIPATION

19. Michael F. J. Piecuch participates in or affects county judicial authority, courthouse access, USCBA participation, CJAB and behavioral-health advisory programs, and Wills for Heroes involvement. Plaintiff challenges the way those

functions interface with the professional, governmental, and legal-aid arrangements affecting independent representation and the public's ability to obtain lawful assistance.

20. Piecuch exercised judicial and bar-related authority and took part in communications challenging Martineau's criticism and restricting her participation in county public-service and CJAB channels.

21. Piecuch exercised judicial and county-bar-related authority and participated in professional communications opposing Martineau's criticism and restricting her access to CJAB and other county public-service channels.

22. Plaintiff challenges the use of courtroom participation, judicial communications, and CJAB or advisory access decisions as an institutional means to preserve advantages for established actors while imposing additional obstacles on independent providers criticizing attorney misconduct and seeking official records or remedies.

23. The challenged combination joins the abandonment of Hoagland by NPLS with subsequent efforts to investigate that abandonment and coordinated restrictions implemented through county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs. Defendant's alleged role is linked to county judges, bar officers, courthouse administrators, CJAB participants, and local pro bono gatekeepers.

24. Plaintiff identifies Defendant's role through courtroom participation, judicial communications, and CJAB or advisory access decisions. The asserted agreement joins

that participation to actions of county judges, bar officers, courthouse administrators, CJAB participants, and local pro bono gatekeepers affecting the work of SLAAY and protected advocacy on behalf of Hoagland.

25. The combination involved professional communications, institutional participation decisions, administrative channels, and coordinated responses to criticism, including decisions relating to county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs. Plaintiff identifies these as acts advancing the asserted common objective to restrict independent oversight and legal assistance.

26. Plaintiff further challenges coordinated reliance on judicially created doctrines and procedural restrictions that give governmental and professional participants means to prevent constitutional claims from proceeding, restrict jury consideration, impair access to remedies, and insulate the challenged conduct from accountability.

27. The challenged acts expressly encompass judicial rulings, orders, sanctions, recusal, case management, docket control, records decisions, and participation or exclusion decisions; Plaintiff does not exclude judicial conduct from her constitutional challenge.

28. Michael F. J. Piecuch's distinct institutional role—county judicial authority, courthouse access, USCBA participation, CJAB and behavioral-health advisory programs, and Wills for Heroes involvement—connects it to the asserted joint practices affecting records, lawful advocacy, referrals, public access, or legal-service resources.

29. Plaintiff asserts that Defendant and the other participants acted in concert through USCBA, county courthouse, CJAB, mental-health advisory, and pro bono professional networks to protect established professional channels, oppose criticism, and restrict the effective work of independent legal representatives.

30. The asserted coordinated conduct caused harm through reduced access to affordable court assistance, legal-service referrals, and community legal-aid participation, increased work for Plaintiff's legal team, and lost opportunities to obtain independent assistance and timely corrective remedies.

31. Plaintiff suffered financial harm through additional legal work, diversion of resources from her substantive claims, reduced access to independent representation, and impairment of opportunities to obtain timely corrective relief.

## COUNT I — CONSPIRACY UNDER 42 U.S.C. § 1983

### Conspiracy to Deprive Rights Secured by the United States Constitution, Including, but Not Limited to, First, Seventh, and Fourteenth Amendment Rights and Other Applicable Constitutional Guarantees

32. Plaintiff incorporates paragraphs 1 through 31.

33. Section 1983, 42 U.S.C. § 1983, provides a civil remedy for the deprivation, under color of state law, of rights, privileges, or immunities secured by the Constitution and laws of the United States.

34. Plaintiff invokes § 1983 for the coordinated deprivation of federal constitutional rights through an agreement among governmental actors and other participants acting jointly with persons exercising governmental authority.

35. The asserted § 1983 conspiracy rests on joint action with persons exercising state authority; Defendant's asserted participation arose from courtroom participation, judicial communications, and CJAB or advisory access decisions and its connections with county judges, bar officers, courthouse administrators, CJAB participants, and local pro bono gatekeepers. The constitutional injuries pleaded concern protected advocacy, access to remedies, equal treatment, and Plaintiff's retained legal representation.

36. Plaintiff asserts that Defendant joined a coordinated arrangement affecting county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs to discourage criticism of established legal-service actors and to impose disadvantages on those providing independent assistance.

37. The alleged overt conduct included coordinated participation and access decisions relating to county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs, and the use of courtroom participation, judicial communications, and CJAB or advisory access decisions to maintain the challenged institutional barriers.

38. Piecuch's challenged role encompasses judicial authority, USCBA and CJAB contacts, professional communications, and participation restrictions following independent criticism of governmental and bar institutions.

39. The agreement targeted constitutionally protected speech, petitioning, access to judicial remedies, independent advocacy, property-related procedural rights, equal governmental treatment, and other federal constitutional guarantees implicated by the participants' conduct.

40. The conspiracy also encompasses the use of judicially created substantive restrictions and doctrines that displace constitutional guarantees, impair access to judicial relief, restrict jury determinations, or exercise legislative power outside the constitutional allocation of governmental authority.

41. Plaintiff suffered personal, financial, property-related, and legal-services injuries because the coordinated acts impaired her access to records, independent legal representation, effective advocacy, and remedies concerning the loss of her home.

42. Plaintiff seeks declaratory, injunctive, compensatory, and other relief under 42 U.S.C. §§ 1983 and 1988 for the constitutional injuries caused by the agreement and the acts advancing it.

## COUNT II — CONSPIRACY TO VIOLATE THE UNITED STATES CONSTITUTION

### Including, but Not Limited to, the First, Seventh, and Fourteenth Amendments; Article I, § 1; Article III; Constitutional Separation of Powers; and Other Applicable Constitutional Protections

43. Plaintiff incorporates paragraphs 1 through 42.

44. Plaintiff invokes the rights and governmental limitations established by the United States Constitution, including, but not limited to, freedom of speech, association, and petitioning for redress; due process of law; equal protection; civil jury

trial; protections governing jury findings; constitutional allocation of legislative and judicial authority; and other applicable constitutional guarantees.

45. The First Amendment protects speech, association, and petitioning for governmental redress, including criticism of government institutions, judicial conduct, attorney regulation, and public legal-services practices.

46. The Seventh Amendment provides that, in suits at common law where the value in controversy exceeds twenty dollars, the right of trial by jury shall be preserved, and addresses the reexamination of facts tried by a jury.

47. The Fourteenth Amendment prohibits states from depriving persons of life, liberty, or property without due process of law or denying persons equal protection of the laws.

48. Article I, § 1 vests the legislative powers granted by the federal Constitution in Congress. Article III vests the judicial power of the United States in the federal judiciary and defines the constitutional character of judicial authority.

49. Plaintiff challenges the use of judicial decisions, stare decisis, common-law doctrines, judicial immunity, and judicially created substantive rules as exercises of legislative power that displace constitutional text, enacted law, jury determinations, and constitutionally guaranteed remedies.

50. Plaintiff challenges the coordinated enforcement and preservation of such restrictions by governmental actors where their application deprives litigants of

constitutional rights and prevents judicial review of the legality of governmental conduct.

51. Plaintiff's attorney and legal team engaged in protected conduct by investigating NPLS's practices, criticizing institutional misconduct, requesting records, advocating for accountability, and pursuing litigation and other governmental remedies on Plaintiff's behalf.

52. Plaintiff challenges adverse institutional responses to the legal team's criticism and petitioning, including participation involving county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs, because those responses burdened scrutiny of established legal-aid and professional actors.

53. Plaintiff challenges interference affecting county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs, alleging that Defendant's role through courtroom participation, judicial communications, and CJAB or advisory access decisions contributed to a coordinated adverse response to independent legal-service advocacy.

54. The coordinated conduct burdened Plaintiff's rights to speak and petition through her authorized representatives, increased the expense and difficulty of pursuing claims, and interfered with meaningful access to processes for protecting her property.

55. Plaintiff challenges unequal institutional access affecting SLAAY and other independent county legal-aid providers and community law-service nonprofits through county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs, including preferences for established networks and restrictions burdening independent counsel and comparable lawful participants.

56. Plaintiff challenges the substitution of judicially created restrictions for constitutional guarantees where the resulting governmental practices prevent adjudication under enacted law, remove factual disputes from constitutionally protected jury consideration, or deny litigants effective remedies.

57. Plaintiff identifies added legal expenses, loss of available affordable court assistance, legal-service referrals, and community legal-aid participation, diversion of SLAAY resources, and interference with investigation and pursuit of property-related remedies as injuries caused by the asserted joint conduct.

58. Plaintiff seeks declarations identifying the constitutional violations; preliminary and permanent injunctions against their continuation; damages and other relief available through the applicable federal civil-rights statutes; and preservation of her constitutional jury rights.

## COUNT III — CONSPIRACY TO VIOLATE THE PENNSYLVANIA CONSTITUTION

### Including, but Not Limited to, Article I, §§ 1, 6, 7, 11, 20, and 26; Article II, § 1; Article III, § 1; Constitutional Separation of Powers; and Other Applicable Provisions

59. Plaintiff incorporates paragraphs 1 through 58.

60. Plaintiff invokes the rights and structural protections guaranteed by the Pennsylvania Constitution, including, but not limited to, inherent rights relating to liberty and property; trial by jury; freedom of speech and expression; open courts and remedies by due course of law; peaceful assembly and petitioning for redress; equal enjoyment and exercise of civil rights; and the allocation of legislative and judicial governmental authority.

61. Article I, § 1 protects inherent and indefeasible rights, including the enjoyment and defense of life and liberty, acquiring, possessing, and protecting property, and pursuing happiness and safety.

62. Article I, § 6 guarantees that trial by jury shall be as heretofore and that the right thereof shall remain inviolate.

63. Article I, § 7 protects freedom of speech and communication and the right to speak, write, and print freely on any subject, subject to responsibility for abuse of that liberty.

64. Article I, § 11 provides for open courts and remedies by due course of law for injuries to lands, goods, person, or reputation, with right and justice administered without sale, denial, or delay.

65. Article I, § 20 protects peaceful assembly and the right to apply to those invested with governmental powers for redress of grievances by petition, address, or remonstrance.

66. Article I, § 26 prohibits the Commonwealth and its political subdivisions from denying any person the enjoyment of any civil right or discriminating in the exercise of civil rights.

67. Article II, § 1 vests Pennsylvania's legislative power in the General Assembly. Article III, § 1 declares that no law shall be passed except by bill and establishes constitutional requirements governing the legislative process.

68. Plaintiff challenges governmental practices that create or enforce generally binding substantive legal requirements through judicial opinions, precedent, common-law doctrines, or other exercises of judicial power in violation of the constitutional assignment and procedures for legislative authority.

69. Plaintiff further challenges the application of judge-made immunity doctrines, precedent-based restrictions, and court-created substantive barriers to extinguish constitutional rights, prevent jury adjudication, restrict judicial remedies, or insulate governmental and professional misconduct from review.

70. Plaintiff does not surrender these constitutional challenges by identifying existing judicial doctrines or by asserting claims concerning conduct carried out through court proceedings, decisions, orders, or judicial administration.

71. For the state constitutional conspiracy, Plaintiff challenges Defendant's participation through county judicial authority, courthouse access, USCBA participation, CJAB and behavioral-health advisory programs, and Wills for Heroes involvement, in connection with state governmental actors and practices governing legal-service recognition, public access, and the ability to petition for redress.

72. The asserted agreement affected county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs, which Plaintiff contends were used to burden independent legal representation, criticism of professional misconduct, and the pursuit of effective remedies.

73. The coordinated conduct burdened Article I, §§ 7 and 20 by restricting protected criticism and interfering with Plaintiff's ability to petition governmental bodies and courts through her chosen attorney and legal team.

74. The coordinated conduct burdened Article I, §§ 1 and 11 by impairing Plaintiff's ability to protect her property interests, obtain records, secure independent representation, and pursue judicial remedies without denial or delay.

75. The coordinated conduct burdened Article I, § 26 by favoring established governmental and professional participants while imposing discriminatory restrictions on independent representatives and persons challenging institutional misconduct.

76. Plaintiff invokes Article I, § 6 to preserve constitutionally protected jury adjudication and challenges governmental practices and judicially created doctrines that unlawfully displace the jury's constitutional function.

77. Plaintiff invokes Article II, § 1 and Article III, § 1 to challenge the coordinated use of governmental and judicial mechanisms to impose substantive legal requirements without constitutionally prescribed legislative authority.

78. The challenged Pennsylvania constitutional violations include Defendant's contribution through courtroom participation, judicial communications, and CJAB or advisory access decisions in connection with county judges, bar officers, courthouse administrators, CJAB participants, and local pro bono gatekeepers, thereby affecting access to affordable court assistance, legal-service referrals, and community legal-aid participation.

79. The coordinated constitutional deprivations injured Plaintiff through increased costs, diminished independent representation, interference with property-related remedies, restricted access to records, and impairment of protected advocacy and petitioning.

80. Plaintiff requests declaratory, preliminary and permanent injunctive, compensatory, and all other legally available relief for violations of the Pennsylvania Constitution, including relief against ongoing interference with constitutional jury rights, legislative authority, independent representation, protected expression, petitioning, and access to judicial remedies.

## COUNT IV — PENNSYLVANIA COMMON-LAW CIVIL CONSPIRACY

### Including Intentional Interference with Contractual and Prospective Contractual Relations, Retaliatory Interference, and Other Underlying Tortious Conduct

81. Plaintiff incorporates paragraphs 1 through 80.

82. Plaintiff invokes Pennsylvania civil conspiracy principles prohibiting concerted action to commit unlawful acts or accomplish lawful objectives by unlawful means, where participants agree to advance the wrongful objective, undertake acts implementing the agreement, and cause compensable injury through underlying wrongful conduct.

83. Plaintiff had an existing legal-services relationship with SLAAY and attorney Paige Martineau through which she obtained investigation, advocacy, record review, legal advice, and assistance pursuing remedies concerning the loss of her home and NPLS's abandonment.

84. Plaintiff asserts that Defendant's participation in USCBA, county courthouse, CJAB, mental-health advisory, and pro bono professional networks connected it to actors aware of the independent investigation of NPLS's deficient representation and the attorney criticism arising from that investigation.

85. Plaintiff challenges coordinated uses of county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs that protected established providers and burdened Plaintiff's contractual relationship with SLAAY and attorney Paige Martineau.

86. The alleged agreement operated through county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs and related institutional practices, which Plaintiff contends obstructed professional assistance, investigations, records, participation, or legal-service resources required to perform her legal-services agreement.

87. The asserted overt conduct includes Piecuch's involvement in courthouse and county justice-board participation decisions and professional responses to Martineau's criticism, allegedly burdening her retained legal-services work.

88. The underlying wrongful conduct includes intentional interference with Plaintiff's existing legal-services relationship, interference with prospective opportunities to obtain additional legal representation and professional assistance, retaliatory interference with legally protected advocacy, and other tortious acts committed in furtherance of the agreement.

89. Defendant and the other participants acted intentionally and without legitimate justification to impair independent investigation, preserve institutional advantages, discourage criticism, and interfere with Plaintiff's efforts to obtain remedies against established legal-service actors.

90. The participants acted through separate roles: Defendant addressed county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs, while other

participants controlled representation, courts, funding, referrals, or disciplinary practices. Plaintiff asserts those complementary acts advanced the wrongful purpose of obstructing independent scrutiny and assistance.

91. Interference affecting county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs increased the work required to pursue Plaintiff's legal claims, reduced access to affordable court assistance, legal-service referrals, and community legal-aid participation, and diverted resources from performance of her retained legal-services agreement.

92. Plaintiff suffered actual economic and legal-services injuries, including additional expenses, impairment of contractual benefits, loss of effective assistance, and diminished opportunities to pursue timely and meaningful remedies.

93. Plaintiff seeks compensatory damages, consequential damages, appropriate equitable relief, litigation costs, and all other relief authorized by Pennsylvania law for the conspiracy and its underlying tortious conduct.

## CLASS ACTION ALLEGATIONS

94. Plaintiff brings this action under Federal Rule of Civil Procedure 23 individually and on behalf of similarly situated persons who suffered constitutional or legally cognizable injuries from coordinated governmental retaliation, professional-access restrictions, obstruction of independent representation, unconstitutional judicially created restrictions, and interference with court-access systems.

95. Common questions include whether Defendant participated in coordinated governmental or institutional conduct; whether participants agreed to deprive constitutional rights; whether they used governmental power, court administration, professional gatekeeping, and judicially created restrictions to implement the agreement; and whether the conduct injured Plaintiff and the proposed class.

96. Additional common questions include the constitutional allocation of legislative and judicial authority; the continued operation of restrictions affecting protected speech, petitioning, civil jury rights, equal treatment, access to courts, and independent representation; and the availability of classwide declaratory and injunctive relief.

97. Plaintiff seeks certification of appropriate classes and subclasses under Rule 23, appointment of Plaintiff as class representative, and appointment of her counsel as class counsel.

**INJURIES AND CAUSATION**

98. Defendant's asserted participation concerning county courthouse procedures, professional communications, CJAB membership, behavioral-health committee access, and bar-linked public-service programs injured Plaintiff by increasing legal-service costs, diverting her legal team's resources, and restricting effective assistance in pursuing remedies after NPLS abandoned her.

99. Plaintiff suffered personal economic and property-related injuries distinct from the burdens imposed on the public generally. Her injuries include the additional legal

work and expense caused by interference with independent legal representation and the diminished practical ability to protect her property-related rights.

100. Plaintiff identifies Defendant's contribution through courtroom participation, judicial communications, and CJAB or advisory access decisions as part of the alleged combination of professional and governmental activities that burdened independent representation, constitutional petitioning, and access to lawful remedies.

101. Plaintiff requests relief sufficient to prevent further injury, preserve her constitutional and statutory rights, restore meaningful access to legal representation and judicial processes, and remedy compensable injuries caused by the challenged conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment in her favor and against Defendant as follows:

1. Certification of the proposed class and appropriate subclasses under Federal Rule of Civil Procedure 23.

2. A declaration that the challenged conspiracy deprived Plaintiff of rights secured by the United States Constitution, including, but not limited to, rights secured by the First, Seventh, and Fourteenth Amendments and other applicable constitutional guarantees.

3. A declaration addressing the challenged exercise of legislative power through binding judicial precedent, judicially created substantive law, common-law restrictions, judicial-immunity doctrines, and other governmental practices inconsistent with the constitutional allocation of legislative and judicial authority.

4. A declaration that the challenged coordinated conduct violated the Pennsylvania Constitution, including, but not limited to, Article I, §§ 1, 6, 7, 11, 20, and 26; Article II, § 1; Article III, § 1; and other applicable constitutional provisions.

5. Preliminary and permanent injunctive relief prohibiting continued interference with protected speech, association, petitioning, independent legal representation, constitutional jury rights, and access to judicial remedies.

6. Injunctive relief preventing continued enforcement of unconstitutional judicially created restrictions or governmental practices that unlawfully displace constitutional guarantees, legislative authority, jury adjudication, and access to legal remedies.

7. Injunctive relief requiring nondiscriminatory administration of court-access systems, public records, filing channels, and professional-access procedures.

8. Appropriate relief against ongoing retaliation for criticism of governmental and professional misconduct and interference with Plaintiff's authorized attorney and legal team.

9. Compensatory and consequential damages for legally cognizable constitutional, contractual, property-related, and tortious injuries.

10. Relief for Pennsylvania civil conspiracy and the underlying wrongful interference with Plaintiff's existing and prospective legal-services relationships.

11. Litigation costs and reasonable attorney fees under 42 U.S.C. § 1988 and other applicable law.

12. Declaratory and equitable relief under 28 U.S.C. §§ 2201–2202 and other applicable authority.

13. Preservation and production through lawful discovery of relevant institutional communications, court-administration records, professional-access records, agreements, and materials concerning Plaintiff and her authorized representatives.

14. All other relief that the Constitution, enacted statutes, and applicable law authorize.

**JURY DEMAND**

Plaintiff demands trial by jury on every issue triable by jury and expressly invokes the Seventh Amendment to the United States Constitution, Article I, § 6 of the Pennsylvania Constitution where applicable, and all other constitutional and statutory protections preserving civil jury adjudication.

Respectfully submitted,
/s/ Paige Martineau
Paige Martineau, Esq.
Pa. I.D. No. 325096
Susquehanna Legal Aid for Adults and Youth (SLAAY)
570-392-3025
info@slaay.org
Counsel for Plaintiff Laticia Hoagland and the Proposed Class