**IN THE UNITED STATES DISTRICT COURT**
**FORTHE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TONI ZIMMERMAN,<br><br>Plaintiff<br><br>*versus*<br><br>OLLIE'S BARGAIN OUTLET, INC and DYLAN THOMPSON,<br><br>Defendants | No:<br><br>Civil Action – Law<br><br>Jury Trial Demanded |

**COMPLAINT**

**Introduction**

1. This action arises from Ollie's discrimination and retaliation against Plaintiff Toni Zimmerman ("Zimmerman") after she requested reasonable accommodations for rheumatoid arthritis. Although Plaintiff already performed her recruiting duties on a hybrid schedule, Ollie's questioned whether she needed accommodation because she performed with her family band outside work. When Zimmerman challenged that position, supplied medical documentation, and complained expressly of ADA retaliation, Ollie's terminated her employment days later, citing bogus reasons.

**Parties**

2. Plaintiff Toni Zimmerman is an adult individual residing in Dauphin County, Pennsylvania.

3. Defendant Ollie's Bargain Outlet, Inc ("Ollie's") is a corporation conducting retail business in Pennsylvania and throughout the United States, with corporate offices at 6295 Allentown Boulevard and 6375 Flank Drive in Harrisburg, Dauphin County, Pennsylvania.

4. At all relevant times, Ollie's employed Zimmerman and employed at least fifteen employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and was an employer engaged in an industry affecting commerce within the meaning of the Americans with Disabilities Act ("ADA").

5. Ollie's also employed four or more persons within Pennsylvania and was an employer within the meaning of the Pennsylvania Human Relations Act ("PHRA").

6. Defendant Dylan Thompson, Esquire ("Thompson") is an adult individual who, at all relevant times, was employed as Corporate Counsel for Ollie's and participated in the conduct at issue at its corporate offices in

Dauphin County, Pennsylvania. He is sued in his individual capacity for aiding and abetting under the PHRA.

**Jurisdiction And Venue**

7. This Court has subject matter jurisdiction over Zimmerman's ADA claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 12117 and 12203.

8. This Court has supplemental jurisdiction over Zimmerman's PHRA claims pursuant to 28 U.S.C. § 1367 because those claims against Ollie's and Thompson arise from the same facts as her federal claims.

9. Venue is proper in this judicial district pursuant to 42 U.S.C. §§ 12117(a) and 2000e-5(f)(3), and 28 U.S.C. § 1391, because the unlawful employment practices occurred in Dauphin County, Pennsylvania, where Zimmerman worked for Ollie's and would have continued working but for Ollie's unlawful conduct.

10. This Court has personal jurisdiction over Thompson because the claim against him arises from his participation in the challenged employment actions in Pennsylvania.

**Administrative Proceedings**

11. Zimmerman timely filed an administrative charge against Ollie's with the Equal Employment Opportunity Commission ("EEOC"), alleging

disability discrimination, failure to accommodate, and retaliation arising from the events described herein. The charge expressly identified Thompson by name, described his participation in the challenged conduct, and alleged that he aided and abetted discrimination and retaliation in violation of the PHRA.

12. Zimmerman's charge was timely dual filed with the Pennsylvania Human Relations Commission ("PHRC"), more than one year has elapsed since that filing, and the PHRC has not resolved her claims through a conciliation agreement to which she is a party.

13. On August 25, 2026, the EEOC issued a Determination and Notice of Rights on Charge No. 530-2025-09929, dismissing the charge without a determination on its merits and notifying Zimmerman of her right to sue.

14. Zimmerman brings this action within ninety days of receipt of the EEOC's notice.

**Factual Allegations**

15. Ollie's hired Zimmerman as a Junior Recruiter on or about November 4, 2024.

16. Zimmerman remained employed with Ollie's until her termination on May 1, 2025.

17. Zimmerman's duties included recruiting candidates, assisting hiring managers with the selection process, and maintaining relationships with hiring managers, candidates, and new hires.

18. Zimmerman worked at Ollie's corporate offices in Harrisburg and reported to Melissa Valentino and Ginelle Miller.

19. From the beginning of her employment, Zimmerman worked a hybrid schedule, working remotely on Tuesdays and Fridays and in the office on the other three weekdays.

20. Other members of Zimmerman's recruiting team in the same or similar roles worked entirely remotely.

21. Zimmerman possessed the qualifications for her position and could perform its essential functions with reasonable accommodation during flares of her medical condition.

22. Zimmerman has rheumatoid arthritis, a chronic autoimmune disease that causes episodes of joint pain, swelling, stiffness, fatigue, and other symptoms.

23. When active, Zimmerman's condition substantially limits major life activities including performing manual tasks, caring for herself, moving,

and sleeping, and substantially limits the operation of her immune and musculoskeletal systems.

24. Zimmerman's symptoms fluctuate. Her ability to perform particular activities varies with the severity of a flare and the measures she takes to manage her symptoms.

25. Beginning in approximately March 2025, Zimmerman experienced an extended flare involving increasing pain and stiffness.

26. On April 9, 2025, Zimmerman sought treatment for severe wrist pain and received an injection before reporting to work. The provider recommended that she request a workplace accommodation.

27. After arriving at work, Zimmerman contacted Tracy Adams, Ollie's Director of HR Compliance and Associate Relations, through Microsoft Teams and requested guidance concerning the ADA accommodation process.

28. Zimmerman told Adams that she had rheumatoid arthritis, described her symptoms and treatment, and requested the ability to telework during flares and flexibility for related medical appointments or sick days.

29. Adams provided accommodation paperwork for Zimmerman's treating provider to complete. Zimmerman advised Adams that her next rheumatology appointment was April 28, 2025.

30. Zimmerman also requested temporary accommodations pending that appointment and the return of the completed paperwork.

31. Later on April 9, 2025, Tirza Shreiber, Ollie's Senior Vice President of Human Resources, met with Zimmerman. Upon information and belief, Shreiber already knew of Zimmerman's accommodation request.

32. During that meeting, Shreiber told Zimmerman, in substance, that an ADA accommodation was unnecessary and informed her that she was uninvited from Ollie's upcoming Spring Meeting, an event for which Zimmerman had been preparing.

33. Zimmerman responded that she was completing an ADA accommodation request.

34. On April 16, 2025, Zimmerman followed up with Adams about her continuing symptoms and the need to work remotely during a flare.

35. Adams permitted Zimmerman to work remotely on a temporary basis while awaiting the medical appointment and instructed her to keep Adams informed of her needs.

36. Zimmerman continued working under her regular hybrid schedule and the temporary arrangement. Her request concerned additional flexibility during flares, rather than an inability to perform recruiting work.

37. Outside of work, Zimmerman occasionally performed music with her husband and daughter in a family band.

38. On Friday, April 18, 2025, Zimmerman worked from home on her regularly scheduled remote day. Ollie's released employees early for the Easter holiday, and Zimmerman performed with her family band that evening.

39. Zimmerman's symptoms had improved by the time of the performance. She used wrist braces and a smaller, lighter guitar, sat for nearly the entire performance, and arranged the songs to limit her guitar playing.

40. On April 23, 2025, Adams summoned Zimmerman to her office and confronted her about that performance.

41. Adams told Zimmerman that the "optics" of performing with the band reflected poorly on her request for accommodation and indicated that she and Shreiber questioned whether Zimmerman needed any accommodation.

42. Adams conveyed, in substance, that Zimmerman's continued band performances could result in denial of her requested accommodation.

43. Zimmerman explained that rheumatoid arthritis flares and improves, that Ollie's did not know the measures she had taken to

accommodate herself during the performance, and that her activities outside work did not eliminate her need for workplace accommodation.

44. During the conversation, Zimmerman also explained that the family band performance was part of a fund-raising effort to go to Disney World with her sister who was fighting cancer. As a result of her termination, Zimmerman lost the ability to attend this final trip to Disney with her sister.

45. Zimmerman objected to the treatment of her accommodation request, stated that the conversation felt like bullying, and told Adams she intended to contact an attorney.

46. Zimmerman did not yell at Adams during this meeting. Although upset afterward, Zimmerman obtained Miller's permission before leaving work shortly before her scheduled departure time.

47. Zimmerman's coworker, Kerrie Kern, heard Zimmerman request and receive Miller's permission to leave.

48. On April 28, 2025, Adams directed Zimmerman to attend a meeting with Adams and Ollie's Corporate Counsel, Defendant Dylan Thompson.

49. During that meeting, Adams again challenged Zimmerman's entitlement to accommodation because she had performed with her family band.

50. Adams told Zimmerman, "You are like a little girl that doesn't want to go to school during the day but wants to go play with her friends at night."

51. Admas further indicated, in substance, that Ollie's would keep the band performance in its "back pocket" when evaluating her provider's accommodation recommendation.

52. Zimmerman again explained the episodic nature of her condition and the measures that enabled her to perform music. She stated that she was seeking ADA protection during flares, that she had contacted the EEOC and PHRC, and that her medical appointment to complete the paperwork was scheduled for later that day.

53. Adams and Thompson presented Zimmerman with a written warning dated April 28, 2025, accusing her of a pattern of unprofessional outbursts over the preceding two months.

54. The disciplinary warning expressly referenced Zimmerman's "alleged disability and requested accommodations," and acknowledged that the request remained under review.

55. Zimmerman disputes the claimed pattern of misconduct. Before requesting accommodation, she had not received the verbal or written warnings that Ollie's later suggested her conduct warranted.

56. Zimmerman objected that the warning was retaliatory and intimidating. She offered to sign it if the references to her disability and accommodation request were removed. Adams refused, and Zimmerman declined to sign.

57. As Zimmerman left the meeting, Adams accused her of recording the conversation on her telephone. Zimmerman denied recording the meeting.

58. Zimmerman did not record the April 28 meeting. Her statement that she knew her rights referred generally to the accommodation and disciplinary issues, rather than an admission that she was recording.

59. After the meeting, Zimmerman returned to her regular work location and met with Miller before leaving for her previously disclosed medical appointment.

60. On April 28, 2025, Robert Wimmer, PA-C, a provider involved in Zimmerman's rheumatology care at Penn State Health, completed Ollie's accommodation form.

61. The completed form described severe flares of joint pain, swelling, morning stiffness, fatigue, and brain fog, and identified working from home as an accommodation that would allow Zimmerman to continue performing her daily job duties while resting affected joints.

62. At 9:02 am on April 29, 2025, Zimmerman emailed Adams and Thompson with the subject "Formal Concern Regarding Accommodation Process and Retaliation" and attached the completed medical form.

63. In that email, Zimmerman expressly objected to conditioning accommodation on her activities outside work and stated that the written warning might constitute retaliation for asserting her ADA rights.

64. Zimmerman requested a formal review of the handling of her accommodation request and discipline, a legally compliant interactive process, and assurance against further retaliation. She also expressed her desire to resolve the matter and continue working for Ollie's.

65. At 9:09 am that same morning, Adams forwarded Zimmerman's email to Shreiber.

66. Neither Adams nor Thompson responded to Zimmerman's request for review or her complaint of retaliation.

67. Zimmerman worked from home on April 29, 2025, in accordance with her regular schedule. On April 30, 2025, she used paid time off with Miller's permission.

68. Ollie's prepared a termination notice dated April 30, 2025. On May 1, 2025, Adams and Thompson met with Zimmerman and informed her that her employment was terminated immediately.

69. During the termination meeting, Ollie's cited Zimmerman's supposed departure without permission and its conclusion that she had recorded the April 28, 2025 meeting.

70. The termination notice accused Zimmerman of unprofessional conduct and described Adams's and Thompson's conclusion that she had recorded the meeting without consent.

71. Ollie's stated reasons were false and pretextual. Zimmerman had obtained permission to leave, had denied recording the meeting, and had not made any recording.

72. Thompson was present when Adams challenged Zimmerman's need for accommodation at the April 28, 205 meeting, heard Zimmerman's objections and explanation of her disability, and participated in presenting the disputed written warning.

73. Thompson personally received Zimmerman's April 29, 2025 written complaint of ADA retaliation and her supporting medical documentation, and participated with Adams in communicating her discharge on May 1, 2025.

74. Upon information and belief, Thompson knowingly assisted Adams and Shreiber in implementing the challenged discipline and termination despite his knowledge of Zimmerman's disability, accommodation request, and complaints of retaliation.

75. Upon information and belief, Adams and Shreiber participated in the decisions to discipline and terminate Zimmerman and knew of her disability, accommodation requests, and objections to discrimination and retaliation.

76. Ollie's terminated Zimmerman two days after receiving her completed medical documentation and express written complaint of ADA retaliation, and approximately three weeks after her initial accommodation request.

77. Although Ollie's had permitted temporary remote work, it challenged Zimmerman's entitlement to continuing accommodation and

terminated her rather than completing a good-faith evaluation of her documented request.

78. Zimmerman remained willing and able to participate in the interactive process and to perform her essential duties with reasonable accommodation.

79. Working remotely during flares was feasible, as demonstrated by Zimmerman's existing remote schedule, the temporary arrangement, and the fully remote work performed by other recruiters in comparable roles.

80. Ollie's statements linking accommodation to Zimmerman's band performances, its treatment of her objections as misconduct, the false reasons for discipline and discharge, and the close timing support the inference that it acted because of her disability, her need for accommodation, and her protected activity.

81. As a direct and proximate result of Ollie's conduct, Zimmerman has suffered loss of employment, wages and benefits, emotional distress, humiliation, and other compensable harm.

## COUNT I
## ADA – Disability Discrimination
## *Against Defendant Ollie's Bargain Outlet, Inc*

82. Zimmerman incorporates the above paragraphs here.

83. Zimmerman is an individual with an actual disability within the meaning of the ADA because her rheumatoid arthritis substantially limits major life activities and major bodily functions when active. Alternatively, Ollie's regarded Zimmerman as having a physical impairment and acted against her because of that impairment.

84. Zimmerman was qualified to perform the essential functions of her Junior Recruiter position with reasonable accommodation during flares.

85. Ollie's knew of Zimmerman's disability and need for accommodation.

86. Ollie's discriminated against Zimmerman in the terms and conditions of her employment by issuing a pretextual written warning and terminating her employment because of her disability and need for reasonable accommodation.

87. Ollie's actions violated 42 U.S.C. § 12112(a) and (b)(5)(B).

88. Ollie's acted intentionally and with malice or reckless indifference to Zimmerman's federally protected rights, through senior human resources officials who knew she was asserting rights under the ADA.

89. As a direct and proximate result of Ollie's discrimination, Zimmerman suffered the damages described above.

**COUNT II**
**ADA – Failure to Accommodate**
***Against Defendant Ollie's Bargain Outlet, Inc***

90. Zimmerman incorporates the above paragraphs here.

91. Zimmerman had an actual disability and requested reasonable accommodation for known limitations associated with that disability.

92. Zimmerman informed Ollie's of her limitations, identified intermittent remote work during flares as an accommodation, and supplied the requested supporting medical documentation.

93. Zimmerman could perform the essential functions of her position with that accommodation, which would not have imposed an undue hardship on Ollie's.

94. Although Ollie's provided temporary flexibility, it failed to provide an ongoing reasonable accommodation by treating Zimmerman's outside

activities as grounds to withhold accommodation and terminating her instead of implementing an effective accommodation for future flares.

95. Ollie's failed to participate in good faith in the interactive process, and that failure prevented implementation of an available, effective accommodation that would have permitted Zimmerman to remain employed.

96. Ollie's conduct violated 42 U.S.C. § 12112(b)(5)(A) and caused Zimmerman to suffer the damages described above.

**COUNT III**
**ADA – Retaliation**
***Against Defendant Ollie's Bargain Outlet, Inc***

97. Zimmerman incorporates the above paragraphs here.

98. Zimmerman engaged in protected activity by requesting reasonable accommodation beginning April 9, 2025, objecting to Ollie's disability-related treatment of her request on April 23, 2025, and April 28, 2025, and submitting her April 29, 2025 written complaint of ADA retaliation and request for a lawful interactive process.

99. Zimmerman acted in good faith and reasonably believed that Ollie's threatened denial of accommodation and subsequent discipline violated her rights under the ADA.

100. Ollie's knew of Zimmerman's protected activity, including through Adams's receipt of her complaints and forwarding of the April 29, 2025 email to Shreiber.

101. Ollie's subjected Zimmerman to materially adverse actions, including threats concerning accommodation, a pretextual written warning, and termination, that would dissuade a reasonable employee from exercising ADA rights.

102. Zimmerman's protected activity was a but-for cause of Ollie's retaliatory actions. Ollie's contrary explanations were pretextual.

103. Ollies violated 42 U.S.C. § 12203(a), causing Zimmerman to suffer the damages described above and entitling her to the relief available under that provision.

**COUNT IV**
**ADA - Interference with Rights**
***Against Defendant Ollie's Bargain Outlet, Inc***

104. Zimmerman incorporates the above paragraphs here.

105. Zimmerman was exercising and attempting to enjoy her ADA rights by requesting and pursuing reasonable accommodation for rheumatoid arthritis.

106. Through Adams and Shreiber, Ollie's threatened to use Zimmerman's band performances as a basis for withholding accommodation, challenged her entitlement to ADA protection, and pressured her to choose between those activities and the accommodation she sought.

107. The threatened withholding of accommodation, reinforced during the April 28, 2025 disciplinary meeting, was reasonably likely to intimidate Zimmerman and interfere with her pursuit of ADA rights.

108. Ollie's conduct violated 42 U.S.C. § 12203(b), causing Zimmerman injury and entitling her to the relief available under that provision.

**COUNT V**
**PHRA - Disability Discrimination & Failure To Accommodate**
***Against Defendants Ollie's Bargain Outlet, Inc and Dylan Thompson***

107. Zimmerman incorporates the above paragraphs here.

108. Zimmerman had a non-job-related disability within the meaning of the PHRA and was qualified to perform the essential functions of her position with reasonable accommodation during flares of her rheumatoid arthritis.

109. Ollie's knew of Zimmerman's disability and her request for intermittent remote work during flares. That accommodation was feasible,

would have permitted her to perform her essential duties, and would not have imposed an undue hardship on Ollie's.

110. Ollie's discriminated against Zimmerman because of her disability and need for accommodation by issuing a pretextual written warning, failing to provide an available continuing reasonable accommodation, and terminating her employment.

111. Thompson knew of Zimmerman's disability and accommodation request through his participation in the April 28, 2025 meeting, Zimmerman's statements during that meeting, and his receipt of the completed medical documentation on April 29, 2025.

112. Thompson knowingly and substantially assisted Ollie's discriminatory conduct by participating with Adams in presenting the April 28, 2026 warning during the meeting at which Zimmerman's need for accommodation was challenged, participating in the incorrect conclusion that Zimmerman had recorded that meeting despite her denial, and participating with Adams in implementing and communicating her termination after receiving her medical documentation.

113. Upon information and belief, Thompson acted in a supervisory or management capacity in those matters and shared the discriminatory

purpose of the Ollie's officials responsible for the challenged actions. His assistance furthered the discriminatory discipline and termination and the resulting failure to implement a continuing reasonable accommodation.

114. Ollie's conduct violated 43 P.S. § 955(a).

115. By knowingly aiding and abetting those unlawful discriminatory practices, Thompson violated 43 P.S. § 955(e) and is individually liable for his participation.

116. As a direct and proximate result of Defendants' conduct, Zimmerman suffered lost wages and benefits, emotional distress, humiliation, and other compensable harm.

**COUNT VI**
**PHRA – Retaliation**
***Against Defendants Ollie's Bargain Outlet, Inc and Dylan Thompson***

117. Zimmerman incorporates the above paragraphs here.

118. Zimmerman engaged in protected activity by requesting reasonable accommodation and opposing in good faith the treatment of her accommodation request and the discipline that followed, including her objections on April 23 and April 28, 2025, and her April 29, 2025 written complaint of retaliation.

119. Ollie's knew of Zimmerman's protected activity through its human resources officials and Thompson, including Adams's receipt of Zimmerman's April 29, 2025 complaint and forwarding of that complaint to Shreiber.

120. Ollie's subjected Zimmerman to materially adverse treatment, including threats concerning accommodation, a pretextual written warning, and termination. Zimmerman's protected activity was a but-for cause of those retaliatory actions, and Ollie's stated reasons were pretextual.

121. Thompson knew of Zimmerman's protected activity because he heard her objections during the April 28, 2025 meeting and personally received her April 29, 2025 written complaint alleging retaliation and requesting a lawful interactive process.

122. Thompson knowingly and substantially assisted Ollie's retaliation by participating in presenting the April 28, 2025 warning after Zimmerman had challenged the treatment of her accommodation request, participating in the asserted recording accusation, and participating with Adams in implementing and communicating her termination after receiving the April 29 complaint.

123. Upon information and belief, Thompson acted in a supervisory or management capacity in those matters and shared the retaliatory purpose of the Ollie's officials responsible for the challenged actions. He intentionally

assisted the use of the disputed misconduct allegations to carry out Zimmerman's retaliatory discipline and discharge.

124. Ollie's conduct violated 43 P.S. § 955(d).

125. By knowingly aiding and abetting those unlawful retaliatory practices, Thompson violated 43 P.S. § 955(e) and is individually liable for his participation.

126. As a direct and proximate result of Defendants' retaliation, Zimmerman suffered lost wages and benefits, emotional distress, humiliation, and other compensable harm.

**Prayer For Relief**

Zimmerman respectfully requests judgment in her favor and against Defendants, according to their respective liability and jointly and severally to the extent permitted by law, for:

A. Back pay, lost benefits, and other recoverable economic losses;

B. Reinstatement or, in lieu of reinstatement, front pay;

C. Compensatory damages, including damages for emotional distress and humiliation, under Counts I, II, V, and VI to the extent permitted by law;

D. Punitive damages under Counts I and II to the extent permitted by 42 U.S.C. § 1981a;

E. Declaratory and appropriate injunctive relief, including correction of Ollie's personnel records to remove unlawful discipline;

F. All other relief available under 42 U.S.C. § 12203(c) for the retaliation and interference claims;

G. Reasonable attorney's fees, litigation expenses, and costs under 42 U.S.C. § 12205 and 43 P.S. § 962(c.2), as applicable;

H. Prejudgment and postjudgment interest as permitted by law; and

I. Such other and further relief as the Court deems just and proper, without duplicative recovery.

**Jury Demand**

Zimmerman demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Anthony T Bowser
Anthony T Bowser (PA 204561)
Krevsky Bowser LLC
20 Erford Road, Suite 300A
Lemoyne, PA 17043
(717) 731-8600
abowser@krevskybowser.com
*Counsel for Plaintiff*