**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JUSTIN TURNER<br>444 N. 5th Street<br>Newport, PA 17074<br><br>Plaintiff,<br><br>v.<br><br>STEVE SHANNON TIRE COMPANY, INC.<br>920 Millville Road<br>Bloomsburg, PA 17815<br><br>Defendant. | CIVIL ACTION<br><br>CASE NO.:<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Mr. Justin Turner ("Plaintiff," or "Mr. Turner"), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Mr. Turner has initiated this action to redress violations by Steve Shannon Tire Company, Inc. ("Defendant") of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. § 12101 et seq.); the Family and Medical Leave Act ("FMLA" - 29 U.S.C. § 2601 et seq.); and the Pennsylvania Human Relations Act ("PHRA" - 43 P.S. § 951 et seq.).

2. Mr. Turner alleges, *inter alia*, that Defendant refused to accommodate his disabilities and terminated him while he was still out on protected medical leave because he was not "fully healed."

3. As a direct consequence of Defendant's unlawful actions, Mr. Turner seeks damages as set forth herein.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. This Court has supplemental jurisdiction over Plaintiff's state law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as his federal claims asserted herein.

5. This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

6. Pursuant to 28 U.S.C. § 1391(b)(1)-(2), venue is properly laid in this district because the events giving rise to this lawsuit occurred here and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

7. On or about April 21, 2025, Mr. Turner dual-filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").

8. Mr. Turner has properly exhausted his administrative remedies before initiating this action by timely dual-filing his Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving the EEOC's Right-to-Sue letter.

## PARTIES

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Mr. Turner is an adult individual, with an address as set forth in the caption.

11. Defendant is a privately held Pennsylvania business corporation with a principal place of business as set forth in the caption where it employed Plaintiff.

12. Defendant owns and operates approximately 53 tire and automotive service retail locations across Pennsylvania, New Jersey, and New York.

13. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

14. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15. In or about May 2023, Defendant hired Mr. Turner as a Driver and later promoted him to Commercial Tire Salesman until unlawfully terminating his employment on or about January 20, 2025, as discussed herein.

16. Throughout his employment, Mr. Turner was a hard-working and dedicated employee with little or no history of performance or discipline concerns.

17. On or about May/June 2024, Mr. Turner suffered a severe injury to his right arm, resulting in chronic and significant physical limitations. Specifically, after reconstructive surgery, Mr. Turner continues to experience chronic pain and other symptoms and complications as a result of a large recurring cyst in his right arm/wrist.

18. Mr. Turner's injuries, at times, substantially limit his ability to perform daily life activities such as lifting, grasping, and using his hand/arm.

19. As a result of these aforementioned disabilities, Mr. Turner required reasonable accommodations in the form of light-duty work, the ability to wear a wrist brace at work, and (intermittent and/or block) medical leave.

20. From approximately July 2024 through October 2024, Mr. Turner performed his role as Commercial Tire Salesman, but (at times) required limited assistance. Specifically, if a large commercial tire had to be pulled as part of an order, another employee would assist Mr. Turner.

21. This modified duty arrangement and limited assistance were reasonable accommodations and allowed Mr. Turner to perform the essential functions of his job, namely selling tires.

22. These accommodations did not impose an undue hardship on Defendant as evidenced by Mr. Turner's continued performance of his role for nearly four (4) months without issue.

23. Defendant's management even initially stated on several occasions that they could hire someone just to help Mr. Turner if he wanted or needed extra assistance. However, Mr. Turner only needed assistance lifting heavy tires sporadically and was performing his job with no issues.

24. On or about October 25, 2024, Mr. Turner was preparing to undergo another surgical procedure on his arm and was diagnosed with anemia after pre-surgical testing.

25. Mr. Turner's anemia, at times, also substantially limited his ability to perform major life activities such as, without limitation, regulating his hemoglobin, exerting himself, and controlling bleeding.

26. After seeking treatment from a gastroenterologist for his aforementioned disabilities, Mr. Turner notified Defendant's Human Resources ("HR") of his serious medical condition/disabilities and commenced a twelve (12) week block medical leave of absence (under the FMLA) to undergo further diagnostic testing and treatment.

27. On or about January 10, 2025, Mr. Turner's gastroenterologist submitted Defendant's Fitness for Duty certification in connection with the anticipated conclusion of his FMLA leave on or about January 20, 2025.

28. Mr. Turner's GI doctor cleared him to return to work with temporary modified-duty lifting restrictions (associated with his anemia).

29. Thereafter, on or about January 14, 2025, Defendant's HR Manager Jim Whitmire ("Whitmire") contacted Mr. Turner to inform him that Mr. Turner's FMLA would "run out" on January 20, 2025, and inquired if he was planning on returning to work.

30. Mr. Turner stated that he was ready to return to work with light-duty restrictions, and had a follow-up appointment with his gastroenterologist scheduled for January 22, 2025. Whitmire said he would discuss Mr. Turner's situation with the "owners" and call Mr. Turner back.

31. Later that day, Whitmire called Mr. Turner again and told him that the owners would not accept him back on light duty, or with any restrictions, and that his employment was to be terminated effective January 20, 2025.

32. Mr. Whitmire further informed Mr. Turner that he could reapply **once he was "fully healed" and able to perform his job (without accommodations).**

33. Defendant made this decision without conducting an individualized assessment of Mr. Turner's ability to perform the essential functions of his position with reasonable

accommodations, notwithstanding his prior successful performance of the position with limited assistance and his physician's authorization to return to work with temporary restrictions.

34. Mr. Turner opposed this blatantly discriminatory employment practice and attempted to engage in an interactive process, but Whitmire confirmed the termination via letter later that same day.

35. To be clear, Defendant: (1) terminated Mr. Turner while he was still on protected FMLA leave; (2) refused to allow Mr. Turner to return to work in a “light duty” capacity; (3) refused to engage in an interactive process to determine if other accommodations were possible; (4) refused to consider or allow Mr. Turner additional intermittent or block medical leave; (5) did not wait to see if Mr. Turner’s doctor cleared him to return with or without restrictions as of his follow-up appointment on January 22, 2025; and (6) required him to be “fully healed” without the need for any accommodations before allowing him to return to work.

**COUNT I**
**<u>Violations of the ADA</u>**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Plaintiff suffers from qualifying health conditions under the ADA, which at times substantially limited one or more major life activities (as set forth *supra*).

38. Despite Plaintiff’s aforementioned health conditions and limitations, he was still qualified and able to perform the essential functions of his position with Defendant.

39. Prior to his termination, Plaintiff disclosed his aforementioned disabilities/serious medical conditions to Defendant's management and requested accommodations shortly before Defendant terminated his employment.

40. Plaintiff therefore avers that his actual/perceived disabilities or record of impairment were a motivating/determinative factor in the termination of his employment with Defendant.

41. Plaintiff avers that Defendant failed to engage in an interactive process, refused to reasonably accommodate him, and/or that he was terminated in retaliation for engaging in protected activity (requesting or utilizing accommodations) under the ADA.

42. Defendant's actions constitute violations of the ADA.

**COUNT II**
**Violations of the PHRA**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**

43. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44. Plaintiff suffers from qualifying health conditions under the PHRA, which at times substantially limited one or more major life activities (as set forth supra).

45. Despite Plaintiff's aforementioned health conditions and limitations, he was still qualified and able to perform the essential functions of his position with Defendant.

46. Prior to his termination, Plaintiff disclosed his aforementioned disabilities/serious medical conditions to Defendant's management and requested accommodations shortly before Defendant terminated his employment.

47. Plaintiff therefore avers that his actual/perceived disabilities or record of impairment were a motivating/determinative factor in the termination of his employment with Defendant.

48. Plaintiff avers that Defendant failed to engage in an interactive process, refused to reasonably accommodate him, and/or that he was terminated in retaliation for engaging in protected activity (requesting or utilizing accommodations) under the PHRA.

49. Defendant's actions constitute violations of the PHRA.

**COUNT III**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Interference and Retaliation)**

50. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(2)(A).

52. Plaintiff had been employed by Defendant for at least twelve months and provided Defendant with appropriate notice of his need for protected leave.

53. During the twelve-month period immediately preceding his use of the FMLA leave at issue, Plaintiff had worked at least 1,250 hours for Defendant.

54. Defendant is engaged in an industry affecting commerce and employed fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or preceding calendar year, pursuant to 29 U.S.C. § 2611(4)(A)(i).

55. Plaintiff was entitled to receive leave pursuant to 29 U.S.C. § 2612(a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

56. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff while he was out on FMLA leave; (2) terminating Plaintiff in retaliation for using FMLA qualifying leave; (3) refusing to restore Plaintiff to his previous position at the conclusion of his FMLA leave; and (4) taking actions toward him that would dissuade a reasonable person from exercising his or her rights under the FMLA.

57. Defendant's foregoing actions constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, overtime, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered unlawful employment practices, retaliation, and discrimination at the hands of Defendant until the date of verdict;

B. Plaintiff is to be awarded liquidated and punitive damages, as permitted by applicable law(s) asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including compensatory damages including damages for emotional distress;

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law;

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com

Dated: October 22, 2026