**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RYAN TROUTMAN, | ) | |
| | ) | CIVIL ACTION NO: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CATERPILLAR, INC., | ) | |
| | ) | *ELECTRONICALLY FILED* |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Ryan Troutman, by and through his attorneys, Weisberg Cummings, P.C., brings this civil action for damages against the above-named Defendant, Caterpillar, Inc., demands a trial by jury, and complains and alleges as follows:

## JURISDICTION AND VENUE

1. This Complaint alleges illegal discrimination on the basis of Plaintiff's disability, in violation of the laws and statutes of the United States of America, specifically, the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 (the "ADA"), 42 U.S.C. §12101 *et seq*.

2. Jurisdiction over this Complaint is based upon federal question jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, in that this District Court for the Middle District of Pennsylvania has original jurisdiction of all civil actions arising under the laws of the United States.

3. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this Judicial District, and because the unlawful discrimination practices that are the subject of this action were committed in this Judicial District.

4. Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5. Plaintiff, Ryan Troutman ("Mr. Troutman" or "Plaintiff") is an adult individual currently residing in York County, Pennsylvania.

6. Mr. Troutman has a disability, namely severe anxiety which, among other things, visibly affects Mr. Troutman's ability to interact with others; furthermore, Mr. Troutman sustained a severe, permanent injury to his dominant index finger during the course of the events described hereinafter, which affects his ability to grasp and manipulate objects.

7. Defendant, Caterpillar, Inc. ("Defendant"), is a corporation that operates multiple locations across the United States and is headquartered at 5205 North O'Connor Boulevard, Irving, Dallas County, Texas.

8. At all times relevant to this Complaint, Defendant owned and operated the facility located at 600 Memory Lane, York, York County, Pennsylvania (the "Facility").

9. At all times relevant to this Complaint, Defendant employed in excess of fifty (50) employees, making Defendant an "employer" as defined under the ADA.

**ADMINISTRATIVE PROCEEDINGS**

10. On or about July 22, 2026, Mr. Troutman initiated a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") which was later formalized and docketed as Charge No. 530-2026-05941, with instructions to be cross-filed by the EEOC with the Pennsylvania Human Relations Commission (the "PHRC").[1]

11. Mr. Troutman has been advised of his right to sue in federal court by Notice of Right to Sue issued by the EEOC on or about July 28, 2026.

12. All necessary and appropriate administrative prerequisites have occurred.

**STATEMENT OF FACTS**

13. On or about October 22, 2025, Mr. Troutman was hired by Defendant as a Material Handler at the Facility.

14. Mr. Troutman is an individual with a disability, namely severe anxiety, which affect his ability to interact with others and emotionally regulate.

[1] Mr. Troutman intends to amend his complaint to include state claims for disability discrimination under the Pennsylvania Human Relations Act once those become ripe, one year from the date of their filing.

15. Mr. Troutman was fully capable of performing the duties of a Material Handler without reasonable accommodation.

16. During the course of his employment, Mr. Troutman frequently worked alongside Jim (last name unknown), Material Handler.

17. Among the job duties of Material Handlers with Defendant, Mr. Troutman and Jim operated forklifts, industrial vehicles, and other heavy machinery.

18. Jim would frequently report to work smelling strongly of alcohol and would exhibit other indicators of intoxication, including slurred speech.

19. Mr. Troutman witnessed this behavior regularly, and, given the nature of the job duties of a Material Handler, Jim's apparent intoxication exacerbated Mr. Troutman's anxiety.

20. Each time Mr. Troutman had cause to believe that Jim was intoxicated while at work, he consistently notified Defendant of Jim's apparent intoxication.

21. Upon information and belief, other Material Handlers notified Defendant of Jim's apparent intoxication multiple times throughout Mr. Troutman's tenure.

22. On or about November 18, 2025, Mr. Troutman sustained a severe and permanent injury to his right (dominant) index finger as a result of Jim's behavior.

23. As treatment for the injury, Mr. Troutman underwent emergency care and physical therapy, and was subsequently placed on work restrictions.

24. As a result of the injury, Mr. Troutman continues to experience pain, numbness, weakness, and tingling in his right index finger, which impairs his ability to grasp and manipulate objects.

25. Because the residual effects of the injury to Mr. Troutman's right finger are expected to be permanent and substantially limit the major life activities above, this injury constitutes a disability for purposes of the ADA.

26. Despite the injury, Mr. Troutman continued to work and was able to perform the duties of a Material Handler within his medical restrictions.

27. As part of Mr. Troutman's treatment regimen, Mr. Troutman was required to wear a protective cone and/or splint around his right index finger.

28. During Plaintiff's treatment for the injury, Rodney Jackson, Defendant's Supervisor, would regularly mock and draw attention to Mr. Troutman's injury.

29. As a result of the behavior of Mr. Jackson, Mr. Troutman experienced embarrassment and shame.

30. Mr. Troutman frequently requested that Mr. Jackson stop ridiculing his injury; Mr. Jackson did not desist.

31. On or about April 20, 2026, Defendant summoned Mr. Troutman to a Human Resources meeting to conduct an investigation into his side business, which were unrelated to and entirely separate from Defendant's operations.

32. Mr. Troutman cooperated throughout the investigation and answered all of Defendant's questions honestly.

33. However, because of the surprise nature of the meeting and the aggressive interrogation-style of Defendant's Human Resources Representative, Dayana, Mr. Troutman's severe anxiety was triggered.

34. At least three (3) times throughout the meeting, Mr. Troutman explained to Dayana the nature of his disability, the extent and nature of his symptoms, and notified her that the meeting was triggering his disability, causing him to become increasingly overwhelmed and distressed.

35. Dayana continued the meeting and completely disregarded Mr. Troutman's notice and request for accommodation within that meeting.

36. The following day, April 21, 2026, Mr. Troutman called off sick from work because the meeting had so exacerbated his disability, Mr. Troutman was unable to safely perform the duties of a Material Handler.

37. The day after, April 22, 2026, Mr. Troutman reported to work, but was unable to access the Facility because his security badge had been deactivated.

38. When Mr. Troutman inquired as to why his security badge had been deactivated, Defendant's Plant Manager met with him to explain that Mr. Troutman had been suspended for calling off sick because of his disability.

39. Mr. Troutman explained to Defendant's Plant Manager that his disability had been exacerbated by the meeting with Human Resources.

40. Defendant's Plant Manager informed Mr. Troutman that he would need to provide a note from his doctor explaining the absence.

41. Mr. Troutman promptly consulted with his treating physician and provided the necessary note when he reported to work the following day, April 23, 2026.

42. Upon reporting to his work station on April 23, 2026, Mr. Jackson instructed Mr. Troutman to report to the front of the Facility because he was being suspended again.

43. Mr. Troutman was not informed of the reason(s) for the second suspension.

44. When Mr. Troutman met with Defendant's management at the front of the Facility, there was no union representative present, as required by the bargaining agreement for meetings regarding discipline.

45. Mr. Troutman requested that a union representative be present for the meeting.

46. Defendant notified Mr. Troutman of the suspension, but refused to provide or contact a union representative.

47. Mr. Troutman, being deprived of union representation as required by the bargaining agreement, and having been suspended again, left the Facility.

48. Defendant responded by terminating Mr. Troutman's employment.

49. At all times material hereto, Defendant was aware of Mr. Troutman's disabilities.

50. Defendant's stated reason for terminating Mr. Troutman's employment was a mere pre-text to rid itself of a disabled employee.

51. By terminating Mr. Troutman after he took medical leave to treat his disability, Defendant discriminated against Mr. Troutman on the basis of his disability.

52. In terminating Mr. Troutman on the basis of his disability, Defendant violated the ADA.

## COUNT I

### VIOLATIONS OF THE ADA
### *DISABILITY DISCRIMINATION*

53. All prior paragraphs are incorporated herein as if set forth fully below.

54. Mr. Troutman is within the protected class of individuals as designated by the ADA.

55. Mr. Troutman is a qualified individual with a disability.

56. At all times relevant to this Complaint, Mr. Pawlicki was qualified for and able to perform the essential functions of the Material Handler without accommodation.

57. Defendant was well aware of Mr. Troutman's disability and the symptoms thereof as he notified both Human Resources and the Plant Manager.

58. As previously set forth above, Defendant terminated Mr. Troutman on the basis of his disability.

59. As a direct and proximate result of Defendant's conduct in violating the ADA by discriminating against Mr. Troutman on the basis of his disability, Mr. Troutman has been permanently and irreparably harmed and damaged and has and will continue to lose benefits of employment such as lost earnings, lost employment benefits, and has been subjected to great damage to his career and professional standing, and non-economic damages in the form of emotional distress, embarrassment, humiliation, anxiety, and a loss of self-respect and confidence.

60. Defendant's discrimination against Mr. Troutman on the basis of his disability constitutes a violation of the ADA.

WHEREFORE, Plaintiff, Ryan Troutman, respectfully requests that this Honorable Court declare the conduct engaged in by Defendant, Caterpillar, Inc., to be in violation of Mr. Troutman's rights under the ADA and award all compensatory damages, lost wages (and raises) and benefits, front pay and back pay, lost future

earning capacity, damages for emotional distress, punitive damages, reasonable attorneys' fees and costs incurred herein, and any pre and/or post judgment interest on all money awarded in damages for delay, together with any other relief available under the ADA.

## DEMAND FOR JURY

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

Respectfully submitted,

**WEISBERG CUMMINGS, P.C.**

Dated: October 23, 2026

*/s/Steve T. Mahan*
Steve T. Mahan (PA 313550)
smahan@weisbergcummings.com

*/s/Derrek W. Cummings*
Derrek W. Cummings (PA 83286)
dcummings@weisbergcummings.com

*/s/Larry A Weisberg*
Larry A. Weisberg (PA 83410)
lweisberg@weisbergcummings.com

*/s/Michael J. Bradley*
Michael J. Bradley (PA 329880)
mbradley@weisbergcummings.com

2704 Commerce Drive, Suite B
Harrisburg, PA 17110
(717) 238-5707
(717) 233-8133 (FAX)