**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERIN DIXON**,<br>Plaintiff,<br><br>v.<br><br>**THE PENNSYLVANIA HOUSE OF REPRESENTATIVES DEMOCRATIC CAUCUS**,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br>No.<br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Erin Dixon, by and through her attorney, as and for her Complaint against Defendant The Pennsylvania House of Representatives Democratic Caucus, alleges as follows:

## INTRODUCTION

1. This action arises from Defendant Pennsylvania House of Representatives Democratic Caucus ("Defendant") termination of Plaintiff Erin Dixon ("Plaintiff") after Plaintiff reported discrimination to Defendant's senior leadership.

2. Plaintiff brings this action to recover for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Equal Pay Act of 1963, 29 U.S.C. 206(d), and the Family and Medical Leave Act of 1993 ("FMLA"), 29 USCS § 2601 et seq. and 5 USCS § 6381, and seeks all damages and other relief available under law, including costs, and reasonable attorneys' fees.

## PARTIES

3. Plaintiff Erin Dixon is an African American individual residing at 215 Holly Lane, Lancaster, PA 17602. Plaintiff was employed by Defendant in Pennsylvania.

4. Defendant is a legislative caucus of the Pennsylvania House of Representatives with offices and operations in Harrisburg, Pennsylvania. Defendant employed Plaintiff and is an employer within the meaning of the applicable federal statutes.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6. This Court has federal-question jurisdiction over the claims asserted because the plaintiff presents claims arising under federal law.

7. This Court has personal jurisdiction over the Defendant because it is an entity under the laws of Pennsylvania with its principal place of business located at 123 Irvis Office Building, Harrisburg, PA 17120, making it essentially at home in this forum.

8. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) because the alleged unlawful employment practices occurred in the Middle District of Pennsylvania and Plaintiff worked within the Middle District of Pennsylvania. Venue is also proper under 28 U.S.C. § 1391(b) because Defendant resides in the Middle District of Pennsylvania and a substantial part of the events giving rise to the claims occurred here.

**ADMINISTRATIVE PREREQUISITES**

9. Plaintiff has satisfied the administrative prerequisites applicable to the claims asserted in this action, as set forth below.

10. On August 30, 2024, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2024-09167, naming Defendant and alleging the discrimination and harassment and retaliation underlying this action. A true and correct copy is attached as *Exhibit A*.

11. On January 21, 2025, the EEOC issued a Determination where it found reasonable cause to believe that Defendant violated Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act of 1963, as amended, and the Age Discrimination in Employment Act of 1967, as amended. A true and correct copy is attached as *Exhibit B*.

12. The EEOC issued a Notice of Right to Sue on August 5, 2026. A true and correct copy is attached as *Exhibit C*. This action is being commenced within ninety days after receipt of that notice as to the Title VII claim.

**FACTUAL BACKGROUND**

13. On August 26, 2002, Defendant hired Plaintiff as a Research Analyst.

14. Throughout her employment, Plaintiff successfully performed her assigned duties and received positive feedback from her supervisors and promoted.

15. Alycia Laureti, a Caucasian female, at all times relevant to this Complaint, was a Research Analyst II with Defendant at a salary of approximately $56,394.

16. At the time that Ms. Laureti joined the same team, Plaintiff held the same title, had substantially greater tenure with Defendant, and earned approximately $51,662.

17. After learning of the disparity, Plaintiff raised concerns with her supervisor, Chris Wakeley, and Representative Jim Roebuck, then-Chair of the House Education Committee. Representative Roebuck raised Plaintiff's concerns with Defendant's leadership, including then-Chief of Staff Paul Parsells.

18. Defendant subsequently provided Plaintiff an equity adjustment. Even after the adjustment, however, Plaintiff’s compensation remained less than Laureti despite Plaintiff's greater tenure.

19. In July 2018, Defendant again adjusted Plaintiff's compensation to match Laureti's salary, but did not compensate Plaintiff for the years during which she had been paid less.

20. In approximately August 2019, Defendant required Plaintiff to assume substantial additional duties after Wakeley was removed from certain Caucus responsibilities. Plaintiff continued performing her own duties while also performing duties associated with Wakeley's Executive Director responsibilities.

21. Plaintiff performed those additional duties for approximately two years without additional compensation. Other employees who assumed additional responsibilities received new titles and corresponding salary adjustments, but Plaintiff did not.

22. In January 2021, Defendant appointed Plaintiff to Executive Director of the House Education Committee. Plaintiff did not apply for the position and was not consulted before being appointed. Defendant provided Plaintiff with only approximately a two-percent

salary increase and did not provide adequate training or supervisory support despite Plaintiff's requests.

23. Plaintiff understood that employees who advanced from Research Analyst positions to Executive Director positions had received substantially larger salary increases, including increases of approximately twenty to thirty percent or more.

24. Plaintiff raised her compensation concerns with Chief of Staff Paul Parsells, who responded, "who said you were getting a raise." Plaintiff also raised the issue with her supervisor, Representative Mark Longietti, who told Plaintiff that compensation decisions were handled through Human Resources.

25. In December 2021, Plaintiff met with then-Deputy Chief of Staff Gabe Speece and explained that she was not being fairly compensated compared with other Executive Directors. Plaintiff provided information showing that employees with less experience and less complicated committee assignments were receiving higher salaries.

26. In February 2021, Representative Longietti raised staff salary inequities with Defendant's leadership. Defendant did not resolve Plaintiff's compensation concerns.

27. Defendant continued to pay other Executive Directors substantially more than Plaintiff during 2022 and 2023, including employees with fewer years of service and, in certain instances, less experience with Defendant.

28. Plaintiff earned approximately $74,724 in January 2023 and approximately $80,048 in February 2024 despite her approximately twenty-two years of service and responsibilities as Executive Director of the Education Committee.

29. In 2023, Defendant hired Ryan Beaston, a Caucasian male from outside the legislature, as an Executive Director at a starting salary of approximately $85,000. Defendant also increased the salaries of other Executive Directors, including Caucasian male employees, while Plaintiff's compensation remained substantially lower.

30. Based on the compensation disparities, Plaintiff believes that race and sex were factors in Defendant's treatment of her compensation.

31. In March 2023, Plaintiff formerly complained of discrimination to her supervisor and newly appointed Chair of the House Education Committee, Representative Peter Schweyer. Representative Schweyer forwarded Plaintiff's complaint to Defendant's Human Resources Department.

32. In April 2023, Plaintiff met with Lee Ann Murray, legal counsel to Defendant's Human Resources Department, concerning her complaint. Murray advised Plaintiff that Defendant would investigate.

33. After receiving no meaningful response for several months, Plaintiff followed up with Murray on September 5, 2023. On September 6, 2023, Murray advised Plaintiff that her investigation had not found evidence that race, gender, or age influenced the decisions concerning Plaintiff's salary.

34. Plaintiff disputed Defendant's conclusion and continued providing information concerning the compensation disparities. On October 23, 2023, Plaintiff provided Murray with additional information concerning the substantially higher compensation received by other Executive Directors, including Caucasian male employees who received larger increases upon becoming Executive Directors.

35. Plaintiff also reported that certain Caucasian female Executive Directors had received salary adjustments bringing their compensation into parity with Caucasian male Executive Directors, while Plaintiff remained paid less.

36. Plaintiff met with Murray again on November 6, 2023. Defendant did not provide Plaintiff with any further substantive response resolving her complaint.

37. After Plaintiff complained about discrimination, Defendant and its leadership subjected Plaintiff to increased scrutiny and treatment that she had not previously experienced.

38. Defendant excluded Plaintiff from information and meetings necessary to perform her job, failed to provide adequate staffing and resources, and treated her differently from other Executive Directors.

39. Defendant required Plaintiff to perform her Executive Director duties without adequate staffing, training, workspace, or support. In March 2023, Plaintiff requested a more functional workspace but was told that her existing desk could not be removed because of preservation restrictions. Plaintiff consequently continued working without adequate storage and filing space.

40. In August 2023, Plaintiff's infant son was hospitalized for several days, and Plaintiff took approved leave. Plaintiff also had a previously scheduled medical procedure later that month and submitted the required leave documentation.

41. On August 31, 2023, Defendant's Chief of Staff, Anne Baloga, and Deputy Chief of Staff Ali Thomas met with Plaintiff and had a discussion which Plaintiff experienced as

pressure concerning her use of approved leave and the difficulties she was having in her position.

42. Plaintiff remained in her Executive Director position after a subsequent meeting on September 7, 2023. Defendant continued to provide Plaintiff with inadequate staffing and resources and failed to provide the training she had requested.

43. In January 2024, Plaintiff raised concerns about the job performance of one of her direct reports, Gelina Garofalo, including work errors that Plaintiff had been required to correct. Plaintiff's concerns were not meaningfully addressed.

44. Shortly thereafter, on March 20, 2024, Defendant placed Plaintiff on a performance improvement plan ("PIP"), despite Plaintiff's approximately twenty-two years of employment without an unsatisfactory performance review or comparable formal discipline.

45. The PIP alleged, among other things, that Plaintiff was late, missed session days, improperly used her cell phone during meetings, and engaged in inappropriate conduct toward supervisors and coworkers.

46. Plaintiff disputed those allegations and informed Human Resources that her absences and schedule changes had been submitted and approved. Plaintiff also explained that her supervisor had instructed her to use her phone during meetings to communicate scheduling information.

47. Plaintiff further disputed allegations that she was hostile or argumentative. Plaintiff explained that when she asked questions or disagreed with accusations against her, her supervisor characterized her conduct as "hostile," "argumentative," or "loud."

48. In late March 2024, Plaintiff complained to Human Resources that Defendant was retaliating against her and provided information concerning her prior discrimination complaints and objections to the PIP.

49. Defendant did not meaningfully revise the PIP or adequately investigate Plaintiff's concerns.

50. During the PIP period, Plaintiff continued performing her duties and maintaining the work of the Education Committee, including hearings, voting meetings, and other legislative activities.

51. Plaintiff also continued reporting performance concerns regarding her direct report, including errors in legislative floor reports that Plaintiff was required to correct. Defendant did not meaningfully investigate Plaintiff's complaints and instead investigated allegations made against Plaintiff by employees whose performance Plaintiff had raised concerns about or supervised.

52. Human Resources primarily interviewed employees who worked directly with Plaintiff's supervisor concerning allegations against Plaintiff and did not interview Plaintiff's other direct report, Alycia Laureti.

53. Defendant treated Plaintiff differently from non-Black employees who had experienced significant performance or workplace issues. For example, Chris Wakeley was removed from certain duties and later demoted but remained employed, retained his salary, and ultimately retired from Defendant. Laureti, who had previously been demoted for performance-related concerns, remained employed, and Marlene Wilson, another former Executive Director, was transferred rather than terminated.

54. Plaintiff was approved for intermittent FMLA leave to care for her child from approximately April 26, 2023, through April 26, 2024. Defendant was aware of Plaintiff's approved FMLA leave.

55. Plaintiff had also taken medical leave beginning May 13, 2024, for her own medical conditions. Plaintiff returned to work on or about June 10, 2024.

56. Upon Plaintiff's return to work, her supervisor questioned her regarding the reason for her absence and her son's illness.

57. On August 27, 2024, Defendant terminated Plaintiff's employment.

58. At the time of her termination, Plaintiff had approximately twenty-two years of service with Defendant and had not previously received an unsatisfactory performance review or formal discipline comparable to the allegations Defendant relied upon in terminating her.

59. Defendant's stated performance-based reasons for terminating Plaintiff were inconsistent with her lengthy employment history, successful completion of the PIP, and continued performance of her duties. Plaintiff alleges that Defendant's stated reasons were pretextual and that Plaintiff's protected characteristics and protected activity were motivating factors in Defendant's decision.

60. Following Plaintiff's termination, Defendant posted an opening for Executive Director of the Education Committee listing a salary of approximately $60,000 and subsequently hired Kathryn A. Krueger, a Caucasian woman, at approximately $90,000.

61. Plaintiff had previously worked with Krueger and alleges that Krueger had substantially less experience in education and legislative work than Plaintiff and was approximately twenty years younger than Plaintiff.

62. Plaintiff also applied for legislative employment following her termination, including a position as a House History Reporter with the Legislative Reference Bureau. Plaintiff was qualified for the position and was told during the interview process that the Bureau needed to consult Defendant before offering her the position.

63. On November 15, 2024, Plaintiff was notified that she would no longer be considered for positions with the Legislative Reference Bureau.

64. As a result of Defendant's conduct, Plaintiff suffered and continues to suffer lost wages, benefits, professional opportunities, career advancement, and other economic and non-economic damages.

**COUNT I:**
**TITLE VII, RACE DISCRIMINATION (42 U.S.C. § 2000e-2(a)(1))**

65. Plaintiff repeats and realleges all of the allegations in all of the paragraphs 1 through 64 as though fully set forth herein.

66. Title VII prohibits an employer from discriminating against an employee because of the employee’s race, including with respect to compensation, terms, conditions, or privileges of employment, and discharge. 42 U.S.C. § 2000e-2(a)(1).

67. Plaintiff is an African American woman and is therefore a member of a protected class under Title VII.

68. Defendant is an employer subject to Title VII and its requirements.

69. Defendant discriminated against Plaintiff because of her race by paying her less than non-Black employees performing comparable Executive Director work, denying her equitable compensation, subjecting her to unequal treatment and heightened scrutiny, imposing a pretextual performance improvement plan, denying her equal employment opportunities, and terminating her employment.

70. Plaintiff's race was a motivating factor in Defendant's compensation decisions, treatment of Plaintiff, and termination. 42 U.S.C. § 2000e-2(m).

71. Defendant's actions deprived Plaintiff of equal employment opportunities and otherwise adversely affected the terms and conditions of her employment because of her race.

72. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, damage to her professional reputation and career opportunities, and other damages recoverable under Title VII.

73. Defendant's discrimination and termination against Plaintiff because of her race violated Title VII. Plaintiff is therefore entitled to relief under 42 U.S.C. §§ 2000e-2 and 2000e-5.

**COUNT II:**
**TITLE VII, SEX DISCRIMINATION (42 U.S.C. § 2000e-2(a)(1))**

74. Plaintiff repeats and realleges all of the allegations in all of the paragraphs 1 through 73 above as though fully set forth herein.

75. Title VII prohibits an employer from discriminating against an employee because of the employee's sex, including with respect to compensation, terms, conditions, or privileges of employment, and discharge. 42 U.S.C. § 2000e-2(a)(1).

76. Plaintiff is a woman and is therefore a member of a protected class under Title VII.

77. Defendant is an employer subject to Title VII.

78. Defendant discriminated against Plaintiff because of her sex by paying her less than similarly situated male employees.

79. Defendant discriminated against Plaintiff by providing male employees substantially greater compensation increases upon advancement to Executive Director positions.

80. Defendant discriminated against Plaintiff by adjusting the salaries of other employees while failing to provide Plaintiff comparable adjustments when she was appointed to Executive Director.

81. Defendant discriminated against Plaintiff by subjecting Plaintiff to unequal treatment and terminating her employment.

82. The compensation disparities were not explained by a consistent or uniformly applied compensation system. Defendant paid certain male Executive Directors substantially more than Plaintiff despite their having less tenure and, in some instances, less experience with Defendant.

83. Plaintiff's sex was a motivating factor in Defendant's compensation decisions, treatment of Plaintiff, and termination. 42 U.S.C. § 2000e-2(m).

84. Defendant's actions deprived Plaintiff of equal employment opportunities and otherwise adversely affected the terms and conditions of her employment because of her sex.

85. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, damage to her professional reputation and career opportunities, and other damages recoverable under Title VII.

86. Defendant's discrimination against Plaintiff because of her sex violated Title VII. Plaintiff is therefore entitled to relief under 42 U.S.C. §§ 2000e-2 and 2000e-5.

## COUNT III: TITLE VII, RETALIATION/ RETALIATORY HOSTILE WORK ENVIRONMENT (42 U.S.C. § 2000e-3(a))

87. Plaintiff repeats and realleges all of the allegations in paragraphs 1 through 86 above as though fully set forth herein.

88. Title VII prohibits an employer from retaliating against an employee because the employee opposed conduct made unlawful by Title VII or participated in a Title VII investigation or proceeding. 42 U.S.C. § 2000e-3(a).

89. Plaintiff engaged in protected activity under Title VII when she complained to Defendant's supervisory and Human Resources personnel that she was being discriminated against because of her race and sex and was being paid less than comparable employees.

90. Defendant was aware of Plaintiff's protected activity through Plaintiff's complaints to supervisory personnel and Human Resources and Defendant's investigation of those complaints.

91. Defendant thereafter subjected Plaintiff to materially adverse employment actions, including excluding her from information and meetings, providing inadequate staffing resources.

92. Defendant further retaliated against Plaintiff by subjecting her to heightened scrutiny, imposing a PIP, failing to meaningfully address her complaints, relying on disputed allegations concerning her performance, and terminating her employment.

93. After- and because of those complaints, Defendant's supervisory and management personnel subjected Plaintiff to the continuing pattern of exclusion from necessary meetings and information, deprivation of staffing and resources, heightened scrutiny, and adverse treatment alleged above.

94. Defendant's conduct was sufficiently severe or pervasive to alter Plaintiff's working conditions, that she subjectively experienced it as hostile and abusive, and that a reasonable employee in her circumstances would have experienced it the same way.

95. The course of conduct was materially adverse and would dissuade a reasonable employee from making or supporting discrimination complaints. Plaintiff's protected opposition was a but-for cause of that retaliatory environment.

96. Defendant is responsible because its supervisory and management personnel created and maintained the environment and Human Resources and leadership received Plaintiff's complaints but failed to correct the alleged retaliation.

97. The timing, escalation, and circumstances of Defendant's conduct support an inference that Defendant retaliated against Plaintiff because she complained about discrimination.

98. Defendant terminated Plaintiff's employment after Plaintiff filed a complaint of discrimination, which was compounded by Plaintiff's frequent and consistent opposition activity in pursuit of equitable and fair treatment.

99. Defendant's conduct was intentional and retaliatory, and Plaintiff's protected activity was a but-for cause of the adverse employment actions taken against her.

100. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, damage to her professional reputation and career opportunities, and other damages recoverable under Title VII.

101. Defendant's retaliation against Plaintiff because she opposed and complained about unlawful discrimination violated Title VII. Plaintiff is therefore entitled to relief under 42 U.S.C. §§ 2000e-3 and 2000e-5.

**COUNT IV: EQUAL PAY ACT**
**SEX-BASED WAGE DISCRIMINATION (29 U.S.C. § 206(d))**

102. Plaintiff repeats and realleges all of the allegations in paragraphs 1 through 101 above as though fully set forth herein.

103. The Equal Pay Act prohibits an employer from discriminating between employees on the basis of sex by paying employees of one sex less than employees of the opposite sex for equal work requiring equal skill, effort, and responsibility and performed under similar working conditions. 29 U.S.C. § 206(d)(1).

104. Plaintiff performed work requiring substantially equal skill, effort, and responsibility under similar working conditions as male Executive Directors employed by Defendant.

105. Despite performing substantially equal work, Plaintiff was paid less than similarly situated male Executive Directors, including male Executive Directors with fewer years of service and, in some cases, less experience with Defendant.

106. Plaintiff's salary remained substantially lower than the compensation paid to certain male Executive Directors, including Ryan Beaston and Evan Franzese-Peterson.

107. The disparities in Plaintiff's compensation were not made pursuant to a seniority system, merit system, system measuring earnings by quantity or quality of production, or other factor other than sex. 29 U.S.C. § 206(d)(1).

108. As a direct and proximate result of Defendant's violations of the Equal Pay Act, Plaintiff suffered lost wages and other damages, including an additional equal amount as liquidated damages to the extent authorized by law, as well as attorney's fees and costs. 29 U.S.C. § 216(b).

109. Defendant's payment of lower wages to Plaintiff because of her sex violated the Equal Pay Act. Plaintiff is therefore entitled to relief under 29 U.S.C. §§ 206(d)(1) and 216(b).

**COUNT V:**
**FAMILY AND MEDICAL LEAVE ACT, RETALIATION (29 USCS § 2601)**

110. Plaintiff repeats and realleges all of the allegations in paragraphs 1 through 109 above as though fully set forth herein.

111. Defendant and/or the business of Defendant affects interstate commerce.

112. Plaintiff worked for Defendant for more than one year.

113. Plaintiff worked for Defendant for at least 1,250 hours in the year preceding her use of medical leave.

114. Defendant employed at least 50 employees within 75 miles of Plaintiff's work location for at least 20 calendar weeks.

115. Plaintiff and/or her son suffered serious health condition, as defined by the Family and Medical Leave Act.

116. Plaintiff was an eligible employee under the FMLA, and Defendant was a covered employer subject to the FMLA. 29 U.S.C. § 2611(2), (4).

117. The Family and Medical Leave Act prohibits an employer from interfering with, restraining, or denying the exercise of, or attempt to exercise, any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA further strictly prohibits employers from retaliating, discriminating, or taking adverse actions against employees for exercising or attempting to exercise their FMLA rights.

118. Plaintiff was approved for intermittent FMLA leave to care for her child from approximately April 26, 2023, through April 26, 2024, and Defendant again approved intermittent FMLA leave for Plaintiff to care for her children from approximately April 26, 2024, through April 26, 2025.

119. Plaintiff exercised her rights under the FMLA by taking protected leave to care for her child, including leave associated with her child's illness in March 2023 and August 2023.

120. Defendant knew that Plaintiff was exercising her protected FMLA rights.

121. Defendant acted maliciously and/or with reckless disregard for Plaintiff's rights under the FMLA when it retaliated against Plaintiff for exercising her FMLA rights by subjecting her to heightened scrutiny and adverse treatment and by terminating her employment.

122. This is particularly true where Defendant used Plaintiff's exercise of FMLA leave as a negative factor in employment decisions, including its treatment of Plaintiff and termination of her employment. 29 C.F.R. § 825.220(c).

123. The timing, circumstances, and Defendant's repeated focus on Plaintiff's absences and use of FMLA leave support an inference that Plaintiff's exercise of FMLA rights was a negative factor in Defendant's adverse employment actions.

124. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost employment benefits, interest, and other damages recoverable under the FMLA, including liquidated damages to the extent authorized by law. 29 U.S.C. § 2617(a)(1).

125. Defendant's retaliation against Plaintiff for exercising her rights under the FMLA violated the FMLA. Plaintiff is therefore entitled to relief under 29 U.S.C. §§ 2615(a)(1) and 2617, including appropriate equitable relief and reasonable attorneys' fees and costs. 29 U.S.C. § 2617(a)(1), (3).

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

a. A trial by jury on all issues so triable;

b. A finding that Defendant's actions constituted race discrimination and retaliation against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3;

c. A finding that Defendant's actions constituted sex discrimination and retaliation against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3;

d. A finding that Defendant's actions constituted unlawful discrimination in compensation against Plaintiff in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1);

e. A finding that Defendant's actions constituted retaliation against Plaintiff for exercising rights protected by the Family and Medical Leave Act, 29 U.S.C. §§ 2615, 2617;

f. An award to Plaintiff of all back pay, front pay, lost wages, salary, benefits, and other compensation or emoluments of employment to which she would have been entitled had Defendant not engaged in its unlawful discriminatory and retaliatory conduct;

g. An award to Plaintiff of compensatory damages for the losses she sustained and the emotional distress, humiliation, and other non-economic harm she suffered as a result of Defendant's unlawful conduct, to the extent authorized by applicable law;

h. An award of liquidated damages under the Equal Pay Act, and Family and Medical Leave Act to the extent authorized by law;

i. Appropriate equitable and injunctive relief, including reinstatement, front pay, continuation of legislative health benefits through retirement in lieu of reinstatement, and any other appropriate employment-related relief;

j. An award of pre-judgment and post-judgment interest as permitted by law;

k. An award to Plaintiff of all reasonable attorneys' fees, expert fees where authorized, litigation expenses, and costs incurred in the prosecution of this action; and

l. Such other and further relief as this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

**ABARA LAW FIRM, PLLC.**

*/s/ Obinna I. Abara*
Obinna I. Abara, Esquire
Attorney I.D. No.: 204964
180A Old Swede Rd., #333
Douglassville, PA 19518
oabara@abaralaw.com
(215) 360-3260

DATE: October 29, 2026

## VERIFICATION

I hereby verify that the statements contained in this Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

Oct 28, 2026

Date

Erin Dixon (Oct 28, 2026 19:22:20 EDT)

Erin Dixon, Plaintiff