**IN THE UNITED STATES DISTRCT COURT FOR THE**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LEILY MARILY RAMOS-MILLA, Petitioner,**<br><br>**v.**<br><br>**ANGELA HOOVER, *et al.*, Respondents.** | **Case No.: 3:26-cv-** |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER**

## INTRODUCTION

There have been hundreds of district court decisions addressing the legal issues presented in the underlying Petition for Writ of Habeas Corpus. *Demirel v. Federal Detention Center Philadelphia*, et al., No. 25-5488, 2025 WL 3218243, at *1 (E.D. Pa. Nov. 18, 2025). In all but six, the Government's interpretation of the Immigration and Nationality Act (INA); the interpretation that is part of the Department of Homeland Security's (DHS) policy issued on July 8, 2025, instructing all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without admission or inspection—to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond; and the interpretation is part of the Board of Immigration Appeals' (BIA or Board) September 5, 2025 precedent decision, binding on all immigration judges, holding that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission. *See Matter of Yajure Hurtado*, 29 I. & N. Dec.

216 (BIA 2025), which determined that such individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

Many of these decisions have found that Respondents' erroneous application of the law violates the respective detainees constitutional right to Due Process. *See eg. Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 317639 (E.D. Pa. Nov. 13, 2025); *Bethancourt Soto v. Soto*, 2025 WL 2976572 (D.N.J. Oct. 22, 2025); *Sanchez Ballestros v. Noem*, 2025 WL 2880831 (W.D. Ky. Oct. 9, 2025); *Hernandez-Alonso v. Tindall*, 2025 WL 3083920 (W.D. Ky. Nov. 4, 2025); *Rodriguez Serrano v. Noem*, 2025 WL 3122825 (W.D. Mich. Nov. 7, 2025); *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, (N.D. Ill. Oct. 16, 2025); *Rosales Ponce v. Olson*, 2025 WL 3049785 (N.D. Ill. Oct. 31, 2025); *Loza Valencia v. Noem*, 2025 WL 3042520 (N.D. Ill. Oct. 31, 2025); *Rosado v. Figueroa*, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Cuevas Guzman v. Andrews*, 2025 WL 2617256 (E.D. Cal. Sept. 9, 2025); *Guerrero Lepe v. Andrews*, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *E.C. v. Noem*, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); *Garcia Domingo v. Castro*, 2025 WL 2941217 (D.N.M. Oct. 15, 2025); *Artiga v. Genalo*, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025).

Despite this *overwhelming rejection* of Respondents' new policies and *Matter of Yajure Hurtado*, and hundreds of decisions finding that Respondents are violating the constitutional rights, Respondents refuse to relent and continue act in defiance of the law and the Constitution. It has been reported that ICE agents inform detainees that the detainee "has to sue us (ICE) to get out."

Petitioner is now one of the approximately 61,000 people detained by Respondents.[1] Petitioner has filed a Petition for Writ of Habeas Corpus (Dkt. 1) in order to seek his release from

[1] See: ICE's publicly available detention data, available at: https://www.ice.gov/detain/detention-management

his unlawful detention.

Because of this unlawful detention, Petitioner faces imminent and irreparable harm; mainly his unlawful detention and every harm that flows therefrom, including the violation of his liberty interests, separation from family, loss of employment, economic burdens, and the like.

Because of these imminent and real harms, Petitioner requests that the Court grant a temporary restraining order to (i) enjoining Respondents from moving him outside the Eastern District of Pennsylvania; (ii) enjoining Respondents from detaining Petitioner under 8 U.S.C. § 1225(b)(2); and (iii) ordering Petitioner's immediate release from Respondents' custody.

## ARGUMENT

### I. PETITIONER'S DETENTION VIOLATES DUE PROCESS

The Fifth Amendment protects the right to be free from deprivation of life, liberty or property without due process of law. U.S. CONST. amend. V. The Due Process Clause extends to all "persons" regardless of status, including non-citizens, whether here lawfully, unlawfully, temporarily, or permanently *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). To determine whether detention violates procedural due process, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Further, government detention violates substantive due process unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a

special justification ... outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas* at 690.

**a. Petitioner's Private Interest**

First, Petitioner's "private interest … affected by the official action is the most elemental of liberty interests—the interest in being free from physical detention." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, (2004). "It is clear that commitment for *any* purpose constitutes a significant deprivation of liberty that requires due process protection." *Jones v. United States,* 463 U.S. 354, 361, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983) (emphasis added; internal quotation marks omitted). At this stage in the *Mathews* calculus, the Court must consider the interest of the *erroneously* detained individual. *Carey v. Piphus,* 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Hamdi* at 2646–47.

**b. The Risk of an Erroneous Deprivation**

As to the second prong of the *Mathews v. Eldridge* balancing test, the Court should find that the risk of erroneous deprivation is particularly high here. The purpose of requiring an exercise of discretion prior to the decision to detain a noncitizen who is not subject to mandatory detention is to prevent an erroneous deprivation of liberty. This purpose is illustrated clearly here, as Petitioner has raised significant and supported legal arguments against Respondents' detention of Petitioner under §1225(b). *See* ECF No. 1, generally.

As evinced in the underlying petition before this Court, Petitioner was originally held under § 1226(a)'s discretionary provisions and is now being held in mandatory detention through an agency extension of § 1225(b)(2)(A)'s mandatory detention provisions against him. And, "when a particular statute delegates authority to an agency consistent with constitutional limits, courts

must respect the delegation, while ensuring that the agency acts within it." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024).

In Petitioner's case, immigration officials, vested with authority delegated by Congress to the Attorney General and DHS, first determined that standard removal proceedings and discretionary detention under Section 1226(a) applied to his case. ECF No. 1, Exh. A. The unilateral decision by the BIA to use *Matter of Yajure Hurtado* to extend a different statute to Petitioner's circumstances despite earlier determining otherwise now leaves his liberty interest at risk. Petitioner contends that the Respondents may not now extend the bounds of their authority to apply § 1225(b)(2)(A) against him, and this Court must ensure proper application of the laws against Petitioner.

**c. The Government's Interest**

The final *Mathews* factor concerns the United States' interest in the proceedings, as well as any financial or administrative burdens associated with permissible alternatives. *Mathews*, 424 U.S. at 335. Petitioner recognizes that the United States has an interest in meaningful immigration laws that advance its stated policies. However, the United States has an equal and countervailing interest in consistent application of its laws and ensuring that those laws are applied under the proper means. It is not appropriate to utilize the "wrong" statute against any person to ensure their continued detention. Respondents may not choose unilaterally when and how to apply duly enacted laws.

The Government's interests in detaining noncitizens are (1) ensuring that noncitizens do not abscond and (2) ensuring they do not commit crimes. *Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491. Respondents will be unable to provide any evidence or argument that Petitioner is either a flight risk or a danger, and the record would indicate that he is neither: he has no criminal record

whatsoever, and he has complied with all immigration requirements imposed upon him. Respondents cannot show that their interest in detaining Petitioner without a bond hearing outweighs Petitioner's liberty interests; nor can they show that the effort and cost of providing Petitioner with procedural safeguards is burdensome.

Accordingly, all three *Mathews* factors weigh heavily in support of Petitioner.

## II. THE COURT SHOULD GRANT A TEMPORARY RESTRAINING ORDER

The Court should grant a temporary restraining order or preliminary injunction (i) enjoining Respondents from moving him outside the Eastern District of Pennsylvania; (ii) enjoining Respondents from detaining Petitioner under 8 U.S.C. § 1225(b)(2); and (iii) ordering Petitioner's immediate release from Respondents' custody.

"A Petitioner seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. National Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Third Circuit has described the first two requirements as "gateway factors." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). If the gateway factors are met, then a court should consider the remaining factors. *Id.*; *see also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) ("[A] movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm").

### a. Likelihood of Success on the Merits

There is no question that Petitioner is likely to succeed on the merits of his claim. District Courts in eleven Circuit Courts (*every* Circuit Court outside of the DC Circuit and Federal Circuit) have ruled that Respondents' position is contrary to law, with many of them finding that it violates

Due Process. Petitioner's exceedingly high likelihood of success on the merits of his claims forcefully tips the scales in favor of granting this TRO.

**b. Irreparable Harm if TRO is not Issued**

Petitioners seeking a preliminary injunction or temporary restraining order must make a clear showing "that irreparable injury is likely in the absence of an injunction." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Given Petitioner's high likelihood of success on the merits, his burden of showing irreparable harm is lessened, though still required. The Third Circuit has endorsed a "flexible" approach to the first two *Winters* factors. *Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017), *as amended* (June 26, 2017). This approach requires courts to consider the factors "taken together," such that a petitioner who shows great harm has leeway to show less success on the merits, or a plaintiff who shows less harm must show a high likelihood of success on the merits to warrant a preliminary injunction. *Reilly*, 858 F.3d 173; *Word Seed Church v. Vill. of Hazel Crest*, 533 F. Supp. 3d 637, 647 (N.D. Ill. 2021) ("the [c]ourt applies a 'sliding scale' approach under which 'the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position'") (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)). Generally, irreparable harm must be harm that cannot be remedied by a legal or equitable remedy following trial, and must be actual and imminent, and not speculative or remote. See *Angstadt ex rel. Angstadt v. Midd-West Sch.*, 182 F. Supp. 2d 435, 437 (M.D. Pa. 2002); *see also Dice v. Clinicorp, Inc.*, 887 F. Supp. 803, 809 (W.D. Pa. 1995).

Petitioner is suffering irreparable injury due to his unlawful and unconstitutional detention and Respondents must be enjoined from holding him.

In the immigration context, unlawful detention is a sufficient irreparable injury. *See Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 46–47 (M.D. Pa. 2025); *see also Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017) (finding that immigration detention can constitute irreparable harm "by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time" and emphasizing harm related to economic burdens due to missed work and the harm that results when children cannot see their detained parents). Further, separation from family members while being wrongly detained constitutes irreparable injury. *E.O.H.C. v. Barr*, 434 F. Supp. 3d 321, 340 (E.D. Pa. 2020), order vacated, appeal dismissed sub nom. *E.O.H.C. v. Att'y Gen. United States*, No. 20-1163, 2020 WL 2111302 (3d Cir. Apr. 20, 2020)[2] ("Courts have recognized that separation from family members constitutes an irreparable injury."); *see also Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) (holding that loss of liberty due to detention is "perhaps the best example of irreparable harm"); *Carmona v. Bondi*, No. CV-25-00110-TUC-JGZ, 2025 WL 786514, at *3 (D. Ariz. Mar. 12, 2025) (holding that a detainee who is facing potential removal has shown irreparable injury). (citing *Ragbir v. U.S.*, No. 17-cv-1256, 2018 WL 1446407, at *18 (D.N.J. March 23, 2018)) (*citing U.S. v. Diana*, Crim No. 83-cv-301, 1988 WL 17011, at *2 (E.D. Pa. Feb. 25, 1988)).

Petitioner demonstrates the risk of irreparable harm, as he has experienced and will continue to experience harm in the context of his family obligations and his ability to support himself and his family financially, should this Court not order his release. Petitioner's administrative means by which to challenge his detention are futile and adjudicated or governed

---

[2] The Court of Appeals decision was based upon petitioners' release from detention rendering the matter moot, not based upon error of law. *E.O.H.C.*, 2020 WL 2111302.

by the same agency or agencies that have knowingly unlawfully detained Petitioner despite a torrent of rejection from hundreds of federal courts.

There is only one remedy to Petitioner's ongoing harm – this Court must order Petitioner's immediate release.

**c. Public Interest & Balance of Harms**

"[I]f a [petitioner] demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the [petitioner]." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). There is a public interest in ensuring that the government respect the fundamental due process principle that no one should be subject to unlawful detention. Absent legitimate, countervailing concerns, public interest favors the protection of constitutional rights, and any comparison of harm to the Government turns mostly on matters of public interest, as those considerations merge when the Government is an opposing party. *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 47 (M.D. Pa. 2025), citing *Hope v. Warden York Cnty. Prison,* 972 F.3d 310, 332 (3d Cir. 2020).

The public interest factor to weigh in favor of issuing a preliminary injunction ordering the release of a noncitizen, despite potential concerns with border security or public safety because the public interest is served by assuring government institutions follow the law. *Arias Gudino* at 47–48, citing *Abrego Garcia v. Noem*, 777 F. Supp. 3d 519 (D. Md. 2025) ("'Equally important, the public remains acutely interested in 'seeing its governmental institutions follow the law ....'") (quoting *Nken*, 556 U.S. at 436, 129 S.Ct. 1749) (quoting *Roe v. Dep't of Def.*, 947 F.3d at 230–31 (4th Cir. 2020) (internal quotation marks and citation omitted)).

Put plainly, Respondents have no legitimate interest in enforcing this unconstitutional and unlawful policy of arresting as many non-citizens as possible detaining them without the

possibility of release.[3] The State "has no interest in enforcing an unconstitutional law, [and] the public interest is harmed by the enforcement of laws repugnant to the United States Constitution." *Siembra Finca Carmen, LLC v. Sec'y of Dep't of Agric. of P.R.*, 437 F. Supp. 3d 119, 137 (D.P.R. 2020).

## CONCLUSION

For the foregoing reasons, the motion for a temporary restraining order should be granted.

Respectfully Submitted,

Date: November 4, 2026 By: *Jose Campos*

Jose C. Campos (PA Bar 207646)
The Campos Firm
251 East Broad Street
Bethlehem, PA 18018
p. (610) 868-2230
jc@jccamposlaw.com
ATTORNEY FOR PETITIONER

[3] ICE, Enforcement and Removal Operations (ERO) "field offices **no longer have the option to discretionarily release aliens, nor decline to take aliens into custody…"** U.S. Immigration & Customs Enf't, National Hold Room Waiver, at 2 (June 17, 2021), available at https://immpolicytracking.org/policies/ice-waives-the-12-hour-holding-cell-limit-allowing-detainees-to-be-held-for-72-hours/#/tab-policy-documents (emphasis added) .