**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA *ex rel.* DAVID W. SUNDAY, JR., ATTORNEY GENERAL<br><br>*Plaintiff,*<br><br>v.<br><br>ELI LILLY AND COMPANY; NOVO NORDISK INC.; SANOFI-AVENTIS U.S. LLC; EVERNORTH HEALTH, INC. (FORMERLY EXPRESS SCRIPTS HOLDING COMPANY); EXPRESS SCRIPTS, INC.; EXPRESS SCRIPTS ADMINISTRATORS, LLC; ESI MAIL PHARMACY SERVICE, INC.; EXPRESS SCRIPTS PHARMACY, INC.; MEDCO HEALTH SOLUTIONS, INC.; CVS HEALTH CORPORATION; CVS PHARMACY, INC.; CAREMARK RX, LLC; CAREMARKPCS HEALTH, LLC; CAREMARK, LLC; UNITEDHEALTH GROUP, INC.; OPTUM, INC.; OPTUMRX, INC.; OPTUMINSIGHT LIFE SCIENCES, INC.; AND OPTUMINSIGHT, INC.,<br><br>*Defendants.* | Civil Action No. ___________ |

**<u>NOTICE OF REMOVAL</u>**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1442(a) and 1446, Defendants Evernorth Health, Inc. (formerly Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., and Medco Health Solutions, Inc. (collectively, "Express Scripts") hereby submit this Notice of Removal providing grounds for removal of the action *Commonwealth of Pennsylvania ex rel. David W. Sunday, Jr., Attorney General v. Eli Lilly and Company, et al.* (Case No. 466 MD 2026),

originally filed in the Commonwealth Court of the State of Pennsylvania. A true and correct copy of the State's Complaint is attached hereto as **Exhibit A**.

## INTRODUCTION

1. In this action, the State of Pennsylvania (through Attorney General David W. Sunday) (the "State") alleges that the prices paid by the citizens of Pennsylvania for certain insulin products are artificially inflated by a sprawling "Insulin Pricing Scheme" involving certain Pharmacy Benefit Managers ("PBMs") and insulin manufacturers.

2. Under the supervision and direction of the U.S. Office of Personnel Management ("OPM"), Express Scripts provides pharmacy benefit management and pharmacy services to carriers providing benefits to federal employees, eligible retired federal workers, and their survivors and dependents, pursuant to the Federal Employee Health Benefits Act ("FEHBA"). That work is primarily governed by a standard contract issued by OPM with terms governing Express Scripts' obligations. *See* Off. of Pers. Mgmt., *Federal Employees Health Benefits Program Standard Contract for Experience-Rated Health Maintenance Organization Carriers*, at I-17 (2019). A true and correct copy of this Standard Contract is attached hereto as **Exhibit B**.

3. Express Scripts also historically and currently contracts with the United States Department of Defense ("DoD") to provide services to members of the DoD's TRICARE program across the country, including in Pennsylvania. Express Scripts entered into Contract No. HT9402-14-D-002 with the Defense Health Agency, a component of the DoD responsible for administering TRICARE, with an effective date of May 1, 2014. A true and correct copy of this agreement with certain redactions, consistent with the Freedom of Information Act, is attached hereto as **Exhibit C** (hereinafter, the "TRICARE Contract").

4. Some of the Pennsylvania citizens allegedly injured by the so-called Insulin Pricing Scheme are TRICARE and FEHBA Carrier beneficiaries.

5. As more fully explained below, Express Scripts' performance under one or more federal officers provides Express Scripts a basis to remove this action under 28 U.S.C. § 1442(a). The State's pursuit of monetary and injunctive relief based on its residents' out-of-pocket costs interferes with Express Scripts' obligation to ensure TRICARE beneficiaries pay co-pays mandated by Congress and the DoD. And the State's sweeping allegations challenging Express Scripts' negotiation of rebates from insulin drug manufacturers interferes with Express Scripts' contractual requirements to pass through those rebates to the FEHBA Carrier clients.

**NATURE OF THE REMOVED ACTION**

6. On October 09, 2026, the State filed a Complaint in the Commonwealth Court of the State of Pennsylvania.

7. The State brings its action against two categories of defendants: "Manufacturer Defendants" and "PBM Defendants." The State alleges that:

- The "Manufacturer Defendants" are Eli Lilly and Company ("Eli Lilly"), Sanofi-Aventis U.S. LLC ("Sanofi"), and Novo Nordisk Inc. ("Novo Nordisk").
- The "PBM Defendants" are CVS Health Corporation ("CVS Health"), CVS Pharmacy, Inc., Caremark Rx, L.L.C., Caremark, LLC, CaremarkPCS Health, L.L.C., Evernorth Health, Inc., Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Pharmacy Services, Inc., Express Scripts Pharmacy, Inc., UnitedHealth Group, Inc., Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., and OptumRx, Inc.

8. The State alleges a conspiracy between the Manufacturer Defendants and the PBM Defendants to artificially inflate the price of insulin and other diabetes medications. *See* Compl. ¶¶ 11–40.

9. The State alleges violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, unjust enrichment, and civil conspiracy. *See* Compl. ¶¶ 49–51, 569–608.

10. The State seeks injunctive relief, reimbursement, restitution, disgorgement, actual damages, civil penalties, and attorneys' fees and costs. *See id.*

11. The State seeks to recover for injuries allegedly suffered by Pennsylvania diabetics. *See, e.g.*, Compl. ¶¶ 531–68.

**VENUE**

12. Venue is proper in this Court under 28 U.S.C. § 1442(a) because this Court sits in the federal judicial district embracing the Commonwealth Court of the State of Pennsylvania, the court from which removal is sought. *See* 28 U.S.C. § 118.

**GROUNDS FOR FEDERAL-OFFICER REMOVAL**

13. In the Third Circuit, removal under the federal officer removal statute is proper when a removing party shows that "(1) [the defendant] is a 'person' within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct 'acting under' the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are 'for, or relating to' an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims." *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 467 (3d Cir. 2015), as amended (June 16, 2015)). Express Scripts satisfies all four elements here.

14. The Supreme Court has "rejected a 'narrow, grudging interpretation' of the [federal-officer-removal] statute." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969)). Rather, removal under the federal officer

removal statute should be determined "without a thumb on the remand side of the scale." *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 990 F.3d 447, 450 (5th Cir. 2021).

**1. Express Scripts is "A Person" Within the Meaning of 28 U.S.C. § 1442(a)(1).**

15. The federal-officer removal statute permits any person "acting under" a federal officer who is sued "for or relating to any act under color of such office" to remove a case to federal court. 28 U.S.C. § 1442(a)(1).

16. Express Scripts is a "person" under the federal-officer removal statute because the "person" contemplated by the federal officer removal statute includes corporations. *See Papp*, 842 F.3d at 812.

**2. Express Scripts is Acting Under a Federal Officer.**

17. Congress authorizes removal of actions not just by officers of the United States but also "any person acting under that officer." 28 U.S.C. § 1442(a)(1).

18. Private entities are "acting under" a federal officer when involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson v. Phillip Morris, Cos.*, 551 U.S. 142, 143 (2007).

**A. Express Scripts Acted Under the Direction of a Federal Officer by Administering FEHBA Benefits in Pennsylvania.**

19. Express Scripts is hired by many different clients, such as employers, unions, and local governments, to provide pharmacy benefit management services. These clients rely on Express Scripts to negotiate rebates or other discounts from drug manufacturers to lower the cost of prescription drugs. Express Scripts' clients negotiate with Express Scripts about whether and to what extent any rebates and fees Express Scripts receives from manufacturers should be passed-through.

20. Express Scripts also serves FEHBA carriers—private entities that contract with OPM to manage the day-to-day administration of FEHBA plans serving federal employees, including employees that reside in Pennsylvania. *See* 5 U.S.C. § 8902(a); *see also W. Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 197 (4th Cir. 2025) ("Congress also permits OPM to enlist private FEHBA carriers for help administering the program.").

21. OPM's standard form contract assumes that FEHBA carriers will contract with PBMs by including Section 1.28 entitled "Standards for Pharmacy Benefit Management Company (PBM) Arrangements." *See* Ex. B at I-17–I-22. OPM thus requires FEHBA carriers to impose "Transparency Standards" on PBMs contracting with such carriers:

a. The PBM must "negotiate[] and collect[] Manufacturer Payments allocable to the Carrier." *Id.* § 1.28(a)(2)(iii) (p. I-18). The PBM must agree to credit to the Carrier "the value [of] all Manufacturer Payments properly allocated to the Carrier." *Id.* Manufacturer Payments are defined broadly to include not only rebates but "any and all compensation, financial benefits, or remunerations the PBM receives from a pharmaceutical manufacturer." *Id.*

b. The PBM must provide the Carrier "with quarterly and annual Manufacturer Payment Reports." *Id.* § 1.28(a)(5) (p. I-18).

c. OPM may "review and receive any information and/or documents the Carrier receives from the PBM, including a copy of its contract with the PBM." *Id.* § 1.28(a)(7) (p. I-19).

d. The PBM will "[p]rovide information to physicians, pharmacies, other health care professionals, consumers, and payers about the factors that affect formulary system decisions, including . . . restraining health care costs." *Id.* at

§ 1.28(a)(8)(i). The PBM must also provide "consumer education that explains how formulary decisions are made." *Id.* § 1.28(a)(8)(ii).

e. The OPM Office of Inspector General can audit the PBMs' contracts with pharmacies, drug manufacturers, and others. *Id.* § 1.28(a)(9).

22. These contractual obligations "demonstrate that OPM exercised detailed supervision and monitoring over [Express Scripts'] provision of PBM services to FEHBA carriers, such that [Express Scripts] was acting under federal authority when it negotiated rebates." *See Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 190 (1st Cir. 2024).

23. When Express Scripts negotiates rebates or administrative fees from drug manufacturers, it does not separately negotiate rebates for the benefit of FEHBA carriers and non-FEHBA carriers.

24. Thus, when Express Scripts negotiates rebates for "FEHBA carriers, it assists OPM in carrying out its official task of administering federal health benefits." *Id.*

**B. Express Scripts Acts Under a Federal Officer When Performing Functions Required by its TRICARE Contract.**

25. The DoD is required by law to engage companies like Express Scripts for the provision of healthcare services to TRICARE members. *See* 10 U.S.C. § 1073a. Congress also requires the Secretary of Defense to establish an "effective, efficient, integrated pharmacy benefits program" for TRICARE. 10 U.S.C. § 1074g.

26. During the relevant period, the DoD contracted with Express Scripts, Inc. to provide pharmacy benefits to members of the DoD's TRICARE health care program across the country, including in Pennsylvania. *See* Ex. C. As of 2024, over 667,099 veterans reside in Pennsylvania.[1]

---

[1] *See, e.g.*, U.S. Department of Veteran Affairs, Pennsylvania, *available at* https://www.data.va.gov/stories/s/NCVAS-State-Summary-Pennsylvania-FY2024/h6wy-skfu/ (last visited October 26, 2026).

27. Express Scripts, Inc. subcontracts with Defendants ESI Mail Pharmacy Service, Inc. and Express Scripts Pharmacy, Inc. to operate the TRICARE Home Delivery/Mail Order Pharmacy ("TMOP").

28. The TRICARE Contract includes a Section C containing detailed requirements in a lengthy Statement of Work. Ex. C at 63–121.

29. Express Scripts does not merely comply with federal rules; it discharges on behalf of the government the DoD's mission to provide access to medications to TRICARE beneficiaries by managing a pharmacy network of retail pharmacies and by operating the TMOP. *See* Ex. C § C.1.3.

30. In the Statement of Work, the DoD dictates nearly every aspect of Express Scripts' responsibilities in supporting TRICARE. The TRICARE Contract requires the use of a "DoD Uniform Formulary, a tiered cost sharing structure, and a preference for generic over branded products." Ex. C § C.1.4. The DoD formulary is "managed by the DoD Pharmacy and Therapeutics (P&T) Committee." *Id.* These requirements are all mandated by Congress. 10 U.S.C. § 1074g(a)(2)(A) (requiring program to include a "uniform formulary" and that inclusion on the formulary "shall be based on the relative clinical and cost effectiveness of the agents"); § 1074g(b) (requiring the establishment of a "Pharmacy and Therapeutics Committee"). Express Scripts' work administering TRICARE for the DoD does not permit Express Scripts to negotiate rebates with drug manufacturers, something the DoD handles itself.

31. The DoD also includes specific requirements regarding the collection of copayments. When it causes any co-payment to be charged to any TRICARE beneficiary for any product, including the insulin products at issue in this action, Express Scripts does so in the manner

and according to the directions carefully prescribed by the DoD. Ex. C § C.8.1.1 ("The Contractor shall comply with the provisions of the DoD Uniform Formulary and its copayment structure").

32. Congress has spelled out the required copayments for the years 2018 through 2027 in a table written into the statute:

| For: | The cost-sharing amount for a 30-day supply of a retail generic is: | The cost-sharing amount for a 30-day supply of a retail formulary is: | The cost-sharing amount for a 90-day supply of a mail order generic is: | The cost-sharing amount for a 90-day supply of a mail order formulary is: | The cost-sharing amount for a 90-day supply of a mail order non-formulary is: |
|---|---|---|---|---|---|
| 2018 | $11 | $28 | $7 | $24 | $53 |
| 2019 | $11 | $28 | $7 | $24 | $53 |
| 2020 | $13 | $33 | $10 | $29 | $60 |
| 2021 | $13 | $33 | $10 | $29 | $60 |
| 2022 | $14 | $38 | $12 | $34 | $68 |
| 2023 | $14 | $38 | $12 | $34 | $68 |
| 2024 | $16 | $43 | $13 | $38 | $76 |
| 2025 | $16 | $43 | $13 | $38 | $76 |
| 2026 | $16 | $48 | $14 | $44 | $85 |
| 2027 | $16 | $48 | $14 | $44 | $85 |

10 U.S.C. § 1074g(a)(6)(A).

33. For retail networks, Express Scripts must "ensur[e] that the appropriate copayment is collected at retail network pharmacies." Ex. C § C.8.2. For TMOP, Express Scripts must collect co-payments from beneficiaries in accordance with the specific cost-sharing matrix set forth in the TRICARE Reimbursement Manual ("TRM").[2] *Id.* § C.8.2.

34. For prescription drugs filled at retail pharmacies, Express Scripts' performance under the TRICARE Contract is directly tied to the Manufacturers' published list prices—either the Wholesale Acquisition Cost ("WAC") or Average Wholesale Price ("AWP"). Section H of the TRICARE Contract details the "Retail Network Cost Control Incentive" that provides for

---

[2] The matrix included in the TRICARE Reimbursement Manual, which incorporates the Congressionally required copayments, is available at https://manuals.health.mil/pages/DisplayManual.aspx?SeriesId=TRT5.

Express Scripts to earn a "performance incentive" tied to achieving a percentage discount off the WAC that exceeds the percentage discounts it guaranteed the DoD. *See* Ex. C § H-1.[3] Conversely, if Express Scripts fails to deliver the savings it guaranteed as compared to the WAC, Express Scripts is on the hook for the difference between the actual retail network reimbursement cost and its guarantees. *See id.* § H.1.2. In other words, the DoD required Express Scripts to use and measure its performance against WAC as a condition to obtaining the full amount of compensation available under the agreement.

35. These obligations mandated by the DoD continued when the Defense Health Agency entered into a new agreement with Express Scripts in 2021. A true and correct copy of this agreement with an award date of August 5, 2021 (Contract No. HT-9402-21-C-0007), reflecting certain redactions consistent with the Freedom of Information Act, is attached hereto as **Exhibit D.**

36. This current agreement also requires Express Scripts to use the DoD's formulary and cost-sharing structure (Ex. D § C.1), to cause the collection of co-payments mandated by Congress (*id.* § C.7.1), and to seek discounts from pharmacies tied to Manufacturer list prices to receive additional incentive payments (*id.* § H.3).

37. In short, Express Scripts performs for the DoD the day-to-day administration of its TRICARE program, pursuant to a lengthy and detailed contract from which Express Scripts lacks the discretion to depart. These mandates led the Fourth Circuit to conclude that Express Scripts is

[3] For drugs without a published WAC, the TRICARE Contract requires the use of a different list price, the AWP, or average wholesale price, for purposes of determining the appropriate incentive. TRICARE Contract § H-1. Like the WAC, manufacturers set and publish the AWP for their drugs. *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1008 (9th Cir. 2012).

"essentially acting as the statutorily authorized *alter ego* of the federal government." *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 253–54 (4th Cir. 2021); *see also Ohio ex rel. Yost v. Ascent Health Services, LLC,* No. 24-3033, 2026 WL 206176, at *3 (6th Cir. Jan. 27, 2026) ("The PBM, in short, operates under the Department of Defense's "subjection, guidance[,]" and "control."). Express Scripts is thus "acting under" a federal officer when carrying out the TRICARE pharmacy program.

**3. The Complaint Rests on Acts Done "For or Relating To" a Federal Office or Agency.**

38. Under the "for or relating to" prong, a defendant must demonstrate a nexus or connection between the conduct and official authority. A defendant's burden is modest, however, requiring only a showing that the conduct "relate[s] to" the asserted authority. 28 U.S.C. § 1442(a)(1). This does not require a strict causal connection because a defendant's conduct must only have a connection or association with the conduct directed by a federal officer. *See Papp*, 842 F.3d at 813.

**A. The State's Claims are Connected or Associated with Express Scripts' Rebate Negotiations with Manufacturers for Rebates for the Benefit of FEHBA Carriers and Their Federal Employee Beneficiaries.**

39. Through its allegations regarding an "Insulin Pricing Scheme," the State categorically challenges Express Scripts' negotiations and contracts with insulin manufacturers for rebates or other manufacturer payments. *See, e.g.*, Compl. ¶¶ 35–40, 424–54.

40. But Express Scripts does not engage in separate rebate negotiations for FEHBA Carriers and non-FEHBA plans. During the relevant time period, Express Scripts conducted manufacturer rebate negotiations simultaneously on behalf of federal government plans, including FEHBA plans, state government plans, and commercial plans collectively.

41. OPM requires FEHBA-Carriers' contracts with Express Scripts to address Express Scripts' negotiations for rebates or other Manufacturer Payments, including requiring a complete pass-through of all rebates and quarterly and annual reporting about those rebates. *See supra* ¶ 21; Ex. B at I-18.

42. By targeting Express Scripts' negotiations with manufacturers, the State's claims are connected or associated with Express Scripts' conduct performed at the direction of OPM. *See Puerto Rico*, 119 F.4th at 190 (finding similar allegations brought by Puerto Rico against Caremark were "related to" the work Caremark performs under OPM's authority); *see also Yost*, 2026 WL 206176, at *7 (finding the conduct Ohio wished to regulate had "a straightforward 'connection or association' with the work that [Express Scripts] performs for the carriers and the Office of Personnel Management to further the agency's FEHBA duties.").

### B. The State's Claims are Connected or Associated with Express Scripts' Conduct Collecting Copayments under TRICARE.

43. The State alleges that the Insulin Pricing Scheme injured its citizens directly because they pay higher "out-of-pocket" costs, including higher "deductibles, coinsurance requirements, and/or *copayment requirements*." Compl. ¶ 320 (emphasis added). The State alleges that as a result of the alleged scheme, "nearly all Pennsylvania diabetics have been damaged by having to pay for diabetes medications out-of-pocket based upon the specific artificially inflated prices generated by the Insulin Pricing Scheme." Compl. ¶ 321; *see also* Compl. ¶ 536 ("Pennsylvania diabetics, whether insured or not, pay a substantial part of their diabetic drug costs based on Defendants' artificially inflated list prices generated by the Insulin Pricing Scheme and thus have been directly damaged as well.").

44. As explained above, for those Pennsylvania citizens receiving insulin through TRICARE—either from retail pharmacies or through the TMOP—the out-of-pocket costs those

citizens must pay, and that Express Scripts ensures are collected, are dictated by federal law and Express Scripts' contract with the DoD.

45. Express Scripts' obligations to cause the collection of co-payments through TRICARE is thus connected or associated with the State's claims.

46. In addition, the State complains that Express Scripts has wrongfully "persist[ed] in requiring AWP to be used by payors and patients" even though Express Scripts allegedly has "more accurate pricing available." Compl. ¶ 313. Indeed, the State alleges that Express Scripts "need not use list prices to set the prices paid by their clients and diabetics." Compl. ¶ 316.

47. As discussed above, the DoD measures Express Scripts' performance in negotiating discounts from network retail pharmacies by reference to AWP and WAC. The DoD also incentivizes Express Scripts by altering Express Scripts' compensation under the TRICARE Contract based on the discounts it negotiates relative to AWP and WAC. *See supra* ¶¶ 34, 36.

48. Accordingly, Express Scripts' obligations to utilize AWP and WAC when negotiating discounts from network retail pharmacies for use by TRICARE is also connected or associated with the State's claims.

**4. Express Scripts Has Colorable Federal Defenses.**

49. For federal-officer removal purposes, a defense only needs to be colorable. *Papp*, 842 F.3d at 813–14. "Colorable" is a low bar; a defense "need not be 'clearly sustainable.'" *Puerto Rico*, 119 F.4th at 186; *see also Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012) (defense is "colorable" so long as it is "plausible").

**A. Express Scripts has a colorable federal preemption defense under FEHBA.**

50. Express Scripts has a colorable preemption defense based on its work directed by OPM under FEHBA.

51. FEHBA provides that "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1).

52. As discussed above, OPM directs FEHBA-Carriers' contracts with Express Scripts to include terms governing PBMs' obligations regarding rebates. *See supra* ¶ 21.

53. In this lawsuit, the State challenges what OPM authorizes through its standard contracts: Express Scripts' negotiation for and collection of rebates from insulin manufacturers.

54. In addition, OPM requires Express Scripts to make disclosures regarding Manufacturer Payments and formulary developments to FEHBA Carriers, consumers, and others. *See supra* ¶ 21. But the State challenges representations about rebates, other payments, and formularies as misrepresentations. *See, e.g.*, Compl. ¶¶ 502–09.

55. Express Scripts, like Caremark in a similar case brought by Puerto Rico, "might raise FEHBA preemption for liability and rebates negotiations that follow the terms of any FEHBA contract." *Puerto Rico*, 119 F.4th at 190 (cleaned up). The defense is colorable.

### B. Express Scripts Has Colorable Federal Defenses Based on Government-Contractor Immunity and Preemption under the TRICARE Statute.

56. The State alleges that the Pennsylvania Unfair Trade Practices and Consumer Protection Law and state common law theories compel Express Scripts to charge prices and assess co-pays to Pennsylvania residents—necessarily including TRICARE beneficiaries—lower than it actually charged them pursuant to the directives of federal law and the terms of the contracts by which the DoD instructed Express Scripts.

57. In particular, the State seeks by restitution or damages to collect the money that Pennsylvania consumers allegedly overpaid as a result of the supposed violations. Compl. at 155–

56 ¶¶ C, G, H. Those alleged overpayments include "deductibles, coinsurance requirements, and/or *copayment* requirements." Compl. ¶ 320 (emphasis added). The State also seeks civil penalties based on each "violation" of the UTPCPL. *See id.* ¶ 51; *id.* at 155 ¶ D. For those citizens who are TRICARE beneficiaries, Express Scripts had no choice but to cause the charging of the specific co-payments required by the TRICARE Contract. *See supra* ¶ 31.

58. The State also seeks an injunction that could require Express Scripts to stop charging the co-payments required under the TRICARE Contract. Specifically, the State seeks to permanently enjoin Defendants from engaging in "the acts and practices alleged in [the] complaint and any other acts and practices which violate the UTPCPL." Compl. 155 ¶ B. The State further seeks to have Defendants "forfeit their right or franchise to engage in any business involving pharmaceuticals" within Pennsylvania until "all monies have been paid for disgorgement, costs, and civil penalties." Compl. 156 ¶ F.

59. The State therefore seeks an injunction that, if granted, would purport to prohibit Express Scripts from collecting the co-payments from TRICARE beneficiaries that federal law and the TRICARE Contract mandate be collected—thereby creating another conflict between Pennsylvania law and Express Scripts' obligations under the TRICARE Contract.

60. Express Scripts has a colorable federal government-contractor defense to these claims and the relief the State seeks.

61. The federal government contractor defense is a form of derivative sovereign immunity. It originally developed in the context of government contractors facing claims based on equipment manufactured by the contractor under direction from the government in the form of specifications for manufacture or design. Under a traditional tort liability formulation, the defense applies when (1) the United States approved reasonably precise specifications; (2) the contractor's

work product (equipment) conformed to those specifications; and (3) the supplier warned the United States about the risks or exposures in the use of the equipment known to the supplier. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). Notwithstanding the origins of the defense, "it is at least plausible that the government contractor defense could apply outside the military procurement context." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1090 (6th Cir. 2010); *see also Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1235 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1543 (2021) ("Neither does our lack of precedent regarding the availability of the *Boyle* defense to non-military service contractors defeat the plausibility of the defense.") (citing *Bennett*, 607 F.3d at 1089); *cf. DeFiore v. SOC LLC*, 85 F.4th 546, 558 (9th Cir. 2023) (finding "compliance with federal rules and regulations" as colorable federal defense for federal officer removal). Regardless of the context, the defense "applies if a contractor's obligations to the government conflict with state law such that the contractor may not comply with both." *Arlington Cnty.*, 996 F.3d at 255.

62. Based on the State's allegations, Express Scripts cannot simultaneously comply with its obligations under the TRICARE contracts and contrary Pennsylvania law. This conflict makes a federal contractor immunity defense colorable.

63. In addition to government-contractor immunity, Express Scripts can raise the defense of preemption based on the laws authorizing the Secretary of Defense to enter into group health-insurance contracts to support TRICARE. *See* 10 U.S.C. §§ 1071, 1072(7), 1073(a), 1074g.

64. Congress, and the DoD through regulations implementing the law, have included express preemption provisions. *See* 10 U.S.C. § 1103(a) ("A law or regulation of a State or local government relating to health insurance, prepaid health plans, or other health care delivery or financing methods shall not apply to any contract entered into pursuant to this chapter by the

Secretary of Defense," to the extent the state law is inconsistent, or preemption is necessary to implement or administer the contract); 32 C.F.R. § 199.17(a)(7).

65. The same conflict between Pennsylvania law and Express Scripts' obligations under the TRICARE Contract described above that provides Express Scripts a colorable government contractor defense also permits Express Scripts to raise a preemption defense.

## REMOVAL OF THE ENTIRE ACTION

66. Congress authorized federal officers and their agents to remove an entire "civil action" under 28 U.S.C. § 1442(a). *See, e.g.*, *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257 (4th Cir. 2017) ("[T]he defense need only apply to one claim to remove the case."); *see also Seigfried v. Allegheny Ludlum Corp.*, 2009 WL 1035001, at *7 (W.D. Pa. Apr. 17, 2009) ("[The federal-officer removal statute] does not require agreement of other defendants as it is a unique right to remove the entire case available to any defendant."). Thus, this notice of removal permits the removal of the entire action.

67. To the extent supplemental jurisdiction is implicated, the Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all other claims in this action because they form part of the same case or controversy under Article III of the United States Constitution.

## ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED.

### 1. The Notice of Removal Is Timely.

68. This Notice of Removal is timely because it is filed within 30 days of service of the Complaint on Express Scripts. 28 U.S.C. § 1446(b)(1).

### 2. Consent is not Required.

69. The federal-officer-removal statute does not require other Defendants to consent to removal. *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *see also Seigfried*, 2009 WL 1035001, at *7 ("[The federal-officer removal statute] does not require

agreement of other defendants as it is a unique right to remove the entire case available to any defendant.”).

**3. Written Notice Of Removal.**

70. In accordance with 28 U.S.C. § 1446(d), Express Scripts will give written notice of the filing of this Notice of Removal to all adverse parties of record in this matter and will file a copy of this Notice with the clerk of the state court.

**CONCLUSION**

WHEREFORE, Express Scripts removes this Action to this Court for further proceedings according to law.

Dated: November 6, 2026

*/s/ R. Brendan Fee*

R. Brendan Fee (PA 91382)
**MORGAN LEWIS & BOCKIUS, LLP**
2222 Market Street
Philadelphia, PA 19102
Tel: 215-963-5136
Fax: 215-963-5001
brendan.fee@morganlewis.com

Jason R. Scherr (admitted *pro hac vice*)
Douglas A. Hastings (admitted *pro hac vice*)
Elise M. Attridge (admitted *pro hac vice*)
**MORGAN LEWIS & BOCKIUS, LLP**
1111 Pennsylvania Ave. NW
Washington, DC 20004
Tel: 202-739-3000
Fax: 202-739-3001
jr.scherr@morganlewis.com
douglas.hastings@morganlewis.com
elise.attridge@morganlewis.com

*Counsel for Express Scripts, Inc., Evernorth Health, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Pharmacy Service, Inc., and Express Scripts Pharmacy, Inc.*