**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JORDAN KEITH TAYLOR**, Plaintiff, | CIVIL ACTION NO. |
| v. | |
| **YORK COUNTY d/b/a YORK COUNTY PRISON, LIEUTENANT DAVID SMALL, OFFICER RYAN POOLE**, and **COUNSELOR MILES E. LYONS**, in their individual and official capacities, Defendants. | JURY TRIAL DEMANDED |

# COMPLAINT

Plaintiff Jordan Keith Taylor, brings this civil rights action arising from the physical and sexual assault he suffered at York County Prison on April 5, 2025. Taylor reported that fellow inmate Bradley Lamont Jackson struck him and forced him to perform oral sex. Prison and hospital-escort reports document Taylor's collapse, physical injuries, emergency treatment, and a forensic examination. Prison records identify Defendants David Small and Ryan Poole as the officers who assigned Taylor and Jackson to New South C-Pod and Defendant Miles E. Lyons as the counselor who prepared Jackson's custody assessment. Taylor seeks damages under 42 U.S.C. § 1983 for the alleged failure to protect him from serious harm, as more fully set forth below.

## PARTIES

1. Plaintiff Jordan Keith Taylor ("Taylor") is an adult individual who was confined at York County Prison in April 2025. Taylor has since been released and is not currently incarcerated.

2. Defendant York County d/b/a York County Prison, is where the events giving rise to this action occurred.

3. Defendant Lieutenant David Small ("Small") was a York County Prison lieutenant identified in the prison's housing records as the assigning officer for Taylor's April 4, 2025, placement in cell NSC10A. Small is sued in his individual and official capacities.

4. Defendant Officer Ryan Poole ("Poole") was a York County Prison officer identified in the prison's housing records as the assigning officer for Bradley Lamont Jackson's April 4, 2025, placement in cell NSC13A. Poole is sued in his individual and official capacities.

5. Defendant Counselor Miles E. Lyons ("Lyons") was a York County Prison counselor identified as the author and signatory of Jackson's initial custody assessment dated April 5, 2025. Lyons is sued in his individual and official capacities.

6. In performing their respective prison housing and classification functions described herein, Defendants acted under color of Pennsylvania law.

## JURISDICTION AND VENUE

7. This action arises under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

8. Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to this action occurred at York County Prison in York County, Pennsylvania, within the Middle District of Pennsylvania.

## OPERATIVE FACTS

9. Plaintiff was admitted to York County Prison on April 4, 2025. His intake records identify a bench warrant and a parole-violation hold. The prison's records also contain a "Not Sentenced" designation.

10. At 6:18 a.m. on April 4, 2025, Small assigned Taylor to cell NSC10A in New South C-Pod, according to the prison's housing history.

11. Taylor's April 4, 2025 intake note records a classification score of three points and designates him Level 1.

12. At 10:54 a.m. on April 4, 2025, Poole assigned Bradley Lamont Jackson ("Jackson") to cell NSC13A in the same pod, according to the prison's housing history.

13. Lyons prepared and signed Jackson's initial custody assessment dated April 5, 2025. The assessment records a maximum custody score of 14, a comprehensive score of 22, and a recommended Level 3 classification, with no override recommended.

14. Lyons's assessment records robbery, an aggravated-assault conviction in Jackson's history, and an entry for an assault within the preceding year. Upon information and belief, based on his authorship and signature, Lyons reviewed the offense and assault history he recorded in that assessment.

15. The assessment does not state the time on April 5, 2025 when Lyons completed it. The treatment-supervisor review bears an April 7, 2025 date.

16. The prison's General Post Orders for the Main Prison, dated February 20, 2018, provide that Level 1 inmates may not comingle with Level 3 inmates without direct supervision and staff presence.

17. On the afternoon of April 5, 2025, Taylor and Jackson remained assigned to separate cells within New South C-Pod.

18. Lieutenant Fred Belton later reviewed the prison's surveillance footage and prepared a report describing Taylor's movements and collapse.

19. According to Belton's report, at approximately 3:24:40 p.m., Taylor left cell 10, appeared to be called by someone in cell 13, and entered cell 13.

20. The report places inmate Allen Gerena in cell 13 from approximately 3:26:43 p.m. until 3:27:15 p.m., during which he appeared to be talking with Taylor and Jackson.

21. At approximately 3:28:16 p.m., Taylor appeared to lean against a sink and fall to the floor. Jackson appeared at the doorway and then returned inside, appearing to pull Taylor farther into the cell and out of camera view, according to Belton's report.

22. During the incident, Jackson struck Taylor and forced Taylor to perform oral sex. Taylor subsequently described these acts to personnel at York Hospital and in a later counselor interview.

23. Taylor described blows to his chest and face, loss of consciousness, and Jackson requiring him to kiss Jackson's feet.

24. At approximately 3:33 p.m., Taylor left cell 13, returned to cell 10, and collapsed, according to Belton's report.

25. Officer Leandre Jasper reported observing Taylor on the floor of cell 10 on a booth monitor and alerting Officer James Keeney. Keeney reported entering C-Pod, going to cell 10, calling a medical emergency, and beginning chest compressions when Taylor appeared not to be breathing.

26. Responding personnel documented Taylor's unresponsiveness or seizure-like activity, neck marks or lacerations, an elbow abrasion, and bruising to his torso. Taylor was transported to York Hospital.

27. Hospital-escort reports record Taylor's disclosure of sexual assault to hospital personnel and a Pennsylvania State Police trooper. The reports document a forensic examination, photographs, collection of swabs, and collection of clothing.

28. Pennsylvania State Police investigated under incident number PA2025-407370. In a February 17, 2026 response to Taylor's records request, the agency stated that the investigation remained open and ongoing as of that date.

29. After the assault, Taylor requested protective custody. Prison personnel documented a PREA interview during which Taylor became tearful and did not complete his account.

30. Taylor suffered physical injuries, pain, and emotional distress from the assault. The nature and extent of any continuing injuries will be established through medical evidence and other proof.

**COUNT I**
**42 U.S.C. § 1983**
**FAILURE TO PROTECT**
**Against Small, Poole, and Lyons in Their Individual and Official Capacities**

31. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

32. Taylor had a constitutional right to reasonable protection from a substantial risk of serious harm while confined. The Eighth Amendment supplies that protection if his confinement was pursuant to a conviction; the Fourteenth Amendment supplies it if he was a pretrial detainee. These constitutional grounds are asserted in the alternative.

33. The conduct challenged in this count is Small's assignment of Taylor to NSC10A, Poole's assignment of Jackson to NSC13A in the same pod, and Lyons's classification work concerning Jackson, as individually described above. This claim is based on those identified acts rather than Defendants' titles alone.

34. Taylor contends that the housing and classification arrangements described above failed to provide the protection required for his safety and exposed him to a substantial risk of serious harm. Taylor further contends that the challenged conduct constituted deliberate indifference to his safety, in violation of the applicable constitutional protection.

35. Taylor seeks to recover for the physical injuries, pain, and emotional distress caused by the alleged constitutional failure to protect him from Jackson's assault.

**COUNT II**
**42 U.S.C. § 1983**
**MUNICIPAL LIABILITY (MONELL)**
**Against York County**

36. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

37. York County may be held liable under 42 U.S.C. § 1983 for a constitutional injury caused by its own policy or custom, or by a municipal failure to train or supervise that satisfies the deliberate-indifference standard. This claim seeks to impose liability for the County's own conduct.

38. Plaintiff challenges the County's implementation of inmate classification, housing, and separation safeguards in connection with the placements and assault described above. Plaintiff contends that the challenged municipal conduct caused a failure to protect him from a substantial risk of serious harm.

39. Plaintiff seeks compensatory damages from York County for injuries caused by any municipal policy, custom, or deliberately indifferent failure established to have been the moving force behind the alleged constitutional violation.

WHEREFORE, Plaintiff requests judgment against the Defendant or Defendants whose liability is established, awarding compensatory damages in an amount to be determined at trial;

nominal damages where appropriate; punitive damages against Defendants in their individual capacities upon the required showing; reasonable attorney's fees and costs under 42 U.S.C. § 1988; interest as permitted by law; and such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,
WEISBERG LAW

______________________________

David A. Berlin, Esquire
Matthew B. Weisberg, Esquire
7 South Morton Avenue
Morton, PA 19070
Attorneys for Plaintiff